# EXHIBIT 58

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 12925

# MUTUAL LEGAL ASSISTANCE

**Treaty Between the**

**UNITED STATES OF AMERICA**

**and ISRAEL**

Signed at Jerusalem January 26, 1998

<u>with</u>

Exchange of Notes



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
 evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# ISRAEL

## Mutual Legal Assistance

*Treaty, with exchange of notes, signed at Jerusalem January 26, 1998;*
*Transmitted by the President of the United States of America*
*  to the Senate April 2, 1998 (Treaty Doc. 105-40,*
*  105th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*  October 14, 1998 (Senate Executive Report No. 105-22,*
*  105th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*  October 21, 1998;*
*Ratified by the President January 20, 1999;*
*Ratified by Israel March 18, 1999;*
*Ratifications exchanged at Washington May 25, 1999;*
*Entered into force May 25, 1999.*

**TREATY BETWEEN**

**THE GOVERNMENT OF THE UNITED STATES OF AMERICA**

**AND THE GOVERNMENT OF THE STATE OF ISRAEL**

**ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS**

ARTICLE 1      SCOPE OF ASSISTANCE

ARTICLE 2      CENTRAL AUTHORITIES

ARTICLE 3      LIMITATIONS ON ASSISTANCE

ARTICLE 4      FORM AND CONTENTS OF REQUESTS

ARTICLE 5      EXECUTION OF REQUESTS

ARTICLE 6      COSTS

ARTICLE 7      LIMITATIONS ON USE

ARTICLE 8      STATEMENTS, TESTIMONY OR EVIDENCE BEFORE
               AUTHORITIES OF THE REQUESTED STATE

ARTICLE 9      RECORDS OF GOVERNMENT AGENCIES

ARTICLE 10     APPEARANCE OF PERSONS BEFORE AUTHORITIES OF THE
               REQUESTING STATE

ARTICLE 11     TRANSFER OF PERSONS IN CUSTODY

ARTICLE 12     SAFE CONDUCT

ARTICLE 13     LOCATION OR IDENTIFICATION OF PERSONS OR ITEMS

ARTICLE 14     SERVICE OF DOCUMENTS

ARTICLE 15     SEARCH AND SEIZURE

ARTICLE 16     RETURN OF DOCUMENTS, RECORDS AND ARTICLES OF
               EVIDENCE

ARTICLE 17     ASSISTANCE IN FORFEITURE AND OTHER PROCEEDINGS

ARTICLE 18     REFERRAL FOR INVESTIGATION OR PROSECUTION

ARTICLE 19     OTHER ASSISTANCE

ARTICLE 20     CONSULTATION

ARTICLE 21     RATIFICATION, ENTRY INTO FORCE, APPLICATION AND
               TERMINATION

The Government of the United States of America and the Government of the State of Israel (hereinafter referred to as "the Parties"),

DESIRING to improve the effectiveness of the law enforcement authorities of both countries in the investigation, prosecution, and prevention of crime through cooperation and mutual legal assistance in criminal matters,

HAVE AGREED as follows:

## ARTICLE 1
## SCOPE OF ASSISTANCE

1.    The Parties shall provide mutual assistance, in accordance with the provisions of this Treaty, in connection with the investigation, prosecution, and prevention of offenses, and in proceedings related to criminal matters.

2.    Assistance shall include:

   (a)    taking the testimony or statements of persons;

   (b)    providing documents, records, and articles of evidence;

   (c)    serving documents;

   (d)    locating or identifying persons or items;

   (e)    transferring persons in custody for testimony or for other assistance under this treaty;

   (f)    executing requests for searches and seizures;

   (g)    assisting in proceedings related to seizure, immobilization and forfeiture of assets; and

   (h)    providing any other form of assistance not prohibited by the laws of the Requested State.

3.    Assistance shall be provided without regard to whether the conduct which is the subject of the investigation, prosecution, or proceeding of the Requesting State would constitute an offense under the laws of the Requested State.

4.    This Treaty is intended solely for mutual assistance between the Parties. The provisions of this Treaty shall not give rise to any right, that does not otherwise exist, on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

## ARTICLE 2
## CENTRAL AUTHORITIES

1.  Each Party shall designate a Central Authority to make and receive requests pursuant to this Treaty.

2.  For the United States of America, the Central Authority shall be the Attorney General or an official designated by the Attorney General. For the State of Israel, the Central Authority shall be the Minister of Justice or an official designated by the Minister of Justice.

3.  The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

## ARTICLE 3
## LIMITATIONS ON ASSISTANCE

1.  The Central Authority of the Requested State may deny assistance if it determines that:

    (a)  the request if granted would prejudice its sovereignty, security, important public policy, *ordre public*, or other essential interest;

    (b)  the request relates to a political offense or to an offense under military law which would not be an offense under ordinary criminal law;

    (c)  the request is not made in conformity with the Treaty.

2.  Before denying assistance pursuant to this Article, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

3.  If the Central Authority of the Requested State denies assistance, it shall inform the Central Authority of the Requesting State of the reasons for the denial.

## ARTICLE 4
## FORM AND CONTENTS OF REQUESTS

1.  A request for assistance shall be in writing except that the Central Authority of the Requested State may, in its discretion, accept a request in another form in urgent situations. In any such case, the request shall be confirmed in writing within the time period determined by the Central Authority of the Requested State. The request shall be in the language of the Requested State unless otherwise agreed.

The request shall include the following:

(a)    the name of the authority conducting the investigation, prosecution, or proceeding to which the request relates;

(b)    a description of the subject matter and nature of the investigation, prosecution, or proceeding, including the specific criminal offenses which relate to the matter;

(c)    a description of the evidence, information, or other assistance sought; and

(d)    a statement of the purpose for which the evidence, information, or other assistance is sought, and the connection between the assistance sought and the criminal matter to which it relates.

3.    To the extent necessary and possible, a request shall also include:

(a)    the identity and location of any person from whom evidence is sought;

(b)    the identity and location of a person to be served, that person's relationship to the proceeding, and the manner in which service is to be made;

(c)    information on the identity and whereabouts of a person to be located;

(d)    a precise description of the place or person to be searched and of the items to be seized;

(e)    a description of the manner in which any testimony or statement is to be taken and recorded;

(f)    a list of questions to be asked of a witness;

(g)    a description of any particular procedure to be followed in executing the request;

(h)    information as to the allowances and expenses to which a person asked to appear in the Requesting State will be entitled;

(i)    the requirements, if any, for confidentiality and the reasons therefore; and

(j)    any other information which may be brought to the attention of the Requested State to facilitate its execution of the request, including the text of the relevant laws.

4.    Exhibits or other attachments to a request for assistance shall be translated into the language of the Requested State, unless the Central Authority of that State has agreed otherwise in relation to a particular request.

## ARTICLE 5
## EXECUTION OF REQUESTS

1.  The Central Authority of the Requested State shall promptly execute the request or, when appropriate, transmit it to the authority having jurisdiction to do so. The competent authorities of the Requested State shall do everything in their power to execute the request. The Courts of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request; in the case of Israel, this authority shall be derived from its domestic law.

2.  The Central Authority of the Requested State shall make all necessary arrangements for the representation in the Requested State of the Requesting State in any proceeding arising out of a request for assistance.

3.  Requests shall be executed as empowered by this Treaty or by applicable law. The method of execution specified in the request shall be followed except insofar as it is prohibited by the laws of the Requested State.

4.  If the Central Authority of the Requested State determines that execution of a request would interfere with an ongoing criminal investigation, prosecution or proceeding of that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultation with the Central Authority of the Requesting State. If the Requesting State accepts the assistance subject to the conditions, it shall comply with the conditions.

5.  The Requesting State may request that the request for assistance, the contents of the request and its supporting documents, and the fact of granting such assistance be kept confidential. If the request cannot be executed without breaching such confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed. When such confidentiality has been requested, the Requested State shall use its best efforts to ensure that the confidentiality is maintained.

6.  The Central Authority of the Requested State shall respond to reasonable requests by the Central Authority of the Requesting State concerning progress toward execution of the request.

7.  The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the outcome of the execution of the request.

## ARTICLE 6
## COSTS

1.    The Requested State shall pay all costs relating to the execution of the request, except for the fees of expert witnesses, the costs of translation, interpretation, and transcription, and the allowances and expenses related to travel of persons pursuant to Articles 10 and 11, all of which shall be paid by the Requesting State.

2.    If expenses of an extraordinary nature are or will be required in fulfilling a request, the Central Authorities of the Parties shall consult to determine the manner in which the expenses shall be borne.

3.    In the case of requests for seizure, immobilization or forfeiture of assets or restraining orders in which a Court of the Requested State, in accordance with the Requested State's domestic law, issues an order to compensate an injured party or requires the furnishing of a bond or other security, the Central Authorities of the Parties shall consult to determine the manner in which such costs shall be borne.

## ARTICLE 7
## LIMITATIONS ON USE

1.    The Requesting State shall not use evidence or information obtained under this Treaty for purposes other than those stated in the request without prior consent of the Central Authority of the Requested State.

2.    The Central Authority of the Requested State may request that information or evidence furnished under this Treaty be kept confidential or be used only subject to terms and conditions it may specify. If the Requesting State accepts the information or evidence subject to such conditions, the Requesting State shall comply with the conditions to the fullest extent possible.

3.    Nothing in this Article shall preclude the Requesting State from using or disclosing information in a criminal prosecution, to the extent that:

(a)    if the United States is the Requesting State, it is obligated to do so under its Constitution; or

(b)    if Israel is the Requesting State, it is obligated to do so under the fundamental rights provided under the law of Israel.

4.    Unless otherwise indicated by the Requested Party when executing the request, information or evidence, the contents of which have been disclosed in a public judicial or administrative proceeding related to the request, may thereafter be used for any purpose.

## ARTICLE 8
## STATEMENTS, TESTIMONY OR EVIDENCE BEFORE AUTHORITIES OF THE REQUESTED STATE

1.  The Requested State shall, upon request, endeavor to obtain a statement of a person for the purpose of an investigation, prosecution or proceeding of the Requesting State.

2.  The Requested State, if necessary, shall compel the appearance of a person for taking testimony and producing documents, records, and articles to the same extent as would be permitted in investigations, prosecutions and proceedings of that State.

3.  Upon request, the Central Authority of the Requested State shall furnish information in advance about the date and place of the taking of the statement, testimony or evidence pursuant to this Article.

4.  The Requested State shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to question the person giving the statement, testimony or evidence, provided that they would be competent to do so in the Requesting State.

5.  If the person referred to in paragraphs 1 or 2 asserts a claim of immunity, incapacity, or privilege under the laws of the Requesting State, the statement, testimony or evidence shall nonetheless be taken and the claim made known to the Central Authority of the Requesting State for resolution by the authorities of that State.

6.  Evidence provided by the Requested State pursuant to this Article or which is the subject of testimony taken under this Article may be authenticated by an attestation, or in another manner specified by the Requesting State, which may include, in the case of business records, authentication in the manner indicated in Form A appended to this Treaty, if so requested. No further authentication or certification shall be necessary in order for such documentary information to be admissible in evidence in proceedings of the Requesting State.

## ARTICLE 9
## RECORDS OF GOVERNMENT AGENCIES

1.  The Requested State shall provide the Requesting State with copies of publicly available records, including documents or information in any form, in the possession of government departments and agencies of the Requested State.

2.  The Requested State may provide copies of any documents, records, or information which are in the possession of a government department or agency of that State but which are not publicly available, to the same extent and under the same conditions as they would be available to its own law enforcement or judicial authorities. The Requested State may, in its discretion, deny a request pursuant to this paragraph entirely or in part.

Official records produced pursuant to this Article may be authenticated under the provisions of the Convention Abolishing the Requirement of Legalization for Foreign Public Documents, dated 5 October 1961, or they may be authenticated by the official in charge of maintaining them in the manner specified by the Requesting State, which may include the use of Form B appended to this Treaty, if so requested. No further authentication or certification shall be necessary in order for such records to be admissible in evidence in proceedings of the Requesting State.

### ARTICLE 10
### APPEARANCE OF PERSONS BEFORE AUTHORITIES OF THE REQUESTING STATE

When the Requesting State requests the appearance of a person before authorities of that State, the Requested State shall invite the person to appear before the appropriate authority of the Requesting State. The Requesting State shall indicate the extent to which the expenses will be paid. Such person shall be under no compulsion to accept such an invitation. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the response of the person.

### ARTICLE 11
### TRANSFER OF PERSONS IN CUSTODY

1. A person in the custody of the Requested State whose presence is sought by the Requesting State for purposes of assistance under this Treaty shall be transferred from the Requested State to the Requesting State for that purpose if the person consents and if the Central Authorities of both States agree.

2. A person in the custody of the Requesting State whose presence is sought by the Requested State for purposes of assistance under this Treaty shall be transferred from the Requesting State to the Requested State if the person consents and if the Central Authorities of both States agree.

3. For purposes of this Article:

    (a) the receiving State shall have the authority and the obligation to keep the person transferred in custody unless otherwise authorized by the sending State;

    (b) the receiving State shall return the person transferred to the custody of the sending State as soon as circumstances permit or as otherwise agreed by both Central Authorities;

    (c) the receiving State shall not require the sending State to initiate extradition proceedings for the return of the person transferred; and

    (d) the person transferred shall receive credit for service of the sentence imposed by the sending State for time served in the custody of the receiving State.

4.  If the sending State notifies the receiving State that the transferred person is no longer required to be held in custody, that person shall either be expeditiously returned to the sending State or be set at liberty. A person so set at liberty shall be entitled to the cost of his return travel to the sending State, if he returns to that state.

5.  The Requesting State shall be responsible for making all necessary arrangements for the transit of transferred persons through third countries.

<div align="center">

**ARTICLE 12**
**SAFE CONDUCT**

</div>

1.  A person appearing before authorities of the receiving State pursuant to a request under Article 10 or 11, shall not, with respect to criminal proceedings, be subject to service of process, or be detained or subjected to any other restriction of liberty, with respect to any acts or convictions which preceded that person's departure from the sending State, except as provided by Article 11.

2.  The Central Authority of the receiving State may, in its discretion, determine that a person appearing before its authorities pursuant to a request under Article 10 or 11 shall not, with respect to civil proceedings, be detained or subjected to any restriction of personal liberty, with respect to any acts or omissions which preceded his departure from the sending State.

3.  When not inconsistent with its domestic laws, the Central Authority of the receiving State may, in its discretion, determine that a person appearing before its authorities pursuant to a request under Article 10 or 11 shall not, with respect to civil proceedings, be subject to service of process with respect to any acts or omissions which preceded his departure from the sending State.

4.  Safe conduct, as provided in Paragraphs 1 and 2 of this Article, shall cease if:

    (a)  fifteen days after the person has been notified that his presence is no longer required, and being physically able to depart, he has not left the receiving State; or

    (b)  having left the receiving State, the person has returned.

<div align="center">

**ARTICLE 13**
**LOCATION OR IDENTIFICATION OF PERSONS OR ITEMS**

</div>

If the Requesting State seeks the location or identity of persons or items, the Requested State shall use its best efforts to ascertain the location or identity.

<div align="center">-9-</div>

## ARTICLE 14
### SERVICE OF DOCUMENTS

1. The Requested State shall use its best efforts to execute a request to effect service of a document, and to the extent possible, shall effect such service in the manner specified by the Requesting State.

2. The Requesting State shall transmit any request for the service of a document seeking the appearance of a person before any authority of the Requesting State a reasonable time, as agreed by the Central Authorities, before the scheduled appearance.

3. To the extent possible, the Requested State shall return a proof of service in the manner specified in the request. If service cannot be effected, or cannot be effected in the manner specified, the Requesting State shall be so informed and shall be advised of the reasons.

## ARTICLE 15
### SEARCH AND SEIZURE

1. The Requested State shall execute a request for the search, seizure, and delivery of any item to the Requesting State if the request includes the information justifying such action under the laws of the Requested State.

2. Upon request, and to the extent possible, every official who has custody of a seized item shall certify, in the manner specified by the Requesting State, which may include the use of Form C appended to this Treaty, the continuity of custody, the identity of the item, and the integrity of its condition. No further authentication or certification shall be necessary for a certification under this paragraph to be admissible in evidence to prove the truth of the matters asserted therein.

3. The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

## ARTICLE 16
### RETURN OF DOCUMENTS, RECORDS AND ARTICLES OF EVIDENCE

The Central Authority of the Requested State may require that the Central Authority of the Requesting State return any documents, records, or articles of evidence furnished to it in execution of a request under this Treaty as soon as possible.

-10-

## ARTICLE 17
## ASSISTANCE IN FORFEITURE AND OTHER PROCEEDINGS

1. The Parties shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses. This may include action to temporarily seize or immobilize the proceeds or instrumentalities pending further proceedings.

2. If the Central Authority of one Party becomes aware of proceeds or instrumentalities of offenses which may be forfeitable or otherwise subject to seizure or immobilization under the laws of the other Party, it may so inform the Central Authority of the other Party. If that other Party has jurisdiction in this regard, it may present this information to its authorities for a determination as to whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country, and shall, through their Central Authority, report to the other Party on the action taken.

3. The Party that has custody over proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws. Either Party may transfer all or part of such assets, or the proceeds of their sale, to the other Party, to the extent permitted by the transferring Party's laws and upon such terms as it deems appropriate.

4. The Parties shall assist each other to the extent permitted by their respective laws in connection with restitution to the victims of crime, and the imposition or collection of fines in criminal proceedings. However, the parties shall not be obligated to enforce orders of restitution or to collect fines or to enforce judgments imposing fines.

## ARTICLE 18
## REFERRAL FOR INVESTIGATION OR PROSECUTION

If the authorities of one Party become aware of criminal acts which the other Party may have jurisdiction to investigate or prosecute, the Central Authority of the first Party may refer the matter and, upon request, submit any relevant evidence to the Central Authority of the other Party.

## ARTICLE 19
## OTHER ASSISTANCE

Assistance and other procedures set forth in this Treaty shall not prevent either of the Parties from granting assistance to the other Party through the provisions of other applicable international agreements, or through the provisions of its domestic laws. The Parties may also provide assistance pursuant to any applicable bilateral arrangement or agreement, provided such assistance is not prohibited by the laws of the Requested State.

## ARTICLE 20
### CONSULTATION

The Central Authorities of the Parties shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty. The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

## ARTICLE 21
### RATIFICATION, ENTRY INTO FORCE, APPLICATION AND TERMINATION

1. This Treaty shall be subject to ratification, and the instruments of ratification shall be exchanged as soon as possible.

2. This Treaty shall enter into force upon the exchange of instruments of ratification.

3. This Treaty shall apply to any request presented after its entry into force, even if the request relates to offenses which occurred before that date.

4. Either Party may terminate this Treaty by means of written notice to the other Party. Termination shall take effect six months following the date of notification.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Treaty.

DONE in _Jerusalem_ this _26th_ day of _January_, 199 _8_ corresponding to the _28th_ day of _Tevet_ 575_8_, in duplicate, in the English and Hebrew languages, both texts being equally authentic.

For the Government of
the United States of America

For the Government of
the State of Israel

-12-

**Form A**

## CERTIFICATE OF AUTHENTICITY OF BUSINESS RECORDS

I, _____, attest on penalty of criminal punishment for false statement or
<span>(NAME)</span>

attestation that I am employed by _____
<span>(NAME OF BUSINESS FROM WHICH DOCUMENTS ARE SOUGHT)</span>

and that my official title is _____. I further state that each of the
<span>(OFFICIAL TITLE)</span>

records attached hereto is the original or a duplicate of the original record in the custody of

_____.
<span>(NAME OF BUSINESS FROM WHICH DOCUMENTS ARE SOUGHT)</span>

I further state that:

A)  such records were made at or near the time of the occurrence of the matters set forth by
    a person with knowledge, or from information transmitted by a person with knowledge,
    of those matters;

B)  such records were kept in the course of a regularly conducted business activity;

C)  the business activity made such records as a regular practice; and

D)  if any such record is not the original, it is a duplicate of the original.

_____  _____
<span>(SIGNATURE)</span>      <span>(DATE)</span>

Sworn to or affirmed before me, _____, a judicial officer, this _____ day
<span>(NAME)</span>

of _____, 19\_\_.

**Form B**

## ATTESTATION OF AUTHENTICITY OF FOREIGN PUBLIC DOCUMENTS

I, _____, attest on penalty of criminal punishment for false statement
                    (NAME)

or attestation that my position with the Government of _____
                                                              (COUNTRY)

is _____ and that in that position I am authorized by the
              (OFFICIAL TITLE)

law of _____ to attest that the documents attached and described
                  (COUNTRY)

below are true and accurate copies of original official records which are recorded or filed in

_____, which is a government office or agency of
      (NAME OF OFFICE OR AGENCY)

_____
          (COUNTRY)


Description of Documents:




_____
              (SIGNATURE)

_____
                (TITLE)

_____
                (DATE)

### Form C

## ATTESTATION WITH RESPECT TO SEIZED ARTICLES

I, _____, attest on penalty of criminal punishment for false statement
(NAME)

or attestation that my position with the Government of _____
(COUNTRY)

is _____. I received custody of the articles listed below
(OFFICIAL TITLE)

from _____ on _____, at _____
(NAME OF PERSON)                      (DATE)                (PLACE)

and transferred them to _____, on _____, at
(NAME OF PERSON)                           (DATE)

_____. At the time I transferred the articles, they were in the same
(PLACE)

condition as when I received them (or, if different, as noted below).


Description of Articles:



Changes in condition while in my custody:



                    _____
                                (SIGNATURE)

(OFFICIAL SEAL) _____
                                   (TITLE)

                    _____
                                  (PLACE)

                    _____
                                  (DATE)

EMBASSY OF THE
UNITED STATES OF AMERICA

Excellency,

I have the honor to refer to the Treaty Between the Government of the United States of America and the Government of the State of Israel on Mutual Assistance in Criminal Matters, signed today in Jerusalem (hereinafter the "Treaty"), and to confirm on behalf of the Government of the United States of America the following Understanding:

1.    This Treaty may be applied to request assistance with respect to fiscal offenses. The term "fiscal offenses" as used herein, shall mean criminal tax offenses.

2.    Notwithstanding the generality of section 1, it is the understanding of the Parties that assistance will not be requested pursuant to this Treaty with respect to a fiscal offense if the case concerned would, by its nature, come within the scope of the provision for cooperation between tax authorities included in the Convention Between the Government of the State of Israel and the Government of the United States of America with Respect to Taxes on Income, signed on November 20, 1975, with Protocols signed on May 30, 1980 and on January 26, 1993, which entered into force on December 30, 1994 (hereinafter the "Tax Convention"), unless

      a)    the form of assistance requested is not included within the framework of the Tax Convention, or

      b)    the case concerned also includes additional serious non-fiscal offenses.

      In any event, a request for assistance under this Treaty with regard to a fiscal offense should specify whether assistance under the Tax Convention has been previously requested or granted.

3.    It is the understanding of the Parties that requests for assistance in the form of bank records with respect to a fiscal offense will be made only in connection with serious offenses involving wilful, fraudulent conduct. Serious offenses would include, for example, cases involving substantial sums of money or involving a pattern of criminal conduct.

I have the honor to propose that this Note and your Excellency's reply confirming on behalf of your Government the above Understanding shall be regarded as an integral part of the Treaty.

Accept, Excellency, the renewed assurances of my highest consideration.

                                                                    x

The Ambassador of the United States of America

ראש הממשלה
Prime Minister

Excellency,

I have the honor to acknowledge receipt of your Excellency's Note of this date, which reads as follows:

"Excellency,

"I have the honor to refer to the Treaty Between the Government of the United States of America and the Government of the State of Israel on Mutual Assistance in Criminal Matters, signed today in Jerusalem (hereinafter the "Treaty"), and to confirm on behalf of the Government of the United States of America the following Understanding:.

"1.    This Treaty may be applied to request assistance with respect to fiscal offenses. The term "fiscal offenses" as used herein, shall mean criminal tax offenses.

"2.    Notwithstanding the generality of section 1, it is the understanding of the Parties that assistance will not be requested pursuant to this Treaty with respect to a fiscal offense if the case concerned would, by its nature, come within the scope of the provision for cooperation between tax authorities included in the Convention Between the Government of the State of Israel and the Government of the United States of America with Respect to Taxes on Income, signed on November 20, 1975, with Protocols signed on May 30, 1980 and on January 26, 1993, which entered into force on December 30, 1994 (hereinafter the "Tax Convention"), unless

    "a)    the form of assistance requested is not included within the framework of the Tax Convention, or

    "b)    the case concerned also includes additional serious non-fiscal offenses.

    "In any event, a request for assistance under this Treaty with regard to a fiscal offense should specify whether assistance under the Tax Convention has been previously requested or granted.

"3.    It is the understanding of the Parties that requests for assistance in the form of bank records with respect to a fiscal offense will be made only in connection with serious offenses involving wilful, fraudulent conduct. Serious offenses would include, for example, cases involving substantial sums of money or involving a pattern of criminal conduct.

"I have the honor to propose that this Note and your Excellency's reply confirming on behalf of your Government the above Understanding shall be regarded as an integral part of the Treaty.

Jerusalem, Israel

ראש הממשלה
Prime Minister


"Accept, Excellency, the renewed assurances of my highest consideration."

On behalf of the Government of the State of Israel, I have the honor to confirm the
Understanding set forth in your Excellency's Note and that your Excellency's Note and
this Note shall constitute an integral part of the Treaty.

Accept, Excellency, the renewed assurance of my highest consideration.


The Prime Minister and Minister of Foreign Affairs



Jerusalem, Israel

פריט 22 אברהם, בריאת כלידב, הגירה ומגע

פריט 20 התייחסות

פריט 19 קניה אחרת

פריט 18 העברה כמקדמה או כתשלום קרן

פריט 17 מתן הלוואה ותשלומים אחרים

פריט 16 הלוואה מבנקים, הלוואות וריבית

פריט 15 הכנסה והכנסה

פריט 14 הוצאות מממנים

פריט 13 אגרות או שכירי של אנשים או העסק

פריט 12 מכבד הוצאי

פריט 11 הוצאות אנשים הנותרים בתקנות

פריט 10 הוצאות אנשים בנקי הלוואות ותנאים ותשלום

פריט 9 הלוואות אל פירעונות ותשלומים

פריט 8 הוצאות, פירעון או הכנסה בנקי הלוואות ותנאים ותשלום

פריט 7 הכנסות של שימוש

פריט 6 הוצאות

פריט 5 בנקים בכסף

פריט 4 קניה בכסף והכנס

פריט 3 הכנסות של כלל קניה

פריט 2 הלוואות ובנקים

פריט 1 הסכם הלוואה

4

## סעיף 3
## הגבלות על עזרה

1. הרשות המרכזית של המדינה המתבקשת רשאית לסרב לתת עזרה אם היא קובעת כי :

   (א)   הבקשה, אם תיענה, תפגע בריבונותה, בביטחונה, במדיניות ציבורית
         חשובה, בתקנת הציבור, או באינטרס חיוני אחר ;

   (ב)   הבקשה מתייחסת לעבירה פוליטית או לעבירה לפי חוק הצבאי אשר
         איננה מהווה עבירה לפי הדין הפלילי הרגיל ; או

   (ג)   הבקשה לא נערכה בהתאם לאמנה.

2. לפני סירוב לתת עזרה בהתאם לסעיף זה, הרשות המרכזית של המדינה המתבקשת
   תתייעץ עם הרשות המרכזית של המדינה המבקשת כדי לדון באשאלה האם ניתן לתת את
   העזרה בכפוף לתנאים ככל שייראו לה נחוצים. אם המדינה המבקשת מוכנה לקבל את
   העזרה בכפוף לתנאים אלה, היא תמלא אחר התנאים.

3. אם הרשות המרכזית של המדינה המתבקשת מסרבת לתת עזרה, היא תודיע לרשות
   המרכזית של המדינה המבקשת מהן הסיבות לסירוב.

## סעיף 4
## צורת בקשות ותוכנן

1. בקשה לעזרה תהיה בכתב, אלא שהרשות המרכזית של המדינה המתבקשת רשאית, לפי
   שיקול דעתה, לקבל בקשה בצורה אחרת במקרים דחופים. בכל מקרה כאמור, תאושר
   הבקשה בכתב במסגרת פרק הזמן שקבעה הרשות המרכזית של המדינה המתבקשת.
   הבקשה תהיה בשפתה של המדינה המתבקשת אלא אם כן הוסכם אחרת.

2. הבקשה תכלול את האמור להלן :

   (א)   שם הרשות המנהלת את החקירה, ההעמדה לדין או הליך שאליהם
         מתייחסת הבקשה ;

   (ב)   תיאור של נושא החקירה, ההעמדה לדין או הליך וטבעם, לרבות העבירות
         הפליליות המסוימות הנוגעות לעניין ;

   (ג)   תיאור של הראיות, המידע או העזרה האחרת המבוקשים ; וכן

   (ד)   פירוט על התכלית שלשמה מבוקשים הראיות, המידע או העזרה האחרת,
         והקשר בין העזרה המבוקשת לבין העניין הפלילי שאליו היא מתייחסת.

2. הרשות המרכזית של המדינה המתבקשת רשאית לבקש שמידע או ראיות המסופקים לפי אמנה זו יישמרו בסוד או שייעשה בהם שימוש אך ורק בכפוף לתנאים ולהתניות שהיא רשאית לקבוע. אם המדינה המבקשת מסכימה לקבל את המידע או הראיות בכפוף לתנאים כאמור, המדינה המבקשת תמלא אחר התנאים במלואם ככל שניתן.

3. אין בסעיף זה כדי למנוע מהמדינה המבקשת מלהשתמש במידע או לגלות אותו בהליך העמדה לדין, ובלבד :

    (א)    שאם המדינה המבקשת היא ארצות הברית, היא מחויבת לעשות זאת בהתאם לחוקתה; או

    (ב)    שאם המדינה המבקשת היא ישראל, היא מחויבת לעשות זאת לפי זכויות היסוד הקבועות בדיני ישראל.

4. אם אין הצד המתבקש מציין אחרת בבצעו את הבקשה, מידע או ראיות, אשר תוכנם נתגלה בהליך פומבי, שיפוטי או מינהלי הקשור לבקשה, ניתן להשתמש בהם לאחר מכן לכל מטרה.


## סעיף 8
## הודעות, עדויות או ראיות בפני רשויות המדינה המתבקשת


1. לפי בקשה, המדינה המתבקשת תשתדל להשיג הודעה מאדם למטרות חקירה, העמדה לדין או הליך במדינה המבקשת.

2. אם יהיה צורך, המדינה המתבקשת תחייב את הופעתו של אדם לגביית עדות ולהצגת מסמכים, רשומות וחפצים במידה שהדבר מותר בחקירות, בהעמדות לדין ובהליכים באותה מדינה.

3. לפי בקשה, תספק הרשות המרכזית של המדינה המתבקשת מידע מראש בנוגע לתאריך ולמקום גביית ההודעה, העדות או הראיות בהתאם לסעיף זה.

4. המדינה המתבקשת תתיר את נוכחותם של בני אדם כמפורט בבקשה במהלך ביצוע הבקשה, ותתיר לבני אדם כאמור לחקור את האדם המוסר את ההודעה, העדות או הראיות, בתנאי שהם מוסמכים לעשות כן במדינה המבקשת.

5. אם האדם הנזכר בס״ק 1 או 2  טוען לחסינות, פסלות או זכות יתר לפי דיני המדינה המבקשת, ייגבו בכל זאת ההודעה, העדות או הראיות והודעה על הטענה תימסר לרשות המרכזית של המדינה המבקשת לשם יישוב השאלה ע״י רשויות אותה מדינה.

6. ראיית שסיפקה המדינה המתבקשת בהתאם לסעיף זה או שהן נושא של עדות שנגבתה לפי סעיף זה ניתן לאמת בתצהיר, או באופן אחר שקבעה המדינה המבקשת, אשר יכול לכלול, במקרה של רשומות עסקיות, ואם כך תתבקש, אימות באופן הקבוע בטופס א׳ המצורף כנספח לאמנה זו. לא יהיה צורך באימות או באישור נוסף על מנת שמידע תיעודי זה יהיה קביל כראיה בהליכים במדינה המבקשת.

## סעיף 9
## רשומות של סוכנויות ממשלתיות

.1 המדינה המתבקשת תמסור למדינה המבקשת העתקים של רשומות פתוחות לציבור,
לרבות מסמכים או מידע בכל צורה, המצויים ברשות מחלקות וסוכנויות ממשלתיות של
המדינה המתבקשת.

.2 המדינה המתבקשת רשאית למסור העתקים של מסמכים, רשומות או מידע כלשהם
המצויים ברשות מחלקה או סוכנות ממשלתית שלה אבל אינם פתוחים בפני הציבור,
באותה מידה ולפי אותם תנאים שבהם היו פתוחים בפני רשויות אכיפת החוק או
הרשויות השיפוטיות שלה. המדינה המתבקשת רשאית, לפי שיקול דעתה, לדחות בקשה
בהתאם לסעיף זה, כולה או חלקה.

.3 רשומות רשמיות שנמסרו לפי סעיף זה ניתן לאמת לפי הוראות האמנה המבטלת את
הדרישה ללגליזציה לגבי מסמכים פומביים זרים, מתאריך 5 באוקטובר 1961, או
שהפקיד האחראי לניהולן רשאי לאמת אותן באופן שקבעה המדינה המבקשת, שיכול
לכלול, אם כך התבקש, שימוש בטופס ב' המצורף כנספח לאמנה זו. לא יהיה צורך
באימות או באישור נוסף על מנת שרשומות אלה תהיינה קבילות כראיה בהליכים במדינה
המבקשת.

## סעיף 10
## הופעת אנשים בפני רשויות המדינה המבקשת

כאשר המדינה המבקשת מבקשת את הופעתו של אדם בפני רשויותיה שלה, תזמין המדינה
המתבקשת את האדם להופיע בפני הרשות המתאימה של המדינה המבקשת. המדינה המבקשת
תציין את ההיקף שבו תשולמנה הוצאותיו. על האדם האמור לא תהיה כל חובה לקבל הזמנה
כאמור. הרשות המרכזית של המדינה המתבקשת תודיע ללא דיחוי לרשות המרכזית של המדינה
המבקשת על תשובת אותו אדם.

## סעיף 11
## העברת אנשים הנתונים במשמורת

.1 אדם הנמצא במשמורת במדינה המתבקשת, ואשר המדינה המבקשת מבקשת את
נוכחותו למטרות עזרה לפי אמנה זו, יועבר מהמדינה המתבקשת למדינה המבקשת
למטרה זו אם האדם מסכים ואם הרשויות המרכזיות של שני הצדדים מסכימות.

.2 אדם הנמצא במשמורת במדינה המבקשת, ואשר המדינה המתבקשת מבקשת את
נוכחותו למטרות עזרה לפי אמנה זו, יועבר מהמדינה המבקשת למדינה המתבקשת
למטרה זו אם האדם מסכים ואם הרשויות המרכזיות של שני הצדדים מסכימות.

‏3. למטרות סעיף זה:

‏(א) למדינה המקבלת תהיה הסמכות והחובה להחזיק את האדם המועבר
‏במשמורת אלא אם כן המדינה השולחת התירה לה לנהוג אחרת;

‏(ב) המדינה המקבלת תחזיר את האדם המועבר למשמורת המדינה השולחת
‏ברגע שהנסיבות יתירו זאת או ככל שיוסכם על ידי שתי הרשויות המרכזיות;

‏(ג) המדינה המקבלת לא תדרוש מהמדינה השולחת לפתוח בהליכי הסגרה
‏להחזרת האדם המועבר; וכן

‏(ד) האדם המועבר יקבל זיכוי על נשיאת העונש שהוטל במדינה השולחת בגין
‏הזמן שבו היה נתון במשמורת המדינה המקבלת.

‏4. אם המדינה השולחת תודיע למדינה המקבלת שאין עוד צורך להחזיק במשמורת את
‏האדם המועבר, יוחזר אותו אדם במהרה למדינה השולחת או ישוחרר. אדם ששוחרר כך
‏יהיה זכאי להוצאות נסיעתו חזרה למדינה השולחת, אם יחזור לאותה מדינה.

‏5. המדינה המבקשת תהיה אחראית לעשיית כל הסידורים הנחוצים למעבר אנשים
‏המועברים דרך מדינה שלישית.

<div align="center">

**סעיף 12**
**מעבר חופשי**

</div>

‏1. אדם המופיע בפני רשויות המדינה המקבלת, בהתאם לבקשה לפי סעיף 10 או 11, לא
‏יהיה כפוף להמצאת מסמכים, לא ייעצר ולא יהיה כפוף לכל הגבלה אחרת על חירותו,
‏בקשר להליכים פליליים בשל מעשים או חרשעות שקדמו ליציאתו של האדם מהמדינה
‏השולחת, למעט לפי הוראות סעיף 11.

‏2. הרשות המרכזית של המדינה המקבלת רשאית, לפי שיקול דעתה, לקבוע שאדם המופיע
‏בפני רשויותיה בהתאם לבקשה לפי סעיף 10 או 11, לא יעוכב ולא יהיה כפוף לכל הגבלה
‏אחרת על חירותו האישית, בקשר להליכים אזרחיים בשל מעשים או מחדלים שקדמו
‏ליציאתו מהמדינה השולחת.

‏3. מקום שהדבר עולה בקנה אחד עם דיניה, הרשות המרכזית של המדינה המקבלת רשאית,
‏לפי שיקול דעתה, לקבוע שאדם המופיע בפני רשויותיה בהתאם לבקשה לפי סעיף 10 או
‏11, לא יהיה כפוף להמצאת מסמכים בקשר להליכים אזרחיים בשל מעשים או מחדלים
‏שקדמו ליציאתו מהמדינה השולחת.

‏4. מעבר חופשי, לפי הוראות סעיף זה, יפקע אם:

‏(א) חמישה עשר ימים אחרי שהאדם קיבל הודעה שנוכחותו אינה דרושה עוד,
‏ובהיותו מסוגל פיזית לנסוע, הוא לא עזב את המדינה המקבלת; או

‏(ב) האדם חזר אל המדינה המקבלת אחרי שעזב אותה.

## סעיף 13
## איתור או זיהוי של אנשים או חפצים

אם המדינה המבקשת מבקשת את איתורם או את זיהוים של אנשים או חפצים, תעשה המדינה המתבקשת כמיטב יכולתה כדי להבטיח את האיתור או את הזיהוי.

## סעיף 14
## המצאת מסמכים

1. המדינה המתבקשת תעשה כמיטב יכולתה כדי להוציא לפועל בקשה לבצע המצאת מסמך, ובמידת האפשר, תבצע את ההמצאה האמורה באופן שקבעה המדינה המבקשת.

2. המדינה המבקשת תעביר כל בקשה להמצאת מסמך המבקש את נוכחותו של אדם בפני רשות כלשהי של המדינה המבקשת תוך זמן סביר, כמוסכם ע״י הרשויות המרכזיות, לפני ההופעה המיועדת.

3. במידת האפשר, תחזיר המדינה המתבקשת את אישור ההמצאה באופן הקבוע בבקשה. אם אי אפשר לבצע את ההמצאה, או אי אפשר לבצע אותה באופן שנקבע, תקבל המדינה המבקשת הודעה על כך ויימסרו לה הנימוקים.

## סעיף 15
## חיפוש ותפיסה

1. המדינה המתבקשת תבצע בקשה לחיפוש, לתפיסה ולמסירה של חפץ כלשהו למדינה המבקשת, אם הבקשה כוללת מידע שיש בו כדי להצדיק פעולה כאמור לפי דיני המדינה המתבקשת.

2. לפי בקשה, ובמידת האפשר, כל פקיד שיש לו משמורת על חפץ שנתפס יאשר, באופן שקבעה המדינה המבקשת, אשר יכול לכלול שימוש בטופס ג׳ המצורף לאמנה זו, את המשכיות המשמורת, את זהות החפץ, ואת שלמות מצבו. לא יהיה צורך באימות או באישור נוסף כדי שאישור לפי ס״ק זה יהיה קביל כראיה כדי להוכיח את אמיתות העניינים הכלולים בו.

3. הרשות המרכזית של המדינה המתבקשת רשאית לדרוש שהמדינה המבקשת תסכים לתנאים ולהתניות שייראו נחוצים כדי להגן על אינטרסים של צד שלישי בחפץ המיועד להעברה.

## סעיף 16
## החזרת מסמכים, רשומות וראיות

הרשות המרכזית של המדינה המתבקשת רשאית לדרוש מהרשות המרכזית של המדינה המבקשת
להחזיר כל מסמך, רשומה או ראיה שסופקו לה במהלך ביצוע בקשה לפי אמנה זו בהקדם
האפשרי.


## סעיף 17
## סיוע בחילוט ובהליכים אחרים

1. הצדדים יסייעו זה לזה במידה שמתיר הדין של כל אחד מהם בהליכים הקשורים לחילוט
רווחי עבירות והאמצעים לביצוען. הדבר עשוי לכלול פעולה לתפיסה או להקפאה זמנית
של הרווחים או האמצעים עד להמשך ההליכים.

2. אם נודע לרשות המרכזית של צד אחד כי רווחי עבירות או אמצעים לביצוען עשויים
להיות בני חילוט או להיות כפופים בצורה אחרת לתפיסה או להקפאה לפי דיני הצד
האחר, היא רשאית להודיע על כך לרשות המרכזית של הצד האחר. אם לאותו צד אחר
יש סמכות שיפוט בעניין זה, הוא רשאי להציג את המידע בפני רשויותיו כדי לקבוע אם
ראוי לנקוט בפעולה כלשהי. רשויות אלה יתנו את החלטתן בהתאם לדיני מדינתן,
וידווחו, באמצעות הרשות המרכזית שלהן, לצד האחר על הפעולה שננקטה.

3. הצד שיש לו משמורת על רווחי עבירות או האמצעים לביצוען יעשה בהם בהתאם לדיניו.
כל צד רשאי להעביר את הנכסים האמורים, כולם או חלקם, או את הפדיון ממכירתם,
לצד האחר, במידה שמתירים דיני הצד המעביר ובתנאים ככל שייראו לו לנכון.

4. הצדדים יסייעו זה לזה במידה שמתירים הדינים של כל אחד מהם בקשר לפיצוי קרבנות
עבירה, ולהטלת קנסות או לגבייתם בהליכים פליליים. אולם הצדדים לא יהיו חייבים
לאכוף צווי פיצוי או לגבות קנסות או לאכוף פסקי דין המטילים קנסות.


## סעיף 18
## הפנייה לחקירה או להעמדה לדין

אם לרשויות של צד אחד נודע על מעשים פליליים אשר לצד האחר יש סמכות שיפוט לחקור או
להעמיד לדין בשלם, רשאית הרשות המרכזית של הצד האחד להפנות את העניין לצד האחר, ולפי
בקשתו, להגיש כל ראיה הנוגעת בדבר לרשות המרכזית שלו.



12

**סעיף 19**
**עזרה אחרת**

עזרה והליכים אחרים הקבועים באמנה זו לא ימנעו מאף אחד מהצדדים להעניק עזרה לצד האחר
באמצעות הוראות של הסכמים בינלאומיים תקפים, או באמצעות הוראות הדין המקומי שלו.
הצדדים רשאים גם להעניק עזרה בהתאם לכל הסדר או הסכם דו-צדדי בר תוקף, בתנאי שעזרה
כאמור אינה אסורה על פי דיני המדינה המתבקשת.

**סעיף 20**
**התייעצות**

הרשויות המרכזיות של הצדדים יתייעצו, במועדים שיסכימו עליהם הדדית, לקדם את
השימוש היעיל ביותר של אמנה זו. הרשויות המרכזיות רשאיות גם להסכים על אמצעים מעשיים
ככל שיידרשו להקל על יישום אמנה זו.

**סעיף 21**
**אשרור, כניסה לתוקף, החלה וסיום**

1.    אמנה זו תהיה כפופה לאשרור, ומסמכי האשרור יוחלפו בהקדם האפשרי.

2.    אמנה זו תיכנס לתוקף עם חילופי מסמכי האשרור.

3.    אמנה זו תחול על כל בקשה שתוגש אחרי כניסתה לתוקף, גם אם הבקשה מתייחסת
      לעבירות שבוצעו לפני תאריך זה.

4.    כל צד רשאי להביא אמנה זו לידי סיום בהודעה בכתב לצד האחר. הסיום ייכנס לתוקף
      שישה חודשים אחרי תאריך ההודעה.

ולראיה לכך, חתמו החתומים מטה, שהוסמכו לכך כדין איש על ידי  ממשלתו, על אמנה זו.

נעשה ב_____ ביום ___ ב ____ תשנ"ח, שהוא יום 26
ב_____ 1998, בשני עותקים בשפות אנגלית ועברית, ולשני הנוסחים דין מקור שווה.

בשם ממשלת מדינת ישראל                 בשם ממשלת ארצות הברית של אמריקה

13

טופס א'
אישור אמיתות רשומות עסקיות

אני, _____, מעיד ביודעי כי צפוי לי עונש פלילי
(שם)

על הצהרה או עדות כוזבת, כי אני מועסק ע"י _____
(שם העסק שממנו מבוקשים המסמכים)

ושתוארי הרשמי הוא _____. כן אני מעיד כי
(תואר רשמי)

כל אחת מהרשומות המצורפות בזה היא המקור או עותק של הרשומה המקורית שבמשמורת של

_____.
(שם העסק שממנו מבוקשים המסמכים)


כן אני מצהיר כי :


א.   רשומות אלה נערכו במועד התרחשות העניינים המפורטים או בסמוך אליו ע"י אדם
      בעל ידע, או לפי מידע שהעביר אדם בעל ידע, על עניינים אלה ;

ב.   רשומות כאמור נשמרו במהלך פעילות עסקית רגילה ;

ג.   הפעילות העסקית ניהלה רשומות כאמור כנוהג קבוע ; וכן

ד.   אם רשומה כלשהי כאמור איננה המקור, היא העתק של המקור.


_____          _____
        (התאריך)                              (החתימה)

הושבע או אושר בפניי, _____,
                                       (שם)

פקיד שיפוטי, ביום _____ ב _____ 199__.

**טופס ג׳**
**עדות ביחס לפריטים שנתפסו**

אני, _____ , מעיד בידיעי כי צפוי לי עונש פלילי
(שם)

על הצהרה או עדות כוזבת, כי מעמדי בממשלת _____ הוא _____
(המדינה)

_____ . קיבלתי למשמורתי את הפריטים הרשומים להלן מאת
(תואר רשמי)

_____ ב _____ ב _____
(שם)                         (תאריך)              (מקום)

והעברתי אותם לידי _____ ב _____
(שם)                              (תאריך)

ב _____ . במועד שבו העברתי את הפריטים הם היו במצב זהה
(מקום)

לזה שהיו בו כשקיבלתי אותם (או אם שונה, כפי שמצוין להלן).

תיאור הפריטים :

שינויים במצבם בעודם במשמורתי :

_____
(חתימה)

_____
(תואר)

_____
(מקום)

_____                         _____
(חותם רשמי)                              (תאריך)

## EMBASSY OF THE
## UNITED STATES OF AMERICA

הוד מעלתך,

יש לי הכבוד להתייחס לאמנה בין ממשלת ארצות הברית של אמריקה לבין ממשלת מדינת ישראל
בדבר עזרה הדדית בעניינים פליליים, שנחתמה היום (להלן ״אמנה״) ולאשר בשם ממשלת ארצות
הברית של אמריקה את ההבנה הבאה :

1.    ניתן להחיל אמנה זו כדי לבקש עזרה בזיקה לעבירות פיסקליות. פירושו של המונח
״עבירות פיסקליות״, בשימוש כאן, יהיה עבירות מס פליליות.

2.    על אף כלליותה של פסקה 1, מובן לצדדים כי לא תתבקש עזרה בהתאם לאמנה זו בקשר
לעבירה פיסקלית אם המקרה הנדון, מטבעו, בא במסגרת ההוראה בדבר שיתוף פעולה
בין רשויות המס הכלולה באמנה בין ממשלת מדינת ישראל לבין ממשלת ארצות הברית
של אמריקה בזיקה למסים על הכנסה, שנחתמה ב-20 בנובמבר 1975 , עם פרוטוקולים
שנחתמו ב-30 במאי 1980 וב-26 בינואר 1993, אשר נכנסו לתוקף ב-30 בדצמבר 1994
(להלן ״אמנת המס״), אלא אם כן

א.    צורת העזרה המבוקשת איננה כלולה במסגבת אמנת מס; או

ב.    המקרה הנדון כולל גם עבירות חמורות נוספות שאינן עבירות פיסקליות.

בכל מקרה, בבקשה לעזרה לפי אמנה זו ביחס לעבירה פיסקלית, יש לפרט אם עבר
התבקשה או ניתנה עזרה לפי אמנת המס.

3.    מובן לצדדים שבקשות לעזרה בצורה של רשומות בנק, בקשר לעבירה פיסקלית,  יוגשו
רק בקשר לעבירות חמורות הקשורות בהונאה זדונית. עבירות חמורות עשויות לכלול,
למשל, מקרים הכרוכים בסכומי כסף גדולים או בהתנהגות פלילית שיטתית.

יש לי הכבוד להציע כי איגרת זו ואיגרת התשובה של הוד מעלתך המאשרת בשם ממשלתך את ההבנה
הנ״ל תיראינה כמהווה חלק בלתי נפרד מן האמנה.

קבל נא, הוד מעלתך, את רגשי הערכתי הנעלים ביותר.

שגריר ארצות הברית של אמריקה

ראש הממשלה
**Prime Minister**

הוד מעלתך,

יש לי הכבוד לאשר את קבלת איגרתך מתאריך זה שזו לשונה:

"הוד מעלתך,

יש לי הכבוד להתייחס לאמנה בין ממשלת ארצות הברית של אמריקה לבין ממשלת מדינת ישראל בדבר עזרה הדדית בעניינים פליליים, שנחתמה היום בירושלים (להלן "אמנה") ולאשר בשם ממשלת ארצות הברית של אמריקה את ההבנה הבאה:

1. ניתן להחיל אמנה זו כדי לבקש עזרה בזיקה לעבירות פיסקליות. פירושו של המונח "עבירות פיסקליות", בשימוש כאן, יהיה עבירות מס פליליות.

2. על אף כלליותה של פסקה 1, מובן לצדדים כי לא תבוקש עזרה בהתאם לאמנה זו בקשר לעבירה פיסקלית אם המקרה הנדון, מטבעו, בא במסגרת החורואה בדבר שיתוף פעולה בין רשויות המס הכלולה באמנה בין ממשלת מדינת ישראל לבין ממשלת ארצות הברית של אמריקה בזיקה למסים על הכנסה, שנחתמה ב-20 בנובמבר 1975, עם פרוטוקולים שנחתמו ב-30 במאי 1980 וב-26 בינואר 1993, אשר נכנסו לתוקף ב-30 בדצמבר 1994 (להלן "אמנת המס"), אלא אם כן

א. צורת העזרה המבוקשת איננה כלולה במסגרת אמנת המס; או

ב. המקרה הנדון כולל גם עבירות חמורות נוספות שאינן עבירות פיסקליות.

בכל מקרה, בבקשה לעזרה לפי אמנה זו ביחס לעבירה פיסקלית, יש לפרט אם בעבר התבקשה ו ניתנה עזרה לפי אמנת המס.

3. מובן לצדדים שבקשות לעזרה בצורה של רשומות בנק, בקשר לעבירה פיסקלית, יוגשו רק בקשר לעבירות חמורות הקשורות בהונאה זדונית. עבירות חמורות עשויות לכלול, למשל, מקרים הכרוכים בסכומי כסף גדולים או בהתנהגות פלילית שיטתית.

יש לי הכבוד להציע כי איגרת זו ואיגרת התשובה של הוד מעלתך המאשרת בשם ממשלתך את ההבנה הנ"ל תיראינה כמהוות חלק בלתי נפרד מן האמנה.

קבל נא, הוד מעלתך, את רגשי הערכתי הנעלים ביותר".

בשם ממשלת מדינת ישראל, יש לי הכבוד לאשר את ההבנה המפורטת באגרת הוד מעלתך, ולאשר כי איגרת הוד מעלתך ואיגרת זו מהוות חלק בלתי נפרד מן האמנה.

קבל נא, הוד מעלתך, את רגשי הערכתי הנעלים ביותר.

ראש הממשלה ושר הח

Jerusalem, Israel