# EXHIBIT 59

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 10-201.41

# MUTUAL LEGAL ASSISTANCE

**Agreement Amending the Treaty of June 12, 1981 Between the UNITED STATES OF AMERICA and the NETHERLANDS**

Signed at The Hague September 29, 2004

*with*

Annex

*and*

Exchange of Notes



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
 evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# NETHERLANDS

## Mutual Legal Assistance

*Agreement amending the treaty of June 12, 1981.*
*Signed at The Hague September 29, 2004;*
*Transmitted by the President of the United States of America*
*    to the Senate September 28, 2006 (Treaty Doc. 109-13,*
*    109th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
*    July 29, 2008 (Senate Executive Report No. 110-13,*
*    110th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
*    September 23, 2008;*
*Ratified by the President December 11, 2008;*
*Exchange of Instruments of Ratification at Washington*
*    September 29, 2009;*
*Entered into force February 1, 2010.*
*With annex and exchange of notes.*

AGREEMENT COMPRISING THE INSTRUMENT
AS CONTEMPLATED BY ARTICLE 3(2) OF
THE AGREEMENT ON MUTUAL LEGAL ASSISTANCE
BETWEEN THE UNITED STATES OF AMERICA AND
THE EUROPEAN UNION SIGNED AT WASHINGTON ON 25 JUNE 2003,
AS TO THE APPLICATION OF THE TREATY BETWEEN
THE UNITED STATES OF AMERICA
AND THE KINGDOM OF THE NETHERLANDS
ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS
SIGNED AT THE HAGUE ON 12 JUNE 1981

The Government of United States of America

and

the Government of the Kingdom of the Netherlands,

have agreed as follows:

### Article 1

As contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed at Washington on 25 June 2003 (hereafter "the U.S.-EU Mutual Legal Assistance Agreement"), the Governments of the United States of America and the Kingdom of the Netherlands acknowledge that, in accordance with the provisions of this Instrument, the bilateral Treaty between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters signed at The Hague on 12 June 1981 (hereafter "the 1981 Mutual Assistance Treaty") is applied in relation to the U.S.-EU Mutual Legal Assistance Agreement under the following terms:

1

a) Pursuant to Article 4 of the U.S.-EU Mutual Legal Assistance Agreement, Article 9 *bis* of the Annex to this Agreement shall be applied to supplement the provisions of the 1981 Mutual Assistance Treaty;

b) Pursuant to Article 5 of the U.S.-EU Mutual Legal Assistance Agreement, Article 9 *ter* of the Annex to this Agreement shall be applied to supplement the provisions of the 1981 Mutual Assistance Treaty;

c) Pursuant to Article 6 of the U.S.-EU Mutual Legal Assistance Agreement, Articles 9 *quater* and 17(1) of the Annex to this Agreement shall be applied to supplement the provisions of the 1981 Mutual Assistance Treaty;

d) Pursuant to Article 7 of the U.S.-EU Mutual Legal Assistance Agreement, Article 14(2) of the Annex to this Agreement shall be applied to supplement the provisions of the 1981 Mutual Assistance Treaty;

e) Pursuant to Article 8 of the U.S.-EU Mutual Legal Assistance Agreement, Article 1(1 *bis*) of the Annex to this Agreement shall be applied to supplement the provisions of the 1981 Mutual Assistance Treaty;

f) Pursuant to Article 9 of the U.S.-EU Mutual Legal Assistance Agreement, Article 11 *bis* of the Annex to this Agreement shall be applied in place of Article 11(2) of the 1981 Mutual Assistance Treaty.

g) Pursuant to Article 10 of the U.S.-EU Mutual Legal Assistance Agreement, Article 11 (2) of the Annex to this Agreement shall be applied to supplement the provisions of the 1981 Mutual Assistance Treaty.

*Article 2*

The Annex to this Agreement reflects the text of the provisions of the 1981 Mutual Assistance Treaty and the U.S.-EU Mutual Legal Assistance Agreement as a result of paragraph 1 of this Agreement.  This integrated text shall apply upon entry into force of this Agreement.

*Article 3*

This Agreement shall apply to the United States of America and the Kingdom of the Netherlands in Europe. The application of the 1981 Mutual Assistance Treaty to the Netherlands Antilles and Aruba shall remain unaffected by the U.S.-EU Mutual Legal Assistance Agreement. Accordingly, this Agreement shall not apply to the Netherlands Antilles or Aruba unless the United States of America and the European Union, by exchange of diplomatic notes in accordance with Article 16(1)(b) of the U.S.-EU Mutual Legal Assistance Agreement, agree to extend its application to them. Such application may be terminated in accordance with Article 16(2) of the U.S.-EU Mutual Legal Assistance Agreement.

*Article 4*

In accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, this Agreement shall apply to offenses committed before as well as after it enters into force.

*Article 5*

This Agreement shall not apply to requests made prior to its entry into force; except that, in accordance with Article 12 of the U.S.-EU Mutual Legal Assistance Agreement, Articles 9 *quater*, 14(2) and 17(1) of the Annex shall be applicable to requests made prior to such entry into force.

*Article 6*

(a)  This Agreement shall be subject to the completion by the United States of America and the Kingdom of the Netherlands of their respective applicable internal procedures for entry into force. The Governments of the United States of America and the Kingdom of the Netherlands shall thereupon exchange instruments indicating that such measures have been completed. This Agreement shall enter into force on the date of entry into force of the U.S-EU Mutual Legal Assistance Agreement.

3

(b)    In the event of termination of the U.S.-EU Mutual Legal Assistance Agreement, this Agreement shall be terminated at the same time, and application of the original text of the 1981 Mutual Assistance Treaty shall resume six months after the notice of termination.


IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.


DONE at The Hague    , in duplicate, 29 September 2004,
in the English and Dutch languages, both texts being equally authentic.


For the Government of the                    For the Government of the
United States of America                     Kingdom of the Netherlands


4

ANNEX

ARTICLE 1: Obligation to Render Assistance

1.    The Contracting Parties undertake to afford each other, upon request and in accordance with the provisions of this Treaty, mutual assistance in criminal investigations and proceedings.

*1 bis.*

(a)    Mutual assistance shall also be afforded to a national administrative authority, investigating conduct with a view to a criminal prosecution of the conduct, or referral of the conduct to criminal investigation or prosecution authorities, pursuant to its specific administrative or regulatory authority to undertake such investigation. Mutual assistance may also be afforded to other administrative authorities under such circumstances. Assistance shall not be available for matters in which the administrative authority anticipates that no prosecution or referral, as applicable, will take place.

(b)    Requests for assistance under this paragraph shall be transmitted between the Competent Authorities designated pursuant to Article 14 of this Treaty, or between such other authorities as may be agreed by the Competent Authorities.

2.    Assistance shall include, but not be limited to:

a.    locating persons;

b.    serving documents;

c.    providing records;

d.    taking the testimony or statements of persons;

e.    producing documents;

f.    executing requests for search and seizure; and

g.    transferring persons in custody for testimonial purposes.

ARTICLE 2: Locating Persons

The Requested State shall make thorough efforts to ascertain the location of persons specified in the request and believed to be within the Requested State.

5

ARTICLE 3:  Serving Documents

1.   The Requested State shall cause service of any legal document transmitted for this purpose by the Requesting State.

2.   Any request for the service of a document requiring the appearance of a person before an authority in the Requesting State shall be transmitted a reasonable time before the scheduled appearance.

3.   The Requested State shall return as proof of service a dated receipt signed by the person served or a declaration signed by the officer making service, specifying the form and date of service.

ARTICLE 4:  Providing Records of Government Offices or Agencies

1.   The Requested State shall provide a copy of a publicly available record of a government office or agency, duly authenticated by an appropriate official.

2.   The Requested State may provide any record or information in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as it would be available to its own law enforcement or judicial authorities. The Requested State in its discretion may deny the request entirely or in part.

ARTICLE 5: Taking Testimony and Producing Documents in the Requested State

1.   A person from whom evidence is sought shall, if necessary, be compelled by subpoena to appear and testify or produce documents, records and articles to the same extent as in investigations or proceedings in the Requested State. Testimonial privileges under the laws of the Requesting State shall not apply in the execution of requests under this Article.

2.   On request, the Requested State shall state the date and place of the taking of testimony.

6

3.    At the execution of a request, the Requested State shall permit the presence of an accused, counsel for the accused, and any other interested person specified in the request.

4.    The executing authority shall provide any person permitted to be present the opportunity to pose questions for the person whose testimony is sought.

ARTICLE 6:  Executing Requests for Search and Seizure

1.    The Requested State shall execute requests for search and seizure in accordance with its laws and practices if the subject offense is punishable under the laws of both Contracting Parties by deprivation of liberty for a period exceeding one year, or, if less, is specified in the Schedule of this Treaty.  The Competent Authorities referred to in Article 14 may agree in writing upon any modifications of the Schedule.  Such modifications shall take effect on a date to be determined in an exchange of diplomatic notes.

2.    An offense shall be deemed punishable under the laws of the Requested State if the acts or omissions alleged, occurring in similar circumstances in the Requested State, would constitute a criminal offense under the laws of that State. For purposes of this paragraph, purely jurisdictional elements of United States Federal offenses, such as the use of the mails or interstate commerce, shall not be considered as essential elements of these offenses.

3.    A request to the Kingdom of the Netherlands for the production of documents from private persons shall comply with this Article.

4.    A request to the United States for a search and seizure shall be accompanied by a statement made under oath before, or by a judge in the Kingdom of the Netherlands, which shall establish good cause to believe that an offense has taken place or is about to take place and that evidence of the offense is to be found on the persons or the premises to be searched, and shall provide a precise description of the person or premises to be searched. Such a statement shall be considered in the United States in lieu of an affidavit sworn before a United States judicial officer.

7

5.    Documents produced under this Article shall be duly authenticated as specified in the request, and a record shall be made of every transfer of other articles or evidence seized. Such records of transfer shall be admitted as evidence of the truth of the facts they assert.

ARTICLE 7:  Transferring Persons in Custody to the Requesting State

1.    A person in custody needed as a witness or for purposes of confrontation before an authority in the Requesting State shall be transported to the Requesting State if:

a.    the person in custody consents;

b.    no substantial extension of that person's custody is anticipated; and

c.    the Requested State has no reason to deny the transfer.

2.    The Requested State may postpone execution of the request for as long as the presence of the person is necessary for an investigation or proceeding in the Requested State.

3.    The Requesting State shall have authority and be obligated to keep the person in custody unless the Requested State has ordered release.

4.    The Requesting State shall return a person not released under paragraph 3 to the custody of the Requested State as soon as circumstances permit or as otherwise agreed. The Requesting State shall not decline to return a person transferred because such person is a national of that State.

ARTICLE 8:  Transferring Persons in Custody to the Requested State

1.    When the Requesting State requires the transfer to the other State of a person in custody for purposes of confrontation, the request shall so state.

2.    The Requested State shall hold the person in custody, unless the Requesting State has ordered release.

8

3.    The Requested State shall return a person not released under paragraph 2 to the custody of the Requesting State as soon as circumstances permit or as otherwise agreed. The Requested State shall not decline to return the person transferred because such person is a national of that State.

ARTICLE 9:  Safe Conduct

1.    A person appearing before an authority in either State pursuant to this Treaty shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, with respect to any act or conviction which preceded departure, except as provided in Articles 7 and 8 and in the following paragraph.

2.    A person, of whatever nationality, summoned before the judicial authorities of the Requesting State as an accused, shall not be prosecuted or subjected to any restriction of personal liberty for acts or convictions prior to departure from the Requested State and not specified in the summons.

3.    Safe conduct provided in this Article shall cease if, ten days after the person appearing has been notified that his or her presence is no longer required, that person has not left the Requesting State or, having left, has returned.

4.    A person appearing as a witness in the Requesting State may refuse to testify when that person, because of occupation, has an obligation or right to do so under the laws of the Requested State and the testimony required relates to protected information. The Requesting State shall respect the obligation or right when the Competent Authority of the Requested State verifies that such obligation or right exists.

Article 9 bis: Identification of Bank Information

1 (a) Upon request of the Requesting State,  the Requested State shall, in accordance with the terms of this Article, promptly ascertain if the banks located in its territory possess information on whether an identified natural or legal person suspected of or charged with a criminal offense is the holder of a bank account or accounts. The Requested State shall promptly communicate the results of its enquiries to the Requesting State.

9

(b) The actions described in subparagraph (a) may also be taken for the purpose of identifying:

    (i)    information regarding natural or legal persons convicted of or otherwise involved in a criminal offense;

    (ii)   information in the possession of non-bank financial institutions, or

    (iii)  financial transactions unrelated to accounts.

2. In addition to the requirements of Article 13(1) of this Treaty, a request for information described in paragraph 1 of this Article shall include:

(a) the identity of the natural or legal person relevant to locating such accounts or transactions;

(b) sufficient information to enable the authority of the Requested State deciding the request to:

    (i)    reasonably suspect that the natural or legal person concerned has engaged in a criminal offense and that banks or non-bank financial institutions in the territory of the Requested State may have the information requested; and

    (ii)   conclude that the information sought relates to the criminal investigation or proceeding; and

(c) to the extent possible, information concerning which bank or non-bank financial institution may be involved, and other information the availability of which may aid in reducing the breadth of the enquiry.

3. Unless subsequently modified by exchange of diplomatic notes between the European Union and the United States of America, requests for assistance under this Article shall be transmitted between:

(a) For the Kingdom of the Netherlands, its Competent Authority mentioned in Article 14, and

(b) For the United States of America, the attaché responsible for the Kingdom of the Netherlands of the:

    (i)    U.S. Department of Justice, Drug Enforcement Administration, with respect to matters within its jurisdiction;

    (ii)   U.S. Department of Homeland Security, Bureau of Immigration and Customs Enforcement, with respect to matters within its jurisdiction;

    (iii)  U.S. Department of Justice, Federal Bureau of Investigation, with respect to all other matters.

10

4.      The Kingdom of the Netherlands shall provide assistance under this Article with respect to activity punishable under the laws of both the Requested and Requesting States, provided the offense is a "misdrijf" (crime) under Dutch law, which includes but is not limited to money laundering and terrorist activity.  The United States of America shall provide assistance under this Article with respect to money laundering and terrorist activity punishable under the laws of both the Requesting and Requested States, and with respect to such other criminal activity as the United States of America may notify the Kingdom of the Netherlands.

5.      The Requested State shall respond to a request for production of the records concerning the accounts or transactions identified pursuant to this Article in accordance with the other provisions of this Treaty.

Article 9 ter:  Joint Investigative Teams

1.      Joint investigative teams may be established and operated in the respective territories of the United States of America and the Kingdom of the Netherlands, for the purpose of facilitating criminal investigations or prosecutions involving the United States of America and one or more Member States of the European Union where deemed appropriate by the United States of America and the Kingdom of the Netherlands.

2.      The procedures under which the team is to operate, such as its composition, duration, location, organization, functions, purpose, and terms of participation of team members of a State in investigative activities taking place in another State's territory shall be as agreed between the authorities responsible for the investigation or prosecution of criminal offences, as determined by the respective States concerned.

3.      The authorities determined by the respective States concerned shall communicate directly for the purposes of the establishment and operation of such team except that where the exceptional complexity, broad scope, or other circumstances involved are deemed to require more central coordination as to some or all aspects, the States may agree upon other appropriate channels of communications to that end.

11

4.    Where the joint investigative team needs investigative measures to be taken in one of the States setting up the team, a member of the team of that State may request its authorities to take those measures without the other State(s) having to submit a request for mutual legal assistance. The required legal standard for obtaining the measure in that State shall be the standard applicable to its domestic investigative activities.

Article 9 quater: Video Conferencing

1.    The use of video transmission technology shall be available between the United States of America and the Kingdom of the Netherlands for taking testimony in a proceeding for which mutual assistance is available of a witness or expert located in the Requested State.   To the extent not specifically set forth in this Article, the modalities governing such procedure shall be as otherwise provided under this Treaty.

2.    Unless otherwise agreed by the Requesting and Requested States, the Requesting State shall bear the costs associated with establishing and servicing a video transmission.   Other costs arising in the course of providing assistance (including costs associated with travel of participants in the Requested State) shall be borne in accordance with the provisions of Article 17.

3.    The Requesting and Requested States may consult in order to facilitate resolution of legal, technical or logistical issues that may arise in the execution of the request.

4.    Without prejudice to any jurisdiction under the law of the Requesting State, making an intentionally false statement or other misconduct of the witness or expert during the course of the video conference shall be punishable in the Requested State in the same manner as if it had been committed in the course of its domestic proceedings.

5.    This Article is without prejudice to the use of other means for obtaining of testimony in the Requested State available under applicable treaty or law.

12

6.   The Requested State may permit the use of video conferencing technology for purposes other than those described in paragraph 1 of this Article, including for purposes of identification of persons or objects, or taking of investigative statements.

ARTICLE 10:  Limitations on Compliance

1.   The Requested State may deny a request to the extent that:

a.   execution of the request would prejudice the security or other essential public interests of the Requested State;

b.   the request relates to a matter considered a political offense by the Requested State;

c.   the request relates to the prosecution of a person who is immune from prosecution for the offense for which assistance is requested, by reason of the laws of the Requested State relating to prior jeopardy; or

d.   the request does not comply with the provisions of this Treaty.

2.   The Requested State may postpone execution of a request or grant it subject to conditions, if execution would interfere with an ongoing investigation or legal proceeding in the Requested State.

3.   The Requested State shall immediately inform the Requesting State of the reason for denying or postponing the execution of a request.

ARTICLE 11:  Protecting Confidentiality

1.   When necessary, the Requested State may require that evidence and information provided under this Treaty and information derived therefrom be kept confidential in accordance with stated conditions, except to the extent that disclosure is necessary as evidence in a public proceeding.

2.   The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Requesting State. If the request cannot be executed without breaching the requested confidentiality, the Competent Authority of the Requested State shall so inform the Requesting State, which shall then determine whether the request should nevertheless be executed.

13

Article 11 bis:  Limitations on use to protect personal and other data

1.     The Requesting State may use any evidence or information obtained from the Requested State:

(a)    for the purpose of its criminal investigations and proceedings;

(b)    for preventing an immediate and serious threat to its public security;

(c)    in its non-criminal judicial or administrative proceedings directly related to investigations or proceedings:

    (i)     set forth in subparagraph (a); or

    (ii)    for which mutual legal assistance was rendered under Article 1(1 *bis*) of this Treaty;

(d)    for any other purpose, if the information or evidence has been made public within the framework of proceedings for which they were transmitted, or in any of the situations described in subparagraphs (a), (b) and (c); and

(e)    for any other purpose, only with the prior consent of the Requested State.

2.(a) This Article shall not prejudice the ability of the Requested State  to impose additional conditions in a particular case where the particular request for assistance could not be complied with in the absence of such conditions. Where additional conditions have been imposed in accordance with this subparagraph, the Requested State may require the Requesting State to give information on the use made of the evidence or information.

  (b) Generic restrictions with respect to the legal standards of the Requesting State for processing personal data may not be imposed by the Requested State as a condition under subparagraph (a) to providing evidence or information.

3.     Where, following disclosure to the Requesting State, the Requested State becomes aware of circumstances that may cause it to seek an additional condition in a particular case, the Requested State may consult with the Requesting State to determine the extent to which the evidence and information can be protected.

14

ARTICLE 12:  Executing Requests

1.  The Competent Authority of the Requested State shall promptly comply with the request or, when appropriate, transmit it for execution to the authority having jurisdiction.

2.  Requests shall be executed according to the domestic law and procedures of the Requested State except to the extent that this Treaty provides otherwise. Procedures specified in the request, even if unfamiliar to the Requested State, shall be followed except to the extent specifically prohibited by the laws of the Requested State.

ARTICLE 13:  Contents of Requests

1.  A request for assistance shall indicate:
a.  the name of the authority conducting the investigation or proceeding to which the request relates;
b.  the subject matter and nature of the investigation or proceeding;
c.  a description of the evidence or information sought or the acts to be performed; and
d.  the purpose for which the evidence, information or action is sought.

2.  To the extent necessary and possible, a request shall include:
a.  available information on the identity and whereabouts of a person to be located;
b.  the identity and location of a person to be served, that person's relationship to the proceeding and the manner in which service is to be made;
c.  the identity and location of persons from whom evidence is sought;
d.  a description of the manner in which any testimony is to be taken and recorded;
e.  a list of questions to be answered;
f.  a precise description of the place to be searched and the objects to be seized;
g.  a description of any particular procedure to be followed in executing the request; and

15

h.    information as to the allowances and expenses to which a person appearing in the Requesting State will be entitled.

ARTICLE 14:  Competent Authorities

1.    Except as otherwise provided in this Treaty, requests for assistance shall be made and executed through a Competent Authority for each Contracting Party. The Competent Authorities of the two States shall communicate directly with each other for the purpose of carrying out the provisions of this Treaty. For the United States of America, the Competent Authority shall be the Attorney General or that person's designee. For the Kingdom of the Netherlands, the Competent Authority shall be the Minister of Justice in the Netherlands or, should the territorial application of this Treaty be extended in accordance with Article 16 (1)(b) of the U.S.-EU Mutual Legal Assistance Agreement, as specified in the exchange of diplomatic notes pursuant thereto.

2.    Requests for mutual assistance, and communications related thereto, may be made by expedited means of communications, including fax or e-mail, with formal confirmation to follow where required by the Requested State. The Requested State may respond to the request by any such expedited means of communication.

ARTICLE 15:  Return of Completed Requests

1.    Upon completion of a request the Requested State shall, unless otherwise agreed, return the original request together with all information and evidence obtained, indicating place and time of execution, to the Requesting State.

2.    To the extent possible, all documents and records to be furnished pursuant to a request under this Treaty shall be complete and in unedited form. Upon application of the Requesting State, the Requested State shall make every effort to furnish original documents and records.

16

ARTICLE 16: Return of Documents, Records or Articles of Evidence

The Requesting State shall return any documents, records or articles of evidence furnished in execution of requests as soon as possible unless the Requested State waives their return.

ARTICLE 17: Costs and Translations

1.  The Requested State shall render assistance without cost to the Requesting State except for fees of private experts specified in the request and the costs associated with establishing and servicing a video transmission, to the extent set forth in Article 9 *quater*.

2.  The Requesting State shall bear all expenses related to the transfer under Articles 7 and 8 of a person in custody.

3.  Requests shall be provided in both Dutch and English. Translation of documents provided pursuant to requests is incumbent on the Requesting State.

ARTICLE 18: Other Treaties and Domestic Laws

1.  Assistance and procedures provided by this Treaty shall be without prejudice to, and shall not prevent or restrict, any assistance or procedure available under other international conventions or arrangements or under the domestic laws of the Contracting Parties.

2.  Except where this Treaty specifically sets forth rules for the admissibility of evidence, the provisions of this Treaty shall not give rise to a right on the part of any person to take any action in a criminal proceeding to suppress or exclude any evidence. This Treaty does not expand or limit rights to judicial review otherwise available under domestic law.

3.  No provision governing extradition of persons, whether of domestic law or treaty, shall apply to the transfer of persons under Articles 7 and 8 or to appearance under paragraph 2 of Article 9.

17

ARTICLE 19:  Denunciation

Either Contracting Party may terminate this Treaty at any time by giving notice to the other Party and the termination shall be effective six months after the date of receipt of such notice.

18

## SCHEDULE

Requests for search and seizure may be executed under paragraph 1 of Article 6 of the Treaty, if they relate to offenses covered by:

I

A.   For the Kingdom of the Netherlands (Europe): The Criminal Code (Wetboek van Strafrecht), Articles 194, 272, 328 bis, 328 ter and 336.

B.   Should the territorial application of this Treaty be extended in accordance with Article 16 (1)(b) of the U.S.-EU Mutual Legal Assistance Agreement, as specified in the exchange of diplomatic notes pursuant thereto.

II

For the United States of America: Title 26, United States Code (The Internal Revenue Code), § 7203.

Texts of the relevant legal provisions:

Netherlands Criminal Code

ARTICLE 194

1.   Any person who has been declared bankrupt or is married "in community of property" to a bankrupt or who is a manager or director of a corporation, and who has been legally summoned to give information in such capacity and either fails to appear without good reason or appears but refuses to give the required information or deliberately furnishes false information shall be liable to a term of imprisonment not exceeding one year or a fine of the third category.

2.   Anyone to whom the debt rescheduling arrangement for natural persons applies, and his spouse, if he married in community of property, shall be liable to the same penalty if found guilty of the offence referred to in paragraph 1.

19

ARTICLE 272

(1)  Any person who deliberately discloses information which he knows or should reasonably be assumed to know he is bound not to disclose on account of his present or former profession or office or of a statutory regulation, shall be liable to a term of imprisonment not exceeding one year or a fine of the fourth category.

(2)  If such an offence is committed against a particular person proceedings may be brought only if the person concerned registers a complaint.

ARTICLE 328 BIS

Any person who commits a fraudulent act in order to mislead the public or a particular person, with the intention of building up, protecting or increasing his own sales or those of another person, shall, if this could result in any disadvantage to his competitors or those of such other person, be guilty of engaging in unfair competition and be liable to a term of imprisonment not exceeding one year or a fine of the fifth category.

ARTICLE 328 TER

(1)  Any person other than a public servant, who is in paid employment or acts as an agent and who accepts a gift or promise in consideration of his performing or failing to perform some act in the course of his duties as employee or agent and dishonestly conceals the fact from his employer or principal shall be liable to a term of imprisonment not exceeding one year or a fine of the fifth category.

(2)  The same penalty shall be applicable to any person who offers a gift or makes a promise to another person, who is not a public servant but is in paid employment or acts as an agent, in consideration of the latter performing or failing to perform some act in the course of his duties as employee or agent, if the gift or promise is of such a nature or is offered or made under such circumstances that it is reasonable to assume that he will dishonestly conceal the gift or promise from his employer or principal.

20

ARTICLE 336

The "merchant", manager, managing partner or member of the board of a company, association or foundation who deliberately discloses untrue accounts, or a balance sheet, profit and loss account, statement of assets and liabilities or information explaining any of the above or who deliberately permits disclosure shall be liable to a term of imprisonment not exceeding one year of the fifth category.

The Internal Revenue Code (Title 26, United States Code)

§ 7203

Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution.

21

**VERDRAG BEVATTENDE HET INSTRUMENT**

**BEDOELD IN ARTIKEL 3, TWEEDE LID, VAN DE OVEREENKOMST**

**BETREFFENDE WEDERZIJDSE RECHTSHULP IN STRAFZAKEN**

**TUSSEN DE VERENIGDE STATEN VAN AMERIKA EN DE EUROPESE UNIE,**

**ONDERTEKEND TE WASHINGTON OP 25 JUNI 2003,**

**INZAKE DE TOEPASSING VAN HET VERDRAG TUSSEN**

**DE VERENIGDE STATEN VAN AMERIKA EN**

**HET KONINKRIJK DER NEDERLANDEN AANGAANDE**

**WEDERZIJDSE RECHTSHULP IN STRAFZAKEN,**

**ONDERTEKEND TE 'S-GRAVENHAGE OP 12 JUNI 1981**

De Regering van de Verenigde Staten van Amerika

en

de Regering van het Koninkrijk der Nederlanden,

zijn het volgende overeengekomen:

*Artikel 1*

Zoals voorzien in artikel 3, tweede lid, van de Overeenkomst betreffende wederzijdse rechtshulp in strafzaken tussen de Europese Unie en de Verenigde Staten van Amerika, ondertekend te Washington op 25 juni 2003 (hierna te noemen "de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp), bevestigen de Regeringen van het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika dat het bilaterale verdrag tussen het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika aangaande wederzijdse rechtshulp in strafzaken, ondertekend te 's-Gravenhage op 12 juni 1981 (hierna te noemen het Rechtshulpverdrag van 1981) met betrekking tot de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp in overeenstemming met het bepaalde in dit Instrument wordt toegepast onder de volgende voorwaarden:

1

a.  Ingevolge artikel 4 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, wordt artikel 9bis, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling op de bepalingen van het Rechtshulpverdrag van 1981;

b.  Ingevolge artikel 5 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, wordt artikel 9ter, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling op de bepalingen van het Rechtshulpverdrag van 1981;

c.  Ingevolge artikel 6 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, worden de artikelen 9quater en 17, eerste lid, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling op de bepalingen van het Rechtshulpverdrag van 1981;

d.  Ingevolge artikel 7 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, wordt artikel 14, tweede lid, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling op de bepalingen van het Rechtshulpverdrag van 1981;

e.  Ingevolge artikel 8 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, wordt artikel 1, eerste lid, onder bis, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling op de bepalingen van het Rechtshulpverdrag van 1981;

f.  Ingevolge artikel 9 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, wordt artikel 11bis, opgenomen in de bijlage bij dit Verdrag, toegepast in plaats van artikel 11, tweede lid, van het Rechtshulpverdrag van 1981;

g.  Ingevolge artikel 10 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, wordt artikel 11, tweede lid, opgenomen in de bijlage bij dit Verdrag, toegepast ter aanvulling op de bepalingen van het Rechtshulpverdrag van 1981.

2

*Artikel 2*

Ingevolge artikel 1 van dit Verdrag bevat de bijlage bij dit verdrag de tekst van de bepalingen van het Rechtshulpverdrag van 1981 en van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp. Vanaf de inwerkingtreding van dit Verdrag is deze integrale tekst van toepassing.

*Artikel 3*

Dit Verdrag is van toepassing in de Verenigde Staten van Amerika en op het grondgebied van het Koninkrijk der Nederlanden in Europa. De VS-EU-Overeenkomst betreffende wederzijdse rechtshulp laat de toepassing van het Rechtshulpverdrag van 1981 op de Nederlandse Antillen en Aruba onverlet. Dit Verdrag is bijgevolg niet van toepassing op de Nederlandse Antillen en Aruba, tenzij de Europese Unie en de Verenigde Staten van Amerika door middel van de uitwisseling van diplomatieke nota's in overeenstemming met artikel 16, eerste lid, onderdeel b, van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp overeenkomen dat de territoriale toepassing wordt uitgebreid tot de Nederlandse Antillen en Aruba. Deze toepassing kan worden beëindigd in overeenstemming met artikel 16, tweede lid, van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp.

*Artikel 4*

Ingevolge artikel 12 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp is dit Verdrag van toepassing op strafbare feiten die voorafgaand aan of na de inwerkingtreding ervan zijn gepleegd.

*Artikel 5*

Dit Verdrag is niet van toepassing op verzoeken ingediend voorafgaand aan de inwerkingtreding ervan; in overeenstemming met artikel 12 van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp zijn de artikelen 9 quater, 14, tweede lid, en 17, eerste lid, opgenomen in de bijlage van dit Verdrag, evenwel van toepassing op verzoeken ingediend voorafgaand aan de inwerkingtreding van dit Verdrag.

3

*Artikel 6*

a.   Met het oog op de inwerkingtreding van dit Verdrag dienen het Koninkrijk
der Nederlanden en de Verenigde Staten van Amerika hun onderscheiden
interne procedures te hebben voltooid.  De regeringen van het Koninkrijk
der Nederlanden en de Verenigde Staten van Amerika zullen vervolgens
de akten uitwisselen waaruit blijkt dat deze procedures zijn voltooid. Dit
Verdrag treedt in werking op de datum waarop de VS-EU-Overeenkomst
betreffende wederzijdse rechtshulp in werking treedt.

b.   In geval van beëindiging van de VS-EU-Overeenkomst betreffende
wederzijdse rechtshulp wordt dit Verdrag op hetzelfde tijdstip beëindigd en
zal de oorspronkelijke tekst van het Rechtshulpverdrag van 1981 zes
maanden na de kennisgeving van beëindiging weer worden toegepast.


TEN BLIJKE WAARVAN de ondergetekenden, daartoe naar behoren
gemachtigd door hun respectieve regeringen, dit Verdrag hebben ondertekend.

GEDAAN te Den Haag, in tweevoud, op 2g September 2004,
in de Engelse en de Nederlandse taal, zijnde beide teksten gelijkelijk authentiek.


Voor de Regering van de                     Voor de Regering van het
Verenigde Staten van Amerika                Koninkrijk der Nederlanden


4

BIJLAGE

Artikel 1  Verplichting tot hulpverlening

1. De Verdragsluitende Partijen verbinden zich om, op verzoek en in overeenstemming met de bepalingen van dit Verdrag, elkaar wederzijds hulp te verlenen bij strafrechtelijk onderzoek en strafrechtelijke procedures.

1bis

a. Rechtshulp wordt ook verleend aan een nationale administratieve autoriteit die, krachtens een specifieke administratieve of regelgevende bevoegdheid om dergelijke onderzoeken te doen, gedragingen onderzoekt met het oog op strafrechtelijke vervolging van de gedraging of verwijzing van dergelijke gedragingen naar autoriteiten die bevoegd zijn deze strafrechtelijk te onderzoeken of te vervolgen. Rechtshulp kan onder vergelijkbare omstandigheden ook worden verleend aan andere administratieve autoriteiten. Rechtshulp kan niet worden gevraagd in aangelegenheden waarin de administratieve autoriteit verwacht dat geen vervolging of, voor zover van toepassing, verwijzing zal plaatsvinden.

b. Verzoeken om rechtshulp uit hoofde van dit artikel worden verzonden tussen de bevoegde autoriteiten, genoemd in artikel 14 van dit Verdrag, of tussen andere autoriteiten die door de bevoegde autoriteiten zijn overeengekomen.

2. Deze rechtshulp omvat onder meer:

a. opsporing van personen;

b. betekening van stukken;

c. het verstrekken van documenten;

d. het horen van personen als getuige of anderszins;

e. overlegging van stukken;

f. uitvoering van verzoeken tot huiszoeking en inbeslagneming; en

g. overdracht van personen die zich in detentie bevinden met het oog op het afleggen van een getuigenverklaring.

5

Artikel 2  Opsporing van personen

De aangezochte Staat doet al het mogelijke om de verblijfplaats vast te stellen van personen, die in het verzoek zijn opgegeven en van wie wordt vermoed dat zij zich in de aangezochte Staat bevinden.

Artikel 3  Betekening van stukken

1.  De aangezochte Staat zorgt voor de betekening van alle gerechtelijke stukken die hem met dat doel door de verzoekende Staat worden toegezonden.

2.  Ieder verzoek tot betekening van een stuk waarin de verschijning van een persoon wordt gelast voor een autoriteit in de verzoekende Staat dient een redelijke tijd vóór het vastgestelde tijdstip van de verschijning te worden toegezonden.

3.  De aangezochte Staat zendt als bewijs van de betekening een gedagtekende, door degene aan wie de betekening is verricht, ondertekende ontvangstbevestiging terug, dan wel een door de ambtenaar die de betekening heeft verricht, ondertekende verklaring waarin de vorm en de datum van de betekening nauwkeurig worden vermeld.

Artikel 4  Het verstrekken van documenten van overheidsinstanties of -instellingen

1.  De aangezochte Staat verstrekt afschriften van voor eenieder toegankelijke gegevens uit de administratie van overheidsinstanties of -instellingen, die naar behoren dienen te worden gewaarmerkt door een bevoegde functionaris.

2.  De aangezochte Staat kan in de administratie voorkomende of andere gegevens, in het bezit van overheidsinstanties of -instellingen, die niet voor eenieder toegankelijk zijn, verstrekken in dezelfde mate en onder dezelfde voorwaarden als deze ter beschikking zouden kunnen worden gesteld van zijn eigen opsporings- of gerechtelijke autoriteiten. De aangezochte Staat mag het verzoek naar eigen inzicht geheel of gedeeltelijk afwijzen.

6

<u>Artikel 5   Het horen van getuigen en de overlegging van stukken in de</u>
<u>aangezochte Staat</u>

1.  Een persoon van wie bewijsmateriaal wordt verlangd kan, indien nodig, worden gedagvaard teneinde te getuigen of worden gedwongen stukken, documenten en zaken over te leggen in dezelfde mate als in geval van een vooronderzoek of onderzoek ter terechtzitting in de aangezochte Staat. Rechten tot verschoning van het afleggen van getuigenverklaringen krachtens de wetten van de verzoekende Staat zijn niet van toepassing bij de uitvoering van verzoeken krachtens dit artikel.

2.  De aangezochte Staat vermeldt op verzoek de datum en plaats van het getuigenverhoor.

3.  De aangezochte Staat stemt, bij de uitvoering van een verzoek, toe in de aanwezigheid van de verdachte, de raadsman van de verdachte en van iedere andere, in het verzoek opgegeven belanghebbende.

4.  De autoriteit die het verzoek uitvoert verschaft eenieder wiens aanwezigheid is toegestaan gelegenheid tot het stellen van vragen te richten tot degene van wie verklaringen worden verlangd.

<u>Artikel 6   Uitvoering van verzoeken tot huiszoeking en inbeslagneming</u>

1.  De aangezochte Staat geeft gevolg aan verzoeken tot huiszoeking en inbeslagneming overeenkomstig zijn wetten en gebruiken, indien op het desbetreffende feit krachtens de wetten van beide Verdragsluitende Partijen een vrijheidsstraf is gesteld van meer dan een jaar, of, indien daarop een kortere vrijheidsstraf is gesteld dat feit is vermeld in de aanhangsel bij dit Verdrag.  De bevoegde autoriteiten bedoeld in artikel 14 kunnen schriftelijk wijzigingen van het Aanhangsel overeenkomen. Dergelijke wijzigingen treden in werking op een in een diplomatieke notawisseling vast te stellen datum.

7

2.    Een feit wordt geacht krachtens de wetten van de aangezochte Staat
strafbaar te zijn gesteld indien het beweerde handelen of nalaten, wanneer
het onder gelijksoortige omstandigheden in de aangezochte Staat zou
hebben plaatsgevonden, een strafbaar feit zou hebben opgeleverd
krachtens de wetten van die Staat. Voor de toepassing van dit lid worden
rechtsmachtbepalende elementen van strafbare feiten, opgenomen in
federale wetten van de Verenigde Staten, zoals het gebruik van de
posterijen of van de handel tussen de staten, niet beschouwd als
wezenlijke elementen van die strafbare feiten.

3.    Een verzoek aan het Koninkrijk der Nederlanden tot overlegging van
stukken, afkomstig van particulieren, dient aan het bepaalde in dit artikel te
voldoen.

4.    Een verzoek tot huiszoeking en inbeslagneming gericht tot de Verenigde
Staten dient vergezeld te gaan van een voor of door een rechter in het
Koninkrijk der Nederlanden onder ede afgelegde verklaring, waaruit blijkt
dat er gegronde redenen bestaan om aan te nemen dat een strafbaar feit
is gepleegd of zal worden gepleegd en dat bewijsmateriaal ter zake bij de
te onderzoeken personen of percelen zal worden gevonden, en waarin een
nauwkeurige aanduiding van de te onderzoeken personen of percelen
wordt gegeven. Een dergelijke verklaring geldt in de Verenigde Staten als
een voor een Amerikaanse rechterlijke autoriteit onder ede afgelegde
verklaring (affidavit).

5.    Krachtens dit artikel overgelegde stukken worden naar behoren
gewaarmerkt, als aangegeven in het verzoek, en van iedere overdracht
van andere in beslag genomen zaken of van ander in beslag genomen
bewijsmateriaal wordt een proces-verbaal opgesteld. Dergelijke verbalen
betreffende overdracht worden erkend als bewijs van de daarin vermelde
feiten.

8

Artikel 7  Overdracht van personen die zich in detentie bevinden naar de verzoekende Staat

1.    Een persoon die zich in detentie bevindt en wiens verschijning als getuige of tot confrontatie voor een autoriteit in de verzoekende Staat noodzakelijk is, wordt naar de verzoekende Staat overgebracht indien:

a.    degene die zich in detentie bevindt daarmee instemt;

b.    geen belangrijke verlenging van zijn detentie wordt verwacht; en

c.    de aangezochte Staat geen redenen heeft de overbrenging te weigeren.

2.    De aangezochte Staat kan de uitvoering van het verzoek uitstellen zolang de aanwezigheid van de persoon noodzakelijk is in verband met een vooronderzoek of onderzoek ter terechtzitting in de aangezochte Staat.

3.    De verzoekende Staat heeft de bevoegdheid en is verplicht de persoon in detentie te houden, tenzij de aangezochte Staat de vrijlating heeft bevolen.

4.    De verzoekende Staat draagt een persoon die niet krachtens het derde lid is vrijgelaten wederom in detentie over aan de aangezochte Staat, zodra de omstandigheden dat toelaten of zoals anderszins wordt overeengekomen. De verzoekende Staat weigert niet een overgebrachte persoon wederom over te dragen omdat deze onderdaan van die Staat is.

Artikel 8  Overdracht van personen die zich in detentie bevinden naar de aangezochte Staat

1.    Wanneer de verzoekende Staat de overdracht van een zich in detentie bevindende persoon naar de andere Staat tot confrontatie verlangt, maakt het verzoek daarvan melding.

2.    De aangezochte Staat houdt de persoon in detentie, tenzij de verzoekende Staat de vrijlating heeft bevolen.

9

3. De aangezochte Staat draagt een persoon die niet krachtens het tweede lid is vrijgelaten wederom in detentie over aan de verzoekende Staat, zodra de omstandigheden dat toelaten of zoals anderszins wordt overeengekomen. De aangezochte Staat weigert niet de overgebrachte persoon wederom over te dragen omdat deze onderdaan van die Staat is.

Artikel 9  Vrijgeleide

1. Een persoon die ingevolge dit Verdrag voor een autoriteit in de andere Staat verschijnt, kan niet voor de rechter worden gebracht, noch in hechtenis worden genomen of onderworpen aan enige andere beperking van zijn persoonlijke vrijheid, met betrekking tot een feit of veroordeling vóór zijn vertrek, behalve als voorzien in de artikelen 7 en 8 en in het volgende lid.

2. Een persoon, ongeacht van welke nationaliteit, die is gedagvaard om als verdachte te verschijnen voor de gerechtelijke autoriteiten van de verzoekende Staat wordt niet vervolgd of onderworpen aan enige beperking van zijn persoonlijke vrijheid, wegens feiten of veroordelingen vóór zijn vertrek uit de aangezochte Staat die niet in dagvaarding zijn omschreven.

3. Het in dit artikel verschafte vrijgeleide eindigt, indien de verschijnende persoon tien dagen nadat hij ervan in kennis is gesteld dat zijn aanwezigheid niet langer is vereist, de verzoekende Staat niet heeft verlaten of, na die Staat te hebben verlaten, daar is teruggekeerd.

4. Een persoon die als getuige verschijnt in de verzoekende Staat kan weigeren een getuigenverklaring af te leggen wanneer hij daartoe krachtens de wetten van de aangezochte Staat uit hoofde van zijn beroep een verplichting of een recht heeft, en de verlangde getuigenverklaring betrekking heeft op beschermde gegevens.
De verzoekende Staat eerbiedigt de verplichting of het recht wanneer de bevoegde autoriteit van de aangezochte Staat bevestigt dat een zodanige verplichting of een zodanig recht bestaat.

10

Artikel 9bis Identificatie van bankgegevens

1 a.   Op verzoek van de verzoekende Staat onderzoekt de aangezochte Staat terstond, in overeenstemming met de voorwaarden vervat in dit artikel, of de op zijn grondgebied gevestigde banken over informatie beschikken of een met name genoemde natuurlijke persoon of rechtspersoon die verdacht wordt van of in staat van beschuldiging is gesteld wegens een strafbaar feit houder is van een of meer bankrekeningen. De aangezochte Staat deelt het resultaat van zijn onderzoek terstond aan de verzoekende Staat mee.

b.   De onder (a) omschreven handelingen kunnen ook worden uitgevoerd met het oog op het achterhalen van:

i.   gegevens over veroordeelde of anderszins bij een strafbaar feit betrokken natuurlijke personen of rechtspersonen ;

ii.   gegevens die in het bezit zijn van niet-bancaire financiële instellingen; of

iii.   niet aan rekeningen gebonden financiële transacties.

2.   Een verzoek om de in het eerste lid van dit artikel omschreven gegevens bevat naast de in artikel 13, eerste lid van dit Verdrag vermelde gegevens:

a.   de identiteit van de natuurlijke persoon of rechtspersoon die van belang is om rekeningen of transacties op te sporen;

b.   voldoende gegevens op grond waarvan de autoriteit van de aangezochte Staat die over het verzoek beslist:

i.   redelijkerwijs kan vermoeden dat de betrokken natuurlijke persoon of rechtspersoon bij een strafbaar feit is betrokken en dat banken of niet-bancaire financiële instellingen op het grondgebied van de aangezochte Staat over de verlangde gegevens zouden kunnen beschikken; en

ii.   kan vaststellen dat de verlangde gegevens betrekking hebben op een strafrechtelijk onderzoek of strafvervolging; en

c.   voorzover mogelijk, gegevens over de mogelijk betrokken bank of niet-bancaire financiële instelling, en andere gegevens die dienstig kunnen zijn om de omvang van het onderzoek te kunnen beperken.

11

3.   Tenzij in een later stadium anders overeengekomen bij diplomatieke notawisseling tussen de Europese Unie en de Verenigde Staten van Amerika, worden verzoeken om rechtshulp uit hoofde van dit artikel verzonden tussen:

a.   voor het Koninkrijk der Nederlanden, de bevoegde autoriteit genoemd in artikel 14, en

b.   voor de Verenigde Staten van Amerika, de voor het Koninkrijk der Nederlanden verantwoordelijke attaché van:

    i.   de Drug Enforcement Administration van het Department of Justice van de Verenigde Staten voor aangelegenheden die onder zijn rechtsmacht vallen;

    ii.   het Bureau of Immigration and Customs Enforcement van het Department of Homeland Security van de Verenigde Staten voor aangelegenheden die onder zijn rechtsmacht vallen;

    iii.   het Federal Bureau of Investigation van het Department of Justice van de Verenigde Staten voor alle overige aangelegenheden.

4.   Het Koninkrijk der Nederlanden verleent overeenkomstig dit artikel rechtshulp ten aanzien van gedragingen die strafbaar zijn volgens de wetten van zowel de aangezochte als de verzoekende Staat, mits de gedraging een misdrijf is krachtens het Nederlandse recht, waaronder witwassen van geld en terroristische activiteiten vallen, maar daartoe niet beperkt zijn. De Verenigde Staten van Amerika verlenen overeenkomstig dit artikel rechtshulp ten aanzien van het witwassen van geld en terroristische activiteiten die strafbaar zijn volgens de wetten van zowel de verzoekende als de aangezochte Staat en ten aanzien van andere criminele activiteiten die door de Verenigde Staten van Amerika aan het Koninkrijk der Nederlanden worden meegedeeld.

5.   De aangezochte Staat beantwoordt een verzoek om de overlegging van de stukken betreffende de rekeningen of transacties die conform dit artikel zijn geïdentificeerd, in overeenstemming met de overige bepalingen van dit Verdrag.

12

Artikel 9ter  Gemeenschappelijke onderzoeksteams

1.  Op de onderscheiden grondgebieden van het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika kunnen, ter bevordering van een strafrechtelijk onderzoek of  vervolging waarbij de Verenigde Staten van Amerika en een of meer lidstaten van de Europese Unie betrokken zijn, gemeenschappelijke onderzoeksteams worden ingesteld en optreden indien zulks nodig wordt geacht door het Koninkrijk der Nederlanden en de Verenigde Staten van Amerika.

2.  De wijze van functioneren van het team, zoals de samenstelling, duur, plaats, organisatie, functies, doel en de voorwaarden voor deelneming van leden van het team van een Staat aan onderzoekshandelingen op het grondgebied van een andere Staat, worden overeengekomen tussen de bevoegde autoriteiten belast met het onderzoeken of vervolgen van strafbare feiten die door de respectieve betrokken Staten daartoe zijn aangewezen.

3.  De autoriteiten, aangewezen door de respectieve betrokken Staten, treden rechtstreeks met elkaar in contact over de instelling en het functioneren van het team. Echter wanneer vanwege de uitzonderlijke complexiteit, de grote omvang of andere omstandigheden meer centrale coördinatie nodig wordt geacht voor bepaalde of voor alle aspecten, kunnen de Staten overeenkomen daartoe andere passende communicatiekanalen te gebruiken.

4.  Wanneer het gemeenschappelijk onderzoeksteam het noodzakelijk acht dat in een van de Staten die het team hebben ingesteld, onderzoekshandelingen plaatsvinden, kan een uit die Staat afkomstig lid van het team zijn eigen autoriteiten vragen die handelingen te verrichten zonder dat de andere Staat (Staten) daartoe een verzoek om rechtshulp behoeft (behoeven) in te dienen. Aan de toepassing van de maatregel zullen in die Staat dezelfde juridische eisen worden gesteld als aan nationale onderzoekshandelingen.

13

Artikel 9quater  Videoconferenties

1.    Tussen het Koninkrijk der Nederland en de Verenigde Staten van Amerika dienen videoconferenties te kunnen worden gehouden om personen die zich in de aangezochte Staat bevinden als getuige of deskundige te horen in een procedure waarin rechtshulp kan worden verleend.  Voorzover niet specifiek in dit artikel bepaald, gelden voor die procedure de voorwaarden elders voorzien in dit Verdrag.

2.    Tenzij de verzoekende en aangezochte Staat anders zijn overeengekomen, draagt de verzoekende Staat de kosten van het totstandbrengen en het functioneren van de videoverbinding.  Andere kosten die voortvloeien uit het verlenen van de rechtshulp (met inbegrip van de reiskosten van de deelnemers in de aangezochte Staat) worden gedragen in overeenstemming met de bepalingen van artikel 17.

3.    De verzoekende en aangezochte Staat kunnen met elkaar in overleg treden om de oplossing te bevorderen van juridische, technische of logistieke kwesties die zich bij de uitvoering van het verzoek kunnen voordoen.

4.    Onverminderd de rechtsmacht krachtens het recht van de verzoekende Staat, dient het met opzet afleggen van een valse verklaring of ander wangedrag door een getuige of een deskundige tijdens de videoconferentie, in de aangezochte Staat op dezelfde wijze te worden gestraft alsof dit een verhoor in nationale procedure betrof.

5.    Dit artikel laat het gebruik onverlet van andere middelen die krachtens het toepasselijke verdrag of de toepasselijke wet beschikbaar zijn om getuigen te horen.

6.    De aangezochte Staat kan het gebruik van videoconferenties voor andere dan de in het eerste lid aangeven doelen toestaan, daaronder begrepen ten behoeve van de identificatie van personen of voorwerpen of het afnemen van verklaringen in het kader van een onderzoek.

14

Artikel 10  Beperkingen op de inwilliging

1.  De aangezochte Staat kan een verzoek afwijzen in zoverre:

a.  de uitvoering van het verzoek zou kunnen leiden tot een aantasting van de veiligheid of van andere, wezenlijke algemene belangen van die Staat;

b.  het verzoek betrekking heeft op een zaak die door de aangezochte Staat als een politiek delict wordt beschouwd;

c.  het verzoek betrekking heeft op de vervolging van een persoon die uit hoofde van de wetten van de aangezochte Staat betreffende een voorafgaande vervolging niet kan worden vervolgd ter zake van het strafbare feit waarvoor de rechtshulp wordt gevraagd;

d.  het verzoek niet voldoet aan de bepalingen van dit Verdrag.

2.  De aangezochte Staat kan de uitvoering van een verzoek uitstellen of dit inwilligen onder bepaalde voorwaarden, indien de uitvoering een vooronderzoek of een onderzoek ter terechtzitting in de aangezochte Staat zou doorkruisen.

3.  De aangezochte Staat stelt de verzoekende Staat onmiddellijk in kennis van de reden van een weigering of uitstel van de uitvoering van een verzoek.

Artikel 11  Bescherming van vertrouwelijke gegevens

1.  De aangezochte Staat kan, indien nodig, verlangen dat bewijsmateriaal en gegevens, bij de toepassing van dit Verdrag verstrekt en gegevens daaraan ontleend, vertrouwelijk blijven overeenkomstig vastgestelde voorwaarden, behalve voorzover openbaarmaking noodzakelijk is als bewijs in een openbaar proces.

2.  De aangezochte Staat stelt alles in het werk teneinde een verzoek en de inhoud ervan geheim te houden indien de verzoekende Staat zulks verzoekt. Indien het verzoek niet kan worden ingewilligd zonder inbreuk te maken op de verlangde vertrouwelijkheid, stelt de bevoegde autoriteit van de aangezochte Staat de verzoekende Staat daarvan in kennis, die vervolgens bepaalt of het verzoek desondanks dient te worden uitgevoerd.

15

Artikel 11bis  Beperkingen van het gebruik ter bescherming van
persoonsgegevens en andere gegevens

1.   De verzoekende Staat kan van de aangezochte Staat verkregen
     bewijsmateriaal of gegevens gebruiken:

a.   ten behoeve van zijn strafrechtelijke onderzoeken en strafrechtelijke
     procedures;

b.   ter voorkoming van een onmiddellijke, ernstige bedreiging van zijn
     openbare veiligheid;

c.   voor zijn niet-strafrechtelijke gerechtelijke of administratieve procedures die
     rechtstreeks verband houden met onderzoeken of procedures:

     i.   als bedoeld onder (a); of

     ii.  waarvoor rechtshulp is verstrekt ingevolge artikel 1, eerste lid bis, van
          dit Verdrag;

d.   voor enig ander doel, indien de gegevens of het bewijsmateriaal openbaar
     zijn gemaakt in het kader van een procedure waarvoor zij zijn verstrekt, of
     in enige andere situatie omschreven onder (a), (b) en (c); en

e.   voor enig ander doel, uitsluitend na voorafgaande toestemming van de
     aangezochte Staat.

2 a.  Het eerste lid laat onverlet de mogelijkheid van de aangezochte Staat in
      een concrete zaak nadere voorwaarden te stellen indien het
      desbetreffende verzoek om rechtshulp bij gebreke van die voorwaarden
      niet kan worden ingewilligd. Wanneer uit hoofde van dit onderdeel nadere
      voorwaarden zijn gesteld, kan de aangezochte Staat van de verzoekende
      Staat verlangen dat deze inlichtingen verstrekt over het gebruik dat wordt
      gemaakt van het bewijsmateriaal of de informatie.

  b.  Algemene beperkingen met betrekking tot de rechtsnormen van de
      verzoekende Staat voor het verwerken van persoonsgegevens mogen door
      de aangezochte Staat echter niet als een voorwaarde uit hoofde van
      onderdeel (a) worden verbonden aan het verschaffen van bewijsmateriaal
      of gegevens.

16

3. Indien de aangezochte Staat, nadat hij het verlangde bewijsmateriaal en de gegevens aan de verzoekende Staat heeft verstrekt, op de hoogte raakt van omstandigheden die in een concreet geval aanleiding zouden geven aanvullende voorwaarden te stellen, kan de aangezochte Staat met de verzoekende Staat overleggen om te bepalen in hoeverre het bewijsmateriaal en de gegevens kunnen worden beschermd.

Artikel 12  Uitvoering van verzoeken

1. De bevoegde autoriteit van de aangezochte Staat voldoet terstond aan het verzoek of zendt dit, in het voorkomende geval, ter uitvoering door aan de daartoe bevoegde autoriteit.

2. Verzoeken worden uitgevoerd overeenkomstig de interne wet en de interne procedures van de aangezochte Staat, behalve voor zover dit Verdrag anders bepaalt. De in het verzoek aangegeven procedures dienen te worden gevolgd, zelfs indien zij in de aangezochte Staat ongebruikelijk zijn, behalve voor zover zulks uitdrukkelijk is verboden in de wetten van de aangezochte Staat.

Artikel 13  Inhoud van de verzoeken

1. Een verzoek om rechtshulp houdt in:
a. de naam van de autoriteit die het onderzoek of de procedure waarop het verzoek betrekking heeft, leidt;
b. het onderwerp en de aard van het onderzoek of de procedure;
c. een beschrijving van het verlangde bewijsmateriaal, de verlangde gegevens of de te verrichten handelingen; en
d. het doel waartoe het bewijsmateriaal, de gegevens of de handeling worden verlangd.

2. Voor zover noodzakelijk en mogelijk houdt een verzoek tevens in:
a. de beschikbare gegevens betreffende de identiteit en verblijfplaats van een op te sporen persoon;

17

b.    de identiteit en verblijfplaats van een persoon aan wie een stuk moet worden betekend, de relatie van die persoon tot de procedure en de wijze waarop de betekening moet worden verricht;

c.    de identiteit en verblijfplaats van personen van wie bewijsmateriaal wordt verlangd;

d.    een beschrijving van de wijze waarop een getuigenverklaring dient te worden afgenomen en op schrift gesteld;

e.    een lijst van de te beantwoorden vragen;

f.    een nauwkeurige opgave van de plaats waar huiszoeking moet worden verricht en van de voorwerpen die in beslag moeten worden genomen;

g.    een beschrijving van een eventuele bijzondere procedure die moet worden gevolgd bij de uitvoering van het verzoek; en

h.    gegevens betreffende de toelagen en onkostenvergoedingen waarop iemand die in de verzoekende Staat verschijnt aanspraak kan maken.

## Artikel 14  Bevoegde autoriteiten

1.    Tenzij anders voorzien in dit Verdrag, worden verzoeken om rechtshulp ingediend en uitgevoerd door tussenkomst van een bevoegde autoriteit voor elk der Verdragsluitende Partijen. De bevoegde autoriteiten van de beide Staten verstaan zich rechtstreeks tot elkaar met het oog op de uitvoering van de bepalingen van dit Verdrag.  De bevoegde autoriteit voor de Verenigde Staten van Amerika is de "Attorney General" of zijn gemachtigde. De bevoegde autoriteit voor het Koninkrijk der Nederlanden is de minister van Justitie in Nederland of indien de territoriale toepassing van dit Verdrag wordt uitgebreid overeenkomstig artikel 16, eerste lid, onderdeel b, van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp, als omschreven in de ingevolge daarvan uitgewisselde diplomatieke nota's.

2.    Verzoeken om wederzijdse rechtshulp en daarmee verband houdende mededelingen kunnen worden bespoedigd door middel van snelle communicatiemiddelen, waaronder fax of e-mail, en, indien zulks verlangd wordt door de aangezochte Staat, gevolgd door een formele bevestiging.

18

De aangezochte Staat kan het verzoek beantwoorden door middel van een snel communicatiemiddel.

Artikel 15  Terugzending van ingewilligde verzoeken

1.   De aangezochte Staat zendt nadat aan het verzoek is voldaan het originele verzoek, tezamen met alle verkregen gegevens en bewijsmateriaal, onder vermelding van de plaats en tijd waarop aan het verzoek werd voldaan, terug aan de verzoekende Staat, tenzij anders is overeengekomen.

2.   Voor zover mogelijk dienen alle volgens een verzoek krachtens dit Verdrag te verstrekken stukken en documenten volledig en in onverkorte vorm te worden verstrekt.   De aangezochte Staat doet op verzoek van de verzoekende Staat al het mogelijke om originele stukken en documenten te verstrekken.

Artikel 16  Terugzending van stukken, documenten of ander bewijsmateriaal

De verzoekende Staat zendt alle stukken, documenten of zaken, die tot bewijs dienen en die zijn verstrekt ter voldoening aan een verzoek, zo snel mogelijk terug, tenzij de aangezochte Staat afstand doet van die terugzending.

Artikel 17  Kosten en vertalingen

1.   De aangezochte Staat verleent rechtshulp aan de verzoekende Staat zonder kosten in rekening te brengen, behalve voor honoraria van in het verzoek opgegeven, particuliere deskundigen en de kosten die verband houden met het totstandbrengen en het functioneren van een videoverbinding zoals bedoeld in artikel 9quater.

2.   De verzoekende Staat draagt alle kosten met betrekking tot de overbrenging krachtens de artikelen 7 en 8 van een zich in detentie bevindende persoon.

3.   De verzoeken dienen te zijn gesteld zowel in het Engels als in het Nederlands.   De vertaling van op verzoek verstrekte stukken wordt verzorgd door de verzoekende Staat.

19

<u>Artikel 18  Andere verdragen en interne wetten</u>

1.   De rechtshulp en procedures, voorzien in dit Verdrag, doen niet af aan enigerlei rechtshulp of procedure, die kan worden verleend of kan worden gevolgd krachtens andere internationale overeenkomsten of regelingen of krachtens de interne wetten van de Verdragsluitende Partijen, noch verhinderen of beperken zij deze.

2.   Behalve ingeval dit Verdrag uitdrukkelijk regels geeft voor de erkenbaarheid van bewijs, is aan de bepalingen van dit Verdrag voor niemand het recht te ontlenen in een strafrechtelijke procedure te vorderen dat enig bewijsmateriaal wordt achter gehouden of van de procedure wordt uitgesloten.   Door dit Verdrag worden krachtens het interne recht bestaande rechten op een nieuwe gerechtelijke beoordeling niet uitgebreid of beperkt.

3.   Bepalingen betreffende uitlevering van personen, hetzij van intern recht, hetzij verdragsbepalingen, zijn niet van toepassing op de overdracht van personen krachtens de artikelen 7 en 8, of op de verschijning krachtens het tweede lid van artikel 9.

<u>Artikel 19  Opzegging</u>

Elk van beide Verdragsluitende Partijen kan dit Verdrag te allen tijde beëindigen door daarvan aan de andere Partij kennis te geven, en de beëindiging wordt van kracht zes maanden na de datum van ontvangst van die kennisgeving.

20

<u>AANHANGSEL</u>

Verzoeken tot huiszoeking en inbeslagneming kunnen ingevolge het eerste lid van artikel 6 van het Verdrag worden uitgevoerd, indien zij betrekking hebben op strafbare feiten, omschreven in:

I.

A.    Voor het Koninkrijk der Nederlanden (Europa): Het Wetboek van Strafrecht, de artikelen 194, 272, 328 bis, 328 ter en 336.

B.    Indien de territoriale toepassing van dit Verdrag wordt uitgebreid overeenkomstig artikel 16, eerste lid, onderdeel b, van de VS-EU-Overeenkomst betreffende wederzijdse rechtshulp als omschreven in de ingevolge daarvan uitgewisselde diplomatieke nota's.

II.

Voor de Verenigde Staten van Amerika: Titel 26, Wetboeken van de Verenigde Staten (Wetboek betreffende interne belastingen), § 7203.

Tekst van de desbetreffende wettelijke bepalingen:

Nederlands Wetboek van Strafrecht

ARTIKEL 194

1.    Hij die, in staat van faillissement verklaard of als echtgenoot van een gefailleerde met wie hij in gemeenschap van goederen is gehuwd, of als bestuurder of commissaris van een rechtspersoon, wettelijk opgeroepen tot het geven van inlichtingen, hetzij zonder geldige reden opzettelijk wegblijft, hetzij weigert de vereiste inlichtingen te geven, hetzij opzettelijk verkeerde inlichtingen geeft, wordt gestraft met gevangenisstraf van ten hoogste een jaar of een geldboete van de derde categorie.

2.    Terzake van het feit, bedoeld in het eerste lid, wordt met dezelfde straf gestraft hij, ten aanzien van wie of ten aanzien van wiens echtgenoot met wie hij in gemeenschap van goederen is gehuwd, de schuldsaneringsregeling natuurlijke personen van toepassing is.

21

ARTIKEL 272

1.  Hij die enig geheim, waarvan hij weet of redelijkerwijs moet vermoeden, dat hij het uit hoofde van ambt, beroep of wettelijk voorschrift, dan wel van vroeger ambt of beroep verplicht is het te bewaren, opzettelijk schendt, wordt gestraft met gevangenisstraf van ten hoogste een jaar of geldboete van de vierde categorie.

2.  Indien dit misdrijf tegen een bepaald persoon gepleegd is, wordt het slechts vervolgd op diens klacht.

ARTIKEL 328bis

Hij die, om het handels- of bedrijfsdebiet van zichzelf of van een ander te vestigen, te behouden of uit te breiden, enige bedrieglijke handeling pleegt tot misleiding van het publiek of van een bepaald persoon, wordt, indien daaruit enig nadeel voor concurrenten van hem of van die ander kan ontstaan, als schuldig aan oneerlijke mededinging, gestraft met gevangenisstraf van ten hoogste een jaar of geldboete van de vijfde categorie.

ARTIKEL 328ter

1.  Hij die, anders dan als ambtenaar, werkzaam zijnde in dienstbetrekking of optredend als lasthebber, naar aanleiding van hetgeen hij in zijn betrekking of bij de uitvoering van zijn last heeft gedaan of nagelaten dan wel zal doen of nalaten, een gift of belofte aanneemt en dit aannemen in strijd met de goede trouw verzwijgt tegenover zijn werkgever of lastgever wordt gestraft met gevangenisstraf van ten hoogste een jaar of geldboete van de vijfde categorie.

2.  Met gelijke straf wordt gestraft hij die aan iemand die, anders dan als ambtenaar, werkzaam is in dienstbetrekking of optreedt als lasthebber, naar aanleiding van hetgeen deze in zijn betrekking of bij de uitvoering van zijn last heeft gedaan of nagelaten dan wel zal doen of nalaten, een gift of belofte doet van dien aard of onder zodanige omstandigheden, dat hij redelijkerwijs moet aannemen dat deze de gift of de belofte in strijd met de goede trouw zal verzwijgen tegenover zijn werkgever of lastgever.

22

ARTIKEL 336

De koopman, de bestuurder, de beherende vennoot of commissaris van een rechtspersoon, die opzettelijk een onware staat of een balans, winst- en verliesrekening, staat van baten en lasten of toelichting op een van die stukken openbaar maakt of zodanige openbaarmaking opzettelijk toelaat, wordt gestraft met gevangenisstraf van ten hoogste een jaar of een geldboete van de vijfde categorie.

Wetboek inzake interne belastingen (Titel 26, Wetboeken van de Verenigde Staten).
§ 7203

Hij die ingevolge deze titel verplicht is een al dan niet geschat bedrag aan belasting te betalen of ingevolge of krachtens deze titel verplicht is een aangifte (niet zijnde een aangifte ingevolge § 6015) te doen, boekhouding bij te houden of informatie te verschaffen en opzettelijk in gebreke blijft op het daartoe bij of krachtens de wet aangegeven tijdstip dat al dan niet geschat bedrag aan belasting te betalen, die aangifte te doen, die boekhouding bij te houden of die informatie te verschaffen is, onverminderd andere bij de wet voorziene straffen, schuldig aan een overtreding en wordt in geval van veroordeling gestraft met een geldboete van ten hoogste 10000 US dollar of gevangenisstraf van ten hoogste 1 jaar, of beide, en dient tevens de kosten van de vervolging te betalen.

23

No. 33

I have the honor to refer to the Agreement between the United States of America and the Kingdom of the Netherlands, signed this day, comprising the instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed at Washington 25 June 2003, as to the application of the Treaty between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters signed at The Hague 12 June 1981. In view of the signature of this instrument, I wish to clarify the legal status of certain notes relating to the 1981 Mutual Legal Assistance Treaty and to the 2003 U.S.-EU Mutual Legal Assistance Agreement.

On 12 June 1981, at the time of signing of the Mutual Legal Assistance Treaty, related diplomatic notes containing understandings on certain articles of the treaty also were exchanged. This exchange of notes shall continue to apply, except for the second paragraph pertaining to Article 11 of the 1981 Mutual Legal Assistance Treaty, in view of Article 9 of the 2003 U.S.-EU Mutual Legal Assistance Agreement. In addition, the provisions of this exchange of notes relating to Article 14 of the 1981 Mutual Legal

Assistance Treaty shall be interpreted to permit application of Article 8 of the 2003 U.S.-EU Mutual Legal Assistance Agreement.

On 31 December 1985, the Government of the Kingdom of the Netherlands conveyed to the Government of the United States of America a diplomatic note confirming that, inter alia, the 1981 Treaty on Mutual Assistance in Criminal Matters continue to apply to the Netherlands Antilles and to Aruba. The Mutual Legal Assistance Agreement signed this day provides that the application of the 1981 Mutual Legal Assistance Treaty to the Netherlands Antilles and to Aruba shall remain unaffected by the 2003 U.S.-EU Mutual Legal Assistance Agreement. As a result, the 1981 Mutual Legal Assistance Treaty in its original form shall continue to apply to the Netherlands Antilles and to Aruba.

It is also noted that the 2003 U.S.-EU Mutual Legal Assistance Agreement includes an explanatory note that "reflects understandings regarding the application of certain provisions of the Agreement" and constitutes an integral part of it. The understandings set forth in the explanatory notes are binding upon both the parties to the 2003 U.S.-EU Mutual Legal Assistance Agreement and the member states of the European Union, and thus are applicable as well to the corresponding provisions of the Mutual Legal Assistance Agreement signed this day.

If the foregoing understandings are shared by the Kingdom of the Netherlands,

I have the honor to propose that this Note and Your Excellency's Note in reply shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Embassy of the United States of America,

The Hague, September 29, 2004.



His Excellency
Mr. C.M. Sobel
Ambassador of the United States of America
At the Hague


The Hague, 29 September 2004


I have the honor to acknowledge receipt of your Note of today's date, which reads as follows:

> "I have the honor to refer to the Agreement between the United States of America and the Kingdom of the Netherlands, signed this day, comprising the instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance between the United States of America and the European Union signed at Washington 25 June 2003, as to the application of the Treaty between the United States of America and the Kingdom of the Netherlands on Mutual Assistance in Criminal Matters signed at The Hague 12 June 1981. In view of the signature of this instrument, I wish to clarify the legal status of certain notes relating to the 1981 Mutual Legal Assistance Treaty and to the 2003 U.S.-EU Mutual Legal Assistance Agreement.
>
> On 12 June 1981, at the time of signing of the Mutual Legal Assistance Treaty, related diplomatic notes containing understandings on certain articles of the treaty also were exchanged. This exchange of notes shall continue to apply, except for the second paragraph pertaining to Article 11 of the 1981 Mutual Legal Assistance Treaty, in view of Article 9 of the 2003 U.S.-EU Mutual Legal Assistance Agreement. In addition, the provisions of this exchange of notes relating to Article 14 of the 1981 Mutual Legal Assistance Treaty shall be interpreted to permit application of Article 8 of the 2003 U.S.-EU Mutual Legal Assistance Agreement.
>
> On 31 December 1985, the Government of the Kingdom of the Netherlands conveyed to the Government of the United States of



America a diplomatic note confirming that, inter alia, the 1981 Treaty on Mutual Assistance in Criminal Matters continue to apply to the Netherlands Antilles and to Aruba. The Mutual Legal Assistance Agreement signed this day provides that the application of the 1981 Mutual Legal Assistance Treaty to the Netherlands Antilles and to Aruba shall remain unaffected by the 2003 U.S.-EU Mutual Legal Assistance Agreement. As a result, the 1981 Mutual Legal Assistance Treaty in its original form shall continue to apply to the Netherlands Antilles and to Aruba.

It is also noted that the 2003 U.S.-EU Mutual Legal Assistance Agreement includes an explanatory note that "reflects understandings regarding the application of certain provisions of the Agreement" and constitutes an integral part of it. The understandings set forth in the explanatory notes are binding upon both the parties to the 2003 U.S.-EU Mutual Legal Assistance Agreement and the member states of the European Union, and thus are applicable as well to the corresponding provisions of the Mutual Legal Assistance Agreement signed this day".

If the foregoing understandings are shared by the Kingdom of the Netherlands, I have the honor to propose that this Note and Your Excellency's Note in reply shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

I have the honor to confirm that the understanding described above is also the understanding of the Kingdom of the Netherlands  and that Your Excellency's Note together with this Reply Note shall constitute an understanding between the two Governments.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Mr. J.P.H. Donner
Minister of Justice