# EXHIBIT 60

TREATIES AND OTHER INTERNATIONAL ACTS SERIES 09-1018

# MUTUAL LEGAL ASSISTANCE

**Treaty Between the**

**UNITED STATES OF AMERICA**

**and GERMANY**

Signed at Washington October 14, 2003

*with*

Exchange of Notes



NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89—497, approved July 8, 1966
(80 Stat. 271; 1 U.S.C. 113)—

". . .the Treaties and Other International Acts Series issued
under the authority of the Secretary of State shall be competent
 evidence . . . of the treaties, international agreements other than
treaties, and proclamations by the President of such treaties and
international agreements other than treaties, as the case may be,
therein contained, in all the courts of law and equity and of maritime
jurisdiction, and in all the tribunals and public offices of the
United States, and of the several States, without any further proof
or authentication thereof."

# GERMANY

## Mutual Legal Assistance

*Treaty signed at Washington October 14, 2003;*
*Transmitted by the President of the United States of America*
  *to the Senate November 16, 2004 (Treaty Doc. 108-27,*
  *108th Congress, 2d Session);*
*Reported favorably by the Senate Committee on Foreign Relations*
  *March 14, 2006 (Senate Executive Report No. 109-14,*
  *109th Congress, 2d Session);*
*Advice and consent to ratification by the Senate*
  *July 27, 2006;*
*Ratified by the President April 4, 2007;*
*Exchange of Instruments of Ratification at Washington*
  *September 18, 2009;*
*Entered into force October 18, 2009.*
*With exchange of notes.*

Treaty

between

the United States of America

and

the Federal Republic of Germany

on

Mutual Legal Assistance in Criminal Matters

- 2 -

TABLE OF CONTENTS

Article 1 .................................................................................................Obligation

Article 2 .................................................................................. .Central Authorities

Article 3 ........................................................................................................Refusal

Article 4 ..................................................................................... ...Serving Documents

Article 5 ................................................................................ ......Witnesses and Experts

Article 6. .............................................................................. ..........Safe Conduct

Article 7 .......................................................................... Transferring Persons in Custody

Article 8 ...........................................................................Transit of Persons in Custody

Article 9 .............................................................................. .......Providing Official Records

Article 10 ....................................................Taking Testimony and Producing Evidence

Article 11 ............................................................................. ..........Search and Seizure

Article 12 ...................................................................... ...Special Investigative Techniques

Article 13 ............................................................ ...Assistance in Forfeiture Proceedings

Article 14 .................................................................... .........................Confidentiality

Article 15 ......................................................................................... ....Conditions

Article 16 ............................. ...............Information and Evidence in Antitrust Proceedings

.................................................................................. and Investigations

Article 17. .........................................................Contents and Form of Requests

Article 18 .................................................................................. ......Language to be Used

Article 19 ............................................................................... ........Execution of Requests

Article 20 ............................................................................ ..................Return of Items

Article 21 ............................................................................. .............................Expenses

Article 22 .................................................... .....Referral for Investigation or Prosecution

Article 23 ............................................................................................Certification

Article 24 ................................................................................. ................Consultations

Article 25 ..............................................................................Other Agreements

Article 26 .............................................. ..Ratification, Entry Into Force, and Termination

Appendix ..........................................................................Competent Authorities

- 3 -

The United States of America
and
the Federal Republic of Germany,

desiring to provide for more effective cooperation between the two States in the repression of crime and, specifically, to facilitate the relations between the two States in the area of mutual legal assistance in criminal matters -,

have agreed as follows:

## Article 1
### Obligation

(1)   The Parties undertake to afford each other, through their competent authorities, the widest measure of mutual assistance in criminal investigations and proceedings, including those relating to customs, duties and taxes, in accordance with the provisions of this Treaty. Criminal investigations or proceedings for the purpose of this Treaty include investigations or proceedings relating to regulatory offenses (Ordnungswidrigkeiten) under German antitrust law. Criminal investigations and proceedings for the purpose of this Treaty also include investigations and proceedings relating to regulatory offenses to the extent that they may lead to court proceedings or be referred for criminal prosecution in the Requesting State and would constitute criminal offenses in the Requested State.

(2)   Assistance shall include:

1. locating or identifying persons or items;

2. serving documents;

- 4 -

3. taking the testimony or statements of persons;

4. transferring persons in custody for testimony or other purposes;

5. providing documents, records, and other items;

6. executing searches and seizures;

7. special investigative techniques such as: telecommunications surveillance, undercover investigations, and controlled deliveries;

8. assisting in proceedings related to immobilization and forfeiture of assets, restitution, collection of fines; and

9. any other form of assistance not prohibited by the laws of the Requested State.

(3)     The term "competent authority" means any authority that under the law or practice of a Party is authorized to request assistance in criminal investigations or proceedings or to order the execution of or to execute requests for assistance in criminal investigations or proceedings. The competent authorities for the respective Parties are listed in the Appendix to this Treaty. The Appendix shall form part of this Treaty. Either Party may amend its listing of competent authorities by exchange of notes through the diplomatic channel.

(4)     Assistance shall be provided without regard to whether the conduct that is the subject of the criminal investigation or proceeding in the Requesting State would constitute a criminal or regulatory offense under the laws of the Requested State unless otherwise provided in this Treaty.

(5)     A Party shall request assistance pursuant to the provisions of this Treaty to obtain, through the use of compulsory measures or search and seizure, documents, records, and other items located in the territory of the other Party and needed in connection with a criminal investigation or proceeding within the scope of this Treaty. Where denial of a request or

- 5 -

undue delay of its execution may jeopardize the success of the criminal investigation or proceeding, the Central Authorities shall promptly consult with a view to achieving a mutually acceptable result. If, after 40 days from the commencement of such consultations, a satisfactory resolution is not reached, the Parties' obligations under the Treaty shall be deemed to have been fulfilled.

(6)    The provisions of this Treaty shall not give rise to a right on the part of a private party to take any action in a proceeding to obtain, suppress, or exclude any evidence, or to impede the execution of a request. Rights existing independently of this Treaty, however, are not affected.

(7)    This Treaty shall apply to criminal investigations and proceedings related to foreign exchange only insofar as agreed upon between the Parties by exchange of notes through the diplomatic channel.

Article 2

Central Authorities

(1)    Each Party shall designate a Central Authority to make and receive requests pursuant to this Treaty.

(2)    For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General. For the Federal Republic of Germany, the Central Authority shall be the Federal Ministry of Justice.

(3)    The Central Authorities shall communicate directly with one another for the purposes of this Treaty.

(4)    In instances of urgency, requests may be directly communicated between the Ministries of Justice of the Laender or the Federal Cartel Office of the Federal Republic of Germany and the Central Authority for the United States.

- 6 -

## Article 3
### Refusal

Assistance may be denied if execution of the request would prejudice the sovereignty, security, or other essential interests of the Requested State.

## Article 4
### Serving Documents

(1)     The Requested State shall effect service of any document transmitted to it for this purpose by the Requesting State.

(2)     Except in instances of urgency, a request for the service of a document requiring the appearance of a person shall be executed only if it is received by the Requested State not later than one month before the scheduled appearance of the person to be served.

(3)     Proof of service shall be by a receipt dated and signed by the person served or by an official declaration stating the form and date of such service.

(4)     A person who is not a national or resident of the Requesting State and who does not answer a summons to appear in the Requesting State served pursuant to a request shall not by reason thereof be liable to any penalty or be subjected to any coercive measures.

## Article 5
### Witnesses and Experts

(1)     When the Requesting State requests that a person located in the Requested State appear outside the Requested State, the Requested State shall invite the person to so appear. The Central Authority of the Requested State shall promptly inform the Central Authority of the Requesting State of the person's response.

- 7 -

(2)     The Requesting State shall indicate the extent to which the person's expenses will be paid. A person who agrees to appear may obtain advance money from the Requesting State to cover these expenses.

### Article 6
### Safe Conduct

(1)     Unless otherwise specified in the request, a person appearing as a witness or expert in the Requesting State pursuant to a request shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, with respect to any act or conviction that preceded departure from the Requested State.

(2)     A person appearing in the Requesting State pursuant to a request to answer for acts forming the subject of criminal proceedings against that person shall not be subject to suit, or be detained or subjected to any other restriction of personal liberty, for any act or conviction that preceded departure from the Requested State and was not specified in the summons.

(3)     Safe conduct as provided for in paragraphs (1) and (2) shall cease if, 15 days after the person appearing has been notified that the person's presence is no longer required, that person, being free to leave, has not left the Requesting State or, having left, has returned.

### Article 7
### Transferring Persons in Custody

(1)     A person in custody in the Requested State whose presence outside that State is sought for purposes of assistance under this Treaty shall be transferred for such purposes.

(2)     A person in custody in the Requesting State whose presence in the Requested State is sought for purposes of assistance under this Treaty shall be transferred from the Requesting State to the Requested State.

- 8 -

(3)  Transfer shall not be granted if:

    1.  the person in custody does not consent; or

    2.  there are overriding grounds for not transferring the person.

(4)  For purposes of this Article:

    1.  the receiving State shall have the authority and the obligation to keep the person
       transferred in custody unless otherwise authorized by the sending State;

    2.  the receiving State shall return the person transferred to the custody of the sending
       State as soon as circumstances permit or as otherwise agreed;

    3.  the receiving State shall not require the sending State to initiate extradition or any
       other proceedings for the return of the person transferred;

    4.  time served in the custody of the receiving State by the person transferred shall be
       credited toward the service of the sentence imposed in the sending State; and

    5.  where the receiving State is a third State, the Requesting State shall be responsible
       for all arrangements necessary to meet the requirements of this Article, including
       obtaining the third State's consent.

### Article 8
### Transit of Persons in Custody

(1)  The Requested State may authorize the transit through its territory of a person held in
custody by the Requesting State or by a third State whose presence has been requested by the
Requesting State to provide assistance in a criminal investigation or proceeding.

- 9 -

(2)    The Requested State shall have the authority and the obligation to keep the person in custody during transit.


## Article 9
### Providing Official Records

(1)    The Requested State shall provide any publicly available record, including documents or information in any form, in the possession of a government office or agency.

(2)    The Requested State may provide any record, including documents or information in any form in the possession of a government office or agency, but not publicly available, to the same extent and under the same conditions as such record would be available to its own corresponding authorities.

(3)    The Requested State may transmit certified copies of records requested unless the Requesting State expressly requests the transmission of originals, in which instance the Requested State shall comply with the request to the extent possible.

(4)    Article 11, paragraph (1), shall not apply to the provision of records or copies thereof under this Article.

(5)    Records or copies provided pursuant to this Article shall, upon request, be authenticated under the provisions of the Convention Abolishing the Requirement of Legalization for Foreign Public Documents, dated 5 October 1961, or by the official responsible for maintaining them through the use of an attestation of authenticity of official records in accordance with the procedures specified in the request. The absence or nonexistence of such records shall, upon request, be certified by an official responsible for maintaining them in accordance with the procedures specified in the request. Records or copies authenticated under this paragraph, or a certification of the absence or nonexistence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

- 10 -

### Article 10
#### Taking Testimony and Producing Evidence

(1)    If necessary. compulsory measures shall be applied to execute a request for taking testimony or producing documents, records, and other items in the same manner as in criminal investigations or proceedings in the Requested State.

(2)    If the Requesting State desires witnesses or experts to give evidence under oath, it shall expressly so request. A person who gives false testimony in execution of a request shall be subject to prosecution in the Requested State in accordance with the criminal laws of that State.

(3)    The Requested State shall permit the presence, during execution of a request, of persons concerned in the investigation or proceeding and specified in the request and shall allow such persons to propose questions to be asked of the person giving the testimony. The persons present shall be permitted to make a verbatim transcript of the proceedings.

(4)    Audio-visual means shall be permitted to record testimony with the consent of the person giving testimony.

(5)    If the person concerned asserts a claim of immunity, incapacity, or privilege under the law of the Requesting State that is not mentioned in the request, the Requested State may ask the Requesting State for a declaration as to the validity of the claim. If the Requesting State does not confirm the validity of the claim, the evidence shall be taken without prejudice to the resolution of the claim in the Requesting State.

(6)    Evidence produced in the Requested State pursuant to this Article or the subject of testimony taken under this Article shall, upon request, be authenticated by an attestation. The absence or nonexistence of such evidence shall, upon request, be certified by an attestation. These attestations shall be certified in accordance with procedures specified in the request. Where such items are business records, the attestation may be by a certificate, a protocol or other document containing the essential information required by the Requesting State.

- 11 -

Evidence, especially business records, so authenticated, or certifications of the absence or nonexistence of such records, shall be admissible in evidence in the Requesting State as proof of the truth of the matters set forth therein.

### Article 11
### Search and Seizure

(1)    The Requested State shall execute a request for the search, seizure, and transfer of any item to the Requesting State if:

1. the type of offense upon which the request is based is punishable criminally (or by a regulatory fine under German law) under the laws of both the Requesting and the Requested State;

2. the request includes information justifying such action under the laws of the Requested State; and

3. an order for seizure by a competent authority or a statement by the Central Authority of the Requesting State is attached to or included as part of the request showing that compulsory production or seizure could be obtained if the item were located in the Requesting State.

(2)    For the purpose of paragraph 1, an offense shall be considered to be a type punishable under the laws of the Federal Republic of Germany without regard to elements of the offense under the law of the United States designed for the purpose of granting jurisdiction to the United States Government, such as interstate or foreign transportation of persons and property, use of mails or other means of communication, or use of other means of carrying out interstate or foreign commerce.

(3)    Upon request, every official in the Requested State who has custody of a seized item shall certify, through the use of procedures specified in the request, the identity of the item,

- 12 -

the continuity of custody, and any changes in condition. Certifications using the procedures specified in the treaty shall be admissible in the Requesting State as proof of the truth of the matters set forth therein.

### Article 12
#### Special Investigative Techniques

Each Party may at the request of the other Party, within its possibilities and under the conditions prescribed by its domestic law,

    1. take the necessary steps for the surveillance of telecommunications,

    2. permit the operation in its territory of criminal investigations by law enforcement officers of the other Party acting under covert or false identity, and

    3. permit controlled deliveries in its territory in connection with criminal investigations.

### Article 13
#### Assistance in Forfeiture Proceedings

(1)    If the Central Authority of one Party becomes aware of proceeds or instrumentalities of offenses that are located in the territory of the other Party and may be forfeitable or otherwise subject to seizure under the laws of that Party, it may so inform the Central Authority of the other Party. If that other Party has jurisdiction in this regard, it may present this information to its authorities for a determination whether any action is appropriate. These authorities shall issue their decision in accordance with the laws of their country, and shall, through their Central Authority, report to the other Party on the action taken.

(2)    The Parties shall assist each other to the extent permitted by their respective laws in proceedings relating to the forfeiture of the proceeds and instrumentalities of offenses,

- 13 -

restitution to the victims of crime, and the collection of fines imposed as sentences in criminal prosecutions. This may include action to temporarily immobilize the proceeds or instrumentalities pending further proceedings.

(3)    The Party that has custody over proceeds or instrumentalities of offenses shall dispose of them in accordance with its laws, including the possibility of transferring all or part of such assets or the proceeds thereof to the other Party.

## Article 14
### Confidentiality

(1)    The Requested State shall use its best efforts to keep confidential a request and its contents if such confidentiality is requested by the Central Authority of the Requesting State because disclosure is likely to jeopardize the success of the criminal investigation or proceeding. If the request cannot be executed without breaching such confidentiality, the Central Authority of the Requested State shall so inform the Central Authority of the Requesting State, which shall then determine whether the request should nevertheless be executed.

(2)    The Central Authority of the Requested State may request that evidence or information furnished under this Treaty be kept confidential or be used only subject to terms and conditions it may specify. If the Requesting State accepts the evidence or information subject to such conditions, the Requesting State shall use its best efforts to comply with the conditions.

- 14 -

## Article 15
### Conditions

(1)    Where assistance could be refused under Article 3, the Central Authority of the Requested State shall consult with the Central Authority of the Requesting State to consider whether assistance can be given subject to such conditions as it deems necessary. If the Requesting State accepts assistance subject to these conditions, it shall comply with the conditions.

(2)    The Requesting State shall not use any evidence or information obtained under this Treaty for any other purpose than that described in the request without the prior consent of the Central Authority of the Requested State, except as specified in paragraph 3.

(3)    The Requesting State may use any evidence or information obtained under this Treaty without the prior consent of the Central Authority of the Requested State:

    1. for any other purpose for which assistance pursuant to this Treaty would be available;

    2. for preventing the commission of serious criminal offenses;

    3. in a non-criminal judicial or administrative proceeding related to a purpose specified in subparagraphs 1 and 2 above; and

    4. for averting substantial danger to public security.

However, the Central Authority of the Requested State may prohibit such use in a specific instance at the time the Requested State provides the evidence or information. In that instance, the Requesting State shall not use any evidence or information to which the prohibition applies in any investigation or proceeding other than that described in the request without the prior consent of the Central Authority of the Requested State.

- 15 -

(4)    Notwithstanding any limitation on disclosure contained in this Article or Article 16, the Requesting State may disclose evidence or information to a defendant in a criminal proceeding where the evidence or information may be exculpatory to the defendant or relate to the truth and veracity of a witness providing testimony against the defendant. The Requesting State shall notify the Requested State in advance of any such proposed disclosure.

(5)    Information or evidence that has been made public in the Requesting State in the normal course of the proceeding for which it was provided may thereafter be used for any purpose.

(6)    A State that furnishes evidence or information subject to a condition referred to in this Article may require the other State to explain, in relation to that condition, the use made of such evidence or information.

Article 16
Information and Evidence in Antitrust
Proceedings and Investigations

Information or evidence received by the Requesting State in connection with an investigation or proceeding under the antitrust laws, assistance as to which may be provided under this treaty, shall be treated as confidential in the same way as information or evidence obtained under its domestic law and only may be disclosed to persons or authorities, including courts or administrative authorities, competent for the prosecution of antitrust offences. Such persons or authorities shall use the information or evidence only for these purposes. They may disclose the information or evidence in public court proceedings or in judicial decisions, unless the competent authority of the Requested State supplying the information or evidence raises an objection. Such objections shall be raised only in exceptional cases. Such information or evidence shall not be used for other purposes without prior consent of the Requested State.

- 16 -

## Article 17
### Contents and Form of Requests

(1)  A request shall:

  1. identify the authority making the request;

  2. identify the authority conducting the criminal investigation or proceeding to which the request relates;

  3. describe the subject matter and nature of the criminal investigation or proceeding, including:

  a) a summary of the facts;

  b) the text of the applicable criminal law provisions; and

  c) if known, the identity of the person who is the subject of the criminal investigation or proceeding;

  4. describe the evidence or information sought or the acts to be performed; and

  5. state the purpose for which the evidence, information or action is sought.

(2)  As appropriate, and to the extent possible, a request also should include:

  1. information on the identity or description and suspected location of a person or item to be located;

- 17 -

2. information on the identity and location of a person to be served, that person's relationship to the criminal investigation or proceeding, and the manner to which service is to be made;

3. the identity and location of persons from whom evidence is sought, a description of the manner in which any testimony or statement is to be taken and recorded, and a description of the testimony or statement sought, which may include a list of questions to be answered;

4. a precise description of the place or person to be searched and the item to be seized;

5. a description of any particular procedure to be followed in executing the request;

6. information as to the allowances and expenses to which a person appearing in the requesting state will be entitled; and

7. any other information that may be brought to the attention of the Requested State to facilitate its execution of the request.

(3)    A request shall be in writing except that in urgent situations the Central Authorities may utilize another form. If the request is not in writing, it shall be confirmed in writing within ten days unless the Central Authority of the Requested State agrees otherwise.


Article 18

Language to be Used

The request may be made in the language of either the Requesting or Requested State. A request in the language of the Requesting State shall be accompanied by a translation into the language of the Requested State. Any documents attached to the request, which are not in the language of the Requested State, should be accompanied by a translation into the language of that State, unless otherwise agreed.

- 18 -

## Article 19
### Execution of Requests

(1)    The law of the Requested State governing criminal investigations or proceedings shall apply to the execution of a request except to the extent that this Treaty provides otherwise. The Requested State shall honor a request to follow a specific procedure not provided for by the Treaty unless such procedure is prohibited by the law or incompatible with the procedure of the Requested State.

(2)    If the authority that receives a request lacks competence to comply therewith, the Central Authority shall assure that the request is transmitted to the appropriate authority of the Requested State.

(3)    The appropriate authorities of the Requested State shall use all legal means within their power to assist the Requesting State before the competent judges and officers of the Requested State. The courts of the Requested State shall have authority to issue such orders, including search warrants, as are necessary to execute the request.

(4)    With respect to Articles 10 and 11, the Requested State shall, on request, give the Requesting State reasonable notice of the date and place of the execution of the request.

(5)    The Requested State shall execute a request as soon as possible.

   1. If the Requested State considers that the information furnished in support of the request is insufficient to render assistance in accordance with this Treaty, it shall request the submission of the necessary additional information.

   2. If the Requested State determines that execution of the request would interfere with an ongoing criminal investigation or proceeding in that State, it may postpone execution, or make execution subject to conditions determined to be necessary after consultations with the Central Authority of the Requesting State. If the Requesting

- 19 -

State accepts the assistance subject to the conditions, it shall comply with the conditions.

(6)   If execution of the request is completely or partially refused, postponed, or cannot be effected, the Central Authority of the Requested State shall promptly communicate the reasons to the Central Authority of the Requesting State.

### Article 20
#### Return of Items

(1)   The Requesting State shall return any item provided in response to a request as soon as possible unless the Requested State waives the return thereof.

(2)   The Central Authority of the Requested State may require that the Requesting State agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

### Article 21
#### Expenses

(1)   The Requested State shall pay all expenses, fees and disbursements arising from the execution of a request in that State except for those related to:

1. the services of an expert;

2. translation, interpretation, and transcription;

- 20 -

    3. the travel and appearance of a witness or expert outside the Requested State pursuant to Article 5 or inside the Requested State for the convenience of the Requesting State pursuant to Article 10; and

    4. the transfer of a person in custody outside the Requested State pursuant to Article 7.

(2)    If, during the execution of a request, it becomes apparent that complete execution will entail expenses of an extraordinary nature, the Central Authorities shall consult to determine the terms and conditions under which execution may continue.

### Article 22
### Referral for Investigation
### or Prosecution

(1)    A Party may refer to the other Party matters for consideration for criminal investigation or prosecution.

(2)    The referral shall be accompanied by a summary of facts and a translation thereof into the language of the Party receiving it.

(3)    The Party receiving the referral shall notify the other Party of the disposition of the referral and the reasons therefor.

### Article 23
### Certification

Except where this Treaty otherwise provides, documents and records transmitted under this Treaty shall not require any certification, authentication, or other legalization.

- 21 -

## Article 24
### Consultations

The Central Authorities shall consult, at times mutually agreed to by them, to promote the most effective use of this Treaty. The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Treaty.

## Article 25
### Other Agreements

(1)  Assistance and procedures set forth in this Treaty shall not prevent either Party from granting assistance to the other through the provisions of other applicable international agreements or through the provisions of its domestic laws. The Parties may also provide assistance pursuant to any bilateral arrangement, agreement, or practice that may be applicable.

(2)  Assistance under this Treaty may be refused for a tax offense if the Requested State views the tax offence as being based

   1. on taxation in the Requesting State that is contrary to the provisions of any Convention for the avoidance of double taxation to which both States are party, or

   2. in the case of taxes not covered by any such Convention, on taxation in the Requesting State that is contrary to its fundamental principles of taxation.

(3)  The police authorities of a Party, in connection with criminal investigations within their competence, may request assistance directly from the police authorities of the other Party where such assistance relates merely to obtaining information, providing police documents or records, locating persons or questioning persons by police authorities. Requests by German police authorities shall be addressed to the appropriate competent authority in the United

- 22 -

States of America; requests by United States police authorities shall be addressed to the Federal Criminal Police Office of the Federal Republic of Germany.


### Article 26
### Ratification, Entry into Force and Termination

(1)   This Treaty shall be subject to ratification; the instruments of ratification shall be exchanged as soon as possible.

(2)   This Treaty shall enter into force 30 days after the exchange of the instruments of ratification.

(3)   This Treaty shall continue in force until the expiration of one year from the date on which written notice of termination is given by one Party to the other through the diplomatic channel. The date on which the other Party receives such notice shall be decisive.


Done at  *WASHINGTON*   on  *OCTOBER 14,*   2003 in duplicate in the German and English languages, both texts being equally authentic.


For the                                             For the
United States of America                            Federal Republic of Germany

Appendix

to the

Treaty

between

the Federal Republic of Germany

and

the United States of America

on

Mutual Legal Assistance in Criminal Matters

The United States Department of Justice will act as the central authority for making and receiving all requests under the Treaty for Mutual Assistance in Criminal Matters. The following United States officials shall be competent to initiate Treaty requests, and to execute Treaty requests made by competent authorities in the Federal Republic of Germany:

United States federal judges;

Judges of courts of the states and territories of the United States, the Commonwealth of Puerto Rico, the Virgin Islands, and the Northern Marianas having general criminal jurisdiction;

United States Attorneys;

Attorneys in the legal divisions of the United States Department of Justice;

Attorneys General of the states and territories of the United States, the Commonwealth of Puerto Rico, the Virgin Islands, and the Northern Marianas;

- 2 -

District Attorneys in the states and territories of the United States and
the Commonwealth of Puerto Rico, the Virgin Islands, and the Northern Marianas; and

Federal, state, and local law enforcement agencies having legal authority to refer matters to
the U.S. Department of Justice for criminal prosecution.

Competent German authorities for the purposes of Article 1, paragraph 3 of the Treaty
between the Federal Republic of Germany and the United States of America on Mutual
Assistance in Criminal Matters are:

The Federal Ministry of Justice;

the Federal Ministry of Economics and Labour;

the Federal Court of Justice, Karlsruhe;

the Public Prosecutor General of the Federal Court of Justice, Karlsruhe;

the Ministry of Justice of Baden-Wuerttemberg, Stuttgart;

the Bavarian State Ministry of Justice, Munich;

the Senate Department for Justice, Berlin;

the Ministry of Justice and European Affairs of Land Brandenburg, Potsdam;

the Senator for Justice and Constitution of the Free Hanseatic City of Bremen, Bremen;

the Justice Authority of the Free and Hanseatic City of Hamburg, Hamburg;

the Hessian Ministry of Justice, Wiesbaden;

- 3 -

the Ministry of Justice of Mecklenburg-Vorpommern, Schwerin;
the Ministry of Justice of Lower-Saxony, Hanover;

the Ministry of Justice of Land North-Rhine/Westphalia, Duesseldorf;

the Ministry of Justice of Land Rhineland-Palatinate, Mainz;

the Ministry of Justice of the Saarland, Saarbruecken;

the Saxonian State Ministry of Justice, Dresden;

the Ministry of Justice of Land Saxony-Anhalt, Magdeburg;

the Ministry of Justice and for Women, Youth and Family Affairs of Schleswig-Holstein, Kiel;

the Thuringian Ministry of Justice, Erfurt;

the Bavarian Supreme Court, Munich;

the Higher Regional Courts;

the Regional Courts;

the Local Courts;

the Chief Public Prosecutor at the Bavarian Supreme Court, Munich;

the Chief Public Prosecutor at the Higher Regional Courts;

the Directors of Public Prosecutions at the Regional Courts;

– 4 –

the Central Office of the Land Judicial Administrations for the Investigation of National
Socialist Crimes, Ludwigsburg;
the Federal Criminal Police Office;

Federal Cartel Office;

the Central Office of the German Customs Investigations Service.

Vertrag

zwischen

der Bundesrepublik Deutschland

und

den Vereinigten Staaten von Amerika

über

die Rechtshilfe in Strafsachen

- 2 -

Inhaltsverzeichnis

Artikel 1 ................................................................................ Verpflichtung

Artikel 2 ........................................................................ Zentrale Behörden

Artikel 3 ................................................................................... Ablehnung

Artikel 4 ............................................................... Zustellung von Urkunden

Artikel 5 ........................................................... Zeugen und Sachverständige

Artikel 6 ............................................................................ Sicheres Geleit

Artikel 7 ................................................................ Überstellung von Häftlingen

Artikel 8 ........................................................ Durchbeförderung von Häftlingen

Artikel 9 ........................................................ Überlassung amtlicher Unterlagen

Artikel 10 ............................................ Zeugenvernehmung und Vorlage von Beweismitteln

Artikel 11 ........................................................ Durchsuchung und Beschlagnahme

Artikel 12 ........................................................ Besondere Ermittlungsmethoden

Artikel 13 ........................................................ Rechtshilfe in Einziehungsverfahren

Artikel 14 ........................................................................ Vertraulichkeit

Artikel 15 .......................................................................... Bedingungen

Artikel 16 ........................................................ Auskünfte und Beweismittel in

................................................ kartellrechtlichen Verfahren und Ermittlungen

Artikel 17 ........................................................ Inhalt und Form der Ersuchen

Artikel 18 ........................................................ Anzuwendende Sprache

Artikel 19 ........................................................ Erledigung von Ersuchen

Artikel 20 ........................................................ Rückgabe von Gegenständen

Artikel 21 ........................................................................... Kosten

Artikel 22 .................................... Verweisung zum Zweck der Ermittlung oder Verfolgung

Artikel 23 ........................................................................ Beglaubigung

Artikel 24 ...................................................................... Konsultationen

Artikel 25 ........................................................ Andere Übereinkünfte

Artikel 26 ........................................ Ratifikation, Inkrafttreten und Kündigung

Anhang ........................................................ Zuständige Behörden

- 3 -

Die Bundesrepublik Deutschland

und

die Vereinigten Staaten von Amerika -

in dem Wunsch, die Zusammenarbeit beider Staaten bei der Bekämpfung der Kriminalität wirksamer zu gestalten und insbesondere den Verkehr zwischen beiden Staaten auf dem Gebiet der Rechtshilfe in Strafsachen zu erleichtern -

sind wie folgt übereingekommen:

Artikel 1

Verpflichtung

(1)   Die Vertragsparteien verpflichten sich, gemäß den Bestimmungen dieses Vertrags einander durch ihre zuständigen Behörden soweit wie möglich Rechtshilfe in strafrechtlichen Ermittlungsverfahren und in Strafverfahren, einschließlich solcher wegen Zoll-, Abgaben- und Steuerstraftaten, zu leisten. Strafrechtliche Ermittlungsverfahren oder Strafverfahren im Sinne dieses Vertrags schließen Ermittlungen und Verfahren wegen Ordnungswidrigkeiten nach dem deutschen Kartellrecht ein. Strafrechtliche Ermittlungsverfahren oder Strafverfahren nach diesem Vertrag sind auch Ermittlungen und Verfahren wegen Ordnungswidrigkeiten, soweit sie im ersuchenden Staat zu Gerichts- oder Strafverfahren führen können und soweit sie im ersuchten Staat Straftaten darstellen würden.

(2)   Die Rechtshilfe umfasst Folgendes:

   1. Fahndung nach und Identifizierung von Personen oder Gegenständen;

- 4 -

2. Zustellung von Urkunden;

3. Abnahme von Aussagen oder anderen Erklärungen;

4. Überstellung von Häftlingen zur Zeugenaussage oder zu anderen Zwecken;

5. Überlassung von Urkunden, Akten und anderen Gegenständen;

6. Durchsuchung und Beschlagnahme;

7. besondere Ermittlungsmethoden wie zum Beispiel Überwachung des Fernmeldeverkehrs, verdeckte Ermittlungen und kontrollierte Lieferungen;

8. Unterstützung bei Verfahren in Bezug auf Sicherstellung und Einziehung von Vermögenswerten, Rückerstattung, Beitreibung von Geldstrafen; und

9. jede andere Form der Rechtshilfe, die nicht nach dem Recht des ersuchten Staates verboten ist.

(3)  Der Ausdruck „zuständige Behörde" bedeutet jede Behörde, die nach dem Recht oder aufgrund der Praxis einer Vertragspartei befugt ist, um Rechtshilfe in strafrechtlichen Ermittlungsverfahren oder in Strafverfahren zu ersuchen oder die Erledigung von Ersuchen um Rechtshilfe in strafrechtlichen Ermittlungsverfahren oder in Strafverfahren anzuordnen oder solche Ersuchen zu erledigen. Die zuständigen Behörden beider Vertragsparteien sind im Anhang zu diesem Vertrag aufgeführt. Der Anhang ist Bestandteil dieses Vertrags. Jede Vertragspartei kann ihre Liste der zuständigen Behörden durch Austausch von Noten auf diplomatischem Weg ändern.

(4)  Die Rechtshilfe wird unabhängig davon geleistet, ob die Handlung, die Gegenstand des strafrechtlichen Ermittlungsverfahrens oder des Strafverfahrens im ersuchenden Staat ist,

- 5 -

nach dem Recht des ersuchten Staates eine Straftat oder eine Ordnungswidrigkeit darstellt, sofern in diesem Vertrag nichts anderes vorgesehen ist.

(5)     Eine Vertragspartei ersucht um Rechtshilfe gemäß den Bestimmungen dieses Vertrags, wenn Urkunden, Akten und andere Gegenstände, die sich im Hoheitsgebiet der anderen Vertragspartei befinden und im Zusammenhang mit einem unter den Geltungsbereich dieses Vertrags fallenden strafrechtlichen Ermittlungsverfahren oder Strafverfahren benötigt werden, durch Anwendung von Zwangsmaßnahmen oder Durchsuchung und Beschlagnahme beschafft werden sollen. Ist der Erfolg eines strafrechtlichen Ermittlungsverfahrens oder Strafverfahrens durch die Ablehnung des Ersuchens oder die ungebührliche Verzögerung seiner Erledigung gefährdet, so konsultieren die zentralen Behörden einander umgehend mit dem Ziel, ein beiderseitig annehmbares Ergebnis zu erreichen. Wenn innerhalb von vierzig Tagen ab dem Beginn dieser Konsultationen keine befriedigende Lösung gefunden wird, werden die vertraglichen Verpflichtungen der Vertragsparteien als erfüllt angesehen.

(6)     Aus den Bestimmungen dieses Vertrags erwächst einer privaten Partei nicht das Recht, in einem Verfahren Maßnahmen zu ergreifen, um Beweismaterial zu beschaffen, zu unterdrücken oder auszuschließen oder die Erledigung eines Ersuchens zu behindern. Unabhängig von diesem Vertrag bestehende Rechte bleiben jedoch unberührt.

(7)     Dieser Vertrag findet auf strafrechtliche Ermittlungsverfahren und auf Strafverfahren wegen Devisenstraftaten nur Anwendung, soweit dies von den Vertragsparteien durch Austausch von Noten auf diplomatischem Weg vereinbart worden ist.

Artikel 2

Zentrale Behörden

(1)     Jede Vertragspartei bestimmt eine zentrale Behörde, die Ersuchen nach diesem Vertrag stellt und entgegennimmt.

- 6 -

(2)    Für die Vereinigten Staaten von Amerika ist die zentrale Behörde der Justizminister und oberste Staatsanwalt (Attorney General) oder eine vom Justizminister und obersten Staatsanwalt bestimmte Person. Für die Bundesrepublik Deutschland ist die zentrale Behörde das Bundesministerium der Justiz.

(3)    Für die Zwecke dieses Vertrags verkehren die zentralen Behörden unmittelbar miteinander.

(4)    In dringenden Fällen können Ersuchen unmittelbar zwischen den Landesjustizverwaltungen oder dem Bundeskartellamt der Bundesrepublik Deutschland und der zentralen Behörde der Vereinigten Staaten von Amerika übermittelt werden.


Artikel 3

Ablehnung


Die Rechtshilfe kann verweigert werden, wenn die Erledigung des Ersuchens die Souveränität, die Sicherheit oder andere wesentliche Interessen des ersuchten Staates beeinträchtigen würde.


Artikel 4

Zustellung von Urkunden


(1)    Der ersuchte Staat bewirkt die Zustellung von Urkunden, die ihm zu diesem Zweck vom ersuchenden Staat übermittelt werden.

(2)    Abgesehen von dringenden Fällen wird ein Ersuchen um Zustellung einer Ladung nur ausgeführt, wenn es dem ersuchten Staat spätestens einen Monat vor dem für das Erscheinen des Zustellungsempfängers festgesetzten Zeitpunkt zugeht.

- 7 -

(3)    Die Zustellung wird nachgewiesen durch eine datierte und vom Empfänger unterschrie-
bene Empfangsbestätigung oder durch eine amtliche Erklärung, welche die Form und das
Datum der Zustellung beurkundet.

(4)    Eine Person, die nicht Staatsangehöriger des ersuchenden Staates und nicht dort an-
sässig ist und die einer aufgrund eines Ersuchens zugestellten Ladung in den ersuchenden
Staat nicht Folge leistet, darf deswegen nicht bestraft oder Zwangsmaßnahmen unterworfen
werden.


Artikel 5

Zeugen und Sachverständige

(1)    Wird vom ersuchenden Staat um das Erscheinen einer sich im ersuchten Staat aufhal-
tenden Person außerhalb des ersuchten Staates ersucht, so fordert der ersuchte Staat diese
Person auf, dementsprechend zu erscheinen. Die zentrale Behörde des ersuchten Staates
unterrichtet die zentrale Behörde des ersuchenden Staates unverzüglich von der Antwort der
betreffenden Person.

(2)    Der ersuchende Staat gibt an, in welcher Höhe die Kosten der betreffenden Person ge-
zahlt werden. Eine Person, die sich bereit erklärt zu erscheinen, kann vom ersuchenden Staat
einen Vorschuss zur Deckung dieser Kosten erhalten.


Artikel 6

Sicheres Geleit

(1)    Soweit im Ersuchen nichts anderes angegeben ist, darf eine Person, die aufgrund eines
Ersuchens als Zeuge oder Sachverständiger im ersuchenden Staat erscheint, wegen Handlun-
gen oder Verurteilungen aus der Zeit vor ihrer Abreise aus dem ersuchten Staat weder ver-

- 8 -

folgt noch in Haft gehalten noch einer sonstigen Beschränkung ihrer persönlichen Freiheit unterworfen werden.

(2)    Eine Person, die aufgrund eines Ersuchens im ersuchenden Staat erscheint, um sich wegen einer ihr zur Last gelegten Handlung strafrechtlich zu verantworten, darf wegen nicht in der Ladung angeführter Handlungen oder Verurteilungen aus der Zeit vor ihrer Abreise aus dem ersuchten Staat weder verfolgt noch in Haft gehalten noch einer sonstigen Beschränkung ihrer persönlichen Freiheit unterworfen werden.

(3)    Das in den Absätzen 1 und 2 vorgesehene sichere Geleit endet, wenn die Person während fünfzehn Tagen nach der Mitteilung, dass ihre Anwesenheit nicht mehr erforderlich ist, trotz der Möglichkeit, den ersuchenden Staat zu verlassen, diesen nicht verlassen hat oder, nachdem sie ihn verlassen hat, dorthin zurückgekehrt ist.


Artikel 7

Überstellung von Häftlingen


(1)    Eine im ersuchten Staat in Haft befindliche Person, deren Anwesenheit außerhalb dieses Staates für Zwecke der Rechtshilfe nach diesem Vertrag begehrt wird, wird zu derartigen Zwecken überstellt.

(2)    Eine im ersuchenden Staat in Haft befindliche Person, deren Anwesenheit im ersuchten Staat für Zwecke der Rechtshilfe nach diesem Vertrag begehrt wird, wird vom ersuchenden Staat an den ersuchten Staat überstellt.

(3)    Die Überstellung wird nicht bewilligt, wenn

1. die in Haft befindliche Person nicht zustimmt oder

2. zwingende Gründe der Überstellung dieser Person entgegenstehen.

- 9 -

(4)   Für die Zwecke dieses Artikels

    1. ist der übernehmende Staat befugt und verpflichtet, die überstellte Person in Haft zu halten, sofern nicht der übergebende Staat etwas anderes genehmigt;

    2. überstellt der übernehmende Staat die überstellte Person in den Gewahrsam des übergebenden Staates zurück, sobald die Umstände es erlauben oder wie anderweitig vereinbart;

    3. verlangt der übernehmende Staat nicht, dass der übergebende Staat für die Rück-überstellung der überstellten Person ein Auslieferungsverfahren oder irgendein anderes Verfahren einleitet;

    4. wird die Zeit, welche die überstellte Person im übernehmenden Staat in Haft ver-bringt, auf die Verbüßung der im übergebenden Staat verhängten Strafe angerechnet; und

    5. trifft der ersuchende Staat, falls der übernehmende Staat ein Drittstaat ist, alle notwendigen Vorkehrungen zur Erfüllung der Anforderungen dieses Artikels, einschließlich der Einholung der Zustimmung des Drittstaats.


## Artikel 8
### Durchbeförderung von Häftlingen

(1)   Der ersuchte Staat kann genehmigen, dass eine von dem ersuchenden Staat oder einem Drittstaat in Haft gehaltene Person, deren Anwesenheit vom ersuchenden Staat zur Leistung von Rechtshilfe in einem strafrechtlichen Ermittlungsverfahren oder in einem Strafverfahren begehrt wird, durch sein Hoheitsgebiet befördert wird.

- 10 -

(2)    Der ersuchte Staat ist befugt und verpflichtet, diese Person während der Durchbeförderung in Haft zu halten.


Artikel 9

Überlassung amtlicher Unterlagen

(1)    Der ersuchte Staat stellt öffentlich zugängliche Unterlagen, einschließlich Urkunden oder Informationen in jeglicher Form, die sich im Besitz einer Regierungsstelle oder Behörde befinden, zur Verfügung.

(2)    Der ersuchte Staat kann Unterlagen, einschließlich Urkunden oder Informationen in jeglicher Form, die sich im Besitz einer Regierungsstelle oder Behörde befinden, aber nicht öffentlich zugänglich sind, in demselben Umfang und unter denselben Bedingungen zur Verfügung stellen, wie sie seinen eigenen entsprechenden Behörden zugänglich wären.

(3)    Der ersuchte Staat kann beglaubigte Abschriften der angeforderten Unterlagen übermitteln, es sei denn, der ersuchende Staat ersucht ausdrücklich um Übermittlung von Urschriften; in diesem Fall gibt der ersuchte Staat dem Ersuchen soweit wie möglich statt.

(4)    Artikel 11 Absatz 1 findet keine Anwendung auf die Überlassung von Unterlagen oder Abschriften davon nach diesem Artikel.

(5)    Nach diesem Artikel überlassene Unterlagen oder Abschriften werden auf Ersuchen nach dem Übereinkommen zur Befreiung ausländischer öffentlicher Urkunden von der Legalisation vom 5. Oktober 1961 beglaubigt oder von dem zuständigen Verwahrer durch eine Bescheinigung der Echtheit der amtlichen Unterlagen entsprechend dem im Ersuchen angegebenen Verfahren bestätigt. Liegen solche Unterlagen nicht vor oder existieren sie nicht, so wird dies auf Ersuchen von dem zuständigen Verwahrer entsprechend dem im Ersuchen angegebenen Verfahren bestätigt. Nach diesem Absatz beglaubigte Unterlagen oder Abschriften oder eine Bestätigung, wonach solche Unterlagen nicht vorliegen oder nicht

- 11 -

existieren, sind im ersuchenden Staat als Beweismittel im Sinne eines Nachweises der Richtigkeit der darin enthaltenen Angaben zulässig.


## Artikel 10
## Zeugenvernehmung und Vorlage
## von Beweismitteln

(1)    Falls erforderlich, werden Zwangsmittel zur Erledigung von Ersuchen um Zeugenvernehmung oder Vorlage von Urkunden, Unterlagen und anderen Gegenständen in der gleichen Weise angewendet wie in strafrechtlichen Ermittlungsverfahren oder Strafverfahren im ersuchten Staat.

(2)    Wünscht der ersuchende Staat, dass Zeugen oder Sachverständige unter Eid aussagen, ersucht er ausdrücklich darum. Wer in Erledigung eines Ersuchens unter Eid falsch aussagt, unterliegt der Strafverfolgung im ersuchten Staat nach dem Strafrecht dieses Staates.

(3)    Der ersuchte Staat gestattet die Anwesenheit von im Ersuchen genannten Verfahrensbeteiligten bei der Erledigung des Ersuchens und erlaubt diesen, Fragen vorzuschlagen, die an die aussagende Person gerichtet werden. Den anwesenden Personen ist es gestattet, ein Wortprotokoll des Verfahrens anzufertigen.

(4)    Audio-visuelle Mittel zur Aufzeichnung von Zeugenaussagen sind nur mit Zustimmung der aussagenden Person gestattet.

(5)    Macht die betreffende Person einen Anspruch auf Immunität, Unfähigkeit oder ein Vorrecht nach dem Recht des ersuchenden Staates geltend, der nicht im Ersuchen erwähnt ist, kann der ersuchte Staat den ersuchenden Staat um eine Erklärung über das Bestehen des Anspruchs bitten. Wird das Bestehen des Anspruchs nicht vom ersuchenden Staat bestätigt, so wird die Beweiserhebung durchgeführt; die Entscheidung über das Bestehen des Anspruchs im ersuchenden Staat bleibt unberührt.

- 12 -

(6)    Beweismitteln, die im ersuchten Staat nach diesem Artikel vorgelegt werden, oder dem Gegenstand der nach diesem Artikel durchgeführten Zeugenvernehmung wird auf Verlangen eine Bestätigung beigefügt. Liegen solche Beweismittel nicht vor oder existieren sie nicht, so wird dies auf Verlangen bestätigt. Diese Bestätigungen werden nach den im Ersuchen genannten Verfahren beglaubigt. Handelt es sich um Geschäftsunterlagen, so kann die Bestätigung durch eine Bescheinigung, ein Protokoll oder ein anderes Schriftstück erfolgen, worin die vom ersuchenden Staat verlangten wesentlichen Informationen enthalten sind. Derart beglaubigte Beweismittel, insbesondere Geschäftsunterlagen, oder Bestätigungen, wonach derartige Unterlagen nicht vorliegen oder nicht existieren, sind im ersuchenden Staat als Beweismittel im Sinne eines Nachweises der Richtigkeit der darin enthaltenen Angaben zulässig.


### Artikel 11
### Durchsuchung und Beschlagnahme

(1)    Der ersuchte Staat erledigt Ersuchen um Durchsuchung, Beschlagnahme und Herausgabe von Gegenständen an den ersuchenden Staat, wenn

1. die dem Ersuchen zugrunde liegende Handlung ihrer Art nach sowohl nach dem Recht des ersuchenden Staates als auch nach dem des ersuchten Staates strafbar oder nach deutschem Recht mit Bußgeld bewehrt ist,

2. das Ersuchen Angaben enthält, die eine solche Maßnahme nach dem Recht des ersuchten Staates rechtfertigen, und

3. ein Beschlagnahmebeschluss einer zuständigen Behörde oder eine Erklärung der zentralen Behörde des ersuchenden Staates beigefügt oder im Ersuchen enthalten ist, woraus hervorgeht, dass die Pflicht zur Herausgabe oder Beschlagnahme gegeben wäre, wenn sich der Gegenstand im ersuchenden Staat befände.

- 13 -

(2)   Im Sinne von Absatz 1 wird eine Straftat ihrer Art nach als nach dem Recht der Bundesrepublik Deutschland strafbar angesehen, ohne dass dabei Tatbestandsmerkmale der Straftat beachtlich sind, die nach dem Recht der Vereinigten Staaten dazu bestimmt sind, die Zuständigkeit der Regierung der Vereinigten Staaten zu begründen, wie Beförderung von Personen und Sachen zwischen den Einzelstaaten und außerhalb der Vereinigten Staaten, Benutzung der Post oder anderer Nachrichtenmittel oder Benutzung anderer Mittel zur Durchführung des Handels zwischen den Einzelstaaten oder mit dem Ausland.

(3)   Auf Ersuchen bestätigt jeder Amtsträger im ersuchten Staat, der einen beschlagnahmten Gegenstand verwahrt, unter Anwendung der im Ersuchen angegebenen Verfahren die Identität des Gegenstands, die lückenlose Dauer des Gewahrsams und jede Zustandsver- änderung. Bestätigungen unter Anwendung der im Vertrag angegebenen Verfahren sind im ersuchenden Staat als Beweis der Richtigkeit der darin enthaltenen Angaben zulässig.


Artikel 12

Besondere Ermittlungsmethoden

Jede Vertragspartei kann auf Ersuchen der anderen Vertragspartei im Rahmen ihrer Mög- lichkeiten und unter den nach ihrem innerstaatlichen Recht geltenden Bedingungen

1. die notwendigen Schritte für die Überwachung der Telekommunikation einleiten,

2. die Vornahme strafrechtlicher Ermittlungen durch unter verdeckter oder falscher Identität handelnder Strafverfolgungsbeamter der anderen Vertragspartei in ihrem Hoheitsgebiet gestatten, und

3. im Zusammenhang mit strafrechtlichen Ermittlungen kontrollierte Lieferungen in ihrem Hoheitsgebiet gestatten.

- 14 -

Artikel 13

Rechtshilfe in Einziehungsverfahren

(1)  Erlangt die zentrale Behörde einer Vertragspartei Kenntnis von aus Straftaten stammenden Erträgen oder von Tatwerkzeugen, die sich im Hoheitsgebiet der anderen Vertragspartei befinden und nach dem Recht dieser Vertragspartei der Einziehung oder sonstigen Beschlagnahme unterliegen, kann sie die zentrale Behörde der anderen Vertragspartei davon unterrichten. Ist die andere Vertragspartei diesbezüglich zuständig, so kann sie diese Auskünfte an ihre Behörden weitergeben, um prüfen zu lassen, ob Maßnahmen zu ergreifen sind. Diese Behörden treffen ihre Entscheidung nach dem Recht ihres Staates und unterrichten über ihre zentrale Behörde die andere Vertragspartei von der getroffenen Maßnahme.

(2)  Die Vertragsparteien unterstützen einander in dem nach ihrem jeweiligen Recht erlaubten Umfang in Verfahren bezüglich der Einziehung von aus Straftaten stammenden Erträgen und von Tatwerkzeugen, der Rückerstattung an die Opfer von Straftaten und der Beitreibung von Geldstrafen, die in einem Strafverfahren verhängt wurden. Dazu können Maßnahmen zur vorläufigen Sicherstellung von Erträgen oder Tatwerkzeugen bis zu einem weiteren Verfahren gehören.

(3)  Die Vertragspartei, die aus Straftaten stammende Erträge oder Tatwerkzeuge in Gewahrsam hat, verfügt darüber in Übereinstimmung mit ihrem Recht, wobei die Möglichkeit eingeschlossen ist, derartige Vermögenswerte oder Erträge daraus ganz oder teilweise an die andere Vertragspartei zu übertragen.

Artikel 14

Vertraulichkeit

(1)  Der ersuchte Staat bemüht sich nach besten Kräften, ein Ersuchen und seinen Inhalt vertraulich zu behandeln, wenn die zentrale Behörde des ersuchenden Staates um Vertraulich-

- 15 -

keit ersucht, weil die Offenbarung den Erfolg des strafrechtlichen Ermittlungsverfahrens oder des Strafverfahrens gefährden könnte. Kann das Ersuchen nicht ohne Aufhebung der Vertraulichkeit erledigt werden, so teilt die zentrale Behörde des ersuchten Staates dies der zentralen Behörde des ersuchenden Staates mit, die dann entscheidet, ob das Ersuchen dennoch erledigt werden soll.

(2)    Die zentrale Behörde des ersuchten Staates kann darum ersuchen, dass die nach diesem Vertrag überlassenen Beweismittel oder Auskünfte vertraulich behandelt oder nur unter von ihr genannten Bedingungen verwertet werden. Nimmt der ersuchende Staat die an Bedingungen geknüpften Auskünfte oder Beweismittel an, so bemüht er sich nach besten Kräften, die Bedingungen zu erfüllen.

Artikel 15

Bedingungen

(1)    Wenn die Rechtshilfe nach Artikel 3 verweigert werden kann, konsultiert die zentrale Behörde des ersuchten Staates die zentrale Behörde des ersuchenden Staates, um zu prüfen, ob Rechtshilfe unter von ihr für notwendig erachteten Bedingungen geleistet werden kann. Nimmt der ersuchende Staat die an Bedingungen geknüpfte Rechtshilfe an, so hat er diese Bedingungen zu erfüllen.

(2)    Der ersuchende Staat darf ohne vorherige Zustimmung der zentralen Behörde des ersuchten Staates nach diesem Vertrag erlangte Beweismittel oder Auskünfte nicht zu einem anderen als dem in dem Ersuchen beschriebenen Zweck verwenden, mit Ausnahme der in Absatz 3 aufgeführten Zwecke.

(3)    Der ersuchende Staat darf nach diesem Vertrag erlangte Beweismittel und Auskünfte ohne vorherige Zustimmung der zentralen Behörde des ersuchten Staates verwenden

- 16 -

1. für jeden anderen Zweck, für den Rechtshilfe nach diesem Vertrag gewährt werden würde;

2. zur Verhinderung der Begehung schwerer Straftaten,

3. in einem nicht strafgerichtlichen Verfahren oder Verwaltungsverfahren, das sich auf einen in den Nummern 1 und 2 genannten Zweck bezieht, und

4. zur Abwendung einer erheblichen Gefahr für die öffentliche Sicherheit.

Die zentrale Behörde des ersuchten Staates kann jedoch diese Verwendung in einem bestimmten Fall zu dem Zeitpunkt, in dem der ersuchte Staat das Beweismittel oder die Auskünfte zur Verfügung stellt, untersagen. In diesem Falle darf der ersuchende Staat die Beweismittel oder Auskünfte, auf die sich die Untersagung bezieht, ohne vorherige Zustimmung der zentralen Behörde des ersuchten Staates in keinem anderen Ermittlungs- oder Gerichtsverfahren als in dem im Rechtshilfeersuchen beschriebenen verwenden.

(4)   Ungeachtet einer Beschränkung der Weitergabe von Informationen nach diesem Artikel oder nach Artikel 16 kann der ersuchende Staat ein Beweismittel oder eine Auskunft dem Angeklagten in einem Strafverfahren offen legen, wenn das Beweismittel oder die Information den Angeklagten entlasten kann oder die Wahrhaftigkeit und Glaubwürdigkeit eines Zeugen betrifft, der gegen den Angeklagten ausgesagt hat. Der ersuchende Staat unterrichtet den ersuchten Staat im Voraus über jede vorgesehene Weitergabe.

(5)   Auskünfte oder Beweismittel, die im ersuchenden Staat im normalen Verlauf des Verfahrens, für das sie zur Verfügung gestellt wurden, öffentlich bekannt geworden sind, können danach für jeden Zweck verwertet werden.

(6)   Ein Staat, der ein Beweismittel oder eine Auskunft vorbehaltlich einer Bedingung nach diesem Artikel zur Verfügung stellt, kann von dem anderen Staat verlangen, dass er im Hinblick auf diese Bedingung die Verwendung des Beweismittels oder der Auskunft darlegt.

- 17 -

## Artikel 16

### Auskünfte und Beweismittel in kartellrechtlichen
### Verfahren und Ermittlungen

Auskünfte oder Beweismittel, die der ersuchende Staat im Zusammenhang mit Ermittlungs-
oder Gerichtsverfahren nach Maßgabe des Kartellrechts erhält, für die nach diesem Vertrag
Rechtshilfe geleistet werden kann, werden in der gleichen Weise wie nach innerstaatlichem
Recht erlangte Beweismittel oder Auskünfte vertraulich behandelt und nur an Personen oder
Behörden, einschließlich der Gerichte und Verwaltungsbehörden, weitergegeben, die für die
Verfolgung solcher Verstöße zuständig sind. Diese Personen oder Behörden dürfen die
erlangten Beweismittel oder Auskünfte nur für diese Zwecke verwenden. Sie dürfen die Be-
weismittel oder Auskünfte in öffentlichen Gerichtsverfahren oder für Gerichtsentscheidungen
offenbaren, sofern nicht die zuständige Behörde des ersuchten Staates, welche die Auskunft
oder das Beweismittel zur Verfügung gestellt hat, dem widerspricht. Ein Widerspruch wird
nur in außergewöhnlichen Fällen erhoben. Diese Auskunft oder dieses Beweismittel darf ohne
vorherige Zustimmung des ersuchten Staates nicht für andere Zwecke verwendet werden.

## Artikel 17

### Inhalt und Form der Ersuchen

(1)   Ein Ersuchen hat folgendes zu enthalten:

    1. die Bezeichnung der das Ersuchen stellenden Behörde;

    2. die Bezeichnung der Behörde, die das dem Ersuchen zugrundeliegende
       strafrechtliche Ermittlungsverfahren oder Strafverfahren führt;

    3. die Beschreibung des Gegenstands und der Art des strafrechtlichen
       Ermittlungsverfahrens oder Strafverfahrens einschließlich

       a)   einer zusammenfassenden Darstellung des Sachverhalts,

- 18 -

   b)   des Wortlauts der anwendbaren strafrechtlichen Bestimmungen und

   c)   sofern bekannt, der Identität der Person, auf die sich das strafrechtliche Ermittlungsverfahren oder Strafverfahren bezieht;

  4.  die Beschreibung der erbetenen Beweismittel oder Auskünfte oder der vorzunehmenden Handlungen sowie

  5.  die Angabe des Zweckes, für den die Beweismittel, Auskünfte oder Handlungen erbeten werden.

(2)   Gegebenenfalls und soweit möglich soll ein Ersuchen außerdem folgendes enthalten:

  1.  Angaben zur Identität oder Beschreibung und vermuteter Aufenthaltsbeziehungsweise Fundort einer gesuchten Person beziehungsweise eines gesuchten Gegenstands;

  2.  Angaben zu Identität und Aufenthalt eines Zustellungsempfängers, zum Zusammenhang zwischen dieser Person und dem strafrechtlichen Ermittlungsverfahren oder Strafverfahren und zur Art und Weise der Zustellung;

  3.  Identität und Aufenthalt der Personen, die vernommen werden sollen, eine Beschreibung, auf welche Weise eine Aussage oder Erklärung entgegen genommen und festgehalten werden soll, und eine Beschreibung der erbetenen Aussage oder Erklärung, möglicherweise einschließlich einer Liste von Fragen, die beantwortet werden sollen;

  4.  eine genaue Beschreibung der zu durchsuchenden Örtlichkeit oder Person und des zu beschlagnahmenden Gegenstands;

- 19 -

5.  eine Beschreibung eines bestimmten, bei der Erledigung des Ersuchens anzuwenden-
    den Verfahrens;

6.  Angaben zu Vergütungen und Spesen, auf die eine im ersuchenden Staat erscheinen-
    de Person Anspruch hat, und

7.  sonstige Angaben, die dem ersuchten Staat zur leichteren Erledigung des Ersuchens
    dienlich sein können.

(3)     Ein Ersuchen ist schriftlich zu stellen, wobei in dringenden Fällen die zentrale Behörde
eine andere Form verwenden darf. Wird das Ersuchen nicht schriftlich gestellt, so ist es inner-
halb von zehn Tagen schriftlich zu bestätigen, es sei denn, die zentrale Behörde des ersuchten
Staates stimmt einer anderen Regelung zu.


Artikel 18

Anzuwendende Sprache

Das Ersuchen kann in der Sprache des ersuchenden oder des ersuchten Staates gestellt wer-
den. Einem Ersuchen in der Sprache des ersuchenden Staates ist eine Übersetzung in die
Sprache des ersuchten Staates beizufügen. Dem Ersuchen beigefügten Schriftstücken, die
nicht in der Sprache des ersuchten Staates abgefasst sind, soll eine Übersetzung in die
Sprache dieses Staates beigefügt werden, soweit nicht etwas anderes vereinbart wird.


Artikel 19

Erledigung von Ersuchen

(1)     Bei der Erledigung von Ersuchen wird das auf strafrechtliche Ermittlungsverfahren oder
Strafverfahren anwendbare Recht des ersuchten Staates angewendet, soweit nicht dieser
Vertrag etwas anderes bestimmt. Dem Verlangen, nach einem bestimmten, im Vertrag nicht
vorgesehenen Verfahren vorzugehen, wird vom ersuchten Staat entsprochen, sofern dieses

- 20 -

Verfahren nicht nach dem Recht des ersuchten Staates unzulässig oder mit Verfahren dieses Staates unvereinbar ist.

(2)    Ist die Behörde, bei der ein Ersuchen eingeht, nicht zu dessen Erledigung befugt, so stellt die zentrale Behörde sicher, dass das Ersuchen der zuständigen Behörde des ersuchten Staates übermittelt wird.

(3)    Die zuständigen Behörden des ersuchten Staates unterstützen im Rahmen ihrer rechtlichen Möglichkeiten den ersuchenden Staat in jeder Weise vor den zuständigen Richtern und Beamten des ersuchten Staates. Die Gerichte des ersuchten Staates sind befugt, die für die Erledigung des Ersuchens erforderlichen Beschlüsse einschließlich Durchsuchungsbefehle zu erlassen.

(4)    In den Fällen der Artikel 10 und 11 unterrichtet der ersuchte Staat den ersuchenden Staat auf Verlangen rechtzeitig über Zeitpunkt und Ort der Erledigung des Ersuchens.

(5)    Der ersuchte Staat erledigt Ersuchen so bald wie möglich.

1. Ist der ersuchte Staat der Ansicht, dass die dem Ersuchen beigefügten Informationen für die Gewährung der Rechtshilfe nach diesem Vertrag nicht ausreichen, so ersucht er um die Vorlage der erforderlichen ergänzenden Informationen.

2. Stellt der ersuchte Staat fest, dass die Erledigung des Ersuchens ein laufendes strafrechtliches Ermittlungsverfahren oder Strafverfahren in diesem Staat beeinträchtigen würde, so kann er die Erledigung aufschieben oder sie an Bedingungen knüpfen, die nach Konsultationen mit der zentralen Behörde des ersuchenden Staates für notwendig erachtet werden. Nimmt der ersuchende Staat die an Bedingungen geknüpfte Rechtshilfe an, so hat er diese Bedingungen zu erfüllen.

- 21 -

(6)     Wird die Erledigung des Ersuchens ganz oder teilweise abgelehnt oder aufgeschoben oder kann sie nicht erfolgen, so unterrichtet die zentrale Behörde des ersuchten Staates umgehend die zentrale Behörde des ersuchenden Staates über die Gründe.


Artikel 20

Rückgabe von Gegenständen

(1)     Der ersuchende Staat gibt jeden in Erledigung eines Ersuchens übergebenen Gegenstand so bald wie möglich zurück, sofern nicht der ersuchte Staat auf die Rückgabe verzichtet.

(2)     Die zentrale Behörde des ersuchten Staates kann verlangen, dass der ersuchende Staat den Bedingungen, die zum Schutz der Interessen Dritter an dem zu übergebenden Gegenstand für notwendig erachtet werden. zustimmt.


Artikel 21

Kosten

(1)     Der ersuchte Staat zahlt alle Kosten, Gebühren und Auslagen, die bei der Erledigung eines Ersuchens in diesem Staat entstehen, mit Ausnahme solcher für

1. die Dienste eines Sachverständigen;

2. Übersetzung, Dolmetschen und Niederschrift;

3. die Reise und das Erscheinen eines Zeugen oder Sachverständigen außerhalb des ersuchten Staates nach Artikel 5 oder im ersuchten Staat im Interesse des ersuchenden Staates nach Artikel 10 und

4. die Überstellung eines Häftlings außerhalb des ersuchten Staates nach Artikel 7.

- 22 -

(2)    Wenn sich bei der Erledigung eines Ersuchens herausstellt, dass die vollständige Erledigung Kosten außergewöhnlicher Art verursacht, setzen sich die zentralen Behörden miteinander in Verbindung, um die Bedingungen festzulegen, unter denen die Erledigung fortgesetzt werden kann.

Artikel 22

Verweisung zum Zweck der Ermittlung

oder Verfolgung

(1)    Eine Vertragspartei kann eine Sache an die andere Vertragspartei zur Prüfung im Hinblick auf strafrechtliche Ermittlung und Verfolgung verweisen.

(2)    Der Verweisung ist eine zusammenfassende Darstellung des Sachverhalts nebst Übersetzung in die Sprache der empfangenden Vertragspartei beizufügen.

(3)    Die die Verweisung empfangende Vertragspartei unterrichtet die andere Vertragspartei über das bezüglich der Verweisung Veranlasste und die Gründe dafür.

Artikel 23

Bestätigung

Soweit dieser Vertrag nichts anderes vorsieht, bedürfen die nach diesem Vertrag übermittelten Schriftstücke und Aufzeichnungen keiner Bestätigung, Beglaubigung oder sonstigen Legalisation.

- 23 -

Artikel 24

Konsultationen

Die zentralen Behörden konsultieren einander zu gemeinsam vereinbarten Zeitpunkten, um die wirksamste Anwendung dieses Vertrags zu fördern. Die zentralen Behörden können sich ferner über praktischen Maßnahmen einigen, die gegebenenfalls notwendig sind, um die Durchführung dieses Vertrags zu erleichtern.

Artikel 25

Andere Übereinkünfte

(1)    Die in diesem Vertrag beschriebenen Rechtshilfehandlungen und Verfahren hindern die Vertragsparteien nicht daran, einander Rechtshilfe nach anderen anwendbaren internationalen Übereinkünften oder nach ihrem innerstaatlichen Recht zu leisten. Die Vertragsparteien können auch Rechtshilfe nach anwendbaren bilateralen Vereinbarungen, Abkommen oder Praktiken leisten.

(2)    Die Rechtshilfe nach diesem Vertrag kann bei einer Steuerstraftat abgelehnt werden, wenn die Steuerstraftat nach Auffassung des ersuchten Staates

1. auf einer Besteuerung im ersuchenden Staat gründet, die den Bestimmungen einer Übereinkunft zur Vermeidung der Doppelbesteuerung, bei dem beide Staaten Vertragspartei sind, widerspricht, oder

2. bei nicht von einer solchen Übereinkunft erfassten Steuern auf einer Besteuerung im ersuchenden Staat gründet, die seinen wesentlichen Steuergrundsätzen widerspricht.

(3)    Die Polizeibehörden einer Vertragspartei können im Zusammenhang mit strafrecht-lichen Ermittlungen in ihrer Zuständigkeit die Polizeibehörden der anderen Vertragspartei unmittelbar um Rechtshilfe ersuchen, wenn sich die Rechtshilfe nur auf die Erlangung von Auskünften, die Herausgabe polizeilicher Unterlagen, die Fahndung nach Personen oder die

- 24 -

polizeiliche Vernehmung bezieht. Ersuchen der deutschen Polizeibehörden werden an die geeignete zuständige Behörde in den Vereinigten Staaten von Amerika gerichtet; Ersuchen der Polizeibehörden der Vereinigten Staaten werden an das Bundeskriminalamt der Bundesrepublik Deutschland gerichtet.

Artikel 26

Ratifikation, Inkrafttreten und Kündigung

(1)    Dieser Vertrag bedarf der Ratifikation; die Ratifikationsurkunden werden so bald wie möglich ausgetauscht.

(2)    Dieser Vertrag tritt 30 Tage nach dem Austausch der Ratifikationsurkunden in Kraft.

(3)    Dieser Vertrag bleibt bis zum Ablauf eines Jahres nach dem Tag wirksam, an dem er von einer der Vertragsparteien auf diplomatischem Weg schriftlich gekündigt wird. Maßgeblich ist der Tag des Eingangs der Kündigung bei der anderen Vertragspartei.

Geschehen zu *Washington* am *14. Oktober* 2003 in zwei Urschriften, jede in deutscher und englischer Sprache, wobei jeder Wortlaut gleichermaßen verbindlich ist.

Für die                                                    Für die
Bundesrepublik Deutschland                 Vereinigten Staaten von Amerika

Anhang

zum

Vertrag

zwischen

der Bundesrepublik Deutschland

und

den Vereinigten Staaten von Amerika

über

die Rechtshilfe in Strafsachen

Das Justizministerium der Vereinigten Staaten fungiert als zentrale Behörde für die Stellung und Entgegennahme aller Ersuchen nach dem Vertrag über die Rechtshilfe in Strafsachen. Die folgenden Beamten der Vereinigten Staaten sind befugt, Ersuchen nach dem Vertrag in die Wege zu leiten und von den zuständigen Behörden in der Bundesrepublik Deutschland gestellte Ersuchen zu erledigen:

Bundesrichter der Vereinigten Staaten;

Richter an Gerichten der Einzelstaaten und Außengebiete der Vereinigten Staaten, des Freistaates Puerto Rico, der Jungferninseln und der Nördlichen Marianen mit allgemeiner strafrechtlicher Zuständigkeit;

Bundesanwälte der Vereinigten Staaten;

Anwälte in den Rechtsabteilungen des Justizministeriums der Vereinigten Staaten;

- 2 -

Justizminister der Einzelstaaten und Außengebiete der Vereinigten Staaten, des Freistaates Puerto Rico, der Jungferninseln und der Nördlichen Marianen;

Bezirksanwälte in den Einzelstaaten und Außengebieten der Vereinigten Staaten, des Freistaates Puerto Rico, der Jungferninseln und der Nördlichen Marianen; sowie

Bundesstaatliche, einzelstaatliche und örtliche Strafverfolgungsbehörden mit der Befugnis, Sachen zur strafrechtlichen Verfolgung an das U.S.-Justizministerium zu verweisen.

Zuständige deutsche Behörden im Sinne von Artikel 1 Absatz 3 des Vertrags zwischen der Bundesrepublik Deutschland und den Vereinigten Staaten von Amerika über die Rechtshilfe in Strafsachen sind:

das Bundesministerium der Justiz;

das Bundesministerium für Wirtschaft und Arbeit;

der Bundesgerichtshof, Karlsruhe;

der Generalbundesanwalt beim Bundesgerichtshof, Karlsruhe;

das Justizministerium des Landes Baden-Württemberg, Stuttgart;

das Bayerische Staatsministerium der Justiz, München;

die Senatsverwaltung für Justiz von Berlin, Berlin;

das Ministerium der Justiz und für Europaangelegenheiten des Landes Brandenburg, Potsdam;

- 3 -

der Senator für Justiz und Verfassung der Freien Hansestadt Bremen, Bremen;

die Justizbehörde der Freien und Hansestadt Hamburg, Hamburg;

das Hessische Ministerium der Justiz, Wiesbaden;

das Justizministerium Mecklenburg-Vorpommern, Schwerin;

das Niedersächsische Justizministerium, Hannover;

das Justizministerium des Landes Nordrhein-Westfalen, Düsseldorf;

das Ministerium der Justiz des Landes Rheinland-Pfalz, Mainz;

das Ministerium der Justiz des Saarlandes, Saarbrücken;

das Sächsische Staatsministerium der Justiz, Dresden;

das Ministerium der Justiz des Landes Sachsen-Anhalt, Magdeburg;

das Ministerium für Justiz, Frauen, Jugend und Familie des Landes Schleswig-Holstein, Kiel;

das Thüringer Justizministerium, Erfurt;

das Bayerische Oberste Landesgericht, München;

die Oberlandesgerichte;

die Landgerichte;

die Amtsgerichte;

- 4 -

der Generalstaatsanwalt beim Bayerischen Obersten Landesgericht, München;

die Generalstaatsanwälte bei den Oberlandesgerichten;

die Staatsanwaltschaften bei den Landgerichten;

die Zentrale Stelle der Landesjustizverwaltungen zur Aufklärung nationalsozialistischer Verbrechen, Ludwigsburg;

das Bundeskriminalamt;

das Bundeskartellamt;

das Zollkriminalamt.

**DEPARTMENT OF STATE**
**WASHINGTON**

May 24, 2004

Excellency:

I have the honor to refer to the Treaty between the United States of America and

the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed

at Washington on October 14, 2003, and to confirm the understanding reached between

the Government of the United States of America and the Government of the Federal

Republic of Germany with respect to Article 9 paragraph 5, Article 10 paragraph 6, and

Article 11 paragraph 3. These three provisions state that the authenticity, existence or

non-existence of documents, records and items obtained under the Treaty shall be

certified in accordance with the procedures specified in the request, and, if so certified,

shall be admissible in evidence as proof of the matters stated therein in accordance with

the laws of the Requesting State.

During the course of negotiations, representatives of our Governments agreed on

the text of a series of forms, attached to this Note, which shall be utilized by their

appropriate officials in meeting these obligations.  Each Government agreed to utilize

these forms upon request, and undertook to make them known to all appropriate officials.

His Excellency
        Mr. Wolfgang Ischinger,
                Ambassador Extraordinary and Plenipotentiary
                    of the Federal Republic of Germany
                        to the United States of America.

**DIPLOMATIC NOTE**

The United States Department of Justice, Office of International Affairs, shall disseminate these forms on behalf of the United States of America to United States law enforcement authorities preparing requests under the Treaty.  The Federal Ministry of Justice of the Federal Republic of Germany shall include the forms in the Guidelines for International Judicial Assistance in Criminal Matters (*Richtlinien für den Verkehr mit dem Ausland in strafrechtlichen Angelegenheiten*) used by the German authorities in executing foreign judicial assistance requests.  Both Governments agree that the substance of the forms should be used as a guideline for a judicial examination in Germany in order to ensure that making a false attestation would constitute a criminal offence.

I have further the honor to propose that the present Note and Your Excellency's Note in reply confirming the foregoing understanding on behalf of the Federal Republic of Germany shall be regarded as constituting an agreement between the two Governments, which shall enter into force on the same day when the Treaty enters into force.

This Agreement shall consist of notes in the English and German languages.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

For the Secretary of State:

Enclosure:  Forms A-E.

Form A

ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country], that in this position I am authorized by the laws of [country or *Land* and country] to attest that the official records attached and described below are originals or exact copies of official records, and that these records are filed in [name of office or agency], which is a governmental office or agency of [country or *Land* and country].

Description of Records:

[signature]

[official title]

[office stamp or seal]

[date]

1

Form B

ATTESTATION OF ABSENCE OF OFFICIAL RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that:

1. my position with the [name of office or agency] is [official title];

2. [name of office or agency] is a government office or agency of [country or *Land* and country] that is authorized by law to maintain official information files for which a legal reporting, recording, or registration obligation exists, or that maintains such files in the course of carrying out its official responsibilities;

3. records of the type described below cover matters for which the agency maintains official records pursuant to its legal reporting, recording, or registration obligation, or pursuant to its official responsibilities;

4. in my official capacity I have checked the records or had the records checked to ascertain whether the documents described below could be found in the agency named above;

5. no such records have been found to exist therein.

Description of records:

[signature]

[office stamp or seal]

[date]

2

Form C

ATTESTATION OF AUTHENTICITY OF BUSINESS RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

I further declare that the documents attached hereto are original records or exact copies of records that:

1. were made at or near the time at which the matter set forth therein took place, and were made by a person with knowledge of this matter or were based on information provided by a person with knowledge of this matter;

2. were kept in the course of regularly conducted business activity;

3. were made by the business as a regular practice; and

4. if any such record is not the original, it is a duplicate of the original.

[date of execution]

[place of execution]

[signature]

3

Form D

ATTESTATION OF ABSENCE OR NON-EXISTENCE OF BUSINESS RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

In my employment with the above-named business I am familiar with the business records it maintains. The above-named business maintains records of its business transactions that are:

1.  made at or near the time at which the matter set forth therein took place, and by a person with knowledge of this matter or based on information provided by a person with knowledge of this matter;

2.  kept in the course of regularly conducted business activity; and

3.  made by the business as a regular practice.

Among the records so maintained are records of individuals and entities that have accounts with or have transacted business with the above-named business. I have checked the records or had the records checked to ascertain whether such records could be found at the business named. No records were found reflecting any business activity between the business and the following individuals and/or entities:

[list of individuals and/or entities]

[date of execution]

[place of execution]

[signature]

4

<u>Form E</u>

<u>ATTESTATION WITH RESPECT TO SEIZED ITEMS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country].  I received custody of the items listed below from [name of person] on [date], at [place].

I relinquished custody of the items listed below to [name of person] on [date], at [place] in the same condition as when I received them (or, if different, as noted below).

Description of items:

Changes in condition of the items while in my custody:

[signature]

[official title]

[place of execution]

[date of execution]

[official stamp or seal]

5

Washington, den 24. Mai 2004

Der Botschafter
der Bundesrepublik Deutschland

Gz.: RK 531.41 USA

Herr Minister,

ich beehre mich, den Empfang Ihrer Note vom 24. Mai 2004 zu bestätigen, mit der Sie im Namen Ihrer Regierung den Abschluss einer Vereinbarung zwischen der Regierung der Vereinigten Staaten von Amerika und der Regierung der Bundesrepublik Deutschland vorschlagen.

Ihre Note lautet in vereinbarter deutscher Fassung wie folgt:

"Herr Botschafter,

ich beehre mich, unter Bezugnahme auf den am 14. Oktober 2003 in Washington unterzeichneten Vertrag zwischen den Vereinigten Staaten von Amerika und der Bundesrepublik Deutschland über die Rechtshilfe in Strafsachen die Absprache zwischen der Regierung der Vereinigten Staaten von Amerika und der Regierung der Bundesrepublik Deutschland in Bezug auf Artikel 9 Absatz 5, Artikel 10 Absatz 6 und Artikel 11 Absatz 3 zu bestätigen. Diese drei Bestimmungen sehen vor, dass die Echtheit, das Vorhandensein oder das Nichtvorhandensein von Urkunden, Unterlagen und Gegenständen, die nach dem Vertrag erlangt werden, entsprechend den in dem Ersuchen angegebenen Verfahren bestätigt wird, und dass diese Urkunden, Unterlagen und Gegenstände, wenn diese Bestätigung vorliegt, bei der Beweisführung als Nachweis der darin enthaltenen Angaben nach dem Recht des ersuchenden Staates zulässig sind.

Seiner Exzellenz
dem Minister für Auswärtige Angelegenheiten
der Vereinigten Staaten von Amerika
Herrn Colin L. Powell
Washington, D.C.

- 2 -

Im Laufe der Verhandlungen haben sich Vertreter unserer Regierungen auf den Wortlaut einer Reihe von Formblättern, die dieser Note beigefügt sind, geeinigt, die von den zuständigen Beamten zur Erfüllung dieser Verpflichtungen zu verwenden sind. Jede Regierung hat sich bereit erklärt, auf Ersuchen diese Formblätter zu verwenden, und sich verpflichtet, sie allen zuständigen Beamten bekannt zu geben. Für die Vereinigten Staaten von Amerika verteilt das Büro für Internationale Angelegenheiten des Justizministeriums der Vereinigten Staaten diese Formblätter an die Strafverfolgungsbehörden der Vereinigten Staaten, die Ersuchen nach dem Vertrag vorbereiten. Das Bundesministerium der Justiz der Bundesrepublik Deutschland nimmt die Formblätter in die von den deutschen Behörden bei der Erledigung ausländischer Rechtshilfeersuchen angewandten Richtlinien für den Verkehr mit dem Ausland in strafrechtlichen Angelegenheiten auf. Beide Regierungen sind sich darüber einig, dass der Inhalt der Formblätter in Deutschland als Richtlinie für eine richterliche Vernehmung Verwendung finden soll, um so die Strafbewehrung einer falschen Bescheinigung zu gewährleisten.

Ferner beehre ich mich vorzuschlagen, dass die vorliegende Note und die Antwortnote Eurer Exzellenz, welche die vorstehende Absprache im Namen der Bundesrepublik Deutschland bestätigt, als eine Vereinbarung zwischen den beiden Regierungen angesehen werden, die am selben Tag in Kraft tritt, an dem der Vertrag in Kraft tritt.

Diese Vereinbarung besteht aus Noten in englischer und deutscher Sprache.

Ich benutze diesen Anlass, Eure Exzellenz erneut meiner ausgezeichnetsten Hochachtung zu versichern.

Anlagen: Formblätter A-E"

Ich beehre mich, Ihnen mitzuteilen, dass meine Regierung mit den in Ihrer Note enthaltenen Vorschlägen einverstanden ist. Ihre Note und diese Antwortnote bilden somit eine Vereinbarung zwischen unseren beiden Regierungen, die am selben Tag in Kraft tritt, an dem der Vertrag vom 14. Oktober 2003 zwischen der Bundesrepublik Deutschland und den Vereinigten Staaten von Amerika über die Rechtshilfe in Strafsachen gemäß seinem Arti-

- 3 -

kel 26 Absatz 2 in Kraft tritt, und deren deutscher und englischer Wortlaut gleichermaßen verbindlich ist.

Genehmigen Sie, Herr Minister, die Versicherung meiner ausgezeichnetsten Hochachtung.

<u>Formblatt A</u>

**<u>Bestätigung der Echtheit von amtlichen Unterlagen</u>**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage oder Meineides in Bezug auf die folgende Erklärung droht, bescheinige hiermit, dass ich bei der Behörde [Staat oder Land und Staat] das folgende Amt ausübe [Amtsbezeichnung] und dass ich in diesem Amt nach dem Recht von [Staat oder Land und Staat] zu bescheinigen befugt bin, dass es sich bei den anliegenden und nachstehend bezeichneten amtlichen Unterlagen um Originale oder gleichlautende Abschriften von amtlichen Unterlagen handelt, dass diese Unterlagen bei [Name der Dienststelle oder Behörde] verwahrt sind und dass es sich bei dieser Dienststelle oder Behörde um eine staatliche Dienststelle oder Behörde [Staat oder Land und Staat] handelt.

Beschreibung der Unterlagen:

[Unterschrift]

[Amtsbezeichnung]

[Dienststempel/Dienstsiegel]

[Datum]

<u>Formblatt B</u>

**<u>Bestätigung des Nichtvorhandenseins amtlicher Unterlagen</u>**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage oder Meineides in Bezug auf die folgende Erklärung droht, bescheinige hiermit:

1. bei [Name der Dienststelle oder Behörde] übe ich das Amt [Amtsbezeichnung] aus;

2. bei [Name der Dienststelle oder Behörde] handelt es sich um eine staatliche Dienststelle oder Behörde [Staat oder Land und Staat], die gesetzlich befugt ist, amtliche Unterlagen über Sachverhalte zu führen, für die eine gesetzliche Berichts- bzw. Aufzeichnungs- oder Registrierungspflicht besteht, oder die im Rahmen ihrer gesetzlichen Aufgabenerfüllung solche amtlichen Unterlagen führt;

3. nachfolgend ihrer Art nach bezeichnete Unterlagen haben Sachverhalte zum Gegenstand, für welche die Behörde im Rahmen ihrer gesetzlichen Berichts- bzw. Aufzeichnungs- oder Registrierungspflicht oder im Rahmen ihrer gesetzlichen Aufgabenerfüllung amtliche Unterlagen führt;

4. in meiner amtlichen Eigenschaft habe ich geprüft bzw. prüfen lassen, ob in der genannten Behörde nachfolgend beschriebene Unterlagen vorhanden sind, und

5. dabei sind keine solchen Unterlagen gefunden wurden.

Beschreibung der Unterlagen:

[Unterschrift]

[Dienststempel/Dienstsiegel]

[Datum]

Formblatt C

## **Bestätigung der Echtheit von Geschäftsunterlagen**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage oder Meineides in Bezug auf die folgende Erklärung droht, erkläre wie folgt:

Ich bin angestellt/arbeite zusammen mit [Name des Unternehmens, das die Unterlagen herausgeben soll] und habe dort die folgende Stellung inne [Stellung in dem Unternehmen oder Stellenbezeichnung], aufgrund deren ich zur Abgabe dieser Erklärung befugt und befähigt bin.

Ich erkläre weiterhin, dass die anliegenden Schriftstücke Originalunterlagen oder gleichlautende Abschriften von Unterlagen sind,

1.  die zu dem Zeitpunkt oder um den Zeitpunkt herum angefertigt wurden, an dem sich der darin mitgeteilte Sachverhalt ereignet hat, und zwar von einer Person, die Kenntnis von diesem Sachverhalt hatte, bzw. auf der Grundlage von Informationen, die von einer Person übermittelt wurden, die Kenntnis von diesem Sachverhalt hatte;

2.  die im Rahmen eines ordnungsgemäßen Geschäftsbetriebs geführt wurden;

3.  die von dem Unternehmen regelmäßig angefertigt wurden und,

4.  dass es sich bei diesen Unterlagen, falls sie keine Originale sind, um ein Duplikat des Originals handelt.

[Datum der Ausfertigung]

[Ort der Ausfertigung]

[Unterschrift]

Formblatt D

**Bestätigung über das Nichtvorhandensein oder Fehlen von Geschäftsunterlagen**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage oder Meineides in Bezug auf die folgende Erklärung droht, erkläre wie folgt:

Ich bin angestellt/arbeite zusammen mit [Name des Unternehmens, das die Unterlagen herausgeben soll] und habe dort die folgende Stellung inne [Stellung in dem Unternehmen oder Stellenbezeichnung], aufgrund deren ich zur Abgabe dieser Erklärung befugt und befähigt bin.

Aufgrund meiner Beschäftigung bei dem genannten Unternehmen bin ich mit den Geschäftsunterlagen, die dort geführt werden, vertraut. Das genannte Unternehmen führt über seine geschäftlichen Transaktionen Unterlagen, die

1. zu dem Zeitpunkt oder um den Zeitpunkt herum angefertigt werden, an dem sich der darin mitgeteilte Sachverhalt ereignet, und zwar von einer Person, die Kenntnis von diesem Sachverhalt hat, bzw. auf der Grundlage von Informationen, die von einer Person übermittelt werden, die Kenntnis von diesem Sachverhalt hat,
2. im Rahmen eines ordnungsgemäßen Geschäftsbetriebs geführt werden und
3. von dem Unternehmen regelmäßig angefertigt werden.

Zu diesen Unterlagen gehören Unterlagen über natürliche und juristische Personen, die Konten bei dem genannten Unternehmen unterhalten oder geschäftliche Transaktionen mit dem genannten Unternehmen durchgeführt haben. Ich habe geprüft bzw. prüfen lassen, ob bei dem genannten Unternehmen Unterlagen vorhanden sind. Dabei sind keine Unterlagen gefunden worden, die geschäftliche Aktivitäten zwischen dem Unternehmen und den folgenden natürlichen und/oder juristischen Personen aufzeigen:

[Liste der natürlichen und/oder juristischen Personen]

[Datum der Ausfertigung]

[Ort der Ausfertigung]

[Unterschrift]

Formblatt E

**Bestätigung über beschlagnahmte Gegenstände**

Ich, [Name], in dem Wissen, dass mir nach dem Recht von (Staat oder Land und Staat) bei einer vorsätzlichen Falschaussage vor Gericht eine Strafe wegen uneidlicher Falschaussage oder Meineides in Bezug auf die folgende Erklärung droht, bescheinige hiermit, dass ich bei dem [Staat oder Land und Staat] das folgende Amt ausübe [Amtsbezeichnung]. Ich habe die nachstehend aufgeführten Gegenstände am [Datum] in [Ort] von [Name der Person] zur Verwahrung erhalten.

Ich habe die nachstehend aufgeführten Gegenstände am [Datum] in [Ort] in demselben Zustand, in dem ich sie erhalten habe (oder andernfalls in dem unten bezeichneten Zustand), an [Name der Person] herausgegeben.

Beschreibung der Gegenstände:

Veränderung des Zustands der Gegenstände in der Zeit ihrer Verwahrung durch mich:

[Unterschrift]

[Amtsbezeichnung]

[Ort der Ausfertigung]

[Datum der Ausfertigung]

[Dienststempel/Dienstsiegel]

Washington, May 24, 2004

The Ambassador
of the Federal Republic of Germany

Ref.: RK 531.41 USA

Mr Secretary,

I have the honour to confirm receipt of your Note of May 24, 2004, proposing on behalf of
your Government the conclusion of an Agreement between the Government of the United
States of America and the Government of the Federal Republic of Germany.

Your Note reads as follows:

"Excellency:

I have the honor to refer to the Treaty between the United States of America and the
Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed at
Washington on October 14, 2003, and to confirm the understanding reached between the
Government of the United States of America and the Government of the Federal Republic
of Germany with respect to Article 9 paragraph 5, Article 10 paragraph 6, and Article 11
paragraph 3. These three provisions state that the authenticity, existence or non-existence
of documents, records and items obtained under the Treaty shall be certified in accordance
with the procedures specified in the request, and if so certified, shall be admissible in evi-
dence as proof of the matters stated therein in accordance with the laws of the Requesting
State.

His Excellency
Secretary of State
Of the United States of America
Mr. Colin L. Powell
Washington, D.C.

- 2 -

During the course of negotiations, representatives of our Governments agreed on the text of a series of forms, attached to this Note, which shall be utilized by their appropriate officials in meeting these obligations. Each Government agreed to utilize these forms upon request, and undertook to make them known to all appropriate officials. The United States Department of Justice, Office of International Affairs, shall disseminate these forms on behalf of the United States of America to United States law enforcement authorities preparing requests under the Treaty. The Federal Ministry of Justice of the Federal Republic of Germany shall include the forms in the Guidelines for International Judicial Assistance in Criminal Matters (*Richtlinien für den Verkehr mit dem Ausland in strafrechtlichen Angelegenheiten*) used by the German authorities in executing foreign judicial assistance requests. Both Governments agree that the substance of the forms should be used as a guideline for a judicial examination in Germany in order to ensure that making a false attestation would constitute a criminal offence.

I have further the honor to propose that the present Note and Your Excellency's Note in reply confirming the foregoing understanding on behalf of the Federal Republic of Germany shall be regarded as constituting an agreement between the two Governments, which shall enter into force on the same day when the Treaty enters into force.

This Agreement shall consist of notes in the English and German languages.

I avail myself of this opportunity to renew to Your Excellency the assurances of my highest consideration.

Enclosure: Forms A-E."

I have the honour to inform you that my Government agrees to the proposals contained in your Note. Your Note and this Note in reply thereto shall thus constitute an Agreement between our two Governments, which shall enter into force on the same day on which the Treaty between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters signed at Washington on October 14, 2003, shall

- 3 -

enter into force according to article 26 paragraph 2 thereof, the texts in the German and English languages being equally authentic.

Accept, Mr Secretary, the assurances of my highest consideration.

Form A

ATTESTATION OF AUTHENTICITY OF OFFICIAL RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country], that in this position I am authorized by the laws of [country or *Land* and country] to attest that the official records attached and described below are originals or exact copies of official records, and that these records are filed in [name of office or agency], which is a governmental office or agency of [country or *Land* and country].

Description of Records:

[signature]

[official title]

[office stamp or seal]

[date]

1

<u>Form B</u>

<u>ATTESTATION OF ABSENCE OF OFFICIAL RECORDS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country], if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that:

1. my position with the [name of office or agency] is [official title];

2. [name of office or agency] is a government office or agency of [country or *Land* and country] that is authorized by law to maintain official information files for which a legal reporting, recording, or registration obligation exists, or that maintains such files in the course of carrying out its official responsibilities;

3. records of the type described below cover matters for which the agency maintains official records pursuant to its legal reporting, recording, or registration obligation, or pursuant to its official responsibilities;

4. in my official capacity I have checked the records or had the records checked to ascertain whether the documents described below could be found in the agency named above;

5. no such records have been found to exist therein.

Description of records:

[signature]

[office stamp or seal]

[date]

2

<u>Form C</u>

<u>ATTESTATION OF AUTHENTICITY OF BUSINESS RECORDS</u>

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country] if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

I further declare that the documents attached hereto are original records or exact copies of records that:

1.    were made at or near the time at which the matter set forth therein took place, and were made by a person with knowledge of this matter or were based on information provided by a person with knowledge of this matter;

2.    were kept in the course of regularly conducted business activity;

3.    were made by the business as a regular practice; and

4.    if any such record is not the original, it is a duplicate of the original.

[date of execution]

[place of execution]

[signature]

3

Form D

ATTESTATION OF ABSENCE OR NON-EXISTENCE OF BUSINESS RECORDS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country] if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest as follows:

I am employed by or associated with [name of business from which records are sought] in the position of [job title], and therefore I am authorized and qualified to make this declaration.

In my employment with the above-named business I am familiar with the business records it maintains. The above-named business maintains records of its business transactions that are:

1.    made at or near the time at which the matter set forth therein took place, and by a person with knowledge of this matter or based on information provided by a person with knowledge of this matter;

2.    kept in the course of regularly conducted business activity; and

3.    made by the business as a regular practice.

Among the records so maintained are records of individuals and entities that have accounts with or have transacted business with the above-named business. I have checked the records or had the records checked to ascertain whether such records could be found at the business named. No records were found reflecting any business activity between the business and the following individuals and/or entities:

[list of individuals and/or entities]

[date of execution]

[place of execution]

[signature]

4

Form E

ATTESTATION WITH RESPECT TO SEIZED ITEMS

I, [name], on the understanding that, in respect of the following statement and pursuant to the laws of [country or *Land* and country] if I were to intentionally make a false declaration to the Court, I would be liable to criminal prosecution for perjury or making false unsworn declarations, hereby attest that I hold the position of [official title] with the Government of [country or *Land* and country].  I received custody of the items listed below from [name of person] on [date], at [place].

I relinquished custody of the items listed below to [name of person] on [date], at [place] in the same condition as when I received them (or, if different, as noted below).

Description of items:

Changes in condition of the items while in my custody:

[signature]

[official title]

[place of execution]

[date of execution]

[official stamp or seal]

5