UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
: 
UNITED STATES OF AMERICA       :
:
     - v. -             :            23 Cr. 347 (JGK)
:
ALEXANDER MASHINSKY,     :
:
          Defendant.     :
:
------------------------------------------------------x


## THE GOVERNMENT'S MOTIONS *IN LIMINE*


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278

Adam S. Hobson
Allison Nichols
Peter J. Davis
Assistant United States Attorneys

- Of Counsel –

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ........................................................................................................................... 1

I.    The Court Should Preclude the Defendant from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial ........................................................................... 1

    A.    The Court Should Exclude Evidence and Argument that the Counterparties Were Negligent or Failed to Conduct Adequate Due Diligence ....................................................... 2

    B.    The Court Should Exclude Evidence and Claims That Others in the Cryptocurrency Industry Misused Customer Assets or Engaged in Misconduct ............................................. 4

    C.    The Court Should Exclude Evidence and Argument that Regulators or a Lack of Certain Regulation Are to Blame or Provide a Defense to Manipulation or Fraud ............... 6

    D.    The Court Should Exclude Evidence and Claims That the Defendant's Misrepresentations Were Immaterial Based on Disclaimers in Celsius's Terms of Service or Other Documents. .................................................................................................................. 7

    E.    The Court Should Exclude Evidence and Argument about the Purportedly "Novel," "Unprecedented," or "Aggressive" Nature of the Government's Case, or that Cryptocurrency is Unregulated. ................................................................................................................... 8

    F.    The Court Should Exclude Evidence and Argument About the Defendant's Good Acts to Prove His Innocence ....................................................................................................... 11

    G.    The Court Should Exclude Evidence and Argument About the Defendant's Personal Circumstances, Including Religious Devotion and Potential Punishment**Error! Bookmark not defined.**

    H.    The Court Should Exclude Evidence or Argument About the Presence of Attorneys, Absent Further Disclosures from the Defendant ................................................................. 14

    I.    The Court Should Exclude Evidence and Claims That the Defendant Intended to Repay His Victims ........................................................................................................................... 16

II.    Statements of the Defendant's Coconspirators and Agents Are Not Barred by the Rule Against Hearsay .................................................................................................................. 19

    A.    Applicable Law .............................................................................................................. 19

    B.    Discussion ..................................................................................................................... 21

III.    The Court Should Admit Limited Evidence About Celsius's Bankruptcy ................... 22

IV.    The Court Should Admit Evidence About Mashinsky's Use of Crime Proceeds... **Error! Bookmark not defined.**

CONCLUSION ..................................................................................................................... 27

# TABLE OF AUTHORITIES

Page(s)

Cases

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*,
  2013 (S.D.N.Y. Mar. 20, 2013) ................................................................. 6

*Arlio v. Lively*,
  474 F.3d 46 (2d Cir. 2007) ....................................................................... 5

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ........................................................................ 20, 22

*Devonbrook, Inc. v. Lily Lynn (Lilywear), Inc.*,
  1977 (S.D.N.Y. Jan. 10, 1977) ................................................................. 24

*Feis v. United States*,
  394 F. App'x 797 (2d Cir. 2010) .............................................................. 20

*George v. Celotex Corp.*,
  914 F.2d 26 (2d Cir. 1990) ...................................................................... 19

*In re Reserve Fund Sec. Litig.*,
  2012 (S.D.N.Y. Oct. 3, 2012) .................................................................. 22

*Jabar*,
  19 F.4th ................................................................................................. 16

*Levine v. SEC*,
  436 F.2d 88 (2d Cir. 1971) ...................................................................... 13

*Neder v. United States*,
  527 U.S. 1 (1999) .................................................................................... 8

*Pappas v. Middle Earth Condo. Ass'n*,
  963 F.2d 534 (2d Cir. 1992) .................................................................... 20

*SEC v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................... 14

*United States v. Adelekan*,
  567 F. Supp. 3d 459 (S.D.N.Y. 2021) ........................................................ 2

*United States v. Al Kassar*,
  660 F.3d 108 (2d Cir. 2011) .................................................................... 12

*United States v. Amico*,
  486 F.3d 764 (2d Cir. 2007) ...................................................................... 2

*United States v. Bailey*,
  444 U.S. 394 (1980) .................................................................................. 2

*United States v. Bakhtiari*,
  913 F.2d 1053 (2d Cir. 1990) .................................................................... 2

*United States v. Bankman-Fried*,
  22 Cr. 673 (LAK), (S.D.N.Y. June 27, 2023) ............................................ 17

*United States v. Bankman-Fried*,
  22 Cr. 673 (LAK), 2023 (S.D.N.Y. Sept. 26, 2023) ............................ 2, 4, 6

*United States v. Bankman-Fried*,
  22 Cr. 673 (LAK), 2024 (S.D.N.Y. Feb. 7, 2024) ................................ 14, 15

iv

*United States v. Benchick*,
   2014 (E.D. Mich. Aug. 21, 2014) .................................................................. 3

*United States v. Benedetto*,
   571 F.2d 1246 (2d Cir. 1978)..................................................................... 11

*United States v. Berger*,
   188 F. Supp. 2d 307 (S.D.N.Y. 2002)........................................................ 18

*United States v. Borrero*,
No. 13 Cr. 58 (KBF), 2013 (S.D.N.Y. Nov. 1, 2013)...................................... 10

*United States v. Boykoff*,
   67 F. App'x 15 (2d Cir. 2003) ............................................................. 13, 15

*United States v. Buckley*,
   101 F.3d 685, 1996 (2d Cir. 1996)............................................................ 17

*United States v. Caglar*,
   08 Cr. 232 (CFD), 2009 (D. Conn. July 20, 2009)..................................... 25

*United States v. Carton*,
   17 Cr. 680 (CM), 2018 (S.D.N.Y. Oct. 19, 2018) ........................................ 3

*United States v. Chambers*,
   800 F. App'x 43 (2d Cir. 2020) ................................................................ 12

*United States v. Cheung Kin Ping*,
   555 F.2d 1069 (2d Cir. 1977)..................................................................... 6

*United States v. Colasuonno*,
   697 F.3d 164 (2d Cir. 2012)..................................................................... 14

*United States v. Connolly*,
   16 Cr. 370 (CM), 2019 (S.D.N.Y. May 2, 2019).......................................... 5

*United States v. Daugerdas*,
   09 Cr. 581 (WHP), 2010 (S.D.N.Y. Nov. 22, 2010)................................... 25

*United States v. Demosthene*,
   334 F. Supp. 2d 378 (S.D.N.Y. 2004)......................................................... 9

*United States v. Dupree*,
   706 F.3d 131 (2d Cir. 2013)..................................................................... 19

*United States v. Evangelista*,
   122 F.3d 112 (2d Cir. 1997)..................................................................... 14

*United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 (S.D.N.Y. Apr. 11, 2012) ... 11

*United States v. Fiumano*,
   14 Cr. 518 (JFK), 2016 (S.D.N.Y. Apr. 25, 2016) ..................................... 13

*United States v. Gigante*,
   166 F.3d 75 (2d Cir. 1999)....................................................................... 20

*United States v. Godwin*,
   272 F.3d 659 (4th Cir. 2001) ................................................................... 17

*United States v. Grimm*,
   568 F.2d 1136 (5th Cir. 1978) ................................................................. 13

*United States v. Gupta*,
   747 F.3d 111 (2d Cir. 2014)..................................................................... 20

*United States v. Josephberg*,
   562 F.3d 478 (2d Cir. 2009)....................................................................... 6

*United States v. June*,
  2012 (D. Mass. Jan. 25, 2012) ............................................................... 3

*United States v. Kwong*,
  69 F.3d 663 (2d Cir. 1995) .................................................................... 2

*United States v. Lange*,
  834 F.3d 58 (2d Cir. 2016) .................................................................... 18

*United States v. Males*,
  459 F.3d 154 (2d Cir. 2006) .................................................................. 17

*United States v. Mendlowitz*,
  17 Cr. 248 (VSB), 2019 (S.D.N.Y. Dec. 20, 2019) ............................... 5

*United States v. Miller*,
  626 F.3d 682 (2d Cir. 2010) .................................................................. 1

*United States v. Nekritin*,
  10 Cr. 491 (KAM), 2011 (E.D.N.Y. June 17, 2021) ............................. 4

*United States v. O'Connor*,
  580 F.2d 38 (2d Cir. 1978) .................................................................... 13

*United States v. Okun*,
  2009 (E.D. Va. Feb. 18, 2009) ............................................................... 17

*United States v. Padilla*,
  203 F.3d 156 (2d Cir. 2000) .................................................................. 20

*United States v. Paul*,
  110 F.3d 869 (2d Cir. 1997) .................................................................. 2

*United States v. Petit*,
  No. 19 Cr. 850 (JSR) (S.D.N.Y.), Oct. 26, 2020 ................................... 16

*United States v. Reese*,
  933 F. Supp. 2d 579 (S.D.N.Y. 2013) ................................................... 9

*United States v. Regan*,
  103 F.3d 1072 (2d Cir. 1997) ................................................................ 9

*United States v. Rivera*,
  22 F.3d 430 (2d Cir. 1994) .................................................................... 21

*United States v. Rivera*,
  13 Cr. 149 (KAM), 2015 (E.D.N.Y. Apr. 15, 2015) ............................. 12

*United States v. Rosado*,
  728 F.2d 89 (2d Cir. 1984) ................................................................ 9, 10

*United States v. Russo*,
  302 F.3d 37 (2d Cir. 2002) .................................................................... 22

*United States v. Saldarriaga*,
  204 F.3d 50 (2d Cir. 2000) .................................................................... 9

*United States v. Saneaux*,
  392 F. Supp. 2d 506 (S.D.N.Y. 2005) ................................................... 22

*United States v. Scarpa*,
  897 F.2d 63 (2d Cir. 1990) .................................................................... 11

*United States v. Scully*,
  877 F.3d 464 (2d Cir. 2017) .................................................................. 14

*United States v. Sindona*,
  636 F.2d 792 (2d Cir. 1980) .................................................................. 18

*United States v. Shea,*
No. 20 Cr. 412 (AT) (S.D.N.Y.), May 31, 2022 .................................................. 16

*United States v. Stewart,*
03 Cr. 717 (MGC), 2004 (S.D.N.Y. Jan. 26, 2004) ..................................... 9, 10

*United States v. Tagliaferri,*
No. 13 Cr. 115 (RA) (S.D.N.Y. 2014) ............................................................ 15

*United States v. Tarantino,*
846 F.2d 1384 (D.C. Cir. 1988) .................................................................... 21

*United States v. Thomas,*
377 F.3d 232 (2d Cir. 2004) ........................................................................... 2

*United States v. Thomas,*
581 F. App'x 100 (2d Cir. 2014) .................................................................. 17

*United States v. Tracy,*
12 F.3d 1186 (2d Cir. 1993) ......................................................................... 21

*United States v. Turoff,*
652 F. Supp. 707 (E.D.N.Y.) ........................................................................ 25

*United States v. Vilar,*
729 F.3d 62 (2d Cir. 2013) ............................................................................. 8

*United States v. Vincent,*
416 F.3d 593 (7th Cir. 2005) ........................................................................ 17

*United States v. Walker,*
191 F.3d 326 (2d Cir. 1999) ......................................................................... 12

*United States v. Watts,*
934 F. Supp. 2d 451 (E.D.N.Y. 2013) .......................................................... 17

*United States v. Weaver,*
860 F.3d 90 (2d Cir. 2017) ........................................................................ 2, 8

Rules

Fed. R. Evid. 104(a) ..................................................................................... 20
Fed. R. Evid. 402 ........................................................................................... 1
Fed. R. Evid. 801(c) ..................................................................................... 19
Fed. R. Evid. 403 ........................................................................................ 1, 4
Fed. R. Evid. 404(a)(2)(A) & 405(a) ............................................................. 11
Fed. R. Evid. 802 ......................................................................................... 19

## PRELIMINARY STATEMENT

In advance of the trial of defendant Alexander Mashinsky, the Government respectfully submits the following motions *in limine*. *First*, the Government moves to preclude irrelevant and unfairly prejudicial evidence and argument, including evidence and argument: (a) that fraud should be excused on the basis of victim negligence or failure to conduct adequate due diligence; (b) that that others in the cryptocurrency industry misused customer assets or engaged in misconduct; (c) that regulators or a lack of certain regulation are to blame or provide a defense to manipulation or fraud; (d) that the defendant's misrepresentations were immaterial based on disclaimers in Celsius's terms of service; (e) about the purportedly "novel," "unprecedented," or "aggressive" nature of the Government's case; (f) about the defendant's good acts to prove his innocence; (g) about the presence of attorneys; and (h) that the defendant intended to repay his victims. *Second*, the Government moves to permit admission of out-of-court statements of the defendants' coconspirators and agents. *Third*, the Government moves to permit admission of limited evidence about Celsius's bankruptcy.

## ARGUMENT

## I.    The Court Should Preclude the Defendant from Introducing Evidence and Arguments That Are Irrelevant and Unfairly Prejudicial

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible" at trial, Fed. R. Evid. 402, and under Rule 403, a court may exclude even relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403; *see also United States v. Miller*, 626 F.3d 682, 689-90 (2d Cir. 2010).

A defendant is entitled to present a defense only if it has a foundation in the evidence, *see United States v. Kwong*, 69 F.3d 663, 667-68 (2d Cir. 1995), and as long as it does not fail as a matter of law, *see United States v. Bakhtiari*, 913 F.2d 1053, 1057 (2d Cir. 1990). If the Court finds a defense insufficient as a matter of law, the Court is under no duty to allow the defendant to present the evidence, or advance the defense, to the jury. *See United States v. Paul*, 110 F.3d 869, 871 (2d Cir. 1997) (citing *United States v. Bailey*, 444 U.S. 394, 416-17 (1980)).

### A.    The Court Should Exclude Evidence and Argument that the Counterparties Were Negligent or Failed to Conduct Adequate Due Diligence

The defendant should be precluded from arguing or adducing evidence that Celsius's investor victims were negligent, gullible, insufficiently vigilant, or otherwise at fault for not detecting or preventing Celsius's fraud. "Such evidence routinely is excluded from trials on wire and mail fraud charges because 'reliance is not an element of criminal fraud,' and 'the unreasonableness of a fraud victim in relying (or not) on a misrepresentation does not bear on a defendant's criminal intent.'" *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 6283509, at *3 (S.D.N.Y. Sept. 26, 2023) (quoting *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017)). Indeed, "[t]he Court of Appeals routinely has rejected a gullible victim defense for wire-fraud charges." *United States v. Adelekan*, 567 F. Supp. 3d 459, 470 (S.D.N.Y. 2021) (citing *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007), and *Weaver*, 860 F.3d at 96). Accordingly, the defendant may not argue that Celsius's investors and borrowers were to blame for a lack of due diligence.

In particular, the defendant should be precluded from cross-examining victim witnesses about whether they did adequate diligence on Celsius, or whether they were reckless, negligent, or irresponsible in continuing to engage in transactions with Celsius. Because a defendant may not assert a victim's negligent failure to discover the fraud, *see United States v. Thomas*, 377 F.3d 232,

243 (2d Cir. 2004), the defendant here should not be permitted to cross-examine counterparty witnesses in a manner that implies that their due diligence was inadequate.

Nor should the defendant be heard to contend that evidence or argument regarding alleged inadequacies in the victims' investment decisions is intended only to cast doubt on the materiality of the misrepresentations Celsius and the defendant made to the public. *See, e.g.*, *United States v. June*, No. 10 Cr. 30021 (MAP), 2012 WL 245243, at *2 (D. Mass. Jan. 25, 2012) ("Defendant's argument that these documents would be helpful to the defense in demonstrating that the alleged misrepresentations made by Defendant were not 'material,' in the sense that they lacked the natural tendency to influence the lender's decisions merely re-clothes the forbidden 'blame the victim' defense in a slightly different costume." (citations omitted)); *see also United States v. Benchick*, No. 13 Cr. 20453 (RHC), 2014 WL 4181970, at *3 (E.D. Mich. Aug. 21, 2014) ("Defendant has not successfully shown that evidence relating to Washington Mutual's and National City's lending practices is relevant to the materiality of his alleged misrepresentations (and hence his guilt). . . . Because Defendant's allegedly false statements could influence a bank's decision whether to approve a loan, Defendant's argument on materiality and his 'blame-the-victim' approach fails."). The materiality of the misrepresentations alleged in this case is measured by an objective standard, and any suggestion that a particular victim was foolish, conducted insufficient diligence, or eager to credit Celsius goes, not to objective materiality, but rather to subjective reliance, which is not an element of the charged offenses.

In particular, the Court should exclude evidence, including cross-examination of victim witnesses, about the victims' failure to consider risks or appropriately investigate the financial condition of Celsius.    Such evidence or claim could serve only to invite the jury to blame the victims for the crimes of the defendant. *United States v. Carton*, No. 17 Cr. 680 (CM), 2018 WL

5818107, at *4, *6 (S.D.N.Y. Oct. 19, 2018) (evidence that victim hedge fund did not exercise sufficient oversight of its investment inadmissible; "[w]hether the Hedge Fund performed due diligence or is a sophisticated investor in the ticket market is wholly irrelevant to these charges, and is merely a facile attempt to blame the victim—which is an impermissible strategy in a fraud case"); *United States v. Nekritin*, No. 10 Cr. 491 (KAM), 2011 WL 2462744, at *7 (E.D.N.Y. June 17, 2021) ("It is well settled that a fraud victim's negligence in failing to discover the fraudulent scheme is not a defense to a defendant's criminal conduct.").

Even if there were any relevance to evidence of the victims' failure to conduct additional investment diligence—which there is not—the probative value of that evidence would be far outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay. Fed. R. Evid. 403. As noted, such evidence would invite the jury wrongly to believe that it is their task to evaluate the investment acumen of a victim in this case and would risk suggesting to the jury that whether a victim could have avoided loss or detected fraud has any bearing on the guilt or innocence of the defendants. This evidence, which has no probative value and brings great risk of unfair prejudice, confusion, and delay, should be precluded. *See Bankman-Fried*, 2023 WL 6283509, at *3 (granting motion to preclude such evidence "because such evidence is not relevant to the claims at issue at trial and any limited probative value would be outweighed substantially by the risk of unfair prejudice and jury confusion").

### B. The Court Should Exclude Evidence and Claims That Others in the Cryptocurrency Industry Misused Customer Assets or Engaged in Misconduct

Prior to and since the defendant's indictment, individuals and companies in the cryptocurrency industry have been subject to civil and criminal enforcement for misusing customer assets or otherwise committing fraud. The defendant should be precluded from arguing or adducing evidence that other companies or individuals were using customers' assets or otherwise

engaging in misconduct. Such evidence is irrelevant, is unduly prejudicial, and would confuse the jury.

The fact that conduct may be widespread in an industry—that "everyone is doing it"—is "not a defense to the crime of wire fraud or conspiracy to commit wire fraud; just as 'everyone speeds' is not a defense if your car happens to get picked up on the radar." *United States v. Connolly*, No. 16 Cr. 370 (CM), 2019 WL 2125044, at *13 (S.D.N.Y. May 2, 2019); *see also United States v. Mendlowitz*, No. 17 Cr. 248 (VSB), 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019) ("the fact that certain conduct may be common or general practice in an industry was not relevant to the jury's consideration of the conduct of [the defendant], and is not a defense to wire fraud"). For that reason, whether or not misuse of customer assets or other forms of fraud are rampant in the cryptocurrency industry is not relevant to the issues at trial. Nor are other cryptocurrency exchanges' practices about how they keep customer assets relevant to the question of how the defendant and his coconspirators treated FTX customers' assets and the representations they made to their own customers.

Evidence or arguments about the conduct of other cryptocurrency industry participants is also inadmissible under Rule 403 because any probative value is substantially outweighed by the prospect of undue delay, unfair prejudice, confusion of the issues, and misleading the jury. Injecting the conduct of other cryptocurrency industry participants into the trial is likely to confuse the jury, and will force the Government to offer rebuttal evidence to put the defense evidence about the conduct of others in the cryptocurrency industry in proper context—all to contest issues that are wholly irrelevant to any element or material fact at issue in the charged offenses. Such a mini trial would be both significantly distracting and confusing to a lay jury. *Cf. Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) ("Admitting evidence about previous cases 'inevitably results in trying

those cases before the jury,' and 'the merits of the other cases would become inextricably intertwined with the case at bar.'"). Because such risk of prejudice and confusion plainly outweighs the limited to nonexistent probative value of the evidence, the defendant should be precluded from offering it.

C.    **The Court Should Exclude Evidence and Argument that Regulators or a Lack of Certain Regulation Are to Blame or Provide a Defense to Manipulation or Fraud**

The Court should also exclude evidence and argument suggesting that Celsius was not regulated in the United States.  This, too, has no place before a jury at trial.

The Second Circuit has recognized that a defendant may not argue for acquittal "on the basis of extraneous public policy considerations." *United States v. Cheung Kin Ping*, 555 F.2d 1069, 1074 (2d Cir. 1977); *see id.* at 1073 (affirming instruction to jury that "law enforcement policy was not its concern," and that it should "focus its attention on the real issue, namely, whether the government had proved the facts alleged in the indictment beyond a reasonable doubt"); *see also United States v. Josephberg*, 562 F.3d 478, 497 (2d Cir. 2009) (affirming district court's finding that it was improper for defendant to argue in summation "that the Internal Revenue Service was 'arrogant,' … and that because of this, Defendant should be acquitted"). This evidence not only would be irrelevant to the defendants' criminal intent, but also would be confusing to the jury and turn the trial into a referendum on the role of regulatory agencies in preventing the defendants' conduct and its outcome. *See Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2013 WL 1155420, at *7 (S.D.N.Y. Mar. 20, 2013) (precluding evidence about general failures by credit rating agencies leading up to financial crisis and noting that court will not "let this trial become an inquiry into the role of the Rating Agencies in the financial crisis"); *see also Bankman-Fried*, 2023 WL 6283509, at *5 (precluding the defendant from arguing for acquittal based on the failure of regulators).

Whether or not Celsius was subject to the jurisdiction of the SEC or CFTC is not relevant to the elements of any charged offenses.  To prove the jurisdictional elements of those crimes, the Government need not prove that Celsius was a U.S.-regulated exchange.  Rather, it must prove, for the commodities fraud and manipulation charges, that the defendant's crime was in connection with a "contract of sale of any commodity," and for the wire-fraud charge, that the defendant's crime involved an interstate wire.  The argument that Celsius was not subject to SEC or CFTC jurisdiction, then, is a sideshow that is not relevant to any fact of consequence.

Arguments or evidence about whether Celsius was subject to regulation by American regulatory agencies would also be a confusing waste of time, and would risk intruding on the exclusive province of the Court to instruct the jury on the law.  To avoid the misimpression that this was a point of any relevance, the Government may have to introduce evidence to refute the defense's claim.  This could devolve into a trial-within-a-trial about an issue that is not relevant to any element of the charged offenses.  This risk of confusion and delay substantially outweighs any value to the point, which is a separate basis for exclusion.  Because such evidence and argument would have no probative value, and would serve only to create a danger of undue prejudice, confusion of the issues, and misleading the jury, it should be precluded.

### D.   The Court Should Exclude Evidence and Claims That the Defendant's Misrepresentations Were Immaterial Based on Disclaimers in Celsius's Terms of Service or Other Documents.

The defendant should be precluded from making arguments or cross-examining witnesses about contractual disclaimers or similar provisions in Celsius's terms of service or other documents provided to victims or posted on Celsius's website. There is no relevant purpose for such evidence or argument, and it is likely to confuse and mislead the jury as to the elements of wire fraud.

Celsius's terms of service contained a "Disclaimer of Warranty" and various disclaimers of risk.  *See* Ex A at 03287498.  These disclaimers included general disclaimers of liability and

damages "arising out of or in connection with authorized or unauthorized use of the Celsius services or the Celsius account, or these terms." *See* Ex A at 03287499. These disclaimers, which are directed explicitly at causes of action sounding in "contract, tort, negligence, strict liability, or otherwise," do not (and could not) release Celsius or its employees from criminal liability. Nor do the provisions disclaim liability for false representations or misappropriation of property.

Evidence and argument about these disclaimers would serve no relevant purpose and will be more prejudicial than probative. The "common-law requirements of justifiable reliance and damages plainly have no place in the federal fraud statutes." *Weaver*, 860 F.3d at 95 (citing *Neder v. United States*, 527 U.S. 1, 24-25 (1999)); *see also United States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013) (reliance not an element of criminal securities fraud). And because "a disclaimer of reliance on certain representations" does not "mean that the oral representations were immaterial or without tendency to influence," *Weaver*, 860 F.3d at 95, they have no relevant purpose in the trial. Indeed, it would undermine the purposes of the fraud laws to permit "[f]raudsters [to] … escape criminal liability for lies told to induce gullible victims … to sign a contract containing disclaimers of reliance." *Id.* at 96.

Having no relevant purpose, evidence or arguments about disclaimers are also properly excluded under Rule 403 because they are likely to confuse the jury. Indeed, permitting argument relating to the disclaimers could incorrectly lead the jury to believe that civil or common law fraud principles apply to the case, or that disclaimers are somehow probative of materiality, which they are not.

### E. The Court Should Exclude Evidence and Argument about the Purportedly "Novel," "Unprecedented," or "Aggressive" Nature of the Government's Case, or that Cryptocurrency is Unregulated.

The defendant's pretrial motions have repeatedly sought to denigrate the Government's investigation and prosecution of the defendant, claiming that the Government has put together a

"novel construction" of market manipulation. *See* Dkt. 42 at 30. The Court should exclude such claims in front of the jury because they amount to attempts at jury nullification.

It is well established that the Government's motives for the prosecution of a defendant are irrelevant to guilt or innocence and therefore cannot be presented to the jury. *See United States v. Regan*, 103 F.3d 1072, 1081 (2d Cir. 1997) (affirming decision precluding "evidence at trial that the grand jury investigation was illegitimate"); *United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (finding that defendant's trial arguments involving, *inter alia*, "invit[ation of] jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt" functioned as a defense "ploy for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"); *United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting [the defendant]"). The same is true of the Government's techniques in investigating and prosecuting crimes. *United States v. Saldarriaga*, 204 F.3d 50, 53 (2d Cir. 2000) ("The jury correctly was instructed that the government has no duty to employ in the course of a single investigation all of the many weapons at its disposal, and that the failure to utilize some particular technique or techniques does not tend to show that a defendant is not guilty of the crime with which he has been charged."). And more generally, invitations for jury nullification based on the overall propriety of the Government's investigation are not allowed. *See, e.g.*, *United States v. Reese*, 933 F. Supp. 2d 579, 583 (S.D.N.Y. 2013) (precluding defendant from advancing arguments aimed at jury nullification and the overall propriety of the Government's investigation); *United States v. Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004) (noting that

the defendant "may not argue before the jury issues relating to the overall propriety of the Government's investigation in this case"), *aff'd*, 173 F. App'x 899 (2d Cir. 2006).

Arguments about the state of regulation in the cryptocurrency industry, and the alleged novelty of the charges, have no relevance to any fact of consequence. *See United States v. Stewart*, No. 03 Cr. 717 (MGC), 2004 WL 113506, at *2 (S.D.N.Y. Jan. 26, 2004) (concluding that "[a]ny characterization of the securities fraud charge . . . as 'novel' is irrelevant to the jury's consideration of the indictment in this case," and ordering that "[t]he defense may not argue or present evidence to the jury that tends to show that this count is an unusual or unprecedented application of the securities laws"). The sole question before the jury is whether the facts prove beyond a reasonable doubt that the defendant is guilty. *See United States v. Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing admission of evidence about the propriety of a prosecution "for turning the trial away from a determination of whether the elements of the offense charged had been proved beyond a reasonable doubt into a wide-ranging inquiry into matters far beyond the scope of legitimate issues in a criminal trial"); *United States v. Borrero*, No. 13 Cr. 58 (KBF), 2013 WL 6020773, at *2 (S.D.N.Y. Nov. 1, 2013) (precluding cross examination regarding a government charging decision in part because "the limited amount of probative value that the . . . charging decisions add is substantially outweighed by the risk of undue confusion and an unnecessary sideshow . . ."). This will require the jury to determine, for instance, whether the Perpetuals at issue in this case are "swaps" and whether the defendant acted in good faith. It is not, however, a referendum on regulation in the cryptocurrency industry generally, or the Government's charging decisions in this particular matter.

Moreover, any plausible relevance is substantially outweighed by the danger of confusing issues, misleading the jury, and wasting time. Opening the door to arguments about the state of regulation in cryptocurrency would necessarily involve a digression into the various agencies

responsible for regulating the industry and the different ways in which they have, and have not, regulated the space. Claims about the novelty of the prosecution would, similarly, require a detour into the similarities and dissimilarities between this case and others charging fraud and market manipulation. These would be time-wasting sideshows that would risk confusing the jury about the facts relevant to this case and misleading jurors into believing the case was a referendum on cryptocurrency regulation writ large. None of that is pertinent to the jury's task of deciding whether the defendant committed market manipulation and fraud. It should be excluded entirely.

### F.    The Court Should Exclude Evidence and Argument About the Defendant's Good Acts to Prove His Innocence

The defendant should be precluded from presenting evidence or argument concerning his prior commissions of "good acts" or to offer evidence of his noncriminal activities to disprove his guilt of the crimes charged. Specific-act propensity evidence is no more admissible to refute a criminal charge than it is to establish one.

It is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990). Similarly, while a defendant may offer general testimony from a character witness about his reputation for a "pertinent trait" of character, or the witness's opinion of the defendant as regards that trait, *see* Fed. R. Evid. 404(a)(2)(A) & 405(a), a defendant can neither testify nor offer other proof to establish specific acts in conformity with that trait that are not an element of the offense. *See, e.g.*, *United States v. Benedetto*, 571 F.2d 1246, 1249-50 (2d Cir. 1978) (evidence of defendant's specific acts improperly admitted because "character evidence has long been admissible only in the form of reputation and not in the form of a recitation of good or bad acts"); *United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("[A] defendant may not affirmatively try to prove his innocence by reference to

specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014).

Furthermore, pursuant to Federal Rule of Evidence 403, "a district court may exclude evidence of a defendant's prior good acts if it finds that any minimal probative value of such evidence is outweighed by the likelihood of jury confusion and the risk of jury nullification." *United States v. Rivera*, No. 13 Cr. 149 (KAM), 2015 WL 1725991, at *2 (E.D.N.Y. Apr. 15, 2015) (citing *United States v. Al Kassar*, 660 F.3d 108, 124 (2d Cir. 2011) ("And the trial judge was rightly concerned that, to the extent any of the evidence [of prior good acts] could be construed to relate to the charged conspiracies, the jury would find it extremely confusing, if not incomprehensible.")).

The defendant should accordingly be precluded from offering evidence or argument, including in his opening statement, regarding his prior good deeds, including charity and philanthropy, or the lack of commission of other bad acts.

The defendant should likewise be precluded from seeking to establish his good faith by introducing evidence of buying or selling the CEL token or making truthful statements about Celsius in a way that is not the subject of this case. Whether analyzed under the rubric of relevance, pursuant to Rule 401, or character propensity evidence, under Rule 404(b), courts uniformly hold that evidence that a defendant engaged in legal, honest business conduct on some occasions may not be introduced to rebut allegations that the defendant engaged in charged offenses involving bribery or fraud on other occasions. *See, e.g., United States v. Chambers*, 800 F. App'x 43, 46 (2d Cir. 2020) ("Chambers's argument that his running of a legitimate law practice makes it less likely that he had corrupt intent to bribe Villanueva is precisely the type of propensity inference that Rule 404(b)(1) is intended to prohibit."); *United States v. Walker*, 191 F.3d 326, 336 (2d Cir.

1999) (affirming the district court's refusal to allow defendant accused of preparing false asylum applications to admit evidence of truthful applications he had allegedly submitted, because whether the defendant "had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent"); *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (affirming district court's exclusion of testimony that witnesses did not pay defendant any bribes "because such testimony would in effect be an attempt to demonstrate appellant's good character by proof of specific good acts"); *see also United States v. Boykoff*, 67 F. App'x 15, 20-21 (2d Cir. 2003) ("[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." (quoting *United States v. Grimm*, 568 F.2d 1136, 1138 (5th Cir. 1978))).

Thus, for example, in *Levine v. SEC*, 436 F.2d 88 (2d Cir. 1971), the Second Circuit rejected a broker-dealer defendant's claim that he was entitled to offer testimony by certain of his clients that they had not been lied to, as such testimony would not negate the testimony of the customers who testified that false and misleading statements had been made to them. *Id.* at 91; *see also, e.g.*, *United States v. Fiumano*, No. 14 Cr. 518 (JFK), 2016 WL 1629356, at *7 (S.D.N.Y. Apr. 25, 2016) ("A defendant charged with robbing a bank in Manhattan on April 22 cannot offer as evidence to disprove the charged crime that he did not rob the bank's branches in Brooklyn or the Bronx on April 22 or that he did not rob the Manhattan branch on April 20, 21, 23, and 24, because this evidence is irrelevant to the charge that he robbed the Manhattan bank on April 22.").

So too here, any evidence or argument that the defendant did not engage in market manipulation with respect to transactions other than those at issue in this case, or that there were occasions in which he was candid with Celsius investors, is irrelevant to the question of whether the defendant committed the acts charged in the Indictment.

**G.    The Court Should Exclude Evidence or Argument About the Presence of Attorneys, Absent Further Disclosures from the Defendant**

"In a fraud case . . . the advice-of-counsel defense is not an affirmative defense that defeats liability even if the jury accepts the government's allegations as true," but rather "is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an 'unlawful intent.'" *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017). "That said, defendants are entitled to an advice-of-counsel instruction only if there are sufficient facts in the record to support the defense." *Id.* (citing *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997)). Specifically, "[t]here must be evidence such that a reasonable juror could find that the defendant 'honestly and in good faith sought the advice of counsel,' 'fully and honestly laid all the facts before his counsel,' and 'in good faith and honestly followed counsel's advice.'" *Id.* (quoting *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012)).

In the absence of evidence to support an advice-of-counsel instruction, defendants have sometimes sought to offer evidence of lawyers' involvement in allegedly inculpatory events to support an argument that the defendant lacked intent to defraud. As judges have observed, however, such evidence "can pose a substantial risk of misleading the jury." *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024). A "jury could easily believe that the fact that a lawyer is present at a meeting means that he or she must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction." *SEC v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013). Such a misunderstanding would unfairly prejudice the Government because it would "give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense." *Id.*

Accordingly, even those courts that have permitted such evidence have required detailed pretrial disclosures and, consistent with Rules 401 and 403, carefully policed references to counsel in testimony and argument to ensure that the defendant does not unfairly attempt to mount a "disguised reliance argument." *SEC v. Stoker*, No. 11 Civ. 7388 (JSR) (S.D.N.Y. July 23, 2012), Trial Tr. at 973; *see also Bankman-Fried*, 2024 WL 477043, at *2 (permitting certain lines of evidence and argument and precluding others after hearing testimony outside the presence of the jury); *United States v. Tagliaferri*, No. 13 Cr. 115 (RA) (S.D.N.Y. 2014), Trial Tr. (Dkt 63) at 83-85 (limiting defendant's testimony regarding the presence of counsel to avoid the "misleading impression" that the defendant relied upon the advice of counsel).

The defendant has not informed the Government that he intends to advance a formal advice of counsel defense to any charge contained in the Indictment. The defendant has nonetheless suggested that he might point to the presence of attorneys at Celsius or the involvement of attorneys in certain decision-making. *See, e.g.*, Dkt. 70 at 17 ("As to the fraud charges, the Rule 16 discovery suggests a clear pattern of Mr. Mashinsky asking Mr. Cohen-Pavon for permission to make certain announcements on Twitter or his weekly AMAs, and Mr. Cohen-Pavon responding with his advice."); *id.* at 20 ("It appears that Celsius's former General Counsel has already informed the government that Mr. Noy was responsible for reviewing all aspects of the company's marketing in 2021 and 2022, including Mr. Mashinsky's weekly AMAs.").

The defendant has not yet said clearly why he believes that this information is relevant to the charges. But to the extent the defendant intends to argue or imply that lawyers blessed his conduct, he should be precluded from doing so. Because Celsius has waived privilege over the interactions at issue, the Government has been able to interview both the General Counsel and Cohen-Pavon about them. Based upon these interviews, the Government can confirm that both

lawyers would testify that they did not provide Mashinsky with comfort that his conduct was permissible.  To the contrary, Cohen-Pavon will testify that he told Mashinsky that some of his public statements were false or misleading and could lead to law enforcement scrutiny.  Indeed, the Government may seek to elicit this testimony in its own case to prove Mashinsky's criminal intent.

To the extent that the defendant still believes that evidence or argument regarding the presence of counsel is relevant and admissible for some other reason, the Court should direct him to provide notice of that fact, along with an offer of proof, at least four weeks before trial to allow sufficient time for the Court to resolve any disagreements regarding the admissibility of such evidence or the permissibility of such arguments.

Finally, even if the Court ultimately concludes that the defendant may introduce at trial some evidence or argument regarding the involvement of attorneys, the Court should provide a cautioning instruction as has been done in other cases in this District. *See, e.g.*, *United States v. Shea*, No. 20 Cr. 412 (AT) (S.D.N.Y.), May 31, 2022 Tr. (Dkt. 245) at 787 ("A lawyer's involvement with an individual or entity does not itself constitute a defense to any charge in this case. The defense has not claimed, and cannot claim, that the defendant's conduct was lawful because he acted in good faith on the advice of a lawyer."); *United States v. Petit*, No. 19 Cr. 850 (JSR) (S.D.N.Y.), Oct. 26, 2020 Tr. at 2402 ("there is no defense in this case of so-called reliance on counsel").

## H.    The Court Should Exclude Evidence and Claims That the Defendant Intended to Repay His Victims

The defendant should be precluded from offering evidence or arguing that he intended to return or repay victims' funds and therefore that he did not act with intent to defraud. While the crime of wire fraud requires a "contemplated harm to the victim," *Jabar*, 19 F.4th at 76, it does

not require that the defendant "intended to permanently deprive the victim's money or property," *United States v. Males*, 459 F.3d 154, 159 (2d Cir. 2006). Thus, "an intent to return money or property is not a defense to the charge of embezzlement." *United States v. Thomas*, 581 F. App'x 100, 102 n.3 (2d Cir. 2014) (citing *United States v. Buckley*, 101 F.3d 685, 1996 WL 282140, at *2 (2d Cir. 1996)). "Nor is it a defense to [wire fraud] that the accused voluntarily returned the funds." *United States v. Vincent*, 416 F.3d 593, 601 (7th Cir. 2005). Indeed, "it is immaterial as a matter of law whether the defendant intended to repay the misappropriated funds because the offense is 'complete' where, as alleged here, there is an 'immediate intent to misapply and defraud.'" *United States v. Bankman-Fried*, No. 22 Cr. 673 (LAK), 2023 WL 4194773, at *9 (S.D.N.Y. June 27, 2023).

Here, the defendant should not be permitted to argue that he intended to repay or return the funds of his victims, or that he believed they would be made whole in the end. The defendant may not argue that he intended to repay Celsius customers, intended to return their funds, or believed that even though he had misappropriated their funds he could ultimately repay them. Because even temporary misappropriation of money or property is sufficient for conviction under the wire fraud statues, arguments that the defendant believed he was going to be able to repay his victims but for unexpected downturns in cryptocurrency market, the scheming of a competitor, or an unforeseeable bank run are improper.

For the same reason, the defendant's belief that Celsius would ultimately find a way to pay the lenders back is immaterial as a matter of law. *See United States v. Watts*, 934 F. Supp. 2d 451, 473 (E.D.N.Y. 2013) (precluding argument that defendant believed his lies to a victim lender would cause no ultimate harm because the lender would be repaid); *United States v. Okun*, Cr. No. 08-132, 2009 WL 414009 (E.D. Va. Feb. 18, 2009) (citing *United States v. Godwin*, 272 F.3d 659,

666-67 (4th Cir. 2001)) (The "well-intentioned belief that a business venture in which a defendant was involved would be successful and would allow for repayment of money taken from victims does not supply a basis for a defense that there was a good faith belief that a representation was true.").

To the extent that the defendant seeks to argue that he believed that Celsius investors would ultimately not be harmed because the value of Celsius kept going up, and he expected that to continue, that would not be a permissible argument to the jury. Where a defendant "intended to immediately deprive investors of their capital through fraud," his belief, even if truly held, "that in the long-term [his companies] would ultimately succeed," is not a defense to securities fraud or wire fraud. *United States v. Lange*, 834 F.3d 58, 79 (2d Cir. 2016); *see also United States v. Berger*, 188 F. Supp. 2d 307, 329 (S.D.N.Y. 2002) ("Were a jury to find that [the defendant] intentionally caused others to issue materially false or misleading statements of the [company's] value to its investors . . . he properly would be found guilty, even if he 'firmly believed' that, in the end, his strategy would 'work out.'"). Thus, the defendant should not be permitted to argue that he is not guilty because he thought investors would not ultimately be harmed.

Finally, the defendant should be precluded from offering evidence about the amount of assets that have been recovered through Celsius's bankruptcy for purposes of suggesting to the jury that victims will be made whole, that the Celsius Debtors' progress in securing and recovering estate assets somehow diminishes the scale of the fraud, or that, with more time, Celsius could have satisfied customer withdrawals. Such evidence is irrelevant, and of a piece with improper evidence of a defendant's own efforts to repay misappropriated funds. *See United States v. Sindona*, 636 F.2d 792, 800 (2d Cir. 1980) ("The offense occurred and was complete when the misapplication took place. What might have later happened as to repayment is not material and

could not be a defense."). It is also misleading, and should be precluded under Rule 403. The argument would necessitate a mini trial to value assets available through the bankruptcy and whether they cover customer and other creditor losses, as well as whether they were available to victims prior to the bankruptcy. Because this evidence has no bearing on the elements of the charged offenses, and would be highly prejudice and burdensome to the Court, jury, and parties, it should be precluded.

## II.    Statements of the Defendant's Coconspirators and Agents Are Not Barred by the Rule Against Hearsay

### A.    Applicable Law

#### 1.    The Rule Against Hearsay

The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is admissible only if it falls within an enumerated exception. Fed. R. Evid. 802. However, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note. Thus, a statement offered to show its effect on the listener is not hearsay. *Id.*; *see also United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice."); *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("To be sure, an out of court statement offered not for the truth of the matter asserted, but merely to show that the defendant was on notice of a danger, is not hearsay.").

#### 2.    Rule 801(d)(2)(D)

Federal Rule of Evidence 801(d)(2)(D) provides that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's agent or

employee on a matter within the scope of that relationship and while it existed." To admit a statement under this rule, the court must find "(1) the existence of the agency relationship, (2) that the statement was made during the course of the relationship, and (3) that it relates to a matter within the scope of the agency." *Feis v. United States*, 394 F. App'x 797, 799 (2d Cir. 2010) (quoting *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992)). As the Second Circuit has explained, "admissibility under this rule should be granted freely," and there is a "liberal" standard for admissibility rooted in the understanding that agents and employees are usually the people "best informed about certain acts committed in the course of [their] employment." *Pappas*, 963 F.2d at 537.

### 3.    Rule 801(d)(2)(E)

Federal Rule of Evidence 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a district court must find two facts by a preponderance of the evidence: (1) that a conspiracy that included the defendant and the declarant existed; and (2) that the statement was made during the course of, and in furtherance of, that conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999). "In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself." *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014). When determining whether the predicate conspiracy has been established, the district court is not bound by the Rules of Evidence, *see* Fed. R. Evid. 104(a), and "the district court may consider the hearsay statement itself" as evidence of "the existence of a conspiracy." *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (citing *Bourjaily*, 483 U.S. at 181). To be in furtherance of a conspiracy, a statement "must in some way

have been designed to promote or facilitate achievement of the goals of that conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994). Under this standard, a coconspirator statement is admissible if it "can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy." *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).

### B.    Discussion

At trial, the Government will seek to introduce for their truth certain out-of-court statements by Celsius employees, all of whom were agents of the defendant, and some of whom were coconspirators of the defendant.  The Government understands that the Court will need context to rule on these statements individually, and may need additional facts relevant to particular pieces of evidence.  For those reasons, the Government is not seeking an in limine ruling at this point regarding the admissibility of any particular statements, but instead provides argument here for ease of reference.

As an initial matter, out-of-court statements, including those in text messages or journals, for example, made by the defendant's coconspirators in furtherance of their conspiracy are not hearsay, pursuant to Federal Rule of Evidence 801(d)(2)(E). The evidence at trial will show by a preponderance that the defendant conspired with certain Celsius employees, including Cohen-Pavon, who pled guilty to conspiring with the defendant. The Court can make a preliminary ruling that statements they made in furtherance of the conspiracy are admissible, subject to the introduction of trial evidence (including the statements themselves) that is sufficient to show the existence of a conspiracy. *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) ("[S]tatements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed.). Notably, the Court may consider the coconspirators' sworn plea allocutions to

support a finding that a conspiracy with the defendant existed. *See United States v. Saneaux*, 392 F. Supp. 2d 506, 513-14 & n.10 (S.D.N.Y. 2005) (while proffer statements and plea allocutions are generally not admissible at trial, the court may consider them in determining that there was a conspiracy and that coconspirator statements made in furtherance of the conspiracy may be admitted); *Bourjaily*, 483 U.S. at 178 ("Rule [104] on its face allows the trial judge to consider any evidence whatsoever, bound only by the rules of privilege.").

With respect to statements made by Celsius employees who were not coconspirators of the defendant, and statements of coconspirators not made in furtherance of the conspiracy, these statements too are not hearsay because they are statements of the defendant's agents under Rule 801(d)(2)(D). An agency relationship existed between Mashinsky and Celsius employees, inasmuch as Mashinsky was their employer and directed and controlled all of Celsius's operations. In fact, it was Mashinsky who hired most of the employees whose communications are at issue, and many of these employees reported directly to him.  Out-of-court statements that the Government anticipates offering made by Celsius employees, such as text messages, reports, and other statements made within the scope of these individuals' employment at Celsius are therefore not hearsay. *See, e.g.*, *United States v. Russo*, 302 F.3d 37, 45 (2d Cir. 2002) ("the objective of the joint venture that justifies deeming the speaker as the agent of the defendant need not be criminal at all"); *In re Reserve Fund Sec. Litig.*, No. 09 Civ. 4346 (PGG), 2012 WL 12354233, at *7-8 (S.D.N.Y. Oct. 3, 2012) (statements made by an employee of an entity are admissible when offered against the person who controls the entity).

## III.    The Court Should Admit Limited Evidence About Celsius's Bankruptcy

Mashinsky previously moved to strike as surplusage the Indictment's references to the fact that Celsius filed for bankruptcy shortly after pausing withdrawals in June 2022.  Dkt. 42 at 26-28.  The Government opposed that motion, arguing, among other things, that it was premature.

Dkt. 43 at 29.  The Court has not yet ruled on Mashinsky's motion to strike the Indictment's references to Celsius filing for bankruptcy.  The Government now moves affirmatively to introduce certain limited references at trial to the fact that Celsius filed for bankruptcy on July 13, 2022, approximately one month after Mashinsky had been assuring Celsius investors that the company was solvent and the coins on the platform were safe.  This testimony is relevant to the defendant's mental state and to the falsity of his many statements.  The Government does not intend to introduce evidence about the bankruptcy proceeding itself, which the Government agrees is not relevant.  Nor does the Government intend to introduce evidence of what victims have been able to recover through the bankruptcy process, or whether the bankruptcy has been or will ultimately be good for Celsius's customers.  Such evidence about the bankruptcy proceeding itself is not probative to the defendant's mental state or the existence of a scheme to defraud, and therefore is not relevant at trial.

First, the facts surrounding Celsius's bankruptcy filing are relevant to the charged crimes. The Indictment alleges that on June 12, 2022, Celsius froze customers' ability to withdraw their cryptocurrency assets from the platform following a rash of customer withdrawals amid serious liquidity concerns.  (Ind. ¶¶ 44-47).  This event, termed the "Pause," was not a pause but a permanent injunction, as Celsius filed for bankruptcy only one month later without restoring customers' ability to access their own crypto assets and deposits.  (Ind. ¶ 9).  At the time of the Pause, hundreds of thousands of Celsius customers had approximately $4.7 billion worth of crypto assets on the Celsius platform.  (Ind. ¶ 9).

False and misleading statements regarding "Celsius's solvency and liquidity in the days and weeks leading up to the June 12, 2022 'Pause' on customer withdrawals that portended Celsius's filing for bankruptcy shortly thereafter" (Ind. ¶ 15) are alleged as one category of

material misrepresentations Mashinsky made as part of the schemes to defraud charged in Counts One through Three of the Indictment (Ind. ¶¶ 44-47). The Indictment alleges that Mashinsky's willfully and knowingly false and misleading statements "sought to allay customers' concerns about the solvency of the platform" (Ind. ¶ 45)—and thus fraudulently induce them to leave their assets invested with Celsius—even as Celsius executives internally acknowledged that "[t]he current business model is not sustainable" (Ind. ¶ 47) and as Mashinsky protected himself by withdrawing millions of dollars' worth of his own assets from the very platform he assured customers was solvent (Ind. ¶ 46). The fact that Celsius filed for bankruptcy a short time after Mashinsky offered investors false and misleading reassurances about the safety of their assets is, contrary to Mashinsky's argument, directly relevant and probative of Mashinsky's state of mind at the time that he made the false statements.

Courts have held that subsequent acts can be probative of a prior state of mind. *See, e.g.*, *Devonbrook, Inc. v. Lily Lynn (Lilywear), Inc.*, No. 70 Civ. 4687, 1977 WL 921, at *5 (S.D.N.Y. Jan. 10, 1977) ("Evidence of . . . subsequent events is admissible to prove a prior state of mind or intent."). That is particularly true here, where the Indictment alleges a course of conduct that culminated in Celsius's filing for bankruptcy. The evidence at trial will show that Mashinsky lied over a period of years about Celsius's financial stability, profitability, and liquidity, and the risks to which its customers and investors were exposed. The fact that Celsius first stopped allowing customers to withdraw their assets to prevent a "run" and then filed for bankruptcy shortly thereafter are only two examples among many cited in the Indictment proving that Mashinsky's claims about Celsius's profitability, safety, liquidity, and riskiness were not true.

Furthermore, Mashinsky made additional misrepresentations not quoted in the Indictment that the Government expects will be evidence of the fraudulent schemes charged in Counts One

through Three.  For example:

- On or about November 26, 2019, Mashinsky said: "These are your coins, not our coins. Whatever you put in, if you put in one Bitcoin, you will be withdrawing one Bitcoin . . . It's always your Bitcoin. Always your Ether. Always your CEL Token."

- On or about July 24, 2020, Mashinsky said: "[W]hen you give us bitcoin it's not like it's ours, right? It's yours legally. It is still your bitcoin. The only thing we do is when you lend us your bitcoin, we lend them to people who pay us interest. When they return them, it goes back to the wallet and it's still yours from that wallet."

- On March 25, 2021, Mashinsky wrote on Twitter that "all coins are returned to their owners even in the case of bankruptcy."

These statements reassuring customers that their assets still belonged to them and could be returned at any time, even in the event of a bankruptcy, were not true, and gave investors and customers a false impression of the risk of investing or depositing assets with Celsius.  The bankruptcy itself is proof of this fact.  Moreover, the evidence will establish that these and similar misstatements were material to investors' decisions.

Mashinsky is wrong to argue that references to the bankruptcy proceedings are inflammatory and prejudicial.  *See* Dkt. 42 at 32.    Mashinsky contends that statements about bankruptcy proceedings are confusing, complicated, and carry unspecified "stigma," but provides no support for any of these assertions.  Br. 32.  Any concern that jurors would draw incorrect or impermissible conclusions about the import of bankruptcy proceedings could be addressed in a limiting instruction.  *See, e.g.*, *United States v. Daugerdas*, No. 09 Cr. 581 (WHP), 2010 WL 4967878, at *2 (S.D.N.Y. Nov. 22, 2010) (holding that "a limiting instruction to the jury is the most appropriate safeguard against potential prejudice"); *United States v. Turoff*, 652 F. Supp. 707, 713–14 (E.D.N.Y.), *supplemented*, 691 F. Supp. 607 (E.D.N.Y. 1987) (limiting "instructions will guarantee that the jury understands with what the defendants are and are not charged, but the defendants are not entitled to preclude the government from pleading and proving conduct that is relevant to the defendants' alleged crimes"); *United States v. Caglar*, No. 08 Cr. 232 (CFD), 2009

WL 2169232, at *2 (D. Conn. July 20, 2009) (denying motion to strike alleged surplusage and noting that "at trial the Court can craft a limiting instruction to shield against possible prejudice").

Moreover, occasional references to the bankruptcy are likely to arise through basic foundational questions for certain witnesses, and treating the word as radioactive is more likely to create confusion than anything else.  For example, the Government expects to call victims of Mashinsky's fraud, many of whom deposited their cryptocurrency on the Celsius platform based on Mashinsky's representations that they were "safe" and would be returned to the victims if Celsius were to declare bankruptcy.  After Celsius declared bankruptcy, these victims lost access to their cryptocurrency and ultimately lost most of the value of what the assets they had deposited. The fact of Celsius's bankruptcy is therefore relevant context for their testimony.  In addition, several Celsius employees who are expected to testify—including Roni Cohen-Pavon—continued to work at Celsius throughout the bankruptcy process.  Absent an understanding of when Celsius declared bankruptcy, threshold background questions about how long these witnesses worked for Celsius could mislead the jury and cause jurors to mistakenly believe that Celsius continued to be a going concern after June 2022.The Government anticipates that there will be other evidence at trial that refers to the bankruptcy proceedings, potentially including testimony from former Celsius executives about the events leading up to the Pause and the declaration of bankruptcy and the differences between internal discussions and public-facing statements during this time period, and Mashinsky's own statements offered as part of the bankruptcy proceedings, including an affidavit he filed and a letter he wrote to debtors' counsel explaining his version of events.  While the bankruptcy is not expected to be a major focus of the trial, it is a relevant fact that will likely arise in a variety of contexts, and avoiding discussion of the fact is likely to lead to confusion.

**CONCLUSION**

For the foregoing reasons, the Government's motions *in limine* should be granted.

Dated: New York, New York
October 11, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s_____
Adam S. Hobson
Allison Nichols
Peter J. Davis
Assistant United States Attorneys
Tel.: (212) 637-2484

27