UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------x
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :
            - v. -                                  :            23 Cr. 347 (JGK)
                                                    :
ALEXANDER MASHINSKY,                                :
                                                    :
                    Defendant.                      :
                                                    :
-----------------------------------------------------x


**THE GOVERNMENT'S MOTIONS *IN LIMINE***


DAMIAN WILLIAMS
United States Attorney
Southern District of New York
The Jacob K. Javits Federal Building
26 Federal Plaza, 37th Floor
New York, New York 10278


Adam S. Hobson
Allison Nichols
Peter J. Davis
Assistant United States Attorneys

- Of Counsel –

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................... 1

I.   The Court Should Deny the Defendant's Motion to Admit the Full Videos of the Defendant's AMAs and Interviews ....................................................................... 1

II.  The Court Should Deny the Defendant's Motion to Preclude the Government from Arguing That Excess Buying of CEL Was an Illegal or Wrongful Act .............................................. 6

III. The Court Should Deny the Defendant's Motion to Preclude "Improper" Summary Charts and Summary Witness Testimony ...................................................................... 9

IV. The Court Should Reserve Ruling on Defendant's Motion to Admit Categories of Out-of-Court Statements for Non-Hearsay Purposes. ................................................................ 13

V.  The Court Should Admit Limited Evidence About Celsius's Bankruptcy ....................... 14

VI. The Court Should Deny the Defendant's Motion to Introduce an Out-of-Court Presentation Made by His Former Defense Counsel ...................................................................... 15

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

## <u>Cases</u>

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007).................................................................................................. 7, 8

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)........................................................................................................... 4

*Durland v. United States*,
  161 U.S. 306 (1896)........................................................................................................... 8, 9

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
  636 F. Supp. 3d 144 (D.D.C. 2022) .................................................................................. 11, 12

*Koppel v. 4987 Corp.*,
  167 F.3d 125 (2d Cir. 1999)............................................................................................... 5

*S.E.C. v. Vali Mgmt. Partners*,
  No. 21-453, 2022 WL 2155094 (2d Cir. June 15, 2022) ...................................................... 7

*Set Capital LLC v. Credit Suisse Grp.*,
  996 F.3d 64 (2d Cir. 2021)................................................................................................. 7, 8

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)........................................................................................................... 5

*U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*,
  822 F.3d 650 (2d Cir. 2016)............................................................................................... 8

*United Paperworkers Int'l Union v. Int'l Paper Co.*,
  985 F.2d 1190 (2d Cir. 1993)............................................................................................. 4

*United States v. Bendelstein*,
  No. 18 Cr. 309 (HG), 2023 WL 2457842 (E.D.N.Y. Mar. 10, 2023)..................................... 11

*United States v. Casamento*,
  887 F.2d 1141 (2d Cir. 1989)............................................................................................. 10

*United States v. Costanzo*,
  22 Cr. 281 (JPO) ............................................................................................................... 12

*United States v. Fawwaz*,
  691 F. App'x 676 (2d Cir. 2017) ........................................................................................ 3

*United States v. Fazio*,
  11 Cr. 873 (KBF) ........................................................................................................ 6

*United States v. Gentile*,
  No. 21 Cr. 54 (RPK), 2024 WL 3046193 (E.D.N.Y. June 18, 2024) .......................... 11, 12, 13

*United States v. Gramins*,
  939 F.3d 429 (2d Cir. 2019)........................................................................................ 4

*United States v. Ho*,
  984 F.3d 191 (2d Cir. 2020)...................................................................................... 10, 11

*United States v. Johnson*,
  507 F.3d 793 (2d Cir. 2007)........................................................................................ 3

*United States v. Lesniewski*,
  No. 11 Cr. 1091 (VM), 2013 WL 3776235 (S.D.N.Y. July 12, 2013) ............................... 3, 16

*United States v. Litvak*,
  889 F.3d 56 (2d Cir. 2018)........................................................................................... 4

*United States v. Lumiere*,
  249 F. Supp. 3d 748 (S.D.N.Y. 2017)......................................................................... 3, 16

*United States v. Marin*,
  669 F.2d 73 (2d Cir. 1982).......................................................................................... 2

*United States v. Mashinsky*,
  23 Cr. 347 (JGK) ....................................................................................................... 7

*United States v. Milton*,
  21 Cr. 478 (ER) ......................................................................................................... 12

*United States v. Parnas*,
  No. 19 Cr. 725 (JPO), 2022 WL 669869 (S.D.N.Y. Mar. 7, 2022) ........................................ 11

*United States v. Regan*,
  937 F.2d 823 (2d Cir. 1991)........................................................................................ 8

*United States v. Royer*,
  549 F.3d 886 (2d Cir. 2008)...................................................................................... 7, 8

*United States v. Rutigliano*,
  614 F. App'x 542 (2d Cir. 2015) ................................................................................. 3

*United States v. Scarpa*,
 897 F.2d 63 (2d Cir. 1990)..................................................................................... 5

*United States v. Simon*,
 425 F.2d 796 (2d Cir. 1969)................................................................................... 8

*United States v. Trapilo*,
 130 F.3d 547 (2d Cir. 1997)................................................................................... 8

*United States v. Vilar*,
 729 F.3d 62 (2d Cir. 2013)..................................................................................... 4

*United States v. Yousef*,
 327 F.3d 56 (2d Cir. 2003)................................................................................... 11

## **Rules**

Fed. R. Evid. 401 ......................................................................................................... 5

Fed. R. Evid. 801(c) .................................................................................................. 15

Fed. R. Evid. 1006 .................................................................................................... 10

Fed. R. Evid. 106 ................................................................................................... 2, 3

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to the defendant's motions *in limine* (1) to admit the full videos of Mashinsky's interviews rather than excerpts; (2) to prohibit the Government or its witnesses from arguing that excess buying of CEL is "an illegal or wrongful act"; (3) to preclude "improper" summary charts and summary witness testimony; (4) to permit the defense to introduce multiple categories of out-of-court statements for non-hearsay purposes; (5) to preclude the Government from referring to Celsius's bankruptcy; and (6) to admit an out-of-court attorney presentation made by Mashinsky's former defense counsel in which that counsel responded to some of the Government's factual arguments. Each of these motions lacks merit and should be denied.

## ARGUMENT

**I.    The Court Should Deny the Defendant's Motion to Admit the Full Videos of the Defendant's AMAs and Interviews**

The defendant seeks an *in limine* ruling from the Court permitting admission of the full video of any interview for which the Government introduces an excerpt. As set forth in the Indictment, the defendant filmed dozens of interviews and "Ask Mashinsky Anything" videos, or AMAs, in which he made false and misleading statements about Celsius's business. The Government expects to introduce a large number of these interviews at trial, either in full or as excerpts. The Government has agreed to provide the defense with its initial video designations by the end of November, well in advance of trial. At this point, the defense cannot contend that any of the Government's individualized video exhibits are misleading or lack important context, because they do not yet have the Government's designations. Instead, the defense is seeking a preemptive ruling that, regardless of the content of any particular excerpt, and no matter how self-serving Mashinsky's statements might be in non-designated portions of the interview, and

1

whatever irrelevant and confusing content or inadmissible hearsay the video might contain, the full interview must be admitted. Such a broad ruling is premature and would likely result in the introduction of irrelevant and inadmissible material. The motion should be denied without prejudice to the defendant's seeking on an individual basis to offer identified exhibits such that the Government can make appropriate objections and the Court can rule on admissibility.

Mashinsky's AMAs and public interviews contain a wide range of content and material. They average around an hour in length and often include guest speakers, including Celsius employees. The topics sometimes extend beyond Celsius and its business model and also include Mashinsky talking about his personal life, his work history, and his opinions on various topics, including the cryptocurrency industry in general. If offered by the defendant, much of this content would constitute inadmissible hearsay. Much would also be inadmissible under Rule 403 as irrelevant, misleading, or cumulative.

The so-called "rule of completeness" under Federal Rule of Evidence 106 does not automatically authorize the introduction of a full video whenever a party introduces a portion of that video. The rule requires only the introduction of "any other part . . . that in fairness ought to be considered at the time." FRE 106. Fairness, in this context, requires admission of only so much of a statement as is necessary "to explain the admitted portion, to place it in context, or to avoid misleading the trier of fact . . . or to ensure a fair and impartial understanding of the admitted portion." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). It "does not, however, require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Id.*

As Judge Rakoff has explained, Rule 106 is not a vehicle to introduce material that is "context only insofar as they represent . . . self-serving attempts to shoehorn after-the-fact

justifications for [a defendant's] actions." *United States v. Lumiere*, 249 F. Supp. 3d 748, 758 (S.D.N.Y. 2017); *accord United States v. Lesniewski*, No. 11 Cr. 1091 (VM), 2013 WL 3776235, at *5 (S.D.N.Y. July 12, 2013), *aff'd sub nom United States v. Rutigliano*, 614 F. App'x 542 (2d Cir. 2015). Rather, the analysis a court must undertake is to examine the specific statements the Government intends to introduce and the reasons for introducing those statements, then examine whether the portions sought to be admitted under Rule 106 are necessary for the jury to fairly understand the admitted statement. For example, in *Lumiere*, the Government introduced portions of a recording to introduce certain "historical facts about the mechanics" of a mismarking scheme. *Lumiere*, 249 F. Supp. 3d at 758. Judge Rakoff rejected the defense's motion to introduce, under Rule 106, portions of the same recording in which the defendant suggested he had "semi-cogent explanations" for the marks. *Id.* As Judge Rakoff explained, "the admitted portions were a simple admission to participating in the mismarking scheme; the excluded portions were [the defendant's] improbable attempts to claim, long after the fact, that he had done so innocently." *Id.*

Similarly, in *United States v. Campos*, the Second Circuit affirmed a decision to preclude the defense from offering, under Rule 106, portions of recordings from which the Government had offered other excerpts. 763 F. App'x 97, 101 (2d Cir. 2019). The Circuit explained that the Government had offered excerpts of the recording "for a limited purpose," namely, the falsity of a particular assertion. *Id.* This did not open the door to using Rule 106 "as an end-run around the hearsay rule," by admitting other parts of the recordings that were not direct context for the specific statement at issue. *Id.*; *see also United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (precluding admission of part of post-arrest interview under Rule 106); *United States v. Fawwaz*, 691 F. App'x 676, 678 (2d Cir. 2017) (same).

The defendant also contends that the interviews should be admitted wholesale because the "full interviews are probative of the 'total mix' of information available to a reasonable investor and probative of whether the alleged misstatement 'significantly alters the total mix,' thereby rendering it material."  Def. Br. at 3.  But the "total mix of information" does not mean that all information that might have been available to an investor is relevant and admissible.  The standard for the materiality of a misrepresentation is straightforward: "[a] misstatement in a securities transaction is material if there is a substantial likelihood that a reasonable investor would find the misrepresentation important in making an investment decision." *United States v. Gramins*, 939 F.3d 429, 445 (2d Cir. 2019) (internal quotations marks and ellipsis omitted). The purpose behind this standard "is to assure that the defendant's conduct was calculated to deceive." *Weaver*, 860 F.3d at 95.

It is correct that a "misrepresentation is important to a reasonable investor, in turn, if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Gramins*, 939 F.3d at 445 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)). "However, 'not every mixture with the true will neutralize the deceptive,' *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. [1083, 1097 (1991)], and even information actually sent to shareholders need not be considered part of the total mix reasonably available to them if 'the true' is 'buried' in unrelated discussions." *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198-99 (2d Cir. 1993). Ultimately, "[a] finding of materiality . . . requires a showing only of importance, not 'actual reliance.'" *United States v. Litvak*, 889 F.3d 56, 66 (2d Cir. 2018) (quoting *United States v. Vilar*, 729 F.3d 62, 89 (2d Cir. 2013).

The defendant suggests that this materiality standard renders all information that might have been available to an investor relevant and admissible. *See* Def. Br. 4-5. Information available to an investor that tends to show that the representations made by the defendant were unimportant or that information omitted by the defendant would not have altered the total mix of information might well be admissible. But the defendant offers no support for the view, advanced in his briefing and proposed jury instructions, that all information available to an investor is relevant to assessing the materiality of an alleged misstatement, including information that has nothing to do with the misstatement itself. To the contrary, to be relevant and therefore admissible, evidence must have some actual value in demonstrating that a statement was of a sort that would be important to a reasonable investor, and must not risk confusing the issues, misleading the jury, and wasting time, and the mere fact that information might have been publicly available at the time is not sufficient to meet this test. *See* Fed. R. Evid. 401, 403.[1]

Nor should the defendant be permitted to use the rule of completeness to smuggle in his otherwise inadmissible statements as part of an effort to suggest to the jury that he was, on the whole, a truth teller. As the Government argued in Point I.F. of its *motions in limine*, it is settled law that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir.

---

[1]     It is worth noting that the "total mix" standard was developed to provide a context for evaluating the import of omitted true facts. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)) ("there must be a substantial likelihood that *the disclosure of the omitted fact* would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available" (emphasis added)). As the Second Circuit has explained in the context of a claim under Section 14(a) of the Exchange Act and Rule 14a-9, "the purpose of looking at the sum of all information reasonably available is to enable a registrant to rely on a reasonable belief that the other party already has access to the facts to excuse him from new disclosures which reasonably appear to be repetitive." *Koppel v. 4987 Corp.*, 167 F.3d 125, 132 (2d Cir. 1999). But it does not follow from this analysis that an affirmatively false statement is immaterial as a matter of law simply because the total mix of information includes contradictory information that is true.

1990); *see also United States v. Fazio*, No. 11 Cr. 873 (KBF), 2012 WL 1203943, at *5 (S.D.N.Y. Apr. 11, 2012) ("[A] defendant may not affirmatively try to prove his innocence by reference to specific instances of good conduct; character is to be proven by reputation or opinion evidence."), *aff'd*, 770 F.3d 160 (2d Cir. 2014).

For these reasons, the Court should deny the defendant's motion for blanket approval to admit the AMAs and interviews in full, but without prejudice to the defendant's raising specific arguments about the admissibility of specific statements under the rule of completeness or any other relevant evidentiary doctrine.

## II.    The Court Should Deny the Defendant's Motion to Preclude the Government from Arguing That Excess Buying of CEL Was an Illegal or Wrongful Act

The defendant moves to prohibit the Government and its witnesses from "arguing or insinuating that 'excess buying' of CEL is an illegal or wrongful act." Def. Br. at 7. The motion further specifies that the "Court should preclude the government from arguing that such acts are per se manipulative," *id.* at 8, and that "the Court should preclude the prosecution from arguing that a series of CEL transactions, even if greater than necessary for CEL rewards, or in large volumes, or that impacted the CEL price, necessarily constitutes manipulation or manipulative intent." *Id.* at 10. The Government has no intention of arguing that excess buying of CEL is "per se manipulative," or that excess buying, without manipulative intent, "necessarily" constitutes manipulation, because this is not the law. But where excess buying is done for the purpose of inflating the price of CEL—as we expect the evidence to show here—excess buying does constitute market manipulation. The Government therefore must be allowed to argue that Mashinsky's excess purchasing of CEL, which was done for the purpose of artificially affecting the price of CEL, was an illegal or wrongful act.

In response to the defendant's motion to dismiss Count Six of the Indictment, which charges the defendant with market manipulation in violation of Section 9(a)(2) of the Securities Exchange Act, the Government discussed the extensive case law in this Circuit holding that securities purchases that might not be inherently illegal can still constitute illegal market manipulation when done for the purpose of manipulating the price of the security. *See* Gov't Opp. to Mot. to Dismiss, Dkt. 43, at 17-24. This is true not only for market manipulation arising under Section 9(a)(2), which is charged in Count Six and was the subject of the defendant's motion to dismiss, but also for market manipulation arising under Section 10(b), which is charged in Count Five, and wire fraud, which is charged in Count Seven, neither of which counts the defendant moved to dismiss.

The Second Circuit has directly addressed the question of when open-market transactions may be fraudulent and has held that "[o]pen-market transactions that are not inherently manipulative may constitute manipulative activity when accompanied by manipulative intent." *Set Capital LLC v. Credit Suisse Grp.*, 996 F.3d 64, 76 (2d Cir. 2021). This means that "in some cases scienter is the only factor that distinguishes legitimate trading from improper manipulation." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007); *accord S.E.C. v. Vali Mgmt. Partners*, No. 21-453, 2022 WL 2155094, at *1-2 (2d Cir. June 15, 2022) (holding that "certain open-market transactions may constitute manipulative activity when accompanied by manipulative intent"); *United States v. Royer*, 549 F.3d 886, 900 (2d Cir. 2008) (explaining that the Court of Appeals sustains convictions under Rule 10b-5 where defendants seek to artificially affect the prices of securities); *see also United States v. Mashinsky*, No. 23 Cr. 347 (JGK) (S.D.N.Y. Nov. 8, 2024), Dkt. 92 at 15-16.

In these cases, the deception arises from the fact that investors are misled to believe "that

prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators." *ATSI Commc'ns*, 493 F.3d at 100 (quoting *Gurary*, 190 F.3d at 45); *see also Set Capital*, 996 F.3d at 76 ("For market activity to artificially affect a security's price, we generally ask whether the transaction or series of transactions sends a false pricing signal to the market." (quotation marks and citations omitted)); *Royer*, 549 F.3d at 899 (approving jury instruction that "[t]he essential element of manipulation is the deception of investors into believing that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand"); *United States v. Regan*, 937 F.2d 823, 829 (2d Cir. 1991) ("Failure to disclose that market prices are being artificially depressed operates as a deceit on the market place and is an omission of a material fact." (quotation marks and citation omitted)). The "deception" required for market manipulation convictions is not some additional act of deception or false information, but rather the deception in engaging in market transactions with the intent to deceive investors into believing that the price is set by natural market forces.

The long line of decisions holding that open-market transactions can constitute market manipulation if executed with manipulative intent are consistent with the fundamental legal principle that otherwise legal actions may be illegal if committed with the intent to defraud.  For decades, the Second Circuit has held that, in statutes charging a scheme to defraud, the statutes 'condemn[] the intent to defraud, that is, the forming of the scheme to defraud, however and in whatever form it may take." *United States v. Trapilo*, 130 F.3d 547, 552 (2d Cir. 1997); *United States v. Simon*, 425 F.2d 796, 805-08 (2d Cir. 1969) (Friendly, J.) (accounting procedures that might otherwise be acceptable constitute fraud when undertaken with deceptive intent).  "What gives a scheme its fraudulent nature is . . . the intent and purpose."  *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 662 (2d Cir. 2016) (quoting *Durland v. United*

*States*, 161 U.S. 306, 313 (1896)).  The principle that intent distinguishes lawful from unlawful conduct is the bedrock of white-collar criminal prosecution.  For example, there is nothing criminal about saying something that is false; what makes the otherwise-innocent conduct illegal is pairing it with fraudulent intent.  There is nothing illegal about moving money from one bank account to another; what makes it money-laundering is doing so with the intent to conceal or promote a crime. The core of criminality in all of these white-collar crimes is ultimately the defendant's "intent and purpose."  *Durland*, 161 U.S. at 313.

It therefore does not matter that excess buys are not "per se manipulative."  Few if any acts lead to per se criminal liability—the actus reus must be accompanied by the appropriate mens rea. But that does not mean that certain aspects of the trading, including the volume and timing of the trading, are not relevant facts for the jury to consider in evaluating guilt, or that the jury cannot make reasonable inferences related to guilt based on the manner in which the defendant chose to trade.  The defendant is free to argue in response that the excess CEL purchases were instead consistent with a legitimate trading strategy and were not intended to artificially affect the price.

## III.    The Court Should Deny the Defendant's Motion to Preclude "Improper" Summary Charts and Summary Witness Testimony

The defendant moves to preclude the Government from introducing "improper" summary charts and summary witness testimony.  This argument is premature, as the Government has not yet prepared any summary charts or decided whether to call any summary witnesses.  As is customary in this District, the Government expects that any summary witnesses will be identified among the witnesses for whom the Government produces Jencks Act materials, and that those Jencks Act materials will include current drafts of any charts the witness intends to use at trial, and will be updated as new drafts and other disclosable material is created.  The Government also expects to mark any summary charts as potential exhibits and provide them to defense counsel

prior to introducing them at trial. The defendant will therefore have sufficient time to raise any specific objections without the Court granting the motion at this time.

The defendant's motion is also unclear about what, exactly, makes a summary chart or summary witness "improper." The motion concedes that the use of summary charts and summary witnesses is commonplace and that courts in this District routinely admit such evidence. Def. Br. at 11, 13. In fact, the Second Circuit "has long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations, so long as the judge properly instructs the jury . . . that it is not to consider the charts as evidence." *United States v. Ho*, 984 F.3d 191, 210 (2d Cir. 2020) (quoting *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989)). The defense motion also acknowledges that Federal Rule of Evidence 1006 expressly provides that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," so long as the proponent "make[s] the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." Def. Br. at 11 (quoting Fed. R. Evid. 1006). And the motion concedes that, here, the "trial is expected to involve vast amounts of electronic evidence," including "untold numbers of video recordings, email, text messages and other electronically stored information," *id.*, thus satisfying the threshold requirement for admitting summary charts.

The motion appears to take issue with summary charts that "generat[e] a narrative to support the prosecution's theory of the case." Def. Br. at 11. The motion cites only out-of-Circuit cases in support the proposition that such charts are improper. That is unsurprising given that the Second Circuit rejected that very argument in *Ho*, which affirmed the use of "timeline" charts, and courts within this Circuit regularly admit summary charts even where they present evidence in a

manner that supports the offering party's narrative.  *See* 984 F.3d at 209 (rejecting argument that "Federal Rule of Evidence 1006 does not permit summary charts to be 'created for the purpose of generating a narrative supporting the prosecution's theory of the case'"); *see also, e.g.*, *United States v. Yousef*, 327 F.3d 56, 157-58 (2d Cir. 2003) (holding that "Government was . . . entirely within its rights to use charts to draw the jurors' attention to particular evidence culled from a voluminous set of records"); *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2022 WL 669869, at *7 (S.D.N.Y. Mar. 7, 2022) ("[Defendant] asserts that the charts were misleading because they took evidence out of context to support the government's narrative.  But this was well within the government's right to do."); *United States v. Gentile*, No. 21 Cr. 54 (RPK), 2024 WL 3046193, at *1 (E.D.N.Y. June 18, 2024) (admitting summary charts over defendant's objection that the charts "go several steps farther than merely summarizing various bank transfers reflected in voluminous bank records, and instead draw conclusions, adopt contentious terminology, display inflammatory colored markings, introduce calculations without explanation, [and] replicate select non-voluminous documents in an argumentative depiction."); *United States v. Bendelstein*, No. 18 Cr. 309 (HG), 2023 WL 2457842, at *10 (E.D.N.Y. Mar. 10, 2023) (denying motion for new trial based on argument that summary charts "were improperly argumentative" because defendant "does not contend that anything included in the charts was false"); *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 636 F. Supp. 3d 144, 161-62 (D.D.C. 2022) (finding "no authority for the proposition that a witness reading documents into the record as a part of non-summary testimony must also read documents, or portions thereof, that shed a more favorable light on the opposition party").  The Government does not intend to offer any charts that are unfairly argumentative, inflammatory, or tendentious, or that express an opinion on the ultimate legal issues.  But there is

no prohibition on the Government's offering charts that are supportive of the Government's theory of the case.

The motion also complains that summary witnesses "are hardly 'witnesses' at all" and "are more akin to 'broadcasters' or 'readers' who simply read into the record the statements of other declarants." Def. Mot. at 13. But again, the use of summary witnesses is permissible under the rules of evidence, and the defense cites no case where a court has found it improper. To the contrary, the motion cites several cases where summary witnesses have been permitted to serve as document readers. *See id.* (citing *United States v. Costanzo*, 22 Cr. 281 (SDNY) (JPO) and *United States v. Milton*, 21 Cr. 478 (SDNY) (ER)); *see also Gentile*, 2024 WL 3046193, at *3 ("[I]t is permissible for a summary witness to 'also read admissible non-summary evidence into the record.'" (quoting *Fairholme Funds, Inc.*, 636 F. Supp. 3d at 161)). This use of summary witnesses is an efficient and commonplace way of presenting to the jury evidence that has been admitted but that has not yet been seen by the jurors. Nor is there anything improper about the routine practice of calling a paralegal to testify as a summary witness. To the contrary, the Government is sometimes attacked for using an agent as a summary witness *instead of* a paralegal, with the defense arguing that an agent lends the testimony a greater imprimatur of reliability.

The Court should also deny the defendant's motion to order the Government "to disclose its summary charts, the identity of all those involved in preparing each chart, and a summary of any expected summary testimony, sufficiently in advance of trial." Def. Br. at 15. As discussed above, the Government intends to identify its summary witnesses, to produce draft charts with Jencks Act materials, and to mark final charts as proposed exhibits in advance of any summary witnesses' testimony. But by their very nature, because summary witnesses are summarizing evidence that is introduced at trial, including sometimes witness testimony, there is a limit to how

far in advance summary charts can be finalized.  Nor is there any requirement in the rules that final charts be prepared pre-trial, or that the proponent disclose the identity of all those involved in preparing each chart.  *See Gentile*, 2024 WL 3046193, at *4 (denying motion to "order the Government to promptly identify the underlying data, methodologies, and assumptions relied upon" by summary witness because "the government is not obliged to establish the proper foundation in advance of trial, but rather during its direct examination").  The Government has no interest in introducing inaccurate or improper charts, and it is therefore in the Government's interest to provide copies of the charts to the defense with sufficient time for objections, even absent a Court order.  We submit, however, that specific deadlines and requirements are not helpful.

**IV.    The Court Should Reserve Ruling on Defendant's Motion to Admit Categories of Out-of-Court Statements for Non-Hearsay Purposes.**

Mashinsky has identified three broad categories of potential out-of-court statements that he will seek to introduce at trial.  These include "instructions" Mashinsky gave to his team; reports and other information that his team provided to Mashinsky; and evidence of questions by Mashinsky about his public statements.  Def. Br. at 18.  Evaluating the admissibility of Mashinsky's proposed evidence—both with respect to the relevance of these statements and with respect to whether they should be precluded by the rule against hearsay—will be a highly fact-specific task.  Accordingly, the Government respectfully asks the Court to reserve ruling on the defendant's motion in broad strokes and instead allow the parties to address each evidentiary issue as it arises with a full factual record.  The Government anticipates agreeing on admissibility for some of these proposed exhibits, and of course agrees with the portions of the defendant's motion that accurately state the law.  Nonetheless, the Government disagrees with many of the arguments

made in the motion and reserves its right to object to particular exhibits (after the parties' exchange exhibits) with a full factual record.

## V.    The Court Should Admit Limited Evidence About Celsius's Bankruptcy

Mashinsky previously moved to strike as surplusage the Indictment's references to the fact that Celsius filed for bankruptcy shortly after pausing withdrawals in June 2022.  Dkt. 42 at 26-28.  The Government opposed that motion, arguing, among other things, that it was premature, Dkt. 43 at 29, and the Court denied Mashinsky's motion on that basis, Dkt. 92 at 17-19.  The Government moved affirmatively to introduce certain limited references at trial to the fact that Celsius filed for bankruptcy on July 13, 2022, approximately one month after Mashinsky had been assuring Celsius investors that the company was solvent and the coins on the platform were safe. This testimony is relevant to the defendant's mental state and to the falsity of his many statements. The Government does not intend to introduce evidence about the bankruptcy proceeding itself, which the Government agrees is not relevant, or to argue that customers lost money solely because of the fact that Celsius filed for bankruptcy.  Nor does the Government intend to introduce evidence of what victims have been able to recover through the bankruptcy process, or whether the bankruptcy has been or will ultimately be good for Celsius's customers.  Such evidence about the bankruptcy proceeding itself is not probative of the defendant's mental state or the existence of a scheme to defraud, or any other fact of consequence, and therefore is not relevant at trial.[2]

The Government has set forth the relevance of the fact of the bankruptcy filing to the charged crimes in this case.  Mashinsky's motion primarily relies on Judge Kaplan's rulings in

---

[2] The Government reserves its right to revisit the scope of evidence pertaining to the bankruptcy if additional aspects become relevant in response to defense arguments and exhibits introduced at trial.  Before doing so, however, the Government would expect to raise the issue with the Court.

*United States v. Bankman-Fried*, where, he concedes, Judge Kaplan ruled, "all evidence and argument about the bankruptcy proceeding—besides the fact that FTX and Alameda declared bankruptcy—should be precluded." Def. Br. at 20. That is the same ruling that the Government seeks here. Given that the Government will not be arguing that the bankruptcy filing is proof that customers suffered any loss, the defendant's concerns about prejudice and request to introduce evidence from the proceeding itself are unfounded.

### VI.   The Court Should Deny the Defendant's Motion to Introduce an Out-of-Court Presentation Made by His Former Defense Counsel

Mashinsky seeks permission to introduce an out-of-court statement by his former defense counsel. Specifically, Mashinsky seeks to introduce an attorney advocacy presentation that his former defense counsel made to the Securities Exchange Commission on January 26, 2023, well after the events charged in the Indictment. The presentation is hearsay, and there is no evidentiary exception for its admissibility.

As set forth in the indictment, Mashinsky withdrew nearly all of his non-CEL crypto assets from the Celsius platform in May 2022. He did this right before the "Pause" and right as he was telling his customers "we all have our money in the same platform. I have millions of dollars of my money on the platform as well. And obviously we're in it together." Mashinsky asserts that his prior defense counsel's presentation "completes the narrative to show that Mr. Mashinsky withdrew his assets from Celsius *to pay his taxes*, not because he believed the company was going under; and it shows that Mr. Mashinsky did not lie to customers on May 27, 2022 when he told them he had millions of dollars on the platform." Def. Br. at 30. To make these points, Mashinsky seeks to introduce an out-of-court statement by his former attorneys in a presentation to the SEC that was made in January 2023.

As an initial matter, Mashinsky's former counsel's presentation is hearsay. Federal Rule

of Evidence 802 generally bars the admission of hearsay, which is defined in Rule 801(c) as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c).

Mashinsky does not dispute that this presentation is barred by the hearsay rule, and he does not cite any of the usual hearsay exceptions to justify its admissibility. Instead, Mashinsky suggests that the presentation is admissible under the rule of completeness. This too, is wrong. Rule 106 provides, "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part--or any other statement--that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Here, Mashinsky has not identified any statement that the Government is introducing that he is trying to complete. To allow Mashinsky to introduce inadmissible evidence under the guise of the rule of completeness would be an end-run around the hearsay rule. As Judge Rakoff has explained, Rule 106 is not a vehicle to introduce material that is "context only insofar as they represent . . . self-serving attempts to shoehorn after-the-fact justifications for [a defendant's] actions." *Lumiere*, 249 F. Supp. 3d at 758; *accord Lesniewski*, 2013 WL 3776235, at *5.

Indeed, the example provided by the defense highlights this distinction. The Committee note to Rule 106 posits, "[a]n example is the defendant in a murder case who admits that he owned the murder weapon, but also simultaneously states that he sold it months before the murder. The statement about selling the weapon corrects a misimpression only if it is offered for its truth. In such cases, Rule 106 operates to allow the completing statement to be offered as proof of a fact." Mashinsky does not explain how this example applies here. Nor could he—he has not identified the "simultaneous" statement he is trying to complete.

16

To the extent Mashinsky would like to offer evidence of his tax payments, he can do so (assuming their relevance) through competent evidence rather than hearsay. His former counsel's advocacy presentation is not competent evidence. To the extent Mashinsky identifies the underlying exhibits related to his tax payments that he seeks to introduce at trial, the Government reserves its right to evaluate those exhibits and raise any objections to them.

## CONCLUSION

For the foregoing reasons, the defendant's motions *in limine* should be denied.

Dated: New York, New York
        November 8, 2024

                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney


                                By: /s_____
                                    Adam S. Hobson
                                    Allison Nichols
                                    Peter J. Davis
                                    Assistant United States Attorneys
                                    Tel.: (212) 637-2484