

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

November 8, 2024

**BY ECF**

The Honorable John G. Koeltl
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Alexander Mashinsky*, 23 Cr. 347 (JGK)

Dear Judge Koeltl:

      The Government respectfully submits this letter to note its preliminary objections to the defendant's proposed jury charges, without prejudice to supplementing these objections as trial proceeds. As explained below, the defendant's proposed charge strays far afield from the standard securities and wire fraud charges in criminal cases.

      Because the trial evidence or argument may affect certain aspects of the charge, because the Government understands that the Court will hold a charge conference, and because the Government has proposed its own jury charges (Dkt. No. 76 (the "Government's Requests" or "Gov't Requests")), the Government does not offer a line-by-line response or objection to the Defendant's Requests, but instead seeks to draw the Court's attention to the principal substantive requests of the defendant that the Government believes are either contrary to or materially misstate applicable law. The analysis below focuses on portions of the charges that are manifestly incorrect or inappropriate, but does not generally compare the merits or language of the defendant's requested instructions with the Government's, which the Government respectfully submits are consistently clearer, more helpful to the jury, fairer to both parties, and adhere to and are supported by case law and precedent in this circuit and district.

      <u>Defense Instruction No. 4 – Crimes Defined by Statute Only</u>

      The Government objects to this instruction because it is unnecessary and risks confusing the jury on the relevant scienter standards. Additionally, it is legally incorrect that the offenses at issue are "defined by statute only" as Title 15 securities fraud is also defined by relevant provisions within the Code of Federal Regulation.

Defense Instruction No. 5 – Good Faith Doctrine

Although the Government does not object to a good faith charge in general, and the Government itself proposed a standard good faith instruction in its discussion of scienter, which is the logical place to include such an instruction, the Government objects to the language proposed by the defense for several reasons.

First, much of the proposed instruction is inconsistent with the definition of "willfulness," which requires only wrongful conduct, as discussed in more detail below.

Second, much of the language is confusing. For instance, the defendant requests language stating that, "[h]owever misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith." This sentence is vague and may be understood to suggest that if the defendant engaged in fraudulent scheme but believed ultimately everything would work out for investors, he cannot be convicted of fraud, which is incorrect. *See United States v. Gatto*, 986 F.3d 104, 118 (2d Cir. 2021) ("The law is clear: a defendant cannot negate the fraud he committed by wishing that everything works out for his victim in the end.").

Third, the Government objects to the instruction that the jury should consider the fact that "attorneys may have drafted and reviewed documents or otherwise been involved in matters related to the charged conduct, or the fact that attorneys did not inform Mr. Mashinsky of any potential illegality." To date, the defendant has not indicated that he intends to mount a formal advice of counsel defense. In addition, such an instruction is warranted only if there are sufficient facts in the record to support the defense. *United States v. Evangelista*, 122 F.3d 112, 117 (2d Cir. 1997). In particular, there must be evidence such that a reasonable juror could find that the defendant "honestly and in good faith sought the advice of counsel," "fully and honestly laid all the facts before his counsel," and "in good faith and honestly followed counsel's advice." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012) (brackets and internal quotation marks omitted). To the extent the defendant does not meet these requirements, this proposed instruction should be rejected. *Id.* (where the defendant fails to meet one or more requirement, he is not entitled to a jury instruction); *United States v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017) (same). In the absence of a formal advice of counsel defense, courts in this District have rightfully precluded defendants from arguing that the presence of counsel can establish good faith, because such an argument would "give the defendant all of the essential benefits of an advice of counsel defense without having to bear the burden of proving any of the elements of the defense." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013); *see also United States v. Bankman-Fried*, 22 Cr. 673 (LAK), 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024); *S.E.C. v. Stoker*, 11 Civ.7388 (JSR) (S.D.N.Y. July 23, 2012), Trial Tr. at 973; *S.E.C. v. LEK Sec. Corp.*, 17 Civ. 1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019). Indeed, as noted in the Government's requests to charge, courts in this District correctly instruct juries that a lawyer's involvement with an individual or entity does *not* constitute a defense. *See* charges of the Honorable Lewis A. Kaplan in *United States v. Samuel Bankman-Fried*, No. 22 Cr. 673 (Nov. 2, 2023); the Honorable Edgardo Ramos in *United States v. Milton*, No. 21 Cr. 478 (Oct. 14, 2022); and the Honorable Analisa Torres in *United States v. Shea*, No. 20 Cr. 412 (May 23, 2022). And perhaps most to the point, that a lawyer might have reviewed some unrelated and unspecified document or "otherwise been involved in matters related to the charged conduct"—whatever that might mean—has no bearing on the defendant's intent,

and "the fact that attorney did not inform Mr. Mashinsky of any potential illegality"—that is that someone *did not* speak to the defendant about his conduct—does not provide any evidence whatsoever of the defendant's state of mind.

Fourth, the Government objects to the portion of the instruction that provides the officers and directors of a corporation owe certain fiduciary duties, including "a duty of care" to monitor illegal corporate activity. The defendant has cited no legal basis for a vague instruction on the duties of officers and directors, much less to an instruction suggesting that the defendant is entitled to a finding of good faith because other employees did not stop him from committing illegal acts. In addition, the Government expects the trial evidence will show that there is no evidentiary basis for such an instruction, as the defendant routinely rejected the advice of his corporate officers with respect to his public statements. The Government objects to this instruction because it has no bearing on the elements of the charged crimes, and certainly the fact that some executives might generally have a duty of care on unspecified matters has no bearing on the defendant's state of mind. Instead, it is an apparent effort to malign the Government's witnesses by suggesting that they did not take appropriate steps to stop the defendant's crime. Those witnesses, however, are not on trial here. The defendant is free to cross-examine the witnesses on their professional responsibilities, but there is no basis for a jury instruction in this regard.

<u>Defense Instruction No. 7 – Securities Fraud: Elements of the Offense</u>

The Government objects to this instruction because it does not properly set forth the elements of the offense. The indictment alleges that the defendant committed Title 15 securities fraud in three alternative ways: (i) by "employing devices, schemes, and artifices to defraud," as prohibited by 17 C.F.R. § 240.10b-5(a), (ii) by making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, as prohibited by 17 C.F.R. § 240.10b-5(b), and (iii) by engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, as prohibited by 17 C.F.R. § 240.10b-5(c). The elements set forth by the defendant omit two of these alternative ways: employing devices, schemes, and artifices to defraud, and engaging in acts, practices, and courses of business that operated as a fraud and deceit upon persons.

Notably, the defendant's proposed instruction cites to Sand, et al., *Modern Federal Jury Instructions*, Instruction 57-20, which sets forth each of the three alternative ways of committing securities fraud.

In addition, with respect to its setting forth of the elements for securities fraud based on the materially false statements and omissions, the defendant's proposed instructions separate falsity and materiality into two separate elements. This departure from the instructions typically given in this District is unnecessary and results in an overly complicated description of the elements of securities fraud.

The Government also objects to the defendant's recitation of the last element of securities fraud, because it omits that the fraud may be committed through the use of the mails or the use of any facility of a national securities exchange. *See* Sand, et al., *Modern Federal Jury Instructions*,

Instr. 57-20, and the charges in *United States v. Samuel Bankman-Fried*, 22 Cr. 673 (LAK), *United States v. Larmore*, 24 Cr. 140 (PAE); *United States v. Milton*, 21 Cr. 478 (ER); *United States v. Cole*, 19 Cr. 869 (ER); *United States v. Hild*, 19 Cr. 602 (RA); *United States v. Bergstein*, 16 Cr. 746 (PKC); *United States v. Tuzman*, 15 Cr. 536 (PGG); *see also United States v. Gleason*, 616 F.2d 2 (2d Cir. 1979), *cert. denied*, 444 U.S. 1082 (1980).

Accordingly, the Government submits that the Court should give Instruction Number 5 in the Government's Requests, which is consistent with instructions routinely given in this District, as well as set forth in Sand, et al., *Modern Federal Jury Instructions*, Instruction 57-20.

<u>Defense Instruction No. 8 – Securities Fraud: First Element – Misrepresentation; In General</u>

The Government objects to this instruction for three reasons. First, it improperly omits that the first element may be satisfied in two additional, alternative ways: (i) by proof that the defendant employed a device, scheme, or artifice to defraud, or (ii) by proof that the defendant engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon an investor in Celsius.

Second, the instruction's emphasis on the need to find a false statement of fact, and its statement that the Government must prove "that Mr. Mashinsky made an assertion of fact, which was capable of confirmation or contraction, [and] that the assertion of fact was false when made," omits the concept that even a literally correct statement of fact can nonetheless be materially misleading if it contains "half-truths" or conceals material facts. A true but misleading statement can be grounds for conviction under the securities laws. Judges in this District have declined to give the exact instruction proposed by the defendant in similar cases. *See United States v. Milton*, 21 Cr. 478 (ER) (Oct. 4, 2022) (Tr. at 2842-2843).

Third, the defendant's instruction regarding how the jury must contextualize statements is misleading and consists of argument. The defendant is not entitled to an instruction that directs the jury that it may not ask "whether a statement is misleading in and of itself." Although it is true that the jury must view the defendant's statements together and in context, the jury should not be instructed that a particular statement cannot itself be misleading. Moreover the last two sentences, regarding Government "cherry-pick[ing]" and "unfairly abstract[ing] a statement," in addition to being inflammatory, consist purely of defense argument, and while the defendant may be permitted to argue (if the facts allow it) that the defendant's statements should not be abstracted, he is not entitled to a jury instruction making that argument for him.

As an alternative, the Government requests that the Court give Instruction Number 8 in the Government's Request to Charge.

Defense Instruction No. 9 – Securities Fraud: First Element – Misrepresentation; Statements That Do Not Express Matters of Objective Fact

The Government objects to this instruction because it consists of argument, is legally incorrect, and is unnecessary. Indeed, the first paragraph suggests that statements of opinion, forward-looking statements, and statements that "are abstract" or "subject to interpretation" because they have "a wide spectrum of meaning" cannot be fraudulent. This suggestion is wrong. *See, e.g.*, *United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) (statements characterized as "puffing" or "sales tactics" could be found by a jury to be material misrepresentations); *United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995) ("the scheme to defraud element . . . 'include[s] everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future'" (quoting *Durland v. United States*, 161 U.S. 306, 313 (1896)); *United States v. Amrep Corp.*, 560 F.2d 539, 543-44 (2d Cir. 1977) (representation about a "safe and profitable investment" violated mail fraud statute because "[t]he expression of an opinion not honestly entertained is a factual misrepresentation").

In addition, the false and misleading statements the Government intends to prove at trial do not involve statements of opinion, forward-looking statements, or matters that are abstract or subject to interpretation, and therefore is no basis for this instruction even if it were accurate. Rather, the defendant's misrepresentations are "determinate, verifiable statements." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 575 U.S. 175, 183 (2015).

Defense Instruction No. 10 – Securities Fraud: First Element – Misrepresentation; Puffery

The Government objects to this instruction as misleading and consisting of improper argument. The defendant seeks to have the Court—in addition to providing instructions on materiality—instruct the jury that a defendant may not be convicted for statements that might reflect "optimism" or "enthusiasm" even if the elements of securities fraud are met. The defendant is incorrect. "Puffery" is simply a way to describe immaterial statements, and the jury should not be instructed that there exists some independent puffery rule in addition to the requirement of materiality. *See United States v. Rigas*, 490 F.3d 208, 234 (2d Cir. 2007); *Autuori*, 212 F.3d at 119.

Judges in this District have declined to give the instruction now requested by the defendant. For example, in *United States v. Levy*, Judge Crotty refused a defense request for a substantively identical puffery instruction, noting that "[d]efendants' attempts to shoehorn this case and its facts into the rubric of civil securities fraud cases premised on the misstatements or omissions of securities issuers are unavailing," and that "the proposed instruction was woefully inadequate in its (slanted and inaccurate) summary of the relevant doctrines, and did not include any of the several applicable limitations and exceptions, and thus should not have been given to the jury." No. 11 Cr. 62 (PAC), 2013 WL 3832718, at *4 (S.D.N.Y. July 15, 2013); *see also See United States v. Milton*, 21 Cr. 478 (ER) (Oct. 4, 2022) (Tr. at 2842-2843).

Defense Instruction No. 11 – Securities Fraud: Second Element – Materiality; Definition of Materiality

The Government objects to this instruction as misleading and incomplete. The proposed defense instruction incorrectly omits the instruction about the materiality of omissions and half-truths. The instruction is also misleading because it incorrectly suggests that false statements must be considered and found to be material in isolation. *See United States v. Hatfield*, 724 F. Supp. 2d 321, 329 (E.D.N.Y. 2010) ("Even assuming arguendo that each alleged false statement or omission was not material by itself, . . . a rational jury [could] find that these alleged false statements and omissions were material when viewed collectively."); *In re Morgan Stanley Information Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010) (misrepresentations should be "taken together and in context").

The Government also objects to the statement that a reasonable investor "is neither an ostrich, hiding her head in the sand from relevant information, nor a child, unable to understand the facts and risks of investing," as improper defense argument that does not add any additional substance to the instruction that the jurors are to consider the total mix of information available.

As an alternative, the Government requests that the Court use the materiality language in Instruction Number 8 in the Government's Requests.

Defense Instruction No. 12 – Securities Fraud: Second Element – Materiality; Total Available Information

The Government objects to this instruction because it purports to instruct the jury on how to conduct its deliberations, is unnecessary, has no precedent in criminal jury charges, and is contrary to law, including in its improper direction as to what constitutes the total mix of information.

The instruction is improper because it directs the jury as to how approach its deliberations, instructing them to "first examine the total mix of information publicly available to the reasonable investor." It is also unnecessary because the phrase "total mix of information" is within the common understanding of a juror, and accordingly, no additional instruction is required. *See United States v. Morris*, 928 F.2d 504, 511 (2d Cir. 1991) ("Since the word is of common usage, without any technical or ambiguous meaning, the Court was not obliged to instruct the jury on its meaning."); *United States v. Chenault,* 844 F.2d 1124, 1131 (5th Cir. 1988) ("A trial court need not define specific statutory terms unless they are outside the common understanding of a juror or are so technical or specific as to require a definition."). The Government's proposed instruction on materiality, which is found in its Instruction Number 8, already includes this concept.

The instruction also purports to instruct the jurors as to what information a reasonable investor might consider, such as press releases and statements made in the media and on social media. This is simply defense argument. The defendant may argue from whatever evidence is admitted at trial as to what items a reasonable investor would read and focus on, but the defense should not be allowed to put its arguments into the form of a jury instruction.

Defense Instruction No. 13 – Securities Fraud: Second Element – Materiality; Facts Already Disclosed; "Truth on the Market"

The Government objects to this instruction because it is unnecessary, has no precedent in criminal jury charges, and provides a misleading description of the "truth on the market" doctrine. In fact, in *United States v. Milton*, Judge Ramos denied an almost identical request. *See United States v. Milton*, 21 Cr. 478 (ER) (Oct. 4, 2022) (Tr. at 2856).

The "truth on the market" doctrine is a corollary to "fraud on the market." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000). "Fraud on the market" is a concept used in private securities lawsuits to establish a plaintiff's reliance on public misrepresentations. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810-11 (2011). "Truth on the market" is a defense to the "fraud on the market" doctrine, which permits a defendant to "rebut the presumption that its misrepresentations have affected the market price of its stock by showing that the truth of the matter was already known." *Ganino*, 228 F.3d at 167. Under the doctrine, "corrective information must be conveyed to the public 'with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by' the alleged misstatements." *Id.* (citing *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989)).

There is no basis to provide instructions on "fraud on the market" or the defense of "truth on the market." The Government is not required to establish reliance on the defendant's misrepresentations in a criminal securities fraud case. *United States v. Vilar*, 729 F.3d 62, 88 (2d Cir. 2013). Accordingly, the "truth on the market" defense, which provides a rebuttal to the "fraud on the market" method of proving reliance, is entirely irrelevant here.

In any event, a standard materiality instruction, making clear that material facts are ones that a reasonable investor "would have considered important" in making his or her investment decision would be both legally correct and sufficient to provide the defendant with a basis to advance the arguments he seeks to install in the Court's jury instructions.

Defense Instruction No. 14 – Securities Fraud: Third Element – In Connection With

The Government objects to the portions of this instruction that reference a "specific link" between the defendant's misrepresentations and the purchase or sale of a security. The Government is not aware of any support for this notion and the defendant has provided none.

The Government also objects to the proposed instruction because it does not cover misrepresentations and omissions that were material to the decision to "hold" a security. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 7 at 84-85 (2006) (holding that the "in connection with" language covers holding a security based on misrepresentations or omissions).

Moreover, this instruction incorrectly seeks to insert a reliance element. The proposed instruction suggests that the misrepresentation must have in fact made "a significant difference to someone's decision to purchase or sell Nikola stock." In fact, as noted above, reliance is not an element of a criminal securities fraud prosecution. *Litvak*, 889 F.3d at 65; *Vilar*, 729 F.3d at 88.

Instead, the Government respectfully requests that the Court use the Government's proposed instruction on this point, which is contained in Request Number 9 of the Government's Requests to Charge.

<u>Defense Instruction No. 15 – Securities Fraud: Third Element – Definition of Security</u>

The Government submits that its proposed instruction on the definition of an investment contract, which is based on previous charges that have been given by courts in this Circuit, is clearer and more straightforward than the overly complicated charge proposed by the defendant. For example, the Government's proposal states that the jury must find that "profits were to be derived substantially from the efforts of others," whereas the defense proposal uses the word "solely," but then instructs the jury that "solely" should not be interpreted "in the most literal sense," but simply that there was not "a reasonable expectation of significant investor control in creating profits."

The Government objects to the proposed instruction to the extent it comments specifically on cryptocurrencies and instructs that jury that "crypto tokens do not by themselves constitute investment contracts." To the contrary, crypto tokens *do* constitute investment contracts where they involve an investment of money in a common enterprise with profits to come substantially from the efforts of others. *See, e.g.*, *S.E.C. v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020).

The Government respectfully requests that the Court use the Government's proposed instruction on this point, which is contained in Request Number 10 of the Government's Requests to Charge.

<u>Defense Instruction No. 16 – Securities Fraud: Fourth Element – Knowledge, Willfulness, And Intent To Defraud</u>

The Government objects to this instruction because it improperly suggests that the Government must prove that the defendant intended to do something the law forbids. However, in the context of 10b-5 securities fraud, the Second Circuit has made clear that "willfulness" involves an appreciation of wrongdoing rather than an appreciation of unlawfulness. *See United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010) (holding that willfulness for purposes of Title 15 securities fraud "do[es] not require a showing that a defendant had awareness of the general unlawfulness of his conduct, but rather, that he had an awareness of the general wrongfulness of his conduct"). *Kaiser* followed long-settled precedent that a conviction under Section 78ff does not require proof that a defendant knew he was violating the law. *See, e.g.*, *United States v. Dixon,* 536 F.2d 1388, 1395 (2d Cir. 1976) ("A person can willfully violate an SEC rule even if he does not know of its existence."); *accord United States v. Tarallo,* 380 F.3d 1174, 1188 (9th Cir. 2004) ("Under our jurisprudence, . . . 'willfully' as it is used in § 78ff(a) means intentionally undertaking an act that one knows to be wrongful; 'willfully' in this context does *not* require that the actor know specifically that the conduct was unlawful."); *United States v. O'Hagan,* 139 F.3d 641, 647 (8th Cir. 1998) ("Courts that have interpreted 'willfully' in § [78ff] have reached the same conclusion that we reach in this case: 'willfully' simply requires the intentional doing of the

wrongful acts—no knowledge of the rule or regulation is required."). Most recently, the Second Circuit reaffirmed this principle in *United States v. Petit*, Nos. 21-543, 21-559, 2022 WL 3581648, at *4 (2d Cir. Aug. 22, 2022), when it approved an instruction, for a Title 15 securities fraud charge, that defendants "acted willfully if they 'act[ed] deliberately and with a bad purpose, rather than innocently,'" and rejected the argument that the Government needed to prove that a defendant "knew he was committing a specific legal violation."

The defendant's proposed charge would also permit the jury to acquit based on ignorance of the law. But the availability of a mistake-of-law defense is the exception, not the rule. *See Cheek v. United States*, 498 U.S. 192, 200 (1991). Analogously, the Second Circuit has rejected attempts to graft requirements of knowledge-of-unlawfulness or intent-to-violate-the-law onto the mail fraud statute. *United States v. Porcelli*, 865 F.2d 1352, 1358 (2d Cir. 1989) (rejecting due process claim that defendant "had no notice that his conduct was illegal" because "[t]he specific intent required under the mail fraud statute is . . . not the intent to violate a statute"); *United States v. Weiss*, 930 F.2d 185 (2d Cir. 1991) (in mail fraud prosecution, affirming preclusion of defendant's testimony regarding whether he "intended to commit a crime" because it was "not relevant" and "not dispositive of any element of the charges").

Instead, the Government requests that the Court use the definition of willfulness in Request Number 11 of the Government's Requests to Charge, which is consistent with the instruction given in *United States v. Samuel Bankman-Fried,* 22 Cr. 673 (LAK), *United States v. Milton*, 21 Cr. 478 (ER), and *United States v. Larmore*, 24 Cr. 140 (PAE).

<u>Defense Instruction No. 17 – Securities Fraud: Fourth Element – Knowledge, Willfulness, and Intent to Defraud; Intent</u>

The Government objects to this instruction in its entirety. Although under the header of "intent," the substance of the instruction, which focuses on the connection between the misrepresentations and the purchase or sale of securities, appears more relevant to the "in connection with" element. The Government's proposed instruction on the "in connection with" requirement, contained in Government Request Number 9, already makes clear that there must be a nexus between the misrepresentations and the decision to buy, hold, or sell stock. The defendant's proposed instruction is an effort to suggest that the defendant's statements were targeting consumers or "crypto-currency enthusiasts," not investors. The defendant is, of course, free to argue this point. But there is no need for an instruction in this regard, particularly as the Government is unaware of any rule of law stating that statements also intended for a consumer audience cannot be in connection with the purchase or sale of a security.

In addition, the proposed instruction is confusing in light of the facts here. In particular, the Government expects the evidence to show that the defendant promoted the Celsius platform as both providing a valuable service to crypto consumers and also providing a valuable investment for holders of crypto assets. In other words, many of the defendant's statements targeted *both* consumers and investors or encouraged consumers to become investors. The defendant has cited no case law to suggest that statements targeting both consumers and investors do not satisfy the "in connection with" requirement.

Defense Instruction No. 20 – Commodities Fraud: Elements of the Offense

As with the defendant's proposed instructions on the elements of securities fraud, the Government objects to this instruction because it does not properly set forth the elements of the offense. The indictment alleges that the defendant committed Title 7 commodities fraud in three alternative ways, each of which is prohibited by 17 C.F.R. § 180.1: (i) by "using and employing, and attempting to use and employ, a manipulative device, scheme, and artifice to defraud"; (ii) by "making, and attempting to make, an untrue and misleading statement of a material fact and omitting to state a material fact necessary in order to make the statements not untrue and misleading"; and (iii) by "engaging, and attempting to engage in, an act, practice, and course of business which operated and would operate s a fraud and deceit upon a person." The elements set forth by the defendant omit two of these alternative ways: employing devices, schemes, and artifices to defraud, and engaging in acts, practices, and courses of business that operated as a fraud and deceit upon persons.

The Government also objects to separating falsity and materiality into two separate elements, for the same reasons it objected to doing so with respect to securities fraud.

Accordingly, the Government submits that the Court should give Instruction Number 19 in the Government's Requests.

Defense Instruction No. 26 – Wire Fraud: Elements of the Offense

The Government objects to this formulation of the elements, and instead requests that the Court use the three-element formulation used by the Second Circuit. *See United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) ("The elements of wire fraud are: '(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the wires to further the scheme.'" (quoting *Binday*, 804 F.3d at 569)).

The Government also objects to the defense's proposed instruction to the extent it suggests that the defendant had to be the one who "devised or intended to devise" the fraudulent scheme. It is enough that such a scheme existed and that the defendant knowingly participated in the scheme, even if he is not the one who first devised it.

Defense Instruction No. 28 – Wire Fraud: Second Element – By Means of False Pretenses, Representations or Promises

The Government objects to this instruction for the same reasons set forth in its objections to Instruction Numbers 8 and 9.

Defense Instruction No. 29 – Wire Fraud: Second Element – "By Means Of"

The Government objects to this instruction as unnecessary because the phrase "by means of" is within the common understanding of a juror, and accordingly, no additional instruction is required. *See Morris*, 928 F.2d at 511.

Defense Instruction No. 30 – Wire Fraud: Third Element - Materiality

The Government objects to this instruction as inconsistent with the standard formulation of the elements of wire fraud in this District, as discussed above, and as confusing. The Government respectfully requests that the Court give the Government's proposed instructions on the elements of wire fraud, including the Government's Request Number 24, which includes the concept of materiality as part of the first element of wire fraud.

Defense Instruction No. 37 – Securities Fraud: First Element – Market Manipulation

The Government objects to this instruction because it is confusing, misleading, and misstates the law on market manipulation under Section 10(b). First, the instruction begins by describing examples of manipulative acts that are not even charged in the Indictment, such as wash sales and matched orders, none of which are likely to be within the common understanding of jurors. By describes these techniques as "typical" forms of market manipulation, the defense appears to be suggesting that the defendant's form of market manipulation, which included large and well-timed purchases of CEL token in excess of what Celsius had publicly disclosed, are atypical, but this is not the case. The defense instruction continues by describing what is *not* market manipulation without first defining what *is* market manipulation.

The defense instruction also incorrectly states that "the government must prove that the price of the security was intentionally rigged by the defendant and was not determined by the natural interplay of supply and demand in the market." Because Section 10(b) criminalizes "schemes" to defraud, the Government does not have to prove that the defendant actually succeeded in affecting the price, only that he engaged in a scheme to do so.

The Government's proposed instruction for market manipulation under Section 10(b), which is found in Government Request Number 7, is substantially identical to the instruction that was given by Judge Cote in *SEC v. Lek Securities Corporation*, 17 Civ. 1789 (Nov. 7, 2019), which the Second Circuit affirmed on appeal as "consistent with our articulation of market manipulation," 2022 WL 2155094, at *1-2 (2d Cir. June 15, 2022), and by Judge Hellerstein in *United States v. Hwang*, 22 Cr. 240 (July 9, 2024). It is also substantially identical to the instruction Judge Engelmayer gave in *United States v. Larmore*, 24 Cr. 140 (Oct. 21, 2024), which is the most recent instruction on Section 10(b) market manipulation to be given in this District, in which Judge Engelmayer stated:

> The word "manipulation" is a term of art when used in connection with the securities markets. Market manipulation is intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the prices of securities. Because market participants ordinarily assume that the price at which they purchase or sell securities is determined by the natural interplay of supply and demand, an act is manipulative if it falsely leads investors to believe that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand.

>An act can be manipulative even if it's conduct on the open market or through ordinary market activity, such as by placing an order to buy or sell, or by actually buying or selling. In some cases a defendant's what we call scienter, that is, a defendant's intent to manipulate a stock price, is all that distinguishes legitimate trading from manipulative trading. Similarly, in some cases, the determination of whether activity is manipulative can be only made by placing the activity in context and considering whether it's part of a pattern of trading activity. If the trading is done solely for legitimate purposes, such as building a position, that is not manipulation. However, if, in addition to any legitimate purposes the defendant might have had for the trading, he intended to artificially affect the price of a security or market activity, that trading does constitute manipulation.
>
>A manipulative act or device does not need to be successful in order to violate the federal securities laws. It is not necessary for the government to prove that a manipulative scheme actually succeeded, or that any person was actually deceived, or that any person lost money or property. Nor do you need to find that the defendant profited from the manipulation. What matters is whether the defendant intended to inject a false price signal into the market or to mislead others by artificially affecting market activity.

Tr. at 879-880. The Government submits that this instruction is clear, concise, and a correct description of the law.

<u>Defense Instruction No. 39 – Securities Fraud: Third Element – Knowledge, Willfulness, and Intent to Defraud (Market Manipulation)</u>

The Government objects to this instruction because it incorrectly instructs the jury that the Government must prove that the defendant acted with the "sole intent to deceive or defraud investors."

The Second Circuit has made clear that proof of a manipulative intent is sufficient to find market manipulation under Section 10(b), even if the defendant also had some other, lawful purpose. In both *S.E.C. v. Vali Mgmt. Partners*, 2022 WL 2155094, at *1-2 (2d Cir. June 15, 2022), in which the Second Circuit affirmed Judge Cote's jury instructions in *S.E.C. v. Lek Securities Corp.*, 17 Civ. 1789 (DLC), and in *United States v. Royer*, 549 F.3d 886, 900 (2d Cir. 2008), in which the Second Circuit affirmed the jury instructions in *United States v. Elgindy*, 2 Cr. 589 (RJD) (E.D.N.Y.), the Second Circuit affirmed jury instructions that did not include any requirement that the defendant's intent be his or her only or sole intent. As the Second Circuit observed with respect to the jury instructions in *Lek Securities*, "[t]he district court's instruction was . . . consistent with our articulation of market manipulation, and accurately informed the jury on the law." *Vali Mgmt. Partners*, 2022 WL 2155094, at *1.

The rejection of a sole intent requirement for Section 10(b) is consistent with the Second Circuit's clear holding that, "when Congress has meant to impose a sole-intent limitation, it has done so expressly," and that when a statute "does not contain a sole-intent limitation," the court will not "engraft one." *United States v. Technodyne LLC*, 753 F.3d 368, 385 (2d Cir. 2014). "It is

commonplace that the law recognizes that there may be multiple motives for human behavior; thus, a specific intent need not be the actor's sole, or even primary, purpose." *Technodyne*, 753 F.3d at 385 (collecting cases); *see also United States v. Gatto*, 986 F.3d 104, 129 n.12 (2d Cir. 2021) ("We are also unpersuaded by Defendants' dual intent argument, as it is commonplace for individuals to have more than one motive for acting."). Section 10(b) has no sole intent limitation. Accordingly, the law is clear that, if the Government sustains its burden of proving that the defendant acted with a manipulative purpose, it has met its burden, even if the defendant had other goals or purposes as well.

Consistent with this Second Circuit precedent, in their recent jury instructions regarding manipulative intent under Section 10(b), both Judge Hellerstein in *Hwang* and Judge Engelmayer in *Larmore* instructed the jury that even if the defendant had a legitimate purpose for his trading, the jury could still convict if the defendant also intended to artificially affect the price of a security. *See Larmore*, Tr. at 880 ("[I]f, in addition to any legitimate purpose the defendant might have had for the trading, he intended to artificially affect the price of a security or market activity, that trading does constitute manipulation."); *Hwang*, Tr. at 5386 ("[I]f in addition to the buying and selling to accumulate positions, Mr. Hwang employed strategies to willfully and intentionally create artificial markets for such securities, and if those strategies induced others to buy and sell at such artificial prices, you may find that an unlawful manipulation has occurred.").

Defense Instruction No. 44 – Market Manipulation: Second Element – Manipulative Conduct

The Government objects to this instruction because it incorrectly instructs the jury that the definition of market manipulation under Section 9(a)(2) is the same as the definition of market manipulation under Section 10(b). As discussed above, under Section 10(b), which prohibits "schemes" to defraud, the Government is not required to prove that the defendant's actions in fact raised or depressed the price of a security. Section 9(a)(2), however, does require the Government to prove that the series of transaction wither (a) created actual or apparent active trading in the security, (b) raised or depressed the price of the security, or (c) did both of these things. The Government requests that the Court give its proposed instruction in Government Request Number 15, which correctly instructs the jury on this point.

Defense Instruction No. 45 – Market Manipulation: Third Element – Knowledge, Willfulness, and Manipulative Intent

The Government objects to this instruction to the extent it inserts the same "sole intent" requirement for Section 9(a)(2) market manipulation that the defense has asked to insert into Section 10(b) market manipulation.

As with Section 10(b), Section 9(a)(2) does not contain any form of sole intent requirement, and therefore, for much the same reasons as discussed above, there is no basis to create an exception where the defendant might, in addition to a manipulative purpose, have some other lawful purpose for his trading as well. *See Lek Securities Corp.*, No. 17 Civ. 1789 (DLC), Dkt. No. 556, at Tr. 2595-98; *see also Technodyne*, 753 F.3d at 385.

The Government also objects to this instruction to the extent it requires the jury to find that the defendant had an "intent to defraud." Section 9(a)(2) does not have any additional element of deceptive conduct beyond creating apparent or active trading with a manipulative purpose. Indeed, Section 9(a)(2) is not a fraud provision at all. *Cf. C.F.T.C. v. Amaranth Advisors, L.L.C.*, 554 F. Supp. 2d 523, 534 (S.D.N.Y. 2008) (concluding, regarding the anti-manipulation provision in the Commodity Exchange Act that, "[w]hen the statute distinguishes fraud and manipulation by addressing them in different provisions, it would be redundant to construe manipulation to require a fraud element"). The question with respect to market manipulation under Section 9(a)(2) is therefore whether the defendant traded with a manipulative purpose, not whether he engaged in other forms of deception or chicanery.

<u>Defense Instruction No. 51 – Conspiracy to Manipulate the Price of CEL: First Element – Existence of the Conspiracy</u>

The Government objects to this instruction to the extent it instructs the jury that "[s]ome circumstantial evidence may be susceptible to more than one inference—perhaps with one inference tending to indicate guilt and the other innocence," and proceeds to instruct the jury that "in selecting any particular inference," the jury must keep in mind the burden of proof. There is some tension between this instruction and the Court's standard instruction on direct and circumstantial evidence, including that "[t]he process of drawing inferences from facts is not a matter of guesswork or speculation. Not all logically possible conclusions are legitimate or fair inferences. Only those inferences to which the mind reasonably is led or directed are fair inferences from direct or circumstantial evidence in the case." *See United States v. Barbera*, 21 Cr. 154 (JGK), Tr. at 1033. The proposed instruction also suggests that circumstantial evidence is less persuasive than direct evidence, whereas in fact "[t]he law makes no distinction between direct and circumstantial evidence." *Id.* at 1034.

\* \* \*

The defense has also filed its proposed questions for voir dire (Dkt. 78). While the Government does not object to many of the general topics the defendant proposes that the Court ask about, such as experience with cryptocurrency, many of the proposed questions are framed in an argumentative way that attempts to insert defense arguments into the Court's questions. *See, e.g.*, Dkt. 78 at ¶ 27 ("Have you or anyone close to you had any experience with a company that went out of business because of a bad economic environment, or a slow time in the market, or just plain bad luck?"; ¶ 30 ("Do any of you believe that if a business fails, the founder or CEO must be responsible for it?"); ¶ 23 ("If a company involved in the cryptocurrency industry or the financial industry fails, do you feel that only the owners of the company must be to blame?"); ¶ 41 ("If, at the end of this case, you have a 'gut' feeling that the defendant may have committed the crimes with which he is charged, but the government did not meet its burden of proving the defendant's guilty beyond a reasonable doubt, would you hesitate to find the defendant not guilty?"). The Government submits that its proposed voir dire covers all the topics defense counsel asks to be included, but uses language that tracks this Court's typical questioning, is clearer, and is less argumentative.

                    Respectfully submitted,

                    DAMIAN WILLIAMS
                    United States Attorney

by: /s/
      Adam Hobson
      Peter J. Davis
      Allison Nichols
      Assistant United States Attorneys
      (212) 637-2484

cc: Defense Counsel (by ECF)