UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ALEXANDER MASHINSKY,

Defendant.

Case No. 23 Cr. 347 (JGK)

**DEFENDANT ALEXANDER MASHINSKY'S MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE***

MUKASEY YOUNG LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
Tel: (212) 466-6400

*Counsel for Alexander Mashinsky*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

I. THE GOVERNMENT SHOULD BE PRECLUDED FROM ARGUING THAT MR. MASHINSKY MISAPPROPRIATED, EMBEZZLED OR STOLE CUSTOMER ASSETS ....................................................................................2

II. OPPOSITION TO MOTION I: THE COURT SHOULD REJECT THE GOVERNMENT'S OVERBROAD REQUESTS TO STIFLE MR. MASHINSKY'S DEFENSE ....................................................................................4

Opposition to Motion I.A....................................................................................4

Opposition to Motion I.B....................................................................................7

Opposition to Motion I.C....................................................................................8

Opposition to Motion I.D....................................................................................9

Opposition to Motion I.E....................................................................................12

Opposition to Motion I.F....................................................................................14

Opposition to Motion I.G....................................................................................17

Opposition to Motion I.H....................................................................................22

III. OPPOSITION TO MOTION II: THE GOVERNMENT'S MOTION TO ADMIT STATEMENTS UNDER FED. R. EVID. 801 IS PREMATURE AND LACKS SPECIFICITY....................................................................................24

IV. OPPOSITION TO MOTION III: THE COURT SHOULD EXCLUDE ALL EVIDENCE OF CELSIUS'S BANKRUPTCY, INCLUDING THE FACT OF THE FILING ............25

CONCLUSION....................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Arlio v. Lively*,
474 F.3d 46 (2d Cir. 2007) ..... 27

*Bisno v. United States,*
299 F.2d 711 (9th Cir. 1961 ..... 18

*California v. Trombetta*,
467 U.S. 479 (1984) ..... 2

*Chambers v. Mississippi,*
410 U.S. 284 (1973) ..... 1, 2

*Crane v. Kentucky*,
476 U.S. 683 (1986) ..... 2, 21

*Holmes v. South Carolina*,
547 U.S. 319 (2006) ..... 2

*Howard v. S.E.C.*,
376 F.3d 1136 (D.C. Cir. 2004) ..... 18, 19

*HTC Corp. v. Tech. Properties Ltd.*,
No. 5:08-CV-00882-PSG, 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013) ..... 28

*In re Cummings*,
595 F. App'x 707 (9th Cir. 2015) ..... 28

*In re Gibraltor Amusements, Ltd.*,
291 F.2d 22 (2d Cir. 1961) ..... 28

*In re Oliver,*
333 U.S. 257 (1948) ..... 1

*In re Steinhardt Partners, L.P.,*
9 F.3d 230 (2d Cir. 1993) ..... 20

*Markowski v. S.E.C.*,
34 F.3d 99 (2d Cir. 1994) ..... 17

*Matter of Met-L-Wood Corp.,*
861 F.2d 1012 (7th Cir. 1988) ..... 28

*S.E.C. v. Ferrone*,
163 F. Supp. 3d 549 (N.D. Ill. 2016) ..... 13, 22

*S.E.C. v. Tourre*,
950 F. Supp. 2d 666 (S.D.N.Y. 2013) ..... 19, 21, 22

*Saadeh v. Kagan*,
No. 20 Civ. 1945 (PAE) (SN), 2023 WL 6850481 (S.D.N.Y. Oct. 17, 2023) ........................ 27

*United States v. Aboumoussallem*,
726 F.2d 906 (2d Cir. 1984)........................................................................................ 27

*United States v. Alkins*,
925 F.2d 541 (2d Cir. 1991)........................................................................................ 18

*United States v. Atias*,
14-CR-0403(DRH), 2017 WL 563978 (E.D.N.Y. Feb. 10, 2017) ......................................... 17

*United States v. Balboa*,
No. 12-CR-0196, 2013 WL 6196606 (S.D.N.Y. Nov. 27, 2013) .................................... 15, 17

*United States v. Bankman-Fried*,
22 Cr. 673 (LAK), 2023 WL 6392718 (S.D.N.Y. Oct. 1, 2023) ..................................... 13, 20

*United States v. Bankman-Fried*,
S6 22-cr-0673 (LAK), 2023 WL 6283509 (S.D.N.Y. Sep. 26, 2023)......................... 2, 24, 29

*United States v. Becker,*
502 F.3d 122 (2d Cir. 2007)........................................................................................ 30

*United States v. Beech-Nut Nutrition Corp*.,
871 F.2d 1181 (2d Cir. 1989)...................................................................................... 17

*United States v. Brandt,*
196 F.2d 653 (2d Cir. 1952)........................................................................................ 16

*United States v. Certified Environ. Services, Inc.*,
753 F.3d 72 (2d Cir. 2014).......................................................................................... 13

*United States v. Collorafi,*
876 F.2d 303 (2d Cir. 1989)........................................................................................ 16

*United States v. Contorinis*,
692 F.3d 136 (2d Cir. 2012).......................................................................................... 5

*United States v. Cusimano*,
123 F.3d 83 (2d Cir. 1997)............................................................................................ 5

*United States v. Damti*,
109 F. App'x 454 (2d Cir. 2004) ............................................................................ 15, 16

*United States v. Garvin,*
565 F.2d 519 (8th Cir. 1977) ...................................................................................... 15

*United States v. Greenlaw,*
84 F.4th 339 (5th Cir. 2023) ....................................................................................... 16

*United States v. Guadagna*,
183 F.3d 122 (2d Cir. 1999)........................................................................................ 23

*United States v. Gupta,*
747 F.3d 111 (2d Cir. 2014) .......... 27

*United States v. Jabar*,
19 F.4th 66 (2d Cir. 2021) .......... 23

*United States v. James*,
607 F. Supp. 3d 246 (E.D.N.Y. 2022) .......... 1

*United States v. Jones,*
16 F.3d 487 (2d Cir. 1994) .......... 30

*United States v. Levin*,
15 Cr. 101 (KBF), 2016 WL 8711458 (S.D.N.Y. Jan. 8, 2016) .......... 15

*United States v. Litvak*,
808 F.3d 160 (2d Cir. 2015) .......... 18, 19

*United States v. Litvak*,
889 F.3d 56 (2d Cir. 2018) .......... 6

*United States v. Novak*,
443 F.3d 150 (2d Cir. 2006) .......... 23

*United States v. Paredes*,
176 F. Supp. 2d 179 (S.D.N.Y. 2001) .......... 14

*United States v. Percoco*,
13 F.4th 158 (2d Cir. 2021) .......... 18

*United States v. Phillips*,
22 Cr. 138 (LJL), 2023 WL 6620146 (S.D.N.Y. Oct. 10, 2023) .......... 4, 7, 8, 12

*United States v. Rahim*,
771 F. App'x 605 (6th Cir. 2019) .......... 28

*United States v. Regent Office Supply Co.*,
421 F.2d 1174 (2d Cir. 1970) .......... 23

*United States v. Rossomando*,
144 F.3d 197 (2d Cir. 1999) .......... 23

*United States v. Scarpa,*
913 F.2d 993 (2d Cir. 1990) .......... 15, 16

*United States v. Scully*,
877 F.3d 464 (2d Cir. 2017) .......... 17

*United States v. Shavin,*
287 F.2d 647 (7th Cir. 1961) .......... 15

*United States v. Smith*,
Case No. 1:18-CR-118-WKW, 2019 WL 4281908 (M.D. Ala. Sept. 10, 2019) .......... 14

*United States v. Starr*,
816 F.2d 94 (2d Cir. 1987)........................................................................................ 23

*United States v. Wagner*,
20 Cr. 410 (NSR), 2022 WL 19179 (S.D.N.Y. Jan. 3, 2022) ................................................. 4

*United States v. Weaver*,
860 F.3d 90 (2d Cir. 2017)................................................................................... 2, 9, 12

*Vaughn v. Target Corp.*,
No. 3:13-CV-521-DJH, 2015 WL 632255 (W.D. Ky. Feb. 13, 2015) ................................. 28

*Washington v. Texas*,
388 U.S. 14 (1967)............................................................................................................. 2

*Williams v. Lord,*
996 F.2d 1481 (2d Cir. 1993)............................................................................................. 21

**OTHER AUTHORITIES**

2 Sand et al. Modern Federal Jury Instructions, Instruction 44-5 (2019) .................................... 23

*Celsius AMA April 15, 2022,*
https://www.youtube.com/watch?v=Yciv1MpxhEA.......................................................... 11

*Celsius Network Custody FAQ,*
https://support.celsius.network/hc/en-us/articles/4838161060381-Custody-FAQ ................ 12

*Celsius Network Delivers More Than $1 Billion In Yield To Its Community* (Nov. 1, 2021, 11:13 AM ET),
https://www.prnewswire.com/news-releases/celsius-network-delivers-more-than-1-billion-in-yield-to-its-community-301413022.html...................................................................... 30

Ligon, Cheyenne, *Delaware Judge Approves FTX Estate's Bankrupty Plan*, Coindesk (Oct. 7, 2024, 4:50 PM EDT),
https://www.coindesk.com/policy/2024/10/07/delaware-judge-approves-ftx-estates-bankruptcy-plan/ .................................................................................................... 29

Lundquist, Ron, *Dirty Little Secret: The Stigma of Bankruptcy,* Association for Financial Counseling & Planning Education (3rd Quarter 2015),
https://www.afcpe.org/news-and-publications/the-standard/2015-3/dirty-little-secret-the-stigma-of-bankruptcy/............................................................................................... 28

*White & Case Leads Celsius  Committee to Successful Chapter 11 Exit and Distribution of Over US$3 Billion of Cryptocurrency to Creditors* (Feb. 1, 2024),
https://www.whitecase.com/news/press-release/white-case-leads-celsius-creditors-committee-successful-chapter-11-exit-and ................................................................. 26

**RULES**

Fed. R. Evid. 403 ........................................................................................................ 25, 27

## PRELIMINARY STATEMENT

A criminal defendant's right to present a defense is one of the "minimum essentials of a fair trial." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) (citing *In re Oliver,* 333 U.S. 257, 273 (1948)). The government's motions *in limine* run roughshod over this basic constitutional concept.

The government appears hell bent on telling a one-sided story, muzzling the defense, and stopping this trial from being a fair fight and a search for the truth. Their motions reflect an erroneous belief that the Federal Rules of Evidence and the relevant caselaw license the government's proof no matter how ambiguous, misleading, undisclosed or prejudicial, and ban whatever the defense offers in opposition even if it concerns the relevant facts and bears on the elements of the charged offenses. Their across-the-board attempt to silence Mr. Mashinsky goes too far.

For example:

- the government seeks a blank check to introduce vast swathes of out-of-court statements as co-conspirator or agency statements, but they do not identify, among hundreds of Celsius employees, the co-conspirators, the agents or their statements;
- the government intends to call unknown "victim" witnesses to testify that Mr. Mashinsky's alleged misstatements were material, but wants the Court to preclude cross-examination of those victims about materiality;
- the government moves to exclude what it calls "good acts" evidence in a manner so sweeping as to prohibit *any* defense discussion about Celsius's operations and in defiance of courts holding that where, as here, it is alleged that the defendant continually committed bad acts, "good acts" are relevant. *See United States v. James*, 607 F. Supp. 3d 246, 257 (E.D.N.Y. 2022);
- the government argues that because contractual disclaimers do not render extra-contract misrepresentations immaterial as a matter of law, Mr. Mashinsky should be precluded from making any arguments or cross-examining witnesses about any aspect of Celsius's Terms of Use. But the very case the government cites never went that far. To the contrary, in that case, the contractual

disclaimers "*were relevant* to the jury's determination" of guilt. *See United States v. Weaver*, 860 F.3d 90, 95-97 (2d Cir. 2017) (emphasis added);

- the government moves to preclude any and all evidence of the defendant's interactions with Celsius's many lawyers, arguing, in essence, "trust us, it won't be helpful," (Govt. Mot. at 15-16), notwithstanding its clear relevance to Mr. Mashinsky's state of mind; and
- the government wants to admit evidence of the Celsius bankruptcy (ostensibly) to prove the falsity of certain public statements (more likely as a proxy for fraud and loss) and only to the extent it helps the government.

Mr. Mashinsky has "the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967). The Supreme Court described the "essence" of this right as "a fair opportunity to defend against the State's accusations," *Chambers*, 410 U.S. at 294, and "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *accord Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).

As set forth below, if the government prevails on its overbroad, overreaching requests, Mr. Mashinsky will be all but stripped of his right to test the government's witnesses and present his version of the facts.

## I. THE GOVERNMENT SHOULD BE PRECLUDED FROM ARGUING THAT MR. MASHINSKY MISAPPROPRIATED, EMBEZZLED OR STOLE CUSTOMER ASSETS

The motions filed by the government in this case closely resemble the motions they filed in the prosecution of Sam Bankman-Fried, the CEO of the FTX cryptocurrency platform. *See United States v. Bankman-Fried*, S6 22-cr-0673 (LAK), 2023 WL 6283509 (S.D.N.Y. Sep. 26, 2023). The government seems to be laying the foundation to re-fashion this case for the jury into a scandal akin to the *Bankman-Fried* case by making the same provocative arguments that the

defendant "misappropriated" (and "stole") customer assets, resulting in a corporate bankruptcy and billions in customer losses. Thus, the government in *Bankman-Fried*:

- [Bankman-Fried] was the one taking their money. When customers deposited dollars with FTX, he stole that money. And when customers deposited crypto with FTX, he stole that too. (Trial Tr. at 29:9-11, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Oct. 4, 2023), ECF No. 354) (Govt. Opening).

- Q: And when you say "misappropriated," what do you mean by that? A: Stolen, used for anything else other than what the customer instructs us to do. (Trial Tr. at 1899:8-11, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Oct. 19, 2023), ECF No. 372) (Direct Exam of FTX General Counsel).

- [W]e've talked about … how [Bankman-Fried] stole and how he misappropriated. (Trial Tr. at 3003:15, 19, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Nov. 1, 2023), ECF No. 382) (Govt. Summation).

The government's motions in this case suggest that they intend to make similar arguments here about misappropriation of customer assets. That's why, in their Motion I.B, they ask the Court to prohibit Mr. Mashinsky from interposing as a defense that "[o]thers in the [c]ryptocurrency [i]ndustry [m]isused [c]ustomer [a]ssets." Govt. Mot. at 4. And why in their Motion I.D, they argue that a contractual disclaimer can't function as a defense to a charge of "misappropriation of property." Govt. Mot. at 8. And in their Motion I.H, they seek to preclude Mr. Mashinsky from arguing that he intended to "repay" or "return" misappropriated money to his victims. Govt. Mot. at 17.

But Mr. Mashinsky does not intend to make any of those arguments because *this is not a case about misappropriation of customer assets.* The *Bankman-Fried* indictment explicitly alleged that the defendant "misappropriated" billions in customer deposits. *See, e.g.*, ECF No. 202, ¶¶ 1, 4, 5, 6, 7, 9, 10, 11, 17, 20, 33. There are no such allegations here. So either the government is mistakenly seeking to preclude defenses that do not apply to the conduct at issue here, or they are planning to present this as a misappropriation case, which it is not. In either

case, the government should be precluded from making any arguments that Mr. Mashinsky misappropriated, embezzled or stole any customer assets.

## II. OPPOSITION TO MOTION I: THE COURT SHOULD REJECT THE GOVERNMENT'S OVERBROAD REQUESTS TO STIFLE MR. MASHINSKY'S DEFENSE

**Opposition to Motion I.A**

The government's first motion asks the Court to preclude the defense from arguing that "Celsius's investor victims were negligent, gullible, insufficiently vigilant, or otherwise at fault for not detecting or preventing Celsius's fraud." Govt. Mot. at 2. Mr. Mashinsky has no intention of arguing that he committed fraud and/or that Celsius's customers should have detected it. The motion is therefore moot. *United States v. Phillips*, 22 Cr. 138 (LJL), 2023 WL 6620146, at *13 (S.D.N.Y. Oct. 10, 2023) (denying government motion *in limine* as moot where parties did not dispute evidentiary issue).

However, the government goes even further and asks the Court to wholesale preclude any and all cross-examination on a broad range of topics—and before the defense even knows who the "victim" witnesses are or what their testimony will be. Govt. Mot. at 2-3 (seeking preclusion of cross-examination "about whether they did adequate diligence on Celsius . . . about the victims' failure to consider risks or appropriately investigate" or cross-examination "in a manner that implies that their due diligence was inadequate."). It is premature to preclude *any* lines of inquiry before the Court—or the defense—knows which witnesses the government is even talking about or what they will testify to. *See United States v. Wagner*, 20 Cr. 410 (NSR), 2022 WL 19179, at *4 (S.D.N.Y. Jan. 3, 2022) (denying motion to limit cross-examination as "premature because the Government's witnesses have yet to testify and thus the scope of the witnesses' direct examination . . . is still unknown.").

One thing is clear: the government cannot call a witness to discuss their Celsius experience and then hide that witness from relevant cross-examination. If the government were to call a Celsius customer who testifies that she watched every second of every one of Mr. Mashinsky's weekly AMAs, the defense should be permitted to test that assertion. On the other end of the spectrum, if a witness were to testify that she heard only one of the alleged misrepresentations described in the indictment, the defense should be permitted to elicit whether the customer also heard Mr. Mashinsky provide essential context to that statement a minute earlier, five minutes later, or in the following week's AMA.

The government itself acknowledges that the test for materiality is an objective standard, Govt. Mot. at 3, but it proceeds to cite a variety of fraud standards that have no application here—bank fraud (*United States v. June* and *United States v. Benchick*), healthcare fraud (*United States v. Nekritin*), and inducement of travel in interstate commerce for a fraudulent purpose (*United States v. Thomas*). Govt. Mot. at 2-4. In evaluating the government's securities fraud charges, the jury will be asked to determine whether Mr. Mashinsky's alleged misrepresentations "alter[ed] the 'total mix' of information available" to investors and whether "there is a substantial likelihood that a reasonable investor would find [them] important in making an investment decision." *United States v. Contorinis*, 692 F.3d 136, 143 (2d Cir. 2012) (citing *United States v. Cusimano*, 123 F.3d 83, 88 (2d Cir. 1997)). The government's intention to call Celsius customers to testify at trial creates a risk that the jury will evaluate materiality based on the subjective experiences of those particular customers, and not based on the correct, objective standard of a reasonable investor. To mitigate that risk, the Second Circuit instructed in *United States v. Litvak* that testimony from a defendant's counterparties:

> is permissible in a case like this, *but only so long as* the testimony about the significance of the content of a defendant's misstatements and each trader's "own

> point of view" is shown to be within the parameters of the thinking of reasonable investors in the particular market at issue. In other words, there must be evidence of a nexus between a particular trader's viewpoint and that of the mainstream thinking of investors in that market. Materiality cannot be proven by the mistaken beliefs of the worst informed trader in a market.

*United States v. Litvak*, 889 F.3d 56, 65 (2d Cir. 2018) ("*Litvak II*") (emphasis added).

Since the government is required under *Litvak II* to prove that its hypothetical customer witnesses fall within the mainstream thinking of investors in the market for Celsius's services, Mr. Mashinsky should be permitted to pursue lines of cross-examination to challenge that assertion. Considering that the presentation of testimony from investors representing an "indisputably idiosyncratic and unreasonable viewpoint" is grounds for reversal, testimony from any customer witnesses must be subject to testing by the defense. *Litvak II*, 889 F.3d at 69, 72. Otherwise, the government could choose to call "the worst informed trader in the market" as a witness, and then preclude the defense from showing that fact to the jury. *Litvak II* prohibits such a one-sided presentation.

Thus, if the government chooses to call witnesses whose testimony plucks a few sentences out of hundreds of hours of AMAs across a period of years or who either ignored or overlooked repeated disclaimers, risk disclosures, and disclosures of the very facts supposedly concealed, the defense should not be precluded from providing that necessary context to the jury, including through cross-examination. Such inquiry is not designed to blame the alleged victims or to call them gullible, but rather to point out the inadequacies of the government's case and the fact that it ignores the broader context in which Mr. Mashinsky's statements were made. The materiality standard for securities fraud is an objective one based on the total mix of information available to a reasonable investor, not a partial mix of cherry-picked information reverse-engineered by the government.

Finally, given the government's repeated mischaracterizations of both the causes and effects of the Celsius bankruptcy, *see, e.g.*, Govt. Mot. at 23 ("This event, termed the 'Pause,' was not a pause but a permanent injunction . . ."), the defense must be permitted to respond to any misleading testimony about alleged customer losses the government elicits. For example, if the government asks customer witnesses how much cryptocurrency they deposited with Celsius to suggest that all of it was lost due to the Celsius bankruptcy—which is false—the defense should be permitted to elicit the amount of weekly reward payments that the witnesses received from Celsius through the Earn program, the amount of distributions they have received through the bankruptcy process to date, and the fact that they are likely to receive additional distributions in the future.[1] Such context is essential to dispelling the government's insistence on framing the Celsius bankruptcy as a "permanent injunction" that caused irretrievable losses for Celsius customers, which is simply not accurate. *See* Govt. Mot. at 23; ECF No. 82 (Defense Motions *In Limine*) at 21, 25-26.

**<u>Opposition to Motion I.B</u>**

The government moves to exclude evidence and argument that other companies or individuals in the cryptocurrency industry misused customer assets or engaged in misconduct. Govt. Mot. at 4-5. Mr. Mashinsky has no intention of introducing any such evidence or argument, rendering the motion moot. *Phillips*, 2023 WL 6620146, at *13.

---

[1] The defense expects such questions from the government because that is precisely how they questioned customer witnesses in *Bankman-Fried* in order to suggest to the jury that FTX customers had permanently lost all of the crypto they had deposited on the platform: "Q: And as we sit here today, have you ever been able to withdraw your FTX customer deposits that we see? A: Never . . . Q: [S]ince November 10, 2022, have you been able to withdraw the funds from FTX? A: No, I haven't. Q: No further questions, your Honor." Trial Tr. at 92:6-8, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Oct. 4, 2023), ECF No. 354; Trial Tr. at 1294:14-17, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Oct. 16, 2023), ECF No. 366.

The defense does intend to elicit evidence and argument about the conduct of other individuals at Celsius that the government has wrongfully attributed to Mr. Mashinsky. *See, e.g.*, ECF No. 70 (Motion to Preserve Testimony) at 28-30, 40-41 (describing CEL token purchases deliberately concealed from Mr. Mashinsky). In addition, if the government continues to insist that Celsius's bankruptcy was 100% Mr. Mashinsky's fault and that no other factors contributed to it, the defense will elicit evidence and argument about the conduct of individuals both inside Celsius and across the cryptocurrency industry that contributed to the company's bankruptcy filing.

**<u>Opposition to Motion I.C</u>**

The government moves to exclude evidence and argument that regulators or a lack of regulation are to blame or provide a defense to manipulation or fraud. Govt. Mot. at 6. The defense has no intention of introducing any such evidence or argument, again, rendering the motion moot. *Phillips*, 2023 WL 6620146, at *13.

The government itself, however, made evidence about regulators and the state of cryptocurrency regulation relevant. The Indictment charges that Mr. Mashinsky falsely assured Celsius's customers that the company "had clarity and guidance from government regulators, when in fact, Celsius did not have any such clarity." Indict. ¶ 40. The government's motion offers no guidance for how the Court should navigate this issue, and the defense cannot do so without some disclosure from the government about the evidence and argument that it plans to adduce at trial on this subject. In the absence of such disclosure, the Court should defer ruling on this motion.

**Opposition to Motion I.D**

The government moves to preclude the defense "from making arguments or cross-examining witnesses about contractual disclaimers or similar provisions in Celsius's terms of service or other documents provided to victims or posted on Celsius's website." Govt. Mot. at 7. Akin to the government's effort to stifle cross-examination of customer witnesses regarding materiality, *see* Opposition to I.A *supra*, the government does not want the jury to see the total mix of information available to investors, only a partial, cherry-picked mix. The government claims "[t]here is no relevant purpose for such evidence or argument, and it is likely to confuse and mislead the jury[.]" *Id.* They do not cite a single case holding that contractual disclaimers and risk disclosures are irrelevant under Rule 401 or likely to confuse the jury under Rule 403. Moreover, the only case that they do cite decided the separate and "narrow question" of whether contractual disclaimers rendered earlier oral misrepresentations immaterial as a matter of law. *Weaver*, 860 F.3d at 92, 94. The Second Circuit answered that question in the negative, but in doing so, answered the evidentiary question raised by the government's motion in the affirmative: "the contractual disclaimers *were relevant* to the jury's determination of Weaver's guilt[.]" *Id.* at 97 (emphasis added). Accordingly, under *Weaver*, Celsius's Terms of Use are relevant and admissible.

But it is not just the disclaimer cited by the government that renders the Terms of Use relevant. *See* Govt. Mot. at 7-8. Returning to the government's misplaced effort to re-shape this case into *Bankman-Fried*, the Terms of Use attached to the government's motion show that Celsius customers consented to precisely what the government claimed FTX's customers had not—Celsius's use and deployment of their crypto assets to generate revenue. Indeed, Celsius's Earn customers signed off on Terms of Use disclosing that:

- **CELSIUS IS A LENDING AND BORROWING PLATFORM. WHEN YOU TRANSFER DIGITAL ASSETS TO CELSIUS, THOSE DIGITAL ASSETS ARE A LOAN FROM YOU TO CELSIUS, IN ACCORDANCE WITH THE TERMS HEREOF.** ECF No. 77-1 at 03287482 (emphasis in original).

- Our Earn Rewards service allows you to earn a financing fee from Celsius, referred to as "Rewards", in the form of Digital Assets (either in-kind, i.e. in the same Digital Asset you deliver, or in CEL Tokens, where permitted) in exchange for entering into open-ended loans of your Eligible Digital Assets to Celsius under the terms hereof. *Id.* at 03287485.

- **Consent to Celsius' Use of Digital Assets.** In consideration for the Rewards payable to you on your Celsius Account and the use of our Services, you grant Celsius . . . all right and title to such Digital Assets, including ownership rights, and the right, without further notice to you, to hold such Digital Assets in Celsius' own Virtual Wallet or elsewhere, and to pledge, re-pledge, hypothecate, rehypothecate, sell, lend, or otherwise transfer or use any amount of such Digital Assets . . . for any period of time, and without retaining in Celsius' possession and/or control a like amount of Digital Assets or any other monies or assets, and to use or invest such Digital Assets in Celsius' full discretion. *Id.* at 03287492-93 (emphasis in original).

Thus, while the government argued repeatedly that Mr. Bankman-Fried had misappropriated, embezzled, or stolen FTX customers' assets, it can make no such claim here. The defense also expects the detailed risk disclosures contained within the Terms of Use to be relevant, as they undercut the government's fraud theories in several respects. For example:

- These Terms and your use of any of our Services do not create a fiduciary relationship between us and you; your Celsius Account is not a checking or savings account, and it is not covered by insurance against losses. We may lend, sell, pledge, hypothecate, assign, invest, use, commingle or otherwise dispose of assets and Eligible Digital Assets to counterparties or hold the Eligible Digital Assets with counterparties, and we will use our best commercial and operational efforts to prevent losses. *Id.* at 03287489.

- By lending Eligible Digital Assets to Celsius or otherwise using the Services, you will not be entitled to any profits or income Celsius may generate from any subsequent use of any Digital Assets (or otherwise), nor will you be exposed to any losses which Celsius may suffer as a result thereof. You are, however, exposed to the possibility of Celsius becoming unable to pay its obligations in part or in full, in which case your Digital Assets may be at risk. *Id.*

- The volatility and unpredictability of the price of Digital Assets may result in significant loss over a short period of time. *Id.* at 03287490.

- In light of these risks, which are only some of the risks involved in using the Services and holding or trading in Digital Assets, and do not constitute an exhaustive list of such risks, you should carefully consider whether holding or trading Digital Assets in general and/or using our Services is suitable for you in light of your financial condition. *Id.* at 03287490-91.

- Celsius and our third-party partners may experience cyber-attacks, extreme market conditions, or other operational or technical difficulties which could result in the immediate halt of transactions either temporarily or permanently. *Id.* at 03287491.

- You acknowledge that with respect to Digital Assets used by Celsius pursuant to this paragraph: . . . (iii) In the event that Celsius becomes bankrupt, enters liquidation or is otherwise unable to repay its obligations, you may not be able to recover or regain ownership of such Digital Assets, and other than your rights as a creditor of Celsius under any applicable laws, you may not have any legal remedies or rights in connection with Celsius' obligations to you. *Id.* at 03287493.

The government cannot argue that the Celsius Terms of Use were somehow hidden in fine print or updated under the cover of night. To the contrary, customers were required to affirmatively opt in when the Terms of Use were updated, and they received repeated email communications from Celsius alerting them to that requirement. *See* Declaration of Michael F. Westfal, Exhibits A and B. Mr. Mashinsky also walked customers through perhaps the most significant update to Celsius's Terms of Use in April 2022, when the company made the decision to exclude non-accredited U.S. customers from the Earn program in an effort to comply with legal and regulatory requirements. *See* April 15, 2022 AMA, available at: https://www.youtube.com/watch?v=Yciv1MpxhEA (beginning at 03:00). In addition to Mr. Mashinsky's AMA update, this change to the Terms of Use was communicated in several email updates and other communications with Celsius customers. Westfal Decl., Exs. C and D; *see also* Celsius Custody FAQs, available at: https://support.celsius.network/hc/en-us/articles/4838161060381-Custody-FAQ.

This evidence undercuts the government's allegations of fraudulent intent on the part of Mr. Mashinsky, which is likely why they are trying to exclude the Terms of Use altogether. Do these disclosures render Mr. Mashinsky's public statements immaterial as a matter of law? Under *Weaver*, the answer is no. 860 F.3d at 92, 94. Are the disclosures in Celsius's Terms of Use relevant and admissible so that the jury can evaluate the materiality of Mr. Mashinsky's public statements against the total mix of information available to investors? Under *Weaver*, the answer is yes. *Id.* at 97.

The Court should reject the government's request to exclude this essential evidence from this trial.

**<u>Opposition to Motion I.E</u>**

The government moves to exclude evidence and argument about the "novel," "unprecedented," or "aggressive" nature of this prosecution. Govt. Mot. 8. The motion also references evidence and argument concerning "the Government's motives for the prosecution," "the Government's techniques in investigating and prosecuting crimes," "the overall propriety of the Government's investigation," and "[a]rguments about the state of regulation in the cryptocurrency industry." Govt. Mot. at 9-10. Once again, the defense has no intention of making any such arguments, rendering the motion moot. *Phillips*, 2023 WL 6620146, at *13.

Mr. Mashinsky does ask the Court to keep two considerations in mind. First, as noted above with respect to Motion I.C, it is unclear how the government can claim that "[a]rguments about the state of regulation in the cryptocurrency industry . . . have no relevance to any fact of consequence[,]" Gov. Mot. 10, when one of the charged misrepresentations is whether Celsius "had clarity and guidance from government regulators[.]" Indict. ¶ 40. The defense, therefore, must be permitted to introduce some evidence and argument about the then-existing state of

regulation in the cryptocurrency industry and Mr. Mashinsky's understanding of the clarity and guidance that Celsius had received from regulators. *See United States v. Certified Environ. Services, Inc.*, 753 F.3d 72, 88-91 (2d Cir. 2014) (ordering new trial and finding district court abused discretion in excluding evidence that "was not offered for its truth but to show that the statements occurred and that, given their effect on the defendants' state of mind, they provided a good faith basis for the defendants' actions.").

Second, the defense expects to adduce evidence and argument to show that the conduct now described by the government as criminal market manipulation was reviewed and approved by Celsius's team of legal, risk, and finance professionals. *See* ECF No. 70 at 21-22 (summarizing written procedures for CEL token purchases approved by Celsius's legal, risk, and finance professionals, including outside counsel based in the United States). That evidence is probative of Mr. Mashinsky's state of mind and good faith belief in the legality and propriety of his conduct; it undermines the government's allegations of willfulness and should therefore be admitted. *See United States v. Bankman-Fried*, 22 Cr. 673 (LAK), 2023 WL 6392718, at *1 (S.D.N.Y. Oct. 1, 2023) ("Thus, the evidence concerning the presence, involvement and even advice of lawyers in relevant events is viewed best as evidence probative of the defendant's intent to defraud or lack thereof."); *S.E.C. v. Ferrone*, 163 F. Supp. 3d 549, 567–71 (N.D. Ill. 2016) (denying SEC motion to preclude non-advice-of-counsel good faith defense based on the involvement of lawyers and other professionals and commenting that "good faith as a defense to a case in which a defendant is alleged to have acted with fraudulent intent or recklessly can take other forms as well.") (citations omitted). The government's sweeping and overbroad motion should not prevent the defense from introducing such evidence and argument to the extent it bears on Mr. Mashinsky's state of mind. The motion should be denied.

**Opposition to Motion I.F**

The government seeks to preclude "good acts" evidence under Federal Rules of Evidence 403, 404, and 405. Specifically, they ask the Court to preclude Mr. Mashinsky from "introducing evidence of buying or selling the CEL token or making truthful statements about Celsius in a way that is not the subject of this case." Govt. Mot. at 12. Of course, they do not point to a single example of what they want to preclude, despite alleging that Mr. Mashinsky "orchestrated a scheme to manipulate the price of CEL by causing Celsius to conduct massive purchases of CEL[,]" "repeatedly made false and misleading public statements regarding his own personal CEL trading activity," and "made false and misleading statements about core aspects of Celsius's financial condition and business operations[.]" Indict. ¶¶ 49; 70; 15. This broadly worded, non-specific motion is nothing more than a general request to stifle the defense and is irreconcilable with the wide-ranging allegations of the indictment.

First, the government's motion should be denied because it fails to identify any specific evidence or exhibits that it believes would be improper. *See United States v. Smith*, Case No. 1:18-CR-118-WKW, 2019 WL 4281908, at *1 (M.D. Ala. Sept. 10, 2019) ("The Government's motion does not specifically identify any good character evidence that it expects Mr. Smith to offer. In the abstract, all such evidence is not clearly inadmissible.") (internal quotation omitted). For this reason alone, this Court should deny the government's motion *in limine*. "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001).

Second, evidence of a defendant's prior "good acts" may be relevant where (1) it is alleged the defendant has "always" or "continually" committed "bad acts," or (2) where such "good acts" "would undermine the underlying theory of a criminal prosecution." *United States*

*v. Balboa*, No. 12-CR-0196, 2013 WL 6196606, at *3 (S.D.N.Y. Nov. 27, 2013) (citing *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004)). Both exceptions apply here. In general, "[a] defendant may not seek to establish his innocence ... through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990). However, good acts are admissible if relevant and probative of the issues in dispute. *See United States v. Levin*, 15 Cr. 101 (KBF), 2016 WL 8711458, at *13 (S.D.N.Y. Jan. 8, 2016) (government sought to preclude "good acts" evidence, but court allowed it to be used solely to negate intent); *United States v. Garvin*, 565 F.2d 519, 522 (8th Cir. 1977) (evidence of correctly submitted applications for approximately 18 insurance policies admissible to show lack of intent to commit a scheme to defraud); *United States v. Shavin*, 287 F.2d 647, 654 (7th Cir. 1961) (evidence of properly submitted medical bills admissible to show lack of intent to defraud with later medical bills).

While the government conveniently acknowledges that some CEL transactions and truthful statements are "good acts," the government otherwise alleges that Mr. Mashinsky engaged in a pervasive, boundless, and ceaseless fraud and manipulation scheme. *See e.g.*, Indict. at ¶ 6 (Mashinsky and others "orchestrated a yearslong scheme to mislead customers and market participants"); ¶ 15 (Mashinsky "regularly made false and misleading statements about core aspects of Celsius's financial condition and business operations in order to suggest that Celsius was a safe and low-risk investment opportunity"); ¶ 16 ("The efforts of [the defendant] to deceive the public about the reliability and profitability of Celsius's model began near its inception."); ¶ 28 ("the defendant, misrepresented Celsius's profitability and how Celsius supported its high rewards payments throughout his tenure as CEO"). The government's theory of an ongoing scheme places at issue the frequency and nature of Mr. Mashinsky's CEL

transactions and the frequency and consistency of Mr. Mashinsky's statements regarding the alleged topics. The plain fact that Mr. Mashinsky made other statements regarding Celsius's products and business that were either the same, similar, or different from the alleged misstatements is undeniably relevant. *See Damti,* 109 F. App'x at 455–56 (stating that "good acts" are relevant if they undermine the underlying theory of a criminal prosecution) (citation omitted); *see also id*. ("Evidence of past 'good acts' by a defendant is generally not probative unless a defendant is alleged to have 'always' or 'continuously' committed 'bad acts.'") (citing *Scarpa*, 913 F.2d at 1010).

Mr. Mashinsky's accurate interview and social media statements about Celsius's products and business also advance a good faith defense and undermine the government's theory of the case. If a defendant acts in good faith, that is a complete defense to the charged crimes. *See, e.g., United States v. Greenlaw,* 84 F.4th 339, 354 (5th Cir. 2023) (good-faith instruction). "[S]ince [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh" its relevance. *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952) (internal citation omitted)); *see also United States v. Collorafi*, 876 F.2d 303, 305 (2d Cir. 1989) (same). Mr. Mashinsky intends to introduce his accurate statements, not as evidence of good character but rather as evidence of his good faith beliefs, negating an intent to defraud, and to provide context to the jury regarding the total mix of information available to reasonable investors. *See* Pretrial Conference Tr. at 23:21-28:21, *United States v. Cole,* 1:19-cr-00869 (ER) (S.D.N.Y. Sep. 30, 2021), ECF No. 133 (admitting evidence of other transactions for the purpose of demonstrating defendant's good faith).

The government's own theory of the case places squarely in issue Mr. Mashinsky's statements and actions throughout the alleged scheme. Evidence of such will undermine the theory of the government's prosecution and is fundamental to his defense. *See Balboa*, 2013 WL 6196606, at *3.

**Opposition to Motion I.G**

Evidence concerning the presence, involvement and even advice of lawyers in relevant events is viewed as evidence probative of the defendant's intent to defraud or lack thereof. *United States v. Scully*, 877 F.3d 464, 476–77 (2d Cir. 2017) (citing *United States v. Beech-Nut Nutrition Corp*., 871 F.2d 1181, 1194 (2d Cir. 1989)); *see also Markowski v. S.E.C.*, 34 F.3d 99, 105 (2d Cir. 1994) (reliance on the advice of counsel "is not a complete defense, but only one factor for [the jury's] consideration"). But the government seeks to preclude it. Alternatively, the government seeks notice of an advice of counsel defense. That request is premature at best.

The evidence will show that outside counsel, in-house counsel, and other members of Celsius's senior management gave advice regarding the manner in which Celsius purchased and sold CEL tokens in the open market from 2019 to 2022, and were aware of Mr. Mashinsky's statements but did not correct, always advise, or issue public corrections as to the alleged inaccuracy of Mr. Mashinsky's statements. That evidence "obviously would be relevant as to" the question of whether the government can prove that Mr. Mashinsky had "the intent to deceive" the alleged victims. *United States v. Atias*, 14-CR-0403(DRH), 2017 WL 563978, at *5 (E.D.N.Y. Feb. 10, 2017) (internal quotation marks omitted). Mr. Mashinsky should not be hindered from developing evidence probative of his good faith, nor should he be required to disclose any such potential advice of counsel defense before knowing what exactly he is responding to. The Court should deny the government's motion.

The government cites cases that address the appropriateness of a jury instruction (*Evangelista)* and probation condition (*Colasuonno*) regarding a formal advice of counsel defense. Govt. Mot. at 21. Those cases do not address the merits of a pretrial ruling. Moreover, "reliance on the advice of counsel need not be a formal defense; it is simply evidence of good faith, a relevant consideration in evaluating a defendant's scienter." *Howard v. S.E.C.*, 376 F.3d 1136, 1147 (D.C. Cir. 2004) (citing *Bisno v. United States,* 299 F.2d 711, 719 (9th Cir. 1961). Even so, the government gains no mileage from a discussion of jury instructions because Second Circuit cases uniformly instruct that good faith is a complete defense to charges such as securities fraud or wire fraud. *See e.g.*, *United States v. Alkins*, 925 F.2d 541, 549–50 (2d Cir. 1991) (approving a substantially similar jury instruction; holding that "[g]ood faith is a complete defense to a mail fraud charge. . . . If an individual believes that the information set forth in a mailing is true, it follows that he cannot have the requisite intent to defraud. The government must prove lack of good faith beyond a reasonable doubt[]"); *United States v. Litvak* ("*Litvak I*"), 808 F.3d 160, 189 (2d Cir. 2015) (quoting a substantially similar jury instruction); *United States v. Percoco*, 13 F.4th 158, 177 (2d Cir. 2021) (finding no error where court instructed jury that "[a]n honest belief in the truth of the representations made by a defendant is a complete defense[]") (internal quotation marks omitted).

The issue of good faith can be proven inferentially. A district court, therefore, will liberally admit evidence on the issue of good faith. *See Litvak I*, 808 F.3d at 190 ("[S]ince [good faith] may be only inferentially proven, no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh its relevance[.]") (internal quotation marks omitted). In *Litvak I,* the district court correctly admitted "evidence of Litvak's supervisors'

knowledge or approval" of Litvak's conduct, "because such evidence tend[s] to prove the absence of intent and could provide a basis for the jury to make a reasonable inference…that they should find no intent to defraud given the nature of what happened at [Litvak's place of employment]." *Id.* at 188 (internal quotations omitted). The district court, however, erroneously excluded evidence of the supervisors' "knowledge or approval of other employees' similar conduct." *Id*. The Second Circuit, reversing the conviction, held that the latter ruling, excluding evidence, "exceeded" the district court's "allowable discretion" under Rule 401. *Id*. at 190 (internal quotation marks omitted). The evidence, in short, showed "the environment in which Mr. Litvak [wa]s operating. It all goes back to state of mind." *Id*. at 188 (quoting Litvak's counsel); *see also S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (allowing "evidence of the numerous individuals and/or committees who participated in the transaction, as . . . relevant to the context in which the . . . transaction occurred[]").

Similarly, here, Mr. Mashinsky will offer evidence of the environment, and the context, in which he made the alleged misrepresentations and CEL token transactions. Mr. Mashinsky worked daily with others at Celsius, including counsel. Those individuals did not object to all alleged statements and transactions, despite ethical obligations and fiduciary duties to the company. Such evidence has obvious relevance to Mr. Mashinsky's state of mind and good faith. *See Litvak I*, 808 F.3d at 188-90. Such evidence is relevant to Mr. Mashinsky's state of mind, whether or not the lawyer gave formal or specific legal advice. *See Howard*, 376 F.3d at 1147 (holding that corporate officer may rely on evidence showing that he "encountered green [flags], as outside and inside counsel approved transactions").

Not surprisingly, the government also cites *Bankman-Fried.* In that case, the government sought to preclude Bankman-Fried "from unduly focusing on the fact of attorneys' involvement"

or "suggesting that attorneys *blessed*, for instance, the loans, bank documents, or message deletions." 2023 WL 6392718, at *1 (emphasis in original, internal quotations omitted). The question for the court became what is "unduly focusing." In assessing the potential for excessive references to counsel's presence, the court in *Bankman-Fried* considered that FTX had not waived the attorney-client privilege and too many repeated references to the presence of counsel could mislead the jury into believing that counsel had approved of certain conduct. *Id.* at *2-3 n.16.

This case is readily distinguishable. Not only is the government, here, seeking broad preclusion, but the government also acknowledges that Celsius waived its attorney-client privilege "over the interactions at issue" and prosecutors have interviewed two Celsius lawyers.[2] Govt. Mot. 15-16. At least one of the lawyers—the cooperating witness Cohen-Pavon—supposedly advised Mr. Mashinsky that "some" of his statements "could lead to law enforcement scrutiny." Govt. Mot. at 16. The government wants to introduce that testimony and preclude the defense from challenging it? They want to stop the defense from exploring what exactly was said to Mr. Mashinsky and when? In what context and with respect to which statements? And whether Mr. Mashinsky was advised to issue a public correction for that statement or any of his prior statements? What about the Celsius lawyer who had the most involvement in reviewing Mr. Mashinsky's weekly video statements? *See* ECF No. 70 at 20-21 (request to preserve testimony of Yarden Noy).

---

[2] It is unclear what "over the interactions at issue" means. The Second Circuit is wary of "selective waiver." *See In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("selective assertion of privilege should not be merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage."). Extensive email correspondence with company counsel relating to events such as Celsius's purchases of CEL tokens were produced with redactions. *See* ECF No. 70 at 27, n.6.

This effort to restrain Mr. Mashinsky's ability to cross-examine witnesses and mount a good faith defense must fail. It would violate his Sixth and Fourteenth Amendment rights to confrontation and due process. *See Crane,* 476 U.S. at 690; *Williams v. Lord,* 996 F.2d 1481, 1483 (2d Cir. 1993).

The government also cites to the trial transcript of *Tagliaferri* for the premise that the defendant's testimony should be limited regarding the presence of counsel to avoid the "misleading impression" that the defendant relied upon the advice of counsel. But in *Tagliaferri* Judge Abrams permitted the defendant "to elicit testimony that attorneys were involved in the transactions … to argue that this involvement affected his state of mind, thus bearing on whether he acted with fraudulent intent." Trial Tr. at 83:21-84:1, *United States v. Tagliaferri,* No. 13 Cr. 115 (RA) (S.D.N.Y. June 26, 2014), ECF No. 63. The court also held that "if [the defendant] has an evidentiary basis for doing so, [he] may argue that attorneys who drafted or reviewed documents related to the charged transactions did not inform him of the illegality of his receiving fees or that formal disclosure of them was required, and that the defendant took comfort in the attorney silence." *Id.* at 84:15-21.

None of the cases cited by the government support its overbroad and premature contention that the Court should exclude—wholesale, by pretrial ruling—all evidence regarding the presence and/or participation of a lawyer. At minimum, the Court should defer ruling until trial. In *Tourre*, the court did not exclude evidence of, or argument about, a lawyer's participation in "the overall context of the transaction[]" at issue. 950 F. Supp. 2d at 684. On the contrary, the court "allow[ed] evidence of the numerous individuals and/or committees who participated in the transaction, as it is relevant to the context in which the . . . transaction occurred." *Id.* The court refused to "preclude witnesses from identifying the identity or

profession of the individuals reflected on . . . documents." *Id*. at 685 (refusing to "require an unnatural avoidance of identifying addressees or participants reflected in such evidence[]"). Ultimately, the court simply "limit[ed]" the defendant's ability "to focus on the presence and participation of lawyers." *Id*. The court concluded, "Tourre will not be precluded altogether from saying the words 'counsel,' 'lawyer,' or 'attorney,' regardless of the context of the evidence or testimony, but nor will he be permitted to zero in on the presence or involvement of lawyers for the sake of highlighting their presence or involvement." *Id*. The court reserved further rulings until trial and noted that it "will give a limiting instruction[,]" if necessary. *Id*.

The Court should deny the government's motion, which "does not fully account for the issue of good faith and the ways in which it might be raised legitimately by [Mr. Mashinsky] to contest the scienter element" of the charges here. *Ferrone*, 163 F. Supp. 3d at 570. Alternatively, the Court should postpone further rulings until trial, when the Court can make rulings fully-informed by the evidence and contemplate whether to instruct the jury on the good-faith defense and its distinction from an advice-of-counsel defense. "If the Court is going to err…it [sh]ould prefer to err on the side of allowing the jury to decide the case rather than gutting [Mr. Mashinsky's] defense out of the box." *Id.*

**Opposition to Motion I.H**

In their Motion I.H, the government seeks to preclude Mr. Mashinsky from arguing that he intended to "repay" or "return" misappropriated money to his victims. Govt. Mot. at 17. Mr. Mashinsky does not intend to argue that there was "no ultimate harm" to victims, which could, in any event, be cured with an instruction.

However, it is black letter law that to obtain a wire fraud conviction, the government "must demonstrate that the defendant had a conscious knowing intent to defraud *and* that the

defendant contemplated or intended some harm to the property rights of the victim." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (emphasis added and cleaned up); *see also United States v. Jabar*, 19 F.4th 66, 76 (2d Cir. 2021) ("Because an intent to deceive alone is insufficient to sustain a wire fraud conviction, misrepresentations amounting only to a deceit must be coupled with a contemplated harm to the victim.") (cleaned up); *United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006) ("Because the Government failed to carry its burden of establishing that Novak intended to harm the contractors, we find the evidence insufficient to support the jury's verdict regarding the mail fraud charge, and thus reverse Novak's conviction on that count."); *United States v. Rossomando*, 144 F.3d 197, 198 (2d Cir. 1999) ("The court's jury charge properly indicated that Rossomando had to have intended to harm the Pension Fund in order to be guilty…."); *United States v. Starr*, 816 F.2d 94, 98–99 (2d Cir. 1987) (reversing where "the government adduced no evidence of an intent to harm"); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970) ("But the purpose of the scheme must be to injure ….") (internal quotation mark omitted); 2 Sand et al. Modern Federal Jury Instructions, Instruction 44-5 (2019) ("'Intent to defraud' means to act knowingly and with the specific intent to deceive, for the purpose of causing some financial or property loss to another.").

In line with these cases, Mr. Mashinsky anticipates arguing that he never intended for his alleged victims to lose money, *see Rossomando*, 144 F.3d at 202, and not that he believed there would be no harm in the long run. Mr. Mashinsky should not be precluded from making that argument.

## III. OPPOSITION TO MOTION II: THE GOVERNMENT'S MOTION TO ADMIT STATEMENTS UNDER FED. R. EVID. 801 IS PREMATURE AND LACKS SPECIFICITY

The government's motion to admit co-conspirator and agency statements under Fed. R. Evid. 801 is too broad to merit a response. The government has not disclosed the identity of any of Mr. Mashinsky's supposed co-conspirators (save one cooperating witness); nor any of Mr. Mashinsky's supposed agents (from among hundreds of Celsius employees); nor any other government witnesses; and they have identified only certain examples of Mr. Mashinsky's alleged misstatements. *See Bankman-Fried*, 2023 WL 6283509, at *3. ("These bases of admissibility cannot be applied in the abstract. Admissibility ultimately must turn on characteristics of the particular items of evidence and the purposes for which they are offered.").

Their motion does, however, raise alarming practical issues. We suspect the government will try this case, not by calling percipient witnesses, but largely by offering snippets of co-conspirator and agency statements (if they can meet the threshold for admissibility under Fed R. Evid. Rule 801) through assorted (and as-yet unspecified) emails, chats and text messages. The defense would then be entitled to counter these out-of-court statements with completing and clarifying material under Fed. R. Evid. 106 and/or material to impeach the Rule 801 declarants under Fed. R. Evid. 806. But if the government does not reveal until we are in the courtroom the particular statements they intend to offer under Rule 801, major delay will ensue. The defense would then have to search—on the spot—through hundreds of hours of video, two hundred thousand electronic chats, and five million pages of discovery for completing and clarifying material under Rule 106 and/or impeachment material under Rule 806. That would be an impossible task to complete in the middle of trial.

The government should provide, well in advance of trial, all statements they intend to present through Rule 801 in order to avoid a trial-by-surprise and the ensuing delay and confusion.

## IV. OPPOSITION TO MOTION III: THE COURT SHOULD EXCLUDE ALL EVIDENCE OF CELSIUS'S BANKRUPTCY, INCLUDING THE FACT OF THE FILING

Evidence of Celsius's bankruptcy filing should be excluded at trial. The fact that Celsius filed for bankruptcy is irrelevant. Whatever speck of probative value the government assigns to it is "substantially outweighed by a danger of ... unfair prejudice [and] misleading the jury." Fed. R. Evid. 403.

As a threshold matter, the Celsius bankruptcy filing was outside the Indictment period, which covers conduct between 2018 and June 2022. Celsius did not file bankruptcy until July 13, 2022. *See* Indict. at ¶ 9. More importantly, a corporate bankruptcy filing is irrelevant to Mr. Mashinsky's individual state of mind on any of the charges he faces. A corporate decision to declare bankruptcy is a complicated mix of legal, economic, financial and business considerations that should not be weaponized against Mr. Mashinsky as a proxy for evidence of knowledge or intent. Celsius's decision to file bankruptcy was a unanimous decision made by designated directors from a special committee that was being guided by legal counsel. Westfal Decl. Ex. E at 2-4. And a bankruptcy filing does not speak to financial harm, loss, or economic injury. Reference to bankruptcy will also create a misimpression that Celsius failed its customers and users, when in fact the company has already exited bankruptcy. *See In re: Celsius Network LLC, et al.,* 22-bk-10964-mg, Dkt. No. 4298 (Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions) (Bankr. S.D.N.Y. Jan. 31, 2024).[3]

---

[3] *See also White & Case Leads Celsius Creditor's Committee to Successful Chapter 11 Exit and Distribution of Over US$3 Billion of Cryptocurrency to Creditors* (Feb. 1, 2024), available at:

The government's effort to attribute some relevance to the bankruptcy falls of its own weight. They claim that evidence of the bankruptcy filing is necessary to show the falsity of Mr. Mashinsky's prior statements concerning the solvency of the platform. Govt. Mot. at 23-24. But the bankruptcy filing is not necessary for that purpose; the indictment itself alleges that Celsius executives "internally" discussed that "[t]he current business model is not sustainable" and that Mr. Mashinsky withdrew his own assets even as he assured customers about the company's solvency. Indict. ¶¶ 45-47. Either of those allegations could be juxtaposed against Mr. Mashinsky's statements about the solvency of the platform to prove a misstatement. Indeed, the bankruptcy evidence is, by the government's own admission, cumulative. *See* Govt. Mot. at 24 ("The fact that Celsius first stopped allowing customers to withdraw their assets to prevent a 'run' and then filed for bankruptcy shortly thereafter *are only two examples among many* . . . proving that Mashinsky's claims about Celsius's profitability, safety, liquidity, and riskiness were not true") (emphasis added). Reference to the bankruptcy filing is simply gratuitous.

The government tries to backdoor the bankruptcy filing into the case by claiming it is necessary to show the supposed falsity of Mr. Mashinsky's statement that "[a]ll coins are returned to their owners even in the case of bankruptcy." Govt. Mot. at 25. Of course, that statement could not have been knowingly false when made because it was made *16 months before* the bankruptcy filing, when it was impossible to know whether there would ever be a future bankruptcy filing. But even so, once the government alleges that statement to be false, the defense would be entitled to rebut it with evidence it was true, *i.e.*, that coins were, in fact,

https://www.whitecase.com/news/press-release/white-case-leads-celsius-creditors-committee-successful-chapter-11-exit-and.

returned to their owners in the bankruptcy. That would require the defense to present evidence from the bankruptcy proceeding including that Celsius has indeed emerged from bankruptcy and distributed or announced the distribution of more than $3.73 billion in value to customers to date, with more to come in the future ($665 million as of August 2024). *See* ECF No. 82 at 21, 25-26. In short, if the government uses the bankruptcy to show the statement was false, the defense would have to use the bankruptcy record to show the statement was true.

The better course is to exclude evidence of the bankruptcy altogether.

Whatever scintilla of relevance the bankruptcy may hold, its probative value is substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See generally United States v. Gupta,* 747 F.3d 111, 131–32 (2d Cir. 2014); Fed. R. Evid. 403. Putting the bankruptcy proceeding findings (as favorable to Celsius as they are) before the criminal jury "would give rise to the trial-within-a-trial that Rule 403 classically disfavors." *Saadeh v. Kagan*, No. 20 Civ. 1945 (PAE) (SN), 2023 WL 6850481, at *3 (S.D.N.Y. Oct. 17, 2023) (citing *United States v. Aboumoussallem*, 726 F.2d 906, 911–12 (2d Cir. 1984) (upholding exclusion of evidence to avoid "trial within a trial"). *See also Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) ("Admitting evidence about previous cases 'inevitably results in trying those cases before the jury,' and 'the merits of the other cases would become inextricably intertwined with the case at bar.'" (alterations omitted)).

The government also disputes the notion that bankruptcy proceedings are inflammatory or prejudicial. Courts and commentators disagree. Bankruptcy carries connotations of dishonor, recklessness, blameworthiness and an undeniable stigma. *See, e.g., Vaughn v. Target Corp.*, No. 3:13-CV-521-DJH, 2015 WL 632255, at *3 (W.D. Ky. Feb. 13, 2015) ("Even if it were relevant,

her bankruptcy would be excluded under Rule 403: the potential for undue prejudice is extremely high . . . ."); *HTC Corp. v. Tech. Properties Ltd.*, No. 5:08-CV-00882-PSG, 2013 WL 4782598, at *2 (N.D. Cal. Sept. 6, 2013) ("A reference to bankruptcy may trigger visceral reactions among jurors and the court believes such a reaction carries a risk of substantial unfair prejudice."); *Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1017 (7th Cir. 1988) (observing that, in a business context, "[t]he bankrupt may be shunned like a leper."); *In re Cummings*, 595 F. App'x 707, 709 (9th Cir. 2015) (referencing "the stigma of bankruptcy"). *See also In re Gibraltor Amusements, Ltd.*, 291 F.2d 22, 27 (2d Cir. 1961) (Friendly, J., dissenting, discussing legislative debate regarding bankruptcy laws: "Bankruptcy was viewed as a stigma difficult to erase. . . ."); *Dirty Little Secret: The Stigma of Bankruptcy*, Association for Financial Counseling & Planning Education, 3rd Quarter 2015, https://www.afcpe.org/news-and-publications/the-standard/2015-3/dirty-little-secret-the-stigma-of-bankruptcy/ ("There is a stigma associated with bankruptcy that implies some failing, flaw, and/or guilt on the part of the bankruptcy filer. Nothing could be further from the truth."). *Cf. United States v. Rahim*, 771 F. App'x 605, 610-611 (6th Cir. 2019) (admitting evidence of bankruptcy proceeding to show defendant deliberately concealed kickback payments while he went through bankruptcy proceedings). The fact of the bankruptcy alone would be unduly prejudicial.

Judge Kaplan's decision in the *Bankman-Fried* case should offer no comfort to the government. Judge Kaplan allowed the government to make limited reference to FTX's bankruptcy because it was "intertwined inextricably with the crimes alleged in the Indictment and the government is entitled, within reason and without appealing to sympathy, to explain to the jury its view of what allegedly happened here." 2023 WL 6283509 at *6. What happened

there, according to the government, was misappropriation, and the government used the FTX bankruptcy as a proxy for misappropriation, loss and thievery:

- Their money was gone. FTX was bankrupt. Billions of dollars from thousands of people gone. (Trial Tr. at 2912:11-12, *United States v. Bankman-Fried*, 22 Cr. 673 (LAK) (S.D.N.Y. Nov. 1, 2023), ECF No. 382) (Govt. Summation);

- As the dust settled and bankruptcy proceedings began, and FTX ceased to exist, a series of questions emerged. Where did the money go? What happened? Who is responsible? . . . This man, Samuel Bankman-Fried. What happened? He spent his customers' money and he lied to them about it…. and eventually it collapsed, leaving countless victims in its wake. *Id.* at 2912:13-25.

This case is different. It is not a misappropriation case. Unlike *Bankman-Fried*, Mr. Mashinsky is not charged with causing "billions of dollars" to be "gone" or "[spending] his customers' money and [lying] to them about it." *Id.* Those arguments have no business being bonded to the Celsius bankruptcy like they were to the FTX bankruptcy. Moreover, the argument that FTX customer money was "gone" and that FTX "[left] countless victims in its wake," later proved to be overhasty, if not wrong. Reports are that the FTX victims are expected to recover approximately 118% of what they had in their accounts at the time of the bankruptcy filing.[4] FTX should serve as a cautionary tale: it would be inaccurate for the government to claim that Celsius customers were similarly victimized when Celsius paid more than $1 billion in weekly rewards before the bankruptcy and their customers too will, reportedly, recover their assets in the bankruptcy. *Celsius Network Delivers More Than $1 Billion In Yield To Its Community* (Nov. 1, 2021), available at: https://www.prnewswire.com/news-releases/celsius-network-delivers-more-than-1-billion-in-yield-to-its-community-301413022.html; *In re: Celsius Network LLC, et al.,* 22-bk-10964-mg, Dkt. No. 7637 (First Status Report on Distributions) at 7,

---

[4] Ligon, Cheyenne, *Delaware Judge Approves FTX Estate's Bankruptcy Plan*, Coindesk (Oct. 7, 2024), available at: https://www.coindesk.com/policy/2024/10/07/delaware-judge-approves-ftx-estates-bankruptcy-plan/.

22-23, 33 (Bankr. S.D.N.Y. Aug. 26, 2024) (detailing approximately $4.4 billion in completed or anticipated distributions to customers).

Finally, a limiting instruction would be unlikely to alleviate the prejudice of this barely relevant, yet highly incendiary evidence. Although courts generally presume that juries follow limiting instructions, that presumption "evaporates where there is an overwhelming probability that the jury will be unable to follow the court's instructions and the evidence is devastating to the defense." *United States v. Jones,* 16 F.3d 487, 493 (2d Cir. 1994); *see also United States v. Becker,* 502 F.3d 122, 130–31 (2d Cir. 2007) ("[W]e have found it inappropriate to presume that a district court's limiting instructions were obeyed when such instructions required jurors to perform 'mental acrobatics.'"). Allowing the government to introduce the bankruptcy filing—with all its negative connotations and consequences—would create unfair prejudice under Rule 403 by the tendency of the evidence to excite emotions against the defendant. It would become a proxy for wrongdoing that even the most careful instruction could not save.

The bankruptcy evidence should be excluded.

## CONCLUSION

For the foregoing reasons, Mr. Mashinsky respectfully requests that the Court deny the government's motions *in limine*.

Dated: New York, New York
November 8, 2024

MUKASEY YOUNG LLP

/s/ Michael F. Westfal
Marc L. Mukasey
Torrey K. Young
Michael F. Westfal

570 Lexington Avenue, Suite 3500
New York, NY 10022
Tel: (212) 466-6400
Email: michael.westfal@mukaseylaw.com

*Counsel for Alexander Mashinsky*