| | |
|---|---|
| **Date:** | Mon, 31 Mar 2025 8:40:24 PM (UTC) |
| **Sent:** | Mon, 31 Mar 2025 8:39:58 PM (UTC) |
| **Subject:** | [EXTERNAL] Alex Mashinsky Victim Impact Statement, DD |
| **From:** | GP5H |
| **To:** | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; |
| **CC:** | |
| **Attachments:** | Victim Impact Statement DD.pdf.pdf |

Hi Wendy,
On the attachment is my signed victim impact statement. Please forward it to the judge for his consideration.
If you need any additional information, please feel free to contact me.
Thank you
DD
PS I have included only my initials, but can provide further creditor information if verification is necessary,
Text of Attachment
March 31, 2025

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
To the Honorable Judge Koeltl,

I am one of the many victims of Alex Mashinsky's fraudulent actions through Celsius Network. I am writing this statement to convey the devastating impact his crimes have had on my life and to urge the court to impose a sentence that reflects the gravity of his deceit and the harm he has caused to regular investors like me. This should be the maximum sentence of 30 years.

Customers trusted Alex Mashinsky. He presented himself as a visionary, someone who could be relied upon to safeguard and grow our hard-earned money. I had millions of dollars in cryptocurrency on the Celsius Network —money that was meant to secure my retirement after years of diligent saving and to provide a legacy for my child. That trust was shattered when Celsius collapsed, and I learned it was not market forces or a "short squeeze" that took my life savings, but Mashinsky's calculated fraud. His duplicitous statements, echoed by his employees, sucked people like me in with promises of safety and high returns. He claimed Celsius was "the safest place for your crypto," but as US Attorney Damian Williams stated, "Alexander Mashinsky orchestrated one of the biggest frauds in the crypto industry." Those words ring painfully true for me now.

The financial harm has been catastrophic. My retirement is gone, leaving me scrambling to rebuild at an age when I should be enjoying the fruits of my labor. Worse still, Mashinsky stole from my child, too—because the wealth he took from me was meant to be passed on, ensuring their future security. Now, that inheritance is lost forever, a generational wound inflicted by his greed. The mental toll has been immense—sleepless nights, constant stress, and a profound sense of betrayal. I am not alone in this suffering; thousands of regular investors were lured in by Mashinsky's lies, only to be left with nothing when the Ponzi nature of his operation was exposed. Celsius wasn't a legitimate business; it was a house of cards built on deception, propped up by manipulating the CEL token and misusing our deposits to mask its insolvency.

I ask the court not to be swayed by excuses about market conditions or stories of external pressures. Mashinsky's guilty plea confirms what we victims already know: he knowingly misled us. As US Attorney Williams further noted, "He lured ordinary, retail crypto investors into investing billions of dollars in Celsius with false promises that their investments were low-risk." Those false promises were not mistakes—they were deliberate, and they destroyed lives.

This sentencing must send a clear message. Fraud on a billion-dollar scale cannot be tolerated, and those who perpetrate it must face severe consequences. A lenient sentence would only embolden others in the crypto industry to gamble with people's lives under the guise of innovation. I implore you to impose a punishment that reflects the magnitude of Mashinsky's crimes and serves as a deterrent to anyone tempted to follow in his footsteps. Justice demands accountability—not just for me, but for my child and all the victims who trusted him and paid the price for his greed.

Thank you for considering my statement.

Sincerely,

D.D.

My information name and information can be made available to the court upon request to confirm my creditor account information and holdings.

Sent with Proton Mail secure email.

March 31, 2025

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street

To the Honorable Judge Koeltl,

I am one of the many victims of Alex Mashinsky's fraudulent actions through Celsius Network. I am writing this statement to convey the devastating impact his crimes have had on my life and to urge the court to impose a sentence that reflects the gravity of his deceit and the harm he has caused to regular investors like me.  This should be the maximum sentence of 30 years.

Customers trusted Alex Mashinsky. He presented himself as a visionary, someone who could be relied upon to safeguard and grow our hard-earned money. I had millions of dollars in cryptocurrency on the Celsius Network —money that was meant to secure my retirement after years of diligent saving and to provide a legacy for my child. That trust was shattered when Celsius collapsed, and I learned it was not market forces or a "short squeeze" that took my life savings, but Mashinsky's calculated fraud. His duplicitous statements, echoed by his employees, sucked people like me in with promises of safety and high returns. He claimed Celsius was "the safest place for your crypto," but as US Attorney Damian Williams stated, "Alexander Mashinsky orchestrated one of the biggest frauds in the crypto industry." Those words ring painfully true for me now.

The financial harm has been catastrophic. My retirement is gone, leaving me scrambling to rebuild at an age when I should be enjoying the fruits of my labor. Worse still, Mashinsky stole from my child, too—because the wealth he took from me was meant to be passed on, ensuring their future security. Now, that inheritance is lost forever, a generational wound inflicted by his greed. The mental toll has been immense—sleepless nights, constant stress, and a profound sense of betrayal. I am not alone in this suffering; thousands of regular investors were lured in by Mashinsky's lies, only to be left with nothing when the Ponzi nature of his operation was exposed. Celsius wasn't a legitimate business; it was a house of cards built on deception, propped up by manipulating the CEL token and misusing our deposits to mask its insolvency.

I ask the court not to be swayed by excuses about market conditions or stories of external pressures. Mashinsky's guilty plea confirms what we victims already know: he knowingly misled us. As US Attorney Williams further noted, "He lured ordinary, retail crypto investors into investing billions of dollars in Celsius with false promises that their investments were low-risk." Those false promises were not mistakes—they were deliberate, and they destroyed lives.

This sentencing must send a clear message. Fraud on a billion-dollar scale cannot be tolerated, and those who perpetrate it must face severe consequences. A lenient sentence would only embolden others in the crypto industry to gamble with people's lives under the guise of innovation. I implore you to impose a punishment that reflects the magnitude of Mashinsky's crimes and serves as a deterrent to anyone tempted to follow in his footsteps. Justice demands accountability—not just for me, but for my child and all the victims who trusted him and paid the price for his greed.

Thank you for considering my statement.

Sincerely,



D.D.

My information name and information can be made available to the court upon request to confirm my creditor account information and holdings.

**Date:**    Mon, 31 Mar 2025 1:39:06 AM (UTC)

**Sent:**    Mon, 31 Mar 2025 1:38:40 AM (UTC)

**Subject:**  [EXTERNAL] Celsius survivor

**From:**    Frances Jones

**To:**      Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >;

Dear Wendy,

One of my dear online Celsius survivor friends sent me a copy of her victim impact statement to you.

I have written so much information online about myself, the last thing I want to do is to expose myself any more than I already have.

However I will send a link to my letters to Judge Glenn which explain part of my story in this Celsius nightmare. Unfortunately all this information is public.

I still have not received the money I am owed despite giving all my private financial information to Coinbase. I have been a teacher for over 20 years with the same employer! How is this possible?

This experience has made me see the corruption and complete lack of morals in American and Israeli cultures, politics and societies. I am deeply appalled. I am also a survivor of FTX. Needless to say my hair is grey.

Please punish Alex Mashinsky, S Daniel Leon and their merry bunch of thieves, scammers, liars and disgusting characters to the full extent of the law and return what is ours to us and our families.

People forget that S Daniel Leon is the scammer and thief who convinced Alex Mashinsky to start Celsius. He should be punished just as much if not more. Of course he and his family withdrew our money and ran away to Israel. S Daniel Leon and his wife Aliza Landes should also be in prison for life, but instead they are free. They are close buddies with Israel's leaders and the IDF.

Letter to the Honorable Martin Glenn requesting a reconsideration of the debtor's decision to distribute my claim in USD instead of BTC

Copy of Joinder-Celsius Corporate Creditors.docx

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903042480000000093.pdf

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174904292480000000019.pdf

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903192480000000071.pdf

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903182480000000059.pdf

Kind regards,

Frances Jones

Australia

The Honorable Martin Glenn,

Chief United States Bankruptcy Judge,

in the United States Bankruptcy Court for the Southern District of New York.

One Bowling Green New York, NY 10004-1408

March 2nd, 2024

Dear Judge Glenn,

I am the sole director of the Jones Asset Protection Trust, a corporate account which was established to safeguard my family's assets. My two young sons and I lived in an apartment for years (until we were doxxed by Celsius), while I saved up for a house down payment. However, because I was earning a miniscule return on my traditional savings account, my sons and I along with many others were enticed to move all our cryptocurrency into Celsius. Alex Mashinsky's false promises of an account that he claimed was "Safe as a Bank," offering high interest rates on savings and low interest rates on loans, was very appealing to me given that I am a single mother of two sons, living on a teacher's salary.

With the Court-approved distribution of liquid crypto and MiningCo stock, I am already suffering a realized loss of -$30,743.79, when compared to my original 7/13/22 Petition Date $113,028.63 net claim value (which includes a $20,016.53 loan offset applied against my loan collateral). This is due primarily to the outright fraud and theft by Alex Mashinsky, and secondarily to the exorbitant cost of an unnecessarily lengthy Chapter 11 bankruptcy case.

To add further insult to injury, without ample warning or notification, the Debtors and their distribution agent Coinbase arbitrarily chose to cut me a USD check for my trust's corporate claim instead of distributing my recovery back in liquid crypto form. I put 5.5 BTC into our corporate account. Consequently, we will now be missing out on all the subsequent market appreciation of those coins which I was entitled to receive under the confirmed Chapter 11 Reorganization Plan. In the 1.5 months since the 1/16/24 Effective Date pricing snapshot, the crypto *I should have received* has appreciated ~30% in market value, or ~$26,500 USD. To put this in proper context, this unrealized gain would have almost been enough to completely "fill the hole" and make me 100% whole, relative to the realized loss on my Petition Date USD claim value mentioned above. As a result of this last-minute and post-Confirmation modification to the Plan distribution agreement, I and thousands of other corporate clients are being treated unfairly and inequitably compared to other unsecured creditors within the same classes (Class 2 Retail Borrower and Class 5 Earn) who held personal accounts instead. I am not an attorney and after losing most of my life's savings to the Celsius bankruptcy, I currently cannot afford to be represented by counsel; however, it is my understanding that unequal intra-class treatment is expressly forbidden under US Bankruptcy law.

On pg 4 of Doc 4298 filed on 1/31/24, the Debtors stated that "*on or around January 19, 2024, the Debtors notified the corporate creditors[5] with the largest Claims against the Debtors that, pursuant to the agreement the Debtors have with Coinbase, **the Debtors can only make distributions in Liquid Cryptocurrency to 100 corporate creditors**. Eligible corporate creditors interested in receiving Liquid Cryptocurrency as part of their distribution on account of their Claims were required to affirmatively request to receive a distribution in Liquid Cryptocurrency **by the stated deadline** ... If a corporate creditor is not selected, or did not receive the initial notice, such creditor will also receive a communication confirming that it will receive its distribution in Cash".*  In footnote #5, they defined *"**Corporate creditor means any entity that is not an individual** (for example, a corporation, **LLC**, partnership, **trust**, or similar entity) as determined pursuant to Coinbase's policies and protocols."*  This docket filing failed to disclose to the Court the actual stated deadline they gave to these affected creditors, which was a very short and hard deadline of 1/23/24.  The Debtors did not send me an email informing me that I was an affected party until Saturday 1/20/24, a day afterwards from when they claim to have sent out this email-only notification.  This late notice gave me even less time to respond (i.e. only 2 business days) when compared to the 3 business days afforded to other Celsius corporate customers. Sydney Australia is 16 hours ahead of New York, NY, USA. These emails to corporate accounts were sent on or around late Friday afternoon 1/19 and the hard deadline was Tuesday 1/23, New York time. So realistically a businessperson had Monday and Tuesday to read and respond. 2 days.

At that time, I was on a vacation in Italy pre-scheduled long in advance of this surprise notification from the Debtors.  As such, I did not check my corporate email account and see their change in distribution policy until 1/24/24, the day after their self-imposed and unnecessarily tight deadline.   Here is a timeline of the events that transpired:

1. I received an email from support@celsius.network sent on 1/20/24 (see Exhibit A) stating the following:
    i) 2nd paragraph: "*Pursuant to the agreements the Debtors have with their distribution partners Coinbase and PayPal, the Debtors can only make distributions to 100 'corporate' creditors.*"
    ii) 4th paragraph: "***You are receiving this notification because you are one of the corporate creditors who has the largest claims against Celsius and, as such, you may have the opportunity to receive a cryptocurrency claim distribution through Coinbase***".
    iii) 5th paragraph: "*Celsius is reaching out to the corporate creditors with the largest claims to determine how to allocate these 100 slots.  In order to be eligible to receive cryptocurrency, a corporate creditor must ... Affirmatively request to receive a distribution in cryptocurrency ... by no later than January 23, 2024*".
    iv) There was no indication how many corporate customers had received this email or how the 100 limited slots would be allocated (e.g. first-come-first-serve, largest-accts-demanding-crypto-distribution, random lottery, etc). However, there is a reference in the 7th paragraph to "***one of the top 100***

*corporate creditors that will receive a claim distribution in cryptocurrency"*. To me, Celsius' wording set the expectation that the limited slots would be allocated to the biggest corporate claim accounts who wanted crypto first, and that if one of those creditors instead opted for a USD cash distribution, then his/her slot would be extended to the next person in the account-size-based queue (i.e. if a Top 100 creditor wanted USD and gave up his spot, then it would be given to the next creditor #101 and below who wanted crypto).

2. When I heard about this email via Twitter whilst on vacation on 1/24/24 and read that email for the first time, I promptly responded to Kirkland, saying that I had already informed them on numerous prior occasions of my preference to receive liquid crypto distributions instead of USD (see Exhibit B). Therefore, whether I missed their new deadline or not should be a moot point.

3. After my initial 1/24/24 email to Kirkland, I spent the next 2 weeks stuck in customer support limbo. I did not hear anything back from the Debtors or their distribution agents until 2/8/24, when Stretto contacted me and said ***"You are receiving this email because you will be receiving your Celsius Claim Distribution in US Dollars.*** *Claim distributions made in US Dollars will be distributed by issuing and mailing you a check"* despite my previously conveyed wishes (see Exhibit C).

4. I contacted Stretto to inquire about this decision, but only received a vaguely worded 2nd email from them on 2/17/24 which stated, *"Please take this as a notice that a limited number of corporate creditors have been allocated to receive their claim distribution in cryptocurrency and **you are not one of those selected**"* (see Exhibit D). It did not indicate any specific reason why I may not have been chosen. My subsequent efforts to glean more information about my specific case from either the UCC, White & Case, or CEO Chris Ferraro yielded no results.

5. Two weeks later on 3/1/24, Kirkland finally sent me a response acknowledging that *"We recorded that you would prefer a BTC distribution on November 13, 2023 and January 2, 2024 ... Specifically, because your account is considered a corporate account, you still needed to be eligible to receive a distribution as one of the largest 100 creditors. According to our records, **you were contacted as one of the largest 250 corporate accounts. However, ... your account would not have been in the top 100 corporate accounts who responded requesting a distribution in cryptocurrency**"* (see Exhibit E).

6. Based upon both my numerous direct email communications with Kirkland since May 2023 and the Plan Disclosure Statement they put forth, it was never made clear there was a non-trivial chance that I would not receive part of my recovery in the form of liquid cryptocurrency. The Debtors and Kirkland went to great lengths to assure all creditors that except in the very rarest of circumstances, they would return as much of the estate assets to unsecured creditors in the form of cryptocurrency, even if it might not match the original mix that each creditor had in their accounts. Therefore, this undisclosed and sudden change greatly shocked me (as well as similarly situated peers) to the core.

On pg 174 of Doc 3972 paragraph 8 filed on 11/9/23 The Plan Confirmation order *filing states: "Until the Deactivation Date, all distributions to ... Account Holders to whom no other Distribution Agent is eligible to make distributions* **shall be made by the Debtors or the Post-Effective Date Debtors***, as applicable."* The way I interpret this in plain English is if they can't find someone to give me my crypto, then I have a small window of opportunity, to pull my coins from the Celsius app. If this was indeed an option, nobody in the chain of communication that I had with Kirkland, Celsius, Stretto, informed me that this was an opportunity for an available exit with my liquid crypto. I am a lay person attempting to understand convoluted and complicated legal documents, so I honestly don't know if I even had an option to remove my coins by myself from the Celsius app. If so and this wasn't clearly communicated to me by the Debtors, then I will have missed my one chance to withdraw from the app without the help of a third-party Distribution Agent intermediary. It all really depends on how one interprets that small section of vague language buried in the 11/9/23 Confirmation Order.

Coinbase International does not impose any limits on its business accounts that need an agreement with them that need to limit creditor transfers to only the Top 100 Corporate creditors. In a subsequent 3/2/24 email from Kirkland, the Debtors claimed that this policy cap of 100 corporate accounts was imposed by Coinbase *due to the complexities of distributing to corporate entities"* (see Exhibit F). However, nothing on Coinbase's own website suggests that the corporate accounts are special in any way, or that they don't have the capacity to service a large number of businesses worldwide, which would force Celsius to penalize a small group of creditors, including myself. It would seem that the Debtors are shifting the blame for this limitation onto another party, but there is no way for us to tell if they are telling the truth or upheld their fiduciary duty to creditors when selecting the best Distribution Agent for the job. Thus, I must ask "Cui bono?" from this covert agreement to dollarize most corporate clients. Will the market gain from the liquid crypto recovery I was promised by the Ch 11 Reorganization Plan be returned to the estate's coffers, and then later distributed pro-rata to ALL creditors? Will these unreturned coins fill the treasury of Ionic Digital, the new Mining Co? Or will this ill-gotten crypto gain be going into someone else's pocket (e.g. the Ch 11 professionals, Litigation Trust, Plan Administrator, Coinbase, etc)? Involuntary VC forced to seed MiningCo company, now forced to seed estate.

Some corporate accounts wired Coinbase US$1K to apply for a Coinbase Prime account in the hope of getting their liquid BTC ETH back. Others had that fee waived. We are observing behaviour like we saw at Celsius: last-minute plans, haphazard, disorganized, irregular and unfair treatment of creditors. That $1000 fee to open a Prime Coinbase account is not disclosed by the debtors. Is this part of the sealed Coinbase agreement, but should have been disclosed to corporate creditors if it was part of the deal? What is going on?

## What Could the Debtor and Kirkland & Ellis Have Done Better?

- They could have been fully transparent throughout the entire process, starting from the Plan Disclosure Statement up until the final Effective Date. Instead, they filed Doc 3482 with the Court on 9/15/23, which was a motion to redact and seal their confidential Coinbase distribution agreement. This motion intentionally hid key pertinent distribution details, which were not discussed in the Plan Disclosure Statement but materially affected a small subset of the unsecured creditor base (i.e. international corporate accounts). On 10/6/23, your Honor signed Doc 3726, the order authorizing them to do so.

- Because the Debtors had finalized their Coinbase distribution agreement prior to 9/15/23, they had at least 4.5 months prior to the Effective Date during which they should have alerted me and the other affected individual creditors who were adversely impacted by their secret agreement. In typical Kirkland fashion, they procrastinated until the very last second (i.e. < 2 weeks before the 1/31/24 Effective Date) to spring yet another last-minute surprise on unsophisticated Celsius creditor victims. I have a Master's degree. God help those who can't speak, read or write in English!

- When they were in discussions to make Coinbase their international Distribution Agent and it became known that Coinbase would only accept a total of 100 corporate accounts, the Debtors should have negotiated for Coinbase to accept more (if not all) corporate customers. Once it became clear that Coinbase would not service the majority of Celsius corporate accounts, then the Debtors had an obligation to choose an alternate and more capable distribution agent who could meet the needs of that particular subset. There is no good reason why they couldn't have used Coinbase to handle international personal accounts, while finding a different distribution agent who would be willing to deal with international corporate accounts. The Debtors did not make a good faith effort to ensure all unsecured creditors, including myself, were treated fairly and equitably.

- If the Debtors were unable to find ANY alternative Distribution Agent who could meet the needs of the corporate account holders, then they should have offered an off-ramp via the Celsius app/website, just as they did for the small number of Custody account holders. While there were some withdrawal hiccups for Custody early in the bankruptcy process, those issues should have been remedied by the Celsius support team who were paid in the intervening months before the Plan solicitation vote. Although I don't know the exact number of Celsius corporate accounts, I would expect that it is much fewer in number than Custody personal account holders. Therefore, they should have offered liquid crypto withdrawals for corporate accounts as an option through the Celsius app, rather than force corporate creditors to accept USD via a check if they did not qualify for the 100 slots.

### What Would I Like the Honorable Judge Glenn To Consider?

- Request the Debtors provide disclosure and transparency about the process and the basis they used to choose the specific corporate creditors to fill the 100 slots
- Supply the total number of Corporate Creditors affected
- Produce the number of corporate creditors who were contacted, when those emails were sent and what the total number who replied by the 1/23/24 deadline was.
- Was the only communication to corporate creditors via email or did the creditors receive snail mail also?
- How many of the creditors who replied by the 1/23/24 deadline wanted liquid crypto?
- Where did I personally fall in meeting eligibility requirements (e.g. I was #121 in line to get one of the 100 slots)?
- Creditors are typically not legal experts, they do not have the time to be reading multiple iterations of documents. While I did keep up with the case, the ongoing changes were difficult to keep up with, which is unrealistic and unfair to expect the average person to keep up with each change. When communicating information to creditors, provide timely, detailed and concise information in layman's terms.
- If Coinbase isn't able to on-board one of the 100 chosen accounts, is there a process to offer that to the next person in line? The process is opaque.
- The only way we know what's going on is through the connections we've made in the past 2 years. I'm in touch with numerous corporate account holders in Australia and internationally:
  "This is such an arbitrary process without any transparency. I probably just threw away another $1K and still won't get my crypto. Why is that even limited to 100 accounts? Outrageous!" Dr C
  "There shouldn't be winners and losers." Top 100.
  "I just want everyone to be treated fairly."
  "Fully agree that all claims deserve in kind distribution and not USD. It's just inconceivable that this was even a consideration. Why even do this?"
  "Yes absolutely I totally agree."
  "If someone was good enough to solicit BTC deposits from, surely they're good enough to pay out BTC withdrawals to. Seeing Creditors abandoned and at risk of receiving a further haircut through a USD distribution." Cam Crews

I implore your Honor to consider not just my own personal frustration with the miscommunication and further offence after everything that has happened throughout this bankruptcy. I feel like I am being robbed and betrayed all over again. It feels like I have been duped again because of some deceptive phrasing in several legal documents, even though I trusted the process and the advice of the professionals who I had been emailing over the last several months. At the very least, I hope that everyone impacted by this will be given some transparency and explanations to give us some relief.

I appreciate your time and consideration.

Sincerely,

Frances Jones

6

# Exhibit A

[Celsius Network] Re: IMPORTANT: Celsius – Option for Corporate Creditors to Elect to Potentially Receive Distribution in Cryptocurrency  

 **Celsius Network**
From: support@celsius.network
To:



••• Please type your reply above this line •••

Your request (#1396159) has been updated. To add additional comments, reply to this email.

 **Customer Care and Loans Expert** (Celsius Network)

Dear Jones Asset Protection Trust,

*This communication provides information about the distribution of cryptocurrency to you on account of Claims you may hold in the Celsius Chapter 11 proceedings. Please read the below in its entirety and timely provide Celsius with the information requested to complete the distribution of cryptocurrency to you on account of any such Claims.*

You are receiving this communication because you have a claim (a "Claim") in the Chapter 11 proceedings of Celsius Network LLC and its debtor affiliates ("Celsius" or the "Debtors"), and you are one of the largest "corporate" creditors in this case.

Pursuant to the agreements the Debtors have with their distribution partners Coinbase and PayPal, the Debtors can only make distributions to 100 "corporate" creditors. A "corporate" creditor is any entity that is not an individual person (for example, a corporation, LLC, partnership, trust or similar entity). Whether a creditor qualifies as a "corporate" or "individual" creditor depends on Coinbase's policies and protocols.

As you may be aware, distributions pursuant to Celsius' modified Chapter 11 Plan of Reorganization [Docket No. 3577] (the "Plan") will commence on or around the Plan effective date (the "Effective Date"). **You are receiving this notification because you are one of the corporate creditors who has the largest claims against Celsius and, as such, you may have the opportunity to receive a cryptocurrency claim distribution through Coinbase.**

Celsius is reaching out to the corporate creditors with the largest claims to determine how to allocate these 100 slots. In order to be eligible to receive cryptocurrency, a corporate creditor must both:

- Affirmatively request to receive a distribution in cryptocurrency as described below by no later than **January 23, 2024**; AND

- If you have any Withdrawal Preference Exposure, elect to settle such Withdrawal Preference Exposure by no later than January 25, 2024 pursuant to the separate instructions you have received, and complete the payment for the settlement of the Withdrawal Preference Exposure by no later than January 31, 2024.

Shortly after January 31, 2024, if you are selected to be one of the 100 corporate creditors that will receive a claim distribution in cryptocurrency, you will receive a communication with instructions for opening a Coinbase Prime account. If you are not selected, you will receive a communication confirming that you will receive your distribution in US Dollars, and you will receive specific instruction at a later date on how those funds distributed in US Dollars will be made available.

Please note that if you open a Coinbase Prime account **without** receiving notice that you have been selected to be one of the top 100 corporate creditors who will receive cryptocurrency, this will not have any effect on whether you will be allocated one of the 100 slots.

We are asking for your preference to ensure that each corporate creditor who is using up these limited 100 slots for cryptocurrency distributions actually wants to receive cryptocurrency. If you are indifferent between cash or cryptocurrency, please select cash so that corporate creditors who prefer cryptocurrency can use your slot.

Please review this message in its entirety and inform Celsius by email at CelsiusCreditorQuestions@kirkland.com of your preference by **January 23, 2024**, and we will be in touch with further information and instructions. If you do not contact us to indicate your preference to receive your distribution in cryptocurrency via Coinbase, your Claim distribution will be made in US Dollars, and specific instructions regarding your distribution will be provided to you at a later date.

If you have further questions about any of the above, you may contact CelsiusCreditorQuestions@kirkland.com.

Celsius

Best regards!

## Exhibit B

Re: [Celsius Network] Re: IMPORTANT: Celsius ☆
– Option for Corporate Creditors to Elect to
Potentially Receive Distribution in
Cryptocurrency



From frances ██████████ com.au
To ████████ & 2 more
24 Jan at 8:15 pm ⌄

Dear Kirkland
I am distressed because I contacted Kirkland numerous
times in the past 18 months to say that it's is extremely
important to me that I am given back my claim in
Bitcoin only.
I did not receive this email until now as I am on
holidays overseas.
I do not want to receive my claim in USD.
I am happy to open a Coinbase Prime account.

I am Australian so I am required to open a Coinbase
account for each of my family's accounts.
I have waited 18 months to have my BTC returned.

Please always use my personal email, this one in
important communication to me. I am the sole director
of my family's trust account which is called the Jones
Asset Protection Trust.

Kind regards
Frances Jones

## Exhibit C

Action Required: Prepare for your Celsius Claim Distribution in US Dollars




From: noreply@cases-cr.stretto-services.com
To:

Dear Jones Asset Protection Trust,

You are receiving this email because **you will be receiving your Celsius Claim Distribution in US Dollars.** Claim distributions made in US Dollars will be distributed by issuing and mailing you a check.

**Action required: Prepare to receive your claim distribution**

You will receive a notice in the Celsius app to verify your personal information. This information will be used for your claim distribution. **If your name and address are not up to date, please update your information and re-submit your Government ID.** If the information in your account is already up to date and accurate, no further action is required of you at this time. Please take action to ensure your personal information is up to date and accurate in your Celsius Account **no later than Tuesday, February 13, 2024.**

**If you have questions or need further support**

We strongly suggest you refer to the Distributions FAQ if you have questions or need assistance with this process before contacting support. We are currently receiving a large number of inquiries, and we appreciate your patience while we work through each creditor support inquiry.

The latest updates on these Chapter 11 cases are available on cases.stretto.com/celsius or through the Celsius X account (formerly Twitter) @CelsiusNetwork.

**Reminder: The Celsius mobile & web apps are shutting down**

As previously communicated and stated in the Plan, the Celsius platform will not be facilitating your distribution. The Celsius mobile and web apps will no longer be available beginning on or around February 28th, 2024.

As such, we strongly encourage you to review and take personal records of information you may find useful in advance of February 28, 2024, as you will not be able to access the Celsius mobile or web apps after this date.

**Stay Alert**

Remain vigilant for phishing attempts. Celsius, the Official Committee of Unsecured Creditors, or their respective advisors will never contact you directly by phone, text message, or social media to request account or personal information absent an order or on-the-record instruction by the Court.

Celsius

## **Exhibit D**


**no-reply@cases-cr.stretto-services.com**
From: no-reply@cases-cr.stretto-services.com
To:



Dear JONES ASSET PROTECTION TRUST,

You are receiving this email as a follow up notice to our previous email communication about electing to receive your claim distribution in cryptocurrency. Please take this as a notice that a limited number of corporate creditors have been allocated to receive their claim distribution in cryptocurrency and **you are not one of those selected.**

**You will receive a separate email with instructions to receive your distribution via US dollars.**

Stretto

10

## Exhibit E

 CelsiusDistributions

RE: Re: I want my BTC returned not USD 

From CelsiusDistributions@kirkland.com
To Frances Jones & 2 more
1 Mar at 3:06 am ∨

Hello,

We recorded that you would prefer a BTC distribution on November 13, 2023 and January 2, 2024, and noted at the time that such request was not a guarantee that your request could be accommodated. Specifically, because your account is considered a corporate account, you still needed to be eligible to receive a distribution as one of the largest 100 creditors.

According to our records, you were contacted as one of the largest 250 corporate accounts. However, even if you had responded by the January 23, 2024 deadline, your account would not have been in the top 100 corporate accounts who responded requesting a distribution in cryptocurrency. As Aaron previously stated, Coinbase only agreed to make distributions to 100 corporate accounts.

Best,

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
F +1 312 862 2200

11

## Exhibit F

 CelsiusDistributions

RE: Re: I want my BTC returned not USD   

From CelsiusDistributions@kirkland.com
To Frances Jones & 1 more
Yesterday at 11:09 am ∨

Hello,

As we have stated repeatedly, your account was not among
the top 100 corporate creditors who responded to our email
and elected to receive cryptocurrency on account of their
claims. As such, you will receive USD on account of your
claims. While you may find this outcome to be unfortunate
or even upsetting, Coinbase only agreed to make
distributions to 100 corporate creditors due to the
complexities of making distributions to corporate entities.

Further, we will not divulge information regarding the
creditors who were selected to receive their distribution in
cryptocurrency, just like we would not divulge information
regarding your distribution to other creditors. We hope you
can understand this.

Sincerely,

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
F +1 312 862 2200

12

## Exhibit G, H, I, J, K – Prior Communications



CelsiusDistributions

RE: Celsius Distributions ☆

From CelsiusDistributions@kirkland.com
To Frances Jones & 1 more
3 Jan at 2:20 am ∨

Dear Ms. Jones,

We have confirmed your preference is still to receive a
distribution in BTC.

Best,

KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
F +1 312 862 2200

**From:** Frances Jones
<

**Sent:** Monday, January 1, 2024 9:30 AM
**To:** CelsiusDistributions
<CelsiusDistributions@kirkland.com>;

**Subject:** Fw: Celsius Distributions

Hello
Please see my emails below. I have requested that we

13



‹   **RE: Jones Asset Protection Trust**   AΑ

**Andrew Rudolph** | Associate
White & Case LLP

**From:** Frances Jones <
**Date:** Tuesday, May 30, 2023 at 2:05 PM
**To:** Jones < Celsius
<hello@celsius.network>, Colodny, Aaron
<aaron.colodny@whitecase.com>
**Subject:** Jones Asset Protection Trust

Hello,

My family has an account with Celsius and we have been waiting for
a year to get our life's savings back.

My family's account is called the Jones Asset Protection Trust.

I saw the attached post and would like to have our crypto returned in
kind - in Bitcoin.

Part of the reason why I didn't withdraw my coins before the freeze
is because I was assigned a Corporate & VIP Account Manager
several months before the freeze, which was obviously a way to
keep our funds on the platform.

How much did customers have to have, to be assigned a Corporate
& VIP Account Manager?
Even on 10th June I got 2 emails from mine.

Kind regards,
Frances Jones

14

**From:** Frances Jones

**Sent:** Friday, November 10, 2023 11:19 PM
**To:** CelsiusDistributions
<CelsiusDistributions@kirkland.com>;

**Subject:** Celsius Distributions


Hello

I wrote to you 3 months ago.

Please see the email below.


I'd like as much Bitcoin as possible in our family trust account distribution from Celsius, for tax purposes. Our account is valued over $100,000.


I've lost a lot of money which was for my family to buy a place to live in so I'd appreciate a response asap.


Kind regards

Frances Jones

On Monday, November 13, 2023, 5:15 pm,
CelsiusDistributions <CelsiusDistributions@kirkland.com>
wrote:

Dear Frances:

Thank you for your email regarding your preferred
distribution composition under the plan. Your preference
to receive BTC has been noted.

We are in the process of gathering information to
determine our ability to accommodate each individual
creditor's accommodation requests regarding the
composition of their distributions under the plan. Once
we have a better understanding of individual creditors'
distribution preferences in the aggregate, we will follow up
with more information directly or by filing a notice on the
docket.

Sincerely,

On Sunday, August 13, 2023, 1:49 pm,
wrote:

Hello,
I'm the sole director of my family trust, Jones Asset Protection
Trust.
We have an account with Celsius called Jones Asset Protection
Trust.

I saw that "Holders of Claims who are projected to receive more
than
$100,000 in distributions in Liquid Cryptocurrency may contact
the Debtors to discuss individualized accommodations."

That is why I'm contacting you, to see what our options are.

Kind regards,
Frances Jones
Sole Director of Jones Asset Protection Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | ) Chapter 11 Case No. |
|  | ) 22-10964 (MG)(Jointly |
|  | ) Administered) |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) |
|  | ) |
| Debtors. | ) |
|  | ) |

**JOINDER OF JONES ASSET PROTECTION TRUST IN SUPPORT OF**
**MOTION SEEKING ENTRY OF AN ORDER**
**(I) APPROVING FURTHER DISTRIBUTION UNDER PLAN OF REORGANIZATION**
**FOR CORPORATE CREDITORS AND (II) GRANTING RELATED RELIEF**

TO:     THE HONORABLE MARTIN GLENN
        UNITED STATES BANKRUPTCY JUDGE

Frances Jones, on behalf of the Jones Asset Protection Trust hereby join the

Motion Seeking Entry of An Order (I) Approving Further Distributions Under Plan of

Reorganization For certain Corporate Creditors, and (II) Granting Related Relief [ECF No. 4911]

(the "Motion").  In support of their Joinder, which states as follows:

**STATEMENT**

1.  On January 31, 2024, the Post-Effective Date Debtors emerged from chapter 11 and

commenced distributions under the Modified Joint Chapter 11 Plan of Reorganization

of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo

---

[1] The Post-Effective Date Debtors in these chapter 11 cases, along with the last four digits of each Post-Effective Date Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Post-Effective Date Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Transaction), dated January 29, 2024 (Docket #4289) (hereinafter referred to as the "Plan"). The language of the Plan provides that distributions were to be made as soon as possible after January 31. However, distributions were not made timely to the Jones Asset Protection Trust as no distribution has been made at all. It is now 126 days after January 31, the date of Debtors' emergence. The Jones Asset Protection Trust has claim no. 3.1.280169. Using a similar calculation to that used by the Faller Creditors, the Jones Asset Protection Trust has been damaged in the sum of $125,084.19 (calculations shown in the table below). By this Joinder, the Jones Asset Protection Trust seeks compensation in the sum of $125,084.19 from the bankruptcy estate to be made whole under the Plan.

| Claimant | Claim Value | Joinder Filed Date | BTC Price on Joinder Filed Date | ETH Price on Joinder Filed Date | Fiat Value of BTC using Joinder Filed Date Prices | Fiat Value of ETH using Joinder Filed Date Prices | Total | Total With Interest [1] | Distribution Received | Shortfall |
|---|---|---|---|---|---|---|---|---|---|---|
| Jones Asset Protection Trust | $132,712.83 | 6/5/2024 | $71,694.00 | $3,838.00 | $67,530.50 | $54,146.94 | $121,677.44 | $125,084.19 | $0.00 | $125,084.19 |
| 1.) Interest based on www.irs.gov/payments/quarterly-interest-rates | | | | | | | | | | |

I have written several letters to Judge Glenn about my family's situation:

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903042480000000093.pdf

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174904292480000000019.pdf

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903192480000000071.pdf

https://cases.stretto.com/public/x191/11749/PLEADINGS/1174903182480000000059.pdf

This case has created significant stress on my family for the past 2 years. We are yet to receive one cent of our claim back.

June 5th, 2024

Respectfully submitted,


Frances Jones,
Sole Director,
Jones Asset Protection Trust

The Honorable Martin Glenn,

Chief United States Bankruptcy Judge,

in the United States Bankruptcy Court for the Southern District of New York.

One Bowling Green New York, NY 10004-1408

March 2nd, 2024


Dear Judge Glenn,

I am the sole director of the Jones Asset Protection Trust, a corporate account which was established to safeguard my family's assets. My two young sons and I lived in an apartment for years (until we were doxxed by Celsius), while I saved up for a house down payment. However, because I was earning a miniscule return on my traditional savings account, my sons and I along with many others were enticed to move all our cryptocurrency into Celsius. Alex Mashinsky's false promises of an account that he claimed was "Safe as a Bank," offering high interest rates on savings and low interest rates on loans, was very appealing to me given that I am a single mother of two sons, living on a teacher's salary.

With the Court-approved distribution of liquid crypto and MiningCo stock, I am already suffering a realized loss of -$30,743.79, when compared to my original 7/13/22 Petition Date $113,028.63 net claim value (which includes a $20,016.53 loan offset applied against my loan collateral). This is due primarily to the outright fraud and theft by Alex Mashinsky, and secondarily to the exorbitant cost of an unnecessarily lengthy Chapter 11 bankruptcy case.

To add further insult to injury, without ample warning or notification, the Debtors and their distribution agent Coinbase arbitrarily chose to cut me a USD check for my trust's corporate claim instead of distributing my recovery back in liquid crypto form. I put 5.5 BTC into our corporate account. Consequently, we will now be missing out on all the subsequent market appreciation of those coins which I was entitled to receive under the confirmed Chapter 11 Reorganization Plan. In the 1.5 months since the 1/16/24 Effective Date pricing snapshot, the crypto *I should have received* has appreciated ~30% in market value, or ~$26,500 USD. To put this in proper context, this unrealized gain would have almost been enough to completely "fill the hole" and make me 100% whole, relative to the realized loss on my Petition Date USD claim value mentioned above. As a result of this last-minute and post-Confirmation modification to the Plan distribution agreement, I and thousands of other corporate clients are being treated unfairly and inequitably compared to other unsecured creditors within the same classes (Class 2 Retail Borrower and Class 5 Earn) who held personal accounts instead. I am not an attorney and after losing most of my life's savings to the Celsius bankruptcy, I currently cannot afford to be represented by counsel; however, it is my understanding that unequal intra-class treatment is expressly forbidden under US Bankruptcy law.

On pg 4 of Doc 4298 filed on 1/31/24, the Debtors stated that "*on or around January 19, 2024, the Debtors notified the corporate creditors[5] with the largest Claims against the Debtors that, pursuant to the agreement the Debtors have with Coinbase, **the Debtors can only make distributions in Liquid Cryptocurrency to 100 corporate creditors***. *Eligible corporate creditors interested in receiving Liquid Cryptocurrency as part of their distribution on account of their Claims were required to affirmatively request to receive a distribution in Liquid Cryptocurrency **by the stated deadline** ... If a corporate creditor is not selected, or did not receive the initial notice, such creditor will also receive a communication confirming that it will receive its distribution in Cash".*  In footnote #5, they defined *"**Corporate creditor means any entity that is not an individual** (for example, a corporation, **LLC**, partnership, **trust**, or similar entity) as determined pursuant to Coinbase's policies and protocols."*  This docket filing failed to disclose to the Court the actual stated deadline they gave to these affected creditors, which was a very short and hard deadline of 1/23/24.  The Debtors did not send me an email informing me that I was an affected party until Saturday 1/20/24, a day afterwards from when they claim to have sent out this email-only notification.  This late notice gave me even less time to respond (i.e. only 2 business days) when compared to the 3 business days afforded to other Celsius corporate customers. Sydney Australia is 16 hours ahead of New York, NY, USA. These emails to corporate accounts were sent on or around late Friday afternoon 1/19 and the hard deadline was Tuesday 1/23, New York time. So realistically a businessperson had Monday and Tuesday to read and respond. 2 days.

At that time, I was on a vacation in Italy pre-scheduled long in advance of this surprise notification from the Debtors.  As such, I did not check my corporate email account and see their change in distribution policy until 1/24/24, the day after their self-imposed and unnecessarily tight deadline.   Here is a timeline of the events that transpired:

1. I received an email from support@celsius.network sent on 1/20/24 (see Exhibit A) stating the following:
   i) 2nd paragraph: "*Pursuant to the agreements the Debtors have with their distribution partners Coinbase and PayPal, the Debtors can only make distributions to 100 'corporate' creditors.*"
   ii) 4th paragraph: "***You are receiving this notification because you are one of the corporate creditors who has the largest claims against Celsius and, as such, you may have the opportunity to receive a cryptocurrency claim distribution through Coinbase***".
   iii) 5th paragraph: "*Celsius is reaching out to the corporate creditors with the largest claims to determine how to allocate these 100 slots.  In order to be eligible to receive cryptocurrency, a corporate creditor must ... Affirmatively request to receive a distribution in cryptocurrency ... by no later than January 23, 2024*".
   iv) There was no indication how many corporate customers had received this email or how the 100 limited slots would be allocated (e.g. first-come-first-serve, largest-accts-demanding-crypto-distribution, random lottery, etc). However, there is a reference in the 7th paragraph to "***one of the top 100***

*corporate creditors that will receive a claim distribution in cryptocurrency".*
To me, Celsius' wording set the expectation that the limited slots would be
allocated to the biggest corporate claim accounts who wanted crypto first, and
that if one of those creditors instead opted for a USD cash distribution, then
his/her slot would be extended to the next person in the account-size-based
queue (i.e. if a Top 100 creditor wanted USD and gave up his spot, then it
would be given to the next creditor #101 and below who wanted crypto).

2.  When I heard about this email via Twitter whilst on vacation on 1/24/24 and read that
    email for the first time, I promptly responded to Kirkland, saying that I had already
    informed them on numerous prior occasions of my preference to receive liquid crypto
    distributions instead of USD (see Exhibit B).  Therefore, whether I missed their new
    deadline or not should be a moot point.

3.  After my initial 1/24/24 email to Kirkland, I spent the next 2 weeks stuck in customer
    support limbo.  I did not hear anything back from the Debtors or their distribution
    agents until 2/8/24, when Stretto contacted me and said *"**You are receiving this email
    because you will be receiving your Celsius Claim Distribution in US Dollars.** Claim
    distributions made in US Dollars will be distributed by issuing and mailing you a
    check"* despite my previously conveyed wishes (see Exhibit C).

4.  I contacted Stretto to inquire about this decision, but only received a vaguely worded
    2nd email from them on 2/17/24 which stated, *"Please take this as a notice that a
    limited number of corporate creditors have been allocated to receive their claim
    distribution in cryptocurrency and **you are not one of those selected**"* (see Exhibit D).
    It did not indicate any specific reason why I may not have been chosen.  My
    subsequent efforts to glean more information about my specific case from either the
    UCC, White & Case, or CEO Chris Ferraro yielded no results.

5.  Two weeks later on 3/1/24, Kirkland finally sent me a response acknowledging that
    *"We recorded that you would prefer a BTC distribution on November 13, 2023 and
    January 2, 2024 ... Specifically, because your account is considered a corporate
    account, you still needed to be eligible to receive a distribution as one of the largest
    100 creditors.  According to our records, **you were contacted as one of the largest
    250 corporate accounts.  However, ... your account would not have been in the top
    100 corporate accounts who responded requesting a distribution in cryptocurrency**"*
    (see Exhibit E).

6.  Based upon both my numerous direct email communications with Kirkland since May
    2023 and the Plan Disclosure Statement they put forth, it was never made clear there
    was a non-trivial chance that I would not receive part of my recovery in the form of
    liquid cryptocurrency.  The Debtors and Kirkland went to great lengths to assure all
    creditors that except in the very rarest of circumstances, they would return as much of
    the estate assets to unsecured creditors in the form of cryptocurrency, even if it might
    not match the original mix that each creditor had in their accounts.  Therefore, this
    undisclosed and sudden change greatly shocked me (as well as similarly situated
    peers) to the core.

On pg 174 of Doc 3972 paragraph 8 filed on 11/9/23 The Plan Confirmation order f*iling states: "Until the Deactivation Date, all distributions to ... Account Holders to whom no other Distribution Agent is eligible to make distributions **shall be made by the Debtors or the Post-Effective Date Debtors**, as applicable."* The way I interpret this in plain English is if they can't find someone to give me my crypto, then I have a small window of opportunity, to pull my coins from the Celsius app. If this was indeed an option, nobody in the chain of communication that I had with Kirkland, Celsius, Stretto, informed me that this was an opportunity for an available exit with my liquid crypto. I am a lay person attempting to understand convoluted and complicated legal documents, so I honestly don't know if I even had an option to remove my coins by myself from the Celsius app. If so and this wasn't clearly communicated to me by the Debtors, then I will have missed my one chance to withdraw from the app without the help of a third-party Distribution Agent intermediary. It all really depends on how one interprets that small section of vague language buried in the 11/9/23 Confirmation Order.

Coinbase International does not impose any limits on its business accounts that need an agreement with them that need to limit creditor transfers to only the Top 100 Corporate creditors. In a subsequent 3/2/24 email from Kirkland, the Debtors claimed that this policy cap of 100 corporate accounts was imposed by Coinbase *due to the complexities of distributing to corporate entities"* (see Exhibit F). However, nothing on Coinbase's own website suggests that the corporate accounts are special in any way, or that they don't have the capacity to service a large number of businesses worldwide, which would force Celsius to penalize a small group of creditors, including myself. It would seem that the Debtors are shifting the blame for this limitation onto another party, but there is no way for us to tell if they are telling the truth or uphold their fiduciary duty to creditors when selecting the best Distribution Agent for the job. Thus, I must ask "Cui bono?" from this covert agreement to dollarize most corporate clients. Will the market gain from the liquid crypto recovery I was promised by the Ch 11 Reorganization Plan be returned to the estate's coffers, and then later distributed pro-rata to ALL creditors? Will these unreturned coins fill the treasury of Ionic Digital, the new Mining Co? Or will this ill-gotten crypto gain be going into someone else's pocket (e.g. the Ch 11 professionals, Litigation Trust, Plan Administrator, Coinbase, etc)? Involuntary VC forced to seed MiningCo company, now forced to seed estate.

Some corporate accounts wired Coinbase US$1K to apply for a Coinbase Prime account in the hope of getting their liquid BTC ETH back. Others had that fee waived. We are observing behaviour like we saw at Celsius: last-minute plans, haphazard, disorganized, irregular and unfair treatment of creditors. That $1000 fee to open a Prime Coinbase account is not disclosed by the debtors. Is this part of the sealed Coinbase agreement, but should have been disclosed to corporate creditors if it was part of the deal? What is going on?

### **What Could the Debtor and Kirkland & Ellis Have Done Better?**

- They could have been fully transparent throughout the entire process, starting from the Plan Disclosure Statement up until the final Effective Date. Instead, they filed Doc 3482 with the Court on 9/15/23, which was a motion to redact and seal their confidential Coinbase distribution agreement. This motion intentionally hid key pertinent distribution details, which were not discussed in the Plan Disclosure Statement but materially affected a small subset of the unsecured creditor base (i.e. international corporate accounts). On 10/6/23, your Honor signed Doc 3726, the order authorizing them to do so.

- Because the Debtors had finalized their Coinbase distribution agreement prior to 9/15/23, they had at least 4.5 months prior to the Effective Date during which they should have alerted me and the other affected individual creditors who were adversely impacted by their secret agreement. In typical Kirkland fashion, they procrastinated until the very last second (i.e. < 2 weeks before the 1/31/24 Effective Date) to spring yet another last-minute surprise on unsophisticated Celsius creditor victims. I have a Master's degree. God help those who can't speak, read or write in English!

- When they were in discussions to make Coinbase their international Distribution Agent and it became known that Coinbase would only accept a total of 100 corporate accounts, the Debtors should have negotiated for Coinbase to accept more (if not all) corporate customers. Once it became clear that Coinbase would not service the majority of Celsius corporate accounts, then the Debtors had an obligation to choose an alternate and more capable distribution agent who could meet the needs of that particular subset. There is no good reason why they couldn't have used Coinbase to handle international personal accounts, while finding a different distribution agent who would be willing to deal with international corporate accounts. The Debtors did not make a good faith effort to ensure all unsecured creditors, including myself, were treated fairly and equitably.

- If the Debtors were unable to find ANY alternative Distribution Agent who could meet the needs of the corporate account holders, then they should have offered an off-ramp via the Celsius app/website, just as they did for the small number of Custody account holders. While there were some withdrawal hiccups for Custody early in the bankruptcy process, those issues should have been remedied by the Celsius support team who were paid in the intervening months before the Plan solicitation vote. Although I don't know the exact number of Celsius corporate accounts, I would expect that it is much fewer in number than Custody personal account holders. Therefore, they should have offered liquid crypto withdrawals for corporate accounts as an option through the Celsius app, rather than force corporate creditors to accept USD via a check if they did not qualify for the 100 slots.

## What Would I Like the Honorable Judge Glenn To Consider?

- Request the Debtors provide disclosure and transparency about the process and the basis they used to choose the specific corporate creditors to fill the 100 slots
- Supply the total number of Corporate Creditors affected
- Produce the number of corporate creditors who were contacted, when those emails were sent and what the total number who replied by the 1/23/24 deadline was.
- Was the only communication to corporate creditors via email or did the creditors receive snail mail also?
- How many of the creditors who replied by the 1/23/24 deadline wanted liquid crypto?
- Where did I personally fall in meeting eligibility requirements (e.g. I was #121 in line to get one of the 100 slots)?
- Creditors are typically not legal experts, they do not have the time to be reading multiple iterations of documents. While I did keep up with the case, the ongoing changes were difficult to keep up with, which is unrealistic and unfair to expect the average person to keep up with each change. When communicating information to creditors, provide timely, detailed and concise information in layman's terms.
- If Coinbase isn't able to on-board one of the 100 chosen accounts, is there a process to offer that to the next person in line? The process is opaque.
- The only way we know what's going on is through the connections we've made in the past 2 years. I'm in touch with numerous corporate account holders in Australia and internationally:
  "This is such an arbitrary process without any transparency. I probably just threw away another $1K and still won't get my crypto. Why is that even limited to 100 accounts? Outrageous!" Dr C
  "There shouldn't be winners and losers." Top 100.
  "I just want everyone to be treated fairly."
  "Fully agree that all claims deserve in kind distribution and not USD. It's just inconceivable that this was even a consideration. Why even do this?"
  "Yes absolutely I totally agree."
  "If someone was good enough to solicit BTC deposits from, surely they're good enough to pay out BTC withdrawals to. Seeing Creditors abandoned and at risk of receiving a further haircut through a USD distribution." Cam Crews

I implore your Honor to consider not just my own personal frustration with the miscommunication and further offence after everything that has happened throughout this bankruptcy. I feel like I am being robbed and betrayed all over again. It feels like I have been duped again because of some deceptive phrasing in several legal documents, even though I trusted the process and the advice of the professionals who I had been emailing over the last several months. At the very least, I hope that everyone impacted by this will be given some transparency and explanations to give us some relief.

I appreciate your time and consideration.

Sincerely,

Frances Jones

# Exhibit A

[Celsius Network] Re: IMPORTANT: Celsius – Option for Corporate Creditors to Elect to Potentially Receive Distribution in Cryptocurrency   

 **Celsius Network**
From: support@celsius.network
To:

🖶

▶▶ Please type your reply above this line ◀◀

Your request (#1396159) has been updated. To add additional comments, reply to this email.

 **Customer Care and Loans Expert** (Celsius Network)

Dear Jones Asset Protection Trust,

*This communication provides information about the distribution of cryptocurrency to you on account of Claims you may hold in the Celsius Chapter 11 proceedings. Please read the below in its entirety and timely provide Celsius with the information requested to complete the distribution of cryptocurrency to you on account of any such Claims.*

You are receiving this communication because you have a claim (a "Claim") in the Chapter 11 proceedings of Celsius Network LLC and its debtor affiliates ("Celsius" or the "Debtors"), and you are one of the largest "corporate" creditors in this case.

Pursuant to the agreements the Debtors have with their distribution partners Coinbase and PayPal, the Debtors can only make distributions to 100 "corporate" creditors. A "corporate" creditor is any entity that is not an individual person (for example, a corporation, LLC, partnership, trust or similar entity). Whether a creditor qualifies as a "corporate" or "individual" creditor depends on Coinbase's policies and protocols.

As you may be aware, distributions pursuant to Celsius' modified Chapter 11 Plan of Reorganization [Docket No. 3577] (the "Plan") will commence on or around the Plan effective date (the "Effective Date"). **You are receiving this notification because you are one of the corporate creditors who has the largest claims against Celsius and, as such, you may have the opportunity to receive a cryptocurrency claim distribution through Coinbase.**

Celsius is reaching out to the corporate creditors with the largest claims to determine how to allocate these 100 slots. In order to be eligible to receive cryptocurrency, a corporate creditor must both:

- Affirmatively request to receive a distribution in cryptocurrency as described below by no later than **January 23, 2024**; AND

- If you have any Withdrawal Preference Exposure, elect to settle such Withdrawal Preference Exposure by no later than January 25, 2024 pursuant to the separate instructions you have received, and complete the payment for the settlement of the Withdrawal Preference Exposure by no later than January 31, 2024.

Shortly after January 31, 2024, if you are selected to be one of the 100 corporate creditors that will receive a claim distribution in cryptocurrency, you will receive a communication with instructions for opening a Coinbase Prime account. If you are not selected, you will receive a communication confirming that you will receive your distribution in US Dollars, and you will receive specific instruction at a later date on how those funds distributed in US Dollars will be made available.

Please note that if you open a Coinbase Prime account **without** receiving notice that you have been selected to be one of the top 100 corporate creditors who will receive cryptocurrency, this will not have any effect on whether you will be allocated one of the 100 slots.

We are asking for your preference to ensure that each corporate creditor who is using up these limited 100 slots for cryptocurrency distributions actually wants to receive cryptocurrency. If you are indifferent between cash or cryptocurrency, please select cash so that corporate creditors who prefer cryptocurrency can use your slot.

Please review this message in its entirety and inform Celsius by email at CelsiusCreditorQuestions@kirkland.com of your preference by **January 23, 2024**, and we will be in touch with further information and instructions. If you do not contact us to indicate your preference to receive your distribution in cryptocurrency via Coinbase, your Claim distribution will be made in US Dollars, and specific instructions regarding your distribution will be provided to you at a later date.

If you have further questions about any of the above, you may contact CelsiusCreditorQuestions@kirkland.com.

Celsius

Best regards!

7

## Exhibit B

Re: [Celsius Network] Re: IMPORTANT: Celsius  ☆
– Option for Corporate Creditors to Elect to
Potentially Receive Distribution in
Cryptocurrency

From frances ███████████ com.au
To █████████ & 2 more
24 Jan at 8:15 pm ⌄


Dear Kirkland
I am distressed because I contacted Kirkland numerous
times in the past 18 months to say that it's is extremely
important to me that I am given back my claim in
Bitcoin only.
I did not receive this email until now as I am on
holidays overseas.
I do not want to receive my claim in USD.
I am happy to open a Coinbase Prime account.

I am Australian so I am required to open a Coinbase
account for each of my family's accounts.
I have waited 18 months to have my BTC returned.

Please always use my personal email, this one in
important communication to me. I am the sole director
of my family's trust account which is called the Jones
Asset Protection Trust.

Kind regards
Frances Jones

# Exhibit C

Action Required: Prepare for your Celsius Claim Distribution in US Dollars





From: noreply@cases-cr.stretto-services.com
To:

Dear Jones Asset Protection Trust,

You are receiving this email because **you will be receiving your Celsius Claim Distribution in US Dollars.** Claim distributions made in US Dollars will be distributed by issuing and mailing you a check.

**Action required: Prepare to receive your claim distribution**

You will receive a notice in the Celsius app to verify your personal information. This information will be used for your claim distribution. **If your name and address are not up to date, please update your information and re-submit your Government ID.** If the information in your account is already up to date and accurate, no further action is required of you at this time. Please take action to ensure your personal information is up to date and accurate in your Celsius Account **no later than Tuesday, February 13, 2024.**

**If you have questions or need further support**

We strongly suggest you refer to the Distributions FAQ if you have questions or need assistance with this process before contacting support. We are currently receiving a large number of inquiries, and we appreciate your patience while we work through each creditor support inquiry.

The latest updates on these Chapter 11 cases are available on cases.stretto.com/celsius or through the Celsius X account (formerly Twitter) @CelsiusNetwork.

**Reminder: The Celsius mobile & web apps are shutting down**

As previously communicated and stated in the Plan, the Celsius platform will not be facilitating your distribution. The Celsius mobile and web apps will no longer be available beginning on or around February 28th, 2024.

As such, we strongly encourage you to review and take personal records of information you may find useful in advance of February 28, 2024, as you will not be able to access the Celsius mobile or web apps after this date.

**Stay Alert**

Remain vigilant for phishing attempts. Celsius, the Official Committee of Unsecured Creditors, or their respective advisors will never contact you directly by phone, text message, or social media to request account or personal information absent an order or on-the-record instruction by the Court.

Celsius

## **Exhibit D**





**no-reply@cases-cr.stretto-services.com**
From: no-reply@cases-cr.stretto-services.com
To:

Dear JONES ASSET PROTECTION TRUST,

You are receiving this email as a follow up notice to our previous email communication about electing to receive your claim distribution in cryptocurrency. Please take this as a notice that a limited number of corporate creditors have been allocated to receive their claim distribution in cryptocurrency and **you are not one of those selected.**

**You will receive a separate email with instructions to receive your distribution via US dollars.**

Stretto

## Exhibit E

 CelsiusDistributions

### RE: Re: I want my BTC returned not USD 

From CelsiusDistributions@kirkland.com
To Frances Jones & 2 more
1 Mar at 3:06 am ∨

Hello,

We recorded that you would prefer a BTC distribution on November 13, 2023 and January 2, 2024, and noted at the time that such request was not a guarantee that your request could be accommodated. Specifically, because your account is considered a corporate account, you still needed to be eligible to receive a distribution as one of the largest 100 creditors.

According to our records, you were contacted as one of the largest 250 corporate accounts. However, even if you had responded by the January 23, 2024 deadline, your account would not have been in the top 100 corporate accounts who responded requesting a distribution in cryptocurrency. As Aaron previously stated, Coinbase only agreed to make distributions to 100 corporate accounts.

Best,

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
F +1 312 862 2200

11

## Exhibit F

 CelsiusDistributions

RE:  Re:  I want my BTC returned not USD    

From CelsiusDistributions@kirkland.com
To Frances Jones & 1 more
Yesterday at 11:09 am ⌄

Hello,

As we have stated repeatedly, your account was not among
the top 100 corporate creditors who responded to our email
and elected to receive cryptocurrency on account of their
claims.  As such, you will receive USD on account of your
claims.  While you may find this outcome to be unfortunate
or even upsetting, Coinbase only agreed to make
distributions to 100 corporate creditors due to the
complexities of making distributions to corporate entities.

Further, we will not divulge information regarding the
creditors who were selected to receive their distribution in
cryptocurrency, just like we would not divulge information
regarding your distribution to other creditors.  We hope you
can understand this.

Sincerely,

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
F +1 312 862 2200

## **Exhibit G, H, I, J, K – Prior Communications**





**From:** Frances Jones

**Sent:** Friday, November 10, 2023 11:19 PM
**To:** CelsiusDistributions
<CelsiusDistributions@kirkland.com>;

**Subject:** Celsius Distributions

Hello

I wrote to you 3 months ago.

Please see the email below.

I'd like as much Bitcoin as possible in our family trust account distribution from Celsius, for tax purposes. Our account is valued over $100,000.

I've lost a lot of money which was for my family to buy a place to live in so I'd appreciate a response asap.

Kind regards

Frances Jones

On Monday, November 13, 2023, 5:15 pm,
CelsiusDistributions <CelsiusDistributions@kirkland.com>
wrote:

Dear Frances:

Thank you for your email regarding your preferred
distribution composition under the plan.  Your preference
to receive BTC has been noted.

We are in the process of gathering information to
determine our ability to accommodate each individual
creditor's accommodation requests regarding the
composition of their distributions under the plan.  Once
we have a better understanding of individual creditors'
distribution preferences in the aggregate, we will follow up
with more information directly or by filing a notice on the
docket.

Sincerely,

On Sunday, August 13, 2023, 1:49 pm,
wrote:

Hello,
I'm the sole director of my family trust, Jones Asset Protection
Trust.
We have an account with Celsius called Jones Asset Protection
Trust.

I saw that "Holders of Claims who are projected to receive more
than
$100,000 in distributions in Liquid Cryptocurrency may contact
the Debtors to discuss individualized accommodations."

That is why I'm contacting you, to see what our options are.

Kind regards,
Frances Jones
Sole Director of Jones Asset Protection Trust

An ad hoc group of Australian corporate creditors
*Pro Se*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CELSIUS NETWORK LLC, *et al.*,[1] | ) | Case No. 22-10964 (MG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

The Honourable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green New York, NY 10004

**Re: *Difficulties regarding wire transfers and checks***

Dear Chief Judge Glenn,

Motion:

1. That Celsius be directed to issue bankruptcy proceeds to Australian corporate creditors only in USD wire transfers rather than checks.
2. That Celsius be directed to provide Australian corporate creditors with the MT103 or similar international bank transfer form which shows their attempted failed transfers so that they can identify precisely what is causing the failed transfers.
3. Australian corporate creditors reserve their right to seek compensation for the fact that they have been paid USD instead of cryptocurrency and / or losses they have incurred as a result of the delay in being paid USD.

Reasons for Motion 1:

1. Australian corporate creditors with SMSFs and trusts have not received their distributions by USD wire transfer, with the exception of one attempt by Celsius and its distribution partner that we are aware of. Many have been notified by Celsius that the attempted transfer failed.

2. This suggests a systemic failure on the part of Celsius or its distribution partners to execute this for Australian corporate creditors particularly with SMSFs or trusts. The Debtors, its distribution partner Stretto, and/or its new financial institution seem to be experiencing issues with transferring funds to Australian corporate creditors with trusts and SMSFs/retirement accounts. Even though we have supplied them with all the necessary information, it appears that they made a mistake in the trust-related wire transfers and have failed up to this point to send the wire transfers successfully.

3. The Debtors have said that if they are unsuccessful after April 16, 2024, they would send out cheques for USD. We have been waiting for weeks and months without any updates.

4. Foreign cheques are no longer accepted for cash in Australian banks. Consider for instance the following:
   a. https://www.macquarie.com.au/help/personal/payments-transfers-and-deposits/withdrawals-and-deposits/how-to-deposit-cash-or-cheque-into-your-account.html#:~:text=We%20have%20stopped%20accepting%20foreign,methods%20of%20transferring%20money%20internationally.
   b. https://www.commbank.com.au/international/foreign-cheques-and-international-drafts.html

5. **If distributions are given to Australian corporate creditors by USD check, we will be unable to cash them** and will not get our owed share under the bankruptcy.

6. Celsius or its distribution partner should take whatever efforts are required to overcome any concerns with paying Australian SMSFs and trusts via wire transfer. It is imperative that this issue be resolved satisfactorily and a standard process put in place since it will similarly affect any future payments in the form of litigation proceeds and other residual funds.

2

Reasons for Motion 2:

1. As noted under Reasons for Motion 2, many Australian corporate creditors, particularly SMSFs and trusts, have not received their USD wire transfers.
2. There is likely a systemic issue which Celsius and/or its distribution partners are having with issuing these transfers. There should not be as the recipients have provided the necessary banking details to make the transfers.
3. In order to establish what error Celsius and/or its distribution partners are making, it should be directed to provide the MT103 or similar international bank transfer form which shows their attempted failed transfers so that they can identify precisely what is causing the failed transfers.

—--------

**Addendum**

Celsius's Australian corporate creditors have been dealing with similar issues and have been in contact with one another on a daily basis to try to resolve them.

Many of us own self-managed superannuation funds (SMSFs), family trusts, or small companies.

**MT103 / SWIFT**

- MT103 - Despite having an established protocol in place, the Debtors have failed to process the corporate creditors' wire transfers on schedule. This procedure requires the usage of an MT103, which is a standardised document used by banks or financial institutions throughout the world to handle wire transfers using the SWIFT system. SWIFT transactions typically take 2-5 days to complete, and if these accounts are not engaged on both sides, the transaction may have to go via a third party or intermediary and on different continents potentially

- These documents should likely show that Celsius is making some simple error when attempting to process the transfers.

3

**Request for Additional Time**

- We are concerned that if our wire transfers keep failing and if some corporate
  creditors can't receive their money within the one-year distribution time-frame,
  that our money will go into the pool to be dispersed to other creditors. We
  want an extension of time, for as long as it takes for all of us to get our money
  back.

**Future Recoveries**

- There will be future recoveries following litigation and other matters. We don't
  want to go through all this again.

The omnibus court hearing is scheduled for 2pm on May 7th in New York.
This is 4am on May 8th in Sydney, Australia.
This is typical for Australian creditors. We have had interrupted sleep for the past 2
years, trying to keep up with events in the U.S. Some of us have had to take days off
work to enable us to be at hearings which are at 2am or 4am Sydney time.
If we are not reading this out to the court it is because we have to go to work and we
need to sleep.


Yours Sincerely,

Frances Jones
Jones Asset Protection Trust

Brett Wilks
Wilks SMSF PTY LTD

Luke Orr
Luke Orr Family Super Fund Pty Ltd

Paule Bennett Family SMSF Pty Ltd
DEKA ANDRES EPENDYOUN INTERNATIONAL INCORPORATED

Tim Sendall
Sendall Family Retirement Superfund

Oliver Masens
Masens Super Fund

Ryan Edmonds
R Edmonds Family SMSF

4

Edward Cetin
Steinberger Pty Ltd ATF Cetin Investments Super Fund

Mark Vozzo
MVozzo Super Pty Ltd As Trustees For MVozzo Superfund

Timothy Vann
Digitaurus Pty Ltd ATF Vann Family Superannuation Fund

Dyah Neho
Illume Capital Pty Ltd

Paul Colagiuri
Siddhartha Super Pty Ltd atf Colagiuri Superfund

**Equitable Distributions for Celsius Corporate Creditors**

March 18, 2024

**From:** Group of 75+ Corporate Creditors *(listed at the end of this letter)*

**To:** The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green, New York, NY 10004

Dear Judge Glenn,

We hope this letter finds you well. We represent a large number of corporate creditors in the Celsius bankruptcy proceedings and we are writing to raise **significant concerns** regarding the distribution process and treatment of corporate accounts.

We have been informed that our distributions will be in US Dollars (USD), while the top 100 corporate accounts will receive their preference of cryptocurrency distributed through Coinbase. This discrepancy in treatment based on account classification has created an unfair disparity among creditors, where some have the option to benefit from cryptocurrency price appreciation while others were told we will receive US Dollar checks and wires. Since January 16th (the date the Debtors used to calculate cryptocurrency prices), Bitcoin (BTC) and Ethereum (ETH) have appreciated significantly in value, with BTC currently up ~60% and ETH up ~40%. This means those who are getting cryptocurrency distributions, such as the top 100 corporate accounts and individual creditors, will receive substantial additional value from the bankruptcy proceedings, while other corporations are stuck with fiat distributions at January 2024 prices. Only providing 100 spots is discriminatory to all other corporate accounts. It appears that the decision to only pay the top 100 corporations was made to suit the distribution partner, Coinbase, rather than to equitably distribute the bankruptcy funds. A lottery for cryptocurrency distribution would be more equitable than picking the top 100 corporate accounts. The Debtors indicated that Coinbase said bringing on more than 100 corporate accounts was an administrative burden, but an increased administrative burden does not justify unequal treatment of creditors.

In addition to this obvious discrepancy in treatment within corporate accounts, Kirkland & Ellis stated that the cryptocurrency that was originally allocated to those who were not fortunate enough to be in the top 100 corporate accounts, was converted to cash on January 16th. Even if this was the case, the distribution process has been significantly delayed, leaving most of us now over two months without access to these funds. During this time, the value of BTC and ETH have gone up significantly, resulting in tremendous additional losses for the corporate creditors outside the top 100. This is especially concerning given Kirkland & Ellis' assurance in their recent docket filing that accounts unable to receive cryptocurrency distributions, will "<u>receive liquid cryptocurrency at the prevailing market price as close to the expected date of the cash distribution as possible</u>" and "the creditor would receive the proceeds of that sale". Why are

corporate creditors being treated differently to these creditors with distributions based on January 16th cryptocurrency prices, which are over two months old and significantly lower? Also worth noting, Kirkland & Ellis said in their recent docket filing they had to change banking partners. If they didn't have a viable banking partner to make distributions, then cryptocurrency assets should not have been sold. It's completely unacceptable that bonuses have likely been paid for meeting distribution deadlines, when in fact they have not been met.

Corporate accounts were established with the same intentions as individual accounts, reflecting our belief in fair treatment and equal opportunity, and our desire to own cryptocurrency. Just like individual account holders, we trusted our assets to Celsius. The majority of the corporate accounts we represent are sole operator LLCs which hold retirement funds, family trusts, wills, and non-traditional corporate accounts aimed at safeguarding our financial futures. It's important to note that these types of corporate accounts do not have trade credit insurance, meaning losses cannot be claimed via insurance. Corporate accounts have never had an advantage over individual accounts. Hence, we assert that all creditors, regardless of account type, have the right to be treated the same. The current disparity in distribution methods undermines the principles of fairness and equality.

<u>We urge the court to assess and correct this inequitable situation promptly by making distributions to all corporate account holders in cryptocurrency. Where distributions cannot be in cryptocurrency, corporate account holders should receive USD at the **current** cryptocurrency market prices, to match the treatment of individual creditors.</u> For the few corporate accounts that have already received USD distributions, we ask that they be made whole based on  market rates when USD was distributed. We understand that the purpose of Kirkland & Ellis retaining funds of $165MM is for exactly issues such as this: <u>to ensure equal and fair treatment for all creditors</u>. The Debtors failed to use reasonable judgment to remedy this issue, especially when they were given $70MM for the wind down process to ensure uneventful distribution to the creditors. One corporate creditor received an email from a Kirkland & Ellis lawyer on March 6th, 2024 that stated, "... if the Court orders the Debtors to return crypto to you, we will of course comply with that court order."

On behalf of all of us and all the other corporate creditors not chosen as the top 100 accounts to receive cryptocurrency distributions, we kindly ask that you order that corporate creditors receive cryptocurrency distributions to be consistent, fair, and equitable. As a last resort, if distributions must be made in fiat, we kindly ask that you order these distributions should be made at cryptocurrency market prices when USD was distributed (versus January 16th prices), which is what is promised to other creditors receiving USD. Judge Glenn, we trust you will rule in favor of equitable distribution.

Thank you for your attention to this matter.

Sincerely,
Corporate Creditors

<u>Please note</u>: All of the below Corporate Creditors requested to be included in this letter.

Viraj Anand
Pooja Patel
VP Investments & Assets LLC

Wesley Chang
Jinwes LLC

Tom Anusic
HR National Pty Ltd

Bnk To The Future (*Chosen in the top 100, but supports the initiative anyway*)
Authorised signatory - Simon Dixon (top 10 individual creditor)

BF Portfilio Builder SPC (*Chosen in the top 100, but supports the initiative anyway*)
Authorised signatory - Simon Dixon (top 10 individual creditor)

Jeffrey Hoffard
J&J Hoffard Pty Ltd

Rishi Yadav
InfoObjects, Inc.

Frances Jones
Jones Asset Protection Trust

Brian Green
Diligent Hands Invest LLC
Green Capital of Florida LLC

Jake Faller
BFaller RD LLC
BFaller ROTH RD LLC

Sheri Faller
SFaller TRD RD LLC
SFaller RD LLC

Laura McNeil
LMcNeil RD LLC

Ken McNeil
KMcNeil RD LLC
KMcNeil II RD LLC

Paule Bennett Family SMSF Pty Ltd

DEKA ANDRES EPENDYOUN INTERNATIONAL INCORPORATED

Timothy Vann
Digitaurus Pty Ltd ATF Vann Family Superannuation Fund

Enda Murphy
E & KL Murphy Superfund
Racecentre Pty Ltd.

John Hitti
Trustee for Simba Discretionary Trust

Christopher Lackey
MIH LLC

Eddie Cetin
Steinberger Pty Ltd ATF Cetin Investments

Jacob Liming
JL Investments LLC

Ignazio Gaetano Lo Castro
XPRUHODL SMSF Pty Ltd

Samuel Argier
SARGIER DDO LLC

Albert Garcia Esteban
Garcia suarez superannuation fund pty Ltd ATF Garcia superannuation fund

Teresa Gonzalez
IBERTRADE REPRESENTACIONES SL

Harrison Flavell
Flavell Pty Ltd the Trustee for H Flavell Super Fund

Sendall Family Retirement Super Fund

Peter Krigovsky
Pi Kay Super Fund

Brian McGarry
Alpine Rockery LLC

Matthew Ence
Crimson Permanent Assurance LLC


Brett Wilks
Wilks SMSF PTY LTD

Timothy Jukic
Jukes Property Solutions Limited

Oliver Masens
Masens Super Fund Pty Ltd

Leonard Farmer

Robbie Baylor
BAYLOR FAMILY SUPER FUND PTY LTD

Luke Orr
Luke Orr Family Super Fund Pty Ltd

Ryan Edmonds
R Edmonds Family SMSF

Kirk Woolston

Robert Stranjak

Damian Citroni
D P Citroni Super Fund

Nathaniel Byford
Hundredfold Investments LLC

Alan Mauldin
All For Him Investments LLC
TXD Investments LLC

Francisco H Limeta III
Hermoso Capital Fund
Project Influencers Capital

Maria Hermoso
Hermoso Capital Investments

JDW Investment Trust

Mia Forrest
GOOD FORREST SUPER FUND PTY LTD


William Heaps
Sage Educators Foundation

Craig Knight
Knight Family Super Fund

Justin Dungey
Dungey Family Super Fund

Siddhartha Super Pty Ltd atf Colagiuri Superfund

Miguel Laliberte
9334-4067 Quebec Inc
9396-0565 Quebec Inc

Joseph Krisberg
JOEY LK LLC

Riece Keck
Clypeum, Inc

Jim Gragtmans
2024747 Ontario Ltd

Alberto Daniel Nacach
Elementary Wisdom LDA

Brian McGarry

Dyah Neho
ILLUME CAPITAL PTY LTD

Ezra Vazquez-D'Amico
Falcon RI LLC

Caroline Abruzese,
Future Possibilities, LLC

Emmerson Pty Ltd ATF
Emmerson Family Superannuation Fund

Darin Wayne Gillis, CEO of SMLLC
Daring Crypto Ventures, LLC

Alan Harvey
Lakeside Oral & Facial Surgery Institute LLC

Craig Devitt
DEVITT & DEVITT PTY LTD ATF THE DEVITT FAMILY TRUST

Danny Lachevre
Lachevre Holdings Pty Ltd

ART_ROD LLC

Charles R. Ferrante
Golden Blue Sky Financial LLC (ROTH SDIRA)

Mark Vozzo
MVOZZO SUPER PTY LTD as trustees for MVOZZO SUPERFUND

Robert Richards, Trustee
GearedGamble

Andrew Richards, Trustee
GearedGamble

Frances Jones
*Pro Se*
**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

_____

|                           |   |                        |
|---------------------------|---|------------------------|
|                           | ) |                        |
| In re:                    | ) | Chapter 11             |
|                           | ) |                        |
| CELSIUS NETWORK LLC, *et al.,*1 | ) | Case No. 22-10964 (MG) |
|                           | ) |                        |
| Debtors.                  | ) | (Jointly Administered) |
|                           | ) |                        |

_____

The Honorable Martin Glenn
Chief Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green New York, NY 10004


**Re:** *OBJECTION to Docket 4623 & Follow-up Court Order TRANSPARENCY*

Dear Chief Judge Glenn:

I, Frances Jones, respectfully write in support of the Court Docket 4685, **OBJECTION** to the Debtors Response filed under Docket 4623, **POST-EFFECTIVE DATE DEBTORS' SECOND UPDATE ON DISTRIBUTIONS**

I agree with all Wesley's points. The Debtor continues to breach their fiduciary duties to be equitable. They argue and hide behind technicalities whilst unjustly enriching themselves with Creditor Owed Funds. Are they deliberately making astonishingly negligent decisions that substantially affect people's livelihoods, to delay the process further and continue their super-profits?

I request a Court Order to remove **all releases** of the Debtor's Council, Directors and UCC members as these decisions have had severe consequences on Corporate Holders outside of the Top 100. We have been the most harmed as many of us are Solo Operators who put our entire net worth into these holding companies for Protection. Some of us are retirees and single mothers. We have the most to lose compared to the Ultra-Rich who will get a substantially larger recovery.

I also support Thomas Anusic's 'Request for Court Order – Transparency of Top 100,' Court Docket 4452. Kirkland and Ellis responded with a very broad answer about how the 100 slots were selected. They have made no attempt at all to reasonably source alternative distribution partners. The conflict of interest with Kirkland's long-standing relationship representing Coinbase screams out injustice, corruption, and nepotism. Why are they allowed to exclusively use a partner that they have represented in numerous other cases and reject competitive partners in other markets that would greatly expedite the recovery, allow more crypto to be distributed and meet all the KYC compliance criteria?

There are numerous potential distribution partners in Australia that have been around for years. I have corporate accounts with Coinspot and Independent Reserve which cost nothing to set up. Australian KYC and regulators seem to be more effective than American ones, considering the multiple bankruptcies in the U.S. A substantial number of Celsius Users live in Australia, but Kirkland insists on using Coinbase which charges corporate creditors $1000 USD per account.

This exclusivity with Coinbase is opaque and potentially corrupt.  It is so wrong that they have secured their releases.  I respectfully make a request for ALL Celsius creditors, voters who were bribed with a potential 5% loss and misled with complex documents, to have their releases retracted so that after exit those who have been unfairly treated can seek reparations from those responsible for our losses.

Yours Sincerely,

Frances Jones
Sole Director
Jones Asset Protection Trust
Pro-Se Creditor

[Date] 3-31-2025

**To  Honorable John G Koeltl

Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

My name is Maggie Fitzgerald, and I am writing to provide a victim impact statement regarding the case of People v. Alex Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct. 2023). I am one of the many creditors defrauded by Mr. Mashinsky during the Celsius Network bankruptcy. I had entrusted my funds to Celsius until distributions were abruptly halted on June 12, 2022.

Throughout my interactions with Celsius, Mr. Mashinsky consistently projected an image of safety and reliability, appealing to those of us who sought refuge in cryptocurrency following the financial devastation of the 2008 crisis and the subsequent economic fallout from the COVID-19 pandemic. Like many others, I turned to Celsius in hopes of recovering from the losses I had faced, particularly since I had lost my business and my home.

Now, at 65 years old, I find myself without family or children to support me. My ability to work and recover from the financial devastation inflicted by Mr. Mashinsky and his colleagues has severely diminished. I feel a profound sense of loss, frustration, and betrayal, having been misled by

someone who promised integrity, safety, and a fair operation.

It is difficult to comprehend the disparity between my experience and the experiences of creditors on other platforms, where they have received nearly 100% refunds. In stark contrast, I am left without restitution for what was once over $100,000 in my account. As I diligently researched the cryptocurrency industry and invested in various currencies—including Bitcoin, Ethereum, Polkadot, Polygon, and Chainlink—I watched the value of these assets significantly increase, only to be stripped of my opportunity to capitalize on this growth due to Mr. Mashinsky's actions.

The weight of this situation has profoundly affected my mental and physical health. I feel as though I am sinking in quicksand, struggling to grasp at any chance for recovery while my confidence wanes. My energy levels have plummeted, and my health is deteriorating at a time ███████ ████████████████████████████████████████████████████████ ██████████████████████ as I grapple with expenses and the rising cost of living.

Thank you for taking the time to read my statement. I hope it conveys the deep and wide-ranging impact of Mr. Mashinsky's actions on my life and the lives of countless creditors. It is crucial that he is held accountable for the harm he has inflicted upon us.

Sincerely,
Maggie Fitzgerald

*Maggie Fitzgerald*

| **Date:** | Mon, 31 Mar 2025 2:11:35 PM (UTC) |
| **Sent:** | Mon, 31 Mar 2025 2:10:48 PM (UTC) |
| **Subject:** | [EXTERNAL] Victim impact statement regarding the case of People v. Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct 2023) |
| **From:** | rikky patel |
| **To:** | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; Tanya.trakht@usdoj.gov; |

Dear Judge Koeltl,

I am writing to submit my victim impact statement regarding the case of People v. Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct 2023).

I invested my hard-earned money in Celsius, trusting the promises made by Alex Mashinsky and his company. Unfortunately, this trust was misplaced, and I lost approximately $40000—a significant amount that took years of dedication and hard work to accumulate. This financial loss has had a profound impact on my life, creating a ripple effect of emotional stress, anxiety, and financial instability.

What is even more disheartening is how Mashinsky's actions have tarnished the reputation of cryptocurrency and decentralized finance for many newcomers. His misleading statements and deceptive practices not only led to the financial ruin of countless individuals but also created skepticism and distrust toward a promising and innovative industry. Many people, including myself, believed in the potential of this emerging technology, only to be left disillusioned and financially devastated.

This case is not just about financial loss—it's about holding accountable someone who manipulated and misled thousands of people. I urge the court to consider the long-lasting damage Mashinsky has inflicted on victims and the broader crypto community. The sheer volume of affected individuals and the extent of their losses should serve as a compelling reason to impose the maximum possible sentence.

Justice demands that Mashinsky be held fully accountable for his actions. A strong and appropriate sentence will not only provide some measure of closure to the victims but also serve as a deterrent to others who might seek to exploit vulnerable investors in the future.

Thank you for your attention and consideration of my statement.

Sincerely,

Rikky Patel

| **Date:** | Tue, 1 Apr 2025 2:27:31 PM (UTC) |
|---|---|
| **Sent:** | Tue, 1 Apr 2025 2:26:52 PM (UTC) |
| **Subject:** | [EXTERNAL] People v. Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct. 2023) |
| **From:** | Bill Marlett |
| **To:** | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; Tanya Trakht <Tanya.Trakht@ag.ny.gov >; |

Dear Judge Koeltl,

I am 70 years old and lost most of my life savings (and my wife's savings) due to the negligent and fraudulent conduct of Mr. Mashinski.

To make matters worse, I converted my IRA holdings to a ROTH and borrowed against my collateral to pay Federal and State taxes. This was done within the 90-day clawback period, and now I must pay back the funds I borrowed that I already sent to the IRS.

The amount of emotional pain and suffering this has caused in our lives is incalculable. And I know I am not alone in the amount of grief, financial loss and emotional stress this man is personally responsible for.

Mr. Mashinsky and his accomplices deserve to spend the rest of their lives in prison. While this sentence would do absolutely nothing for me personally or my financial situation, it can serve as a deterrent and hopefully prevent similar criminal acts from occurring in the future.

Thank you,

William Marlett

| Date: | Wed, 2 Apr 2025 12:41:58 AM (UTC) |
|---|---|
| Sent: | Wed, 2 Apr 2025 12:41:37 AM (UTC) |
| Subject: | [EXTERNAL] Celsius victim, client stan sparrow, testimony. |
| From: | Stan S Sparrow ███████████████ |
| To: | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov>; |
| CC: | Stan S "sam" ████████████████████ |

Hi. ██████████████

I am a victim of celsius fraud, and also  fraud of the lawyers' bad deal, and overcharging...

When I saw the april 1 video of Alex machinski, getting a pardon from  trump,

Ptsd...hurt me so much, broken heart so much now, and worried about becoming homeless because of alex, taking my bitcoin and  now I'm 64yr old...

I am expressing my grief, and another 70 yr old guy ███████████████ He cannot deal with it anymore and has given up, on justice and celsius.

I had deposited $ 44,000 and the other guy  had 200,000

I had .5 BTC , 100 Solana 13 Ethereum

Today's market value is aprox $140,000

But I got back only $ 7,000 ish

I'm 63 years old ████████████████ so it really hurt,

We were ██████████████████ financially,

and every week we are reminded with phish, scam, fake emails

because they were hacked and my SS# and Id are on the dark web, making us vulnerable to scams.

 the Celsius case that never ends, and seems to be an endless cash grab by the lawyers.

 Stanley Sparrow ████████████

██████████████████████

| **Date:** | Mon, 7 Apr 2025 8:56:29 PM (UTC) |
|---|---|
| **Sent:** | Mon, 7 Apr 2025 8:56:16 PM (UTC) |
| **Subject:** | [EXTERNAL] Victim Impact Statement: People v. Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct. 2023) |
| **From:** | adl4c |
| **To:** | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; Tanya.Trakht@ag.ny.gov; |

To Whom It May Concern:

I am writing this statement as a victim of the egregious actions committed by Alex Mashinsky and the Celsius Network. The consequences of this case reach far beyond lost dollars—they undermine trust in the financial system, shake confidence in institutional oversight, and continue to inflict ongoing financial, emotional, and psychological harm.

## Financial Harm and Deception

I entrusted Celsius with a significant portion of my hard-earned assets, believing the repeated assurances made by Mr. Mashinsky regarding the platform's safety, transparency, and compliance. I was led to believe my assets were secure, interest was being earned responsibly, and withdrawals were always available. These were not just marketing messages—they were direct assurances from the CEO himself in interviews, AMAs, and emails. Based on these statements, I made investment decisions that I otherwise would not have.

Instead, I was misled. The reality revealed in the case—mishandling of funds, false statements about the financial health of the company, and reckless investment practices—proves that I, along with countless others, was a victim of systemic deceit. I have lost a significant amount in digital assets, which were once meant to contribute to my long-term financial security, including retirement and emergency funds.

## Tax Implications and Ongoing Complications

The damage has not stopped at asset loss. The tax burden imposed on victims has added a cruel layer of insult to injury. I am now left with unclear and potentially unfavorable tax consequences, including the risk of paying taxes on phantom income—interest that was "earned" but never received. The lack of consistent tax guidance from Celsius or regulators has forced me to seek help from tax professionals and CPAs, just to navigate a situation I never asked to be in.

Moreover, these complications have dragged on for years, costing not only money, but time, energy, and peace of mind. The Chapter 11 restructuring process has only compounded this damage.

## Lack of Clarity and Respect in Chapter 11 Proceedings

The bankruptcy proceedings have been opaque, cumbersome, and fraught with legal maneuvering that is unclear wether it even favor insiders and legal teams vs victims as compared to other settlements like BlockFi and FTX. As a creditor, I have been bombarded with inconsistent updates, shifting timelines, and incomprehensible documentation. The restructuring plan lacks transparency, and the so-called recovery prospects for Earn account holders are murky at best.

To this day, there is no clear path for full restitution, nor has there been adequate outreach or support for the thousands of victims who were not institutional investors or insiders. The emotional toll of this endless uncertainty cannot be overstated. Each new court filing and delayed hearing reopens a wound and prolongs the trauma.

## Emotional and Psychological Damage

The betrayal I experienced at the hands of Mashinsky and his leadership team is deeply personal. I was not merely investing—I was building a future. I wake up with anxiety over my financial stability and go to sleep wondering how I will rebuild what was stolen from me. This event has instilled a profound sense of distrust in certain financial institutions, and created a hesitancy that will impact my decisions for years to come.

## Recommendation for Maximum Penalty

Given the extent of the fraud, the scale of damage inflicted on thousands of victims, and the willful deceit employed to

extract billions in assets, I respectfully urge the Court to impose the **maximum penalties allowable under law**.

Alex Mashinsky should not be allowed to walk away with a slap on the wrist or a negotiated settlement that fails to reflect the catastrophic consequences of his actions. He used charisma and a façade of trust to carry out a scheme that has financially crippled countless people. Accountability—true accountability—is essential not only for justice but for deterrence. Anything less would embolden future bad actors in this space.

I hope this Court stands on the side of the victims, and of justice.

Sincerely,
Just One Of The Many People Affected By Crimes Committed By Alex Mashinsky

Sent with Proton Mail secure email.

4/7/25

Dear Honorable John G. Koeltl,

I'm a 49 year-old father of daughters aged 5 and 10. In June 2022, I transferred a
chunk of money from Celsius to a *different*, soon to be bankrupt CeFi institution
(coinloan.com). When all was said and done, I lost money thrice over via (a) Celsius
bankruptcy/clawback, (b) tax liabilities and (c) Coinloan bankruptcy.

It feels unfair that one can incur multiple obligations against the same capital
asset. Like, someone who quickly transfers between n different institutions that
were all bankrupted by the same underlying crisis would lose their initial
investment while *also* facing exposure to n-1 clawbacks. I guess I'm lucky that I
only made one transfer. Anyways, while others my age invested in houses or equities,
I poured my savings into crypto. Now, I feel like I'm starting all over again with
less than a decade before my kids are off to college.

My children attend the public, yet prestigious ███████████████████████ and
I feel that I can't rob them of that opportunity by leaving New York City. As such,
I'm tethered to a high cost of living area. My girls are getting older, and I'd
hoped to take a less demanding job, so that I could actually spend some quality time
with them. I'd especially like to help my youngest, who struggles a bit with both
reading and self-esteem. Because of Alex Mashinky and his ilk, that aspiration is a
dream deferred.

Recently, the parade of high-profile fraudsters skirting justice has eroded my faith
in the system. It's starting to feel like hard work and fair play are antiquated
concepts from a bygone era. While I don't believe that Alex Mashinsky intended for
things to turn out the way they did, there ought to be some disincentive to breaking
the law and taking excessive risks with other people's money. I hope you'll impose a
fair penalty that serves as a warning to others.

Hollis Waite



Hollis White

10007-133099

NEW YORK NY 100

7 APR 2025 PM 10 L

Honorable Judge G Koeltl
United States District Judge
Southern District of New York
500 Pearl St
New York, NY 10007

**From:** ▮▮▮▮▮▮
**To:** Olsen, Wendy (USANYS)
**Subject:** [EXTERNAL] re: VICTIM IMPACT STATEMENT People Vs. Mashinsky, 2023 N.Y. Slip Op. 50826
**Date:** Tuesday, April 8, 2025 11:33:14 PM
**Attachments:** Impact statement CT- Celsius signed.pdf

Aloha Ms. Olsen!

Please see the attached victim impact statement. To protect my identity from the public, I have signed the document using my initials.

Thank you for all that you do!


Have a wonderful day!

▮▮▮▮▮▮▮
▮▮▮▮▮▮▮

04/07/2025

Subject: Victim Impact Statement: People v. Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct. 2023)

Dear Wendy & Tanya:

I am one of the many creditors in the Celsius Network bankruptcy who was defrauded by Alex Mashinsky. I would like to provide a victim impact statement in the case of People v. Mashinsky, 2023 N.Y. Slip Op. 50826 (N.Y. Sup. Ct. 2023). I held funds on the Celsius Networks platform ("Celsius") from [redacted] until June 12, 2022, when distributions from the platform were halted.

I am a 58 year old woman. I spent my career in healthcare, caring for my community and I diligently accumulated savings, and invested in the stock market,  Bitcoin (BTC) and Ethereum (ETH) and many other cryptocurrencies.

I moved much of my accumulated wealth into cryptrocurrencies, and placed my investments into the Celsius Platform that was recommended by multiple paid services as a safe place to keep my investments and make a return.   I watched all of Alex Mashinsky's AMA videos posted on YouTube to stay informed. I watched every speech Alex Mashinksy had given available on line.  Alex Mashinsky repeatedly communicated how safe Celsius was, and I believed him. He repeatedly stated our coins were ours until on one AMA he changed his tune and stated that our coins were not ours and that it was like making a deposit into a bank. That caught my attention, however, he pacified creditors by saying our investments were safe, Celsius was safer than a bank.

I put enough money onto the platform that Celsius notified me that I had a personal concierge, a point of contact ,that I could reach out to and who would assist me when needed. This encouraged me to trust Celsius even more.

At the time Celsius paused distributions, I had in excess of 14 BTC and 115 ETH and 500 Solana as well as other cryptos. I also had a loan against one additional BTC which was liquidated despite my many attempts to contact the concierge, and customer service to prevent this from happening.  At the market peak, my Celsius assets would have exceeded 2 million. That money would have gone a long way towards helping me to retire. That money would have gone a long way towards allowing me to help my family and my favorite charities.

I have received a fraction of that back which given my age, is not enough to retire on. Adding insult to injury I received my distribution in USD and not in-kind. This put me at an additional disadvantage as I have lost the resulting upside as the markets rallied and I had to purchase assets back at significantly higher prices. The resulting distribution is nowhere near enough for me to feel that I have a cushion to live comfortably on and forces me to continue working. I will not fully recover from this.

Since Celsius paused distributions, every day I am reminded of how much has been stolen from me and this has shaken me to my core. I am struggling to get past this. Although I am not suicidal, I completely

understand how others have committed suicide based on his actions, and the actions of his team. The impact of his actions on my life has been extreme. The emotional toll, the financial toll and longstanding effects has been felt every day of my life. I am humbly asking the judge to take into account how many us  were seriously harmed by his actions and will never fully recover from this. Mr. Mashinsky showed creditors no mercy as he repeatedly  lied and stole from us.  I am asking that the judge to take this into account and to sentence Alex Mashinsky to the maximum sentence allowed by law.


Thank you for your attention,

*C.T.*    4/7/2025

CT

From:        AL N.
To:          Olsen, Wendy (USANYS)
Subject:     [EXTERNAL] Mashinsky Victim Impact statement
Date:        Tuesday, April 15, 2025 12:00:11 AM

**Victim Impact Statement**
**Submitted by Aryeh Newman**

Honorable John G. Koeltl,

My life can be divided into two chapters: before and after June 12, 2022.

I remember hearing the news that Celsius had frozen withdrawals. That first night, I still slept peacefully, reassured by Alex Mashinsky's repeated promises that failure was impossible: *"The loans are all overcollateralized." "We take no third-party risks."*

That would be the last night I slept properly for nearly two years.

By the next day, anxiety had consumed me. In search of clarity and community, I went online, downloaded Twitter (now X), and found thousands of others facing the same nightmare. From that point on, I spent countless hours each day looking for answers. I would wake up from restless sleep only to live through more torment—reading every rumor, chasing every piece of news.

Weeks passed without answers. I stopped eating. I couldn't sleep. My health declined. I withdrew from friends and family, spending every waking moment online, desperate for hope.

For months, Celsius remained silent. That silence was a cruelty of its own—compounding our fear and confusion. We were left to anguish in the dark.

Eventually, I found a community in Twitter Spaces. Every day, people gathered to discuss what was happening. A small group dominated these conversations, offering relentless optimism. They claimed short sellers were to blame, and that buying CEL tokens could somehow rescue the company—and our money.

In my desperation, I believed them. I bought CEL.

Key figures—Krissy Mashinsky, Alex Mashinsky, and Zack (Alex's associate)—were involved in promoting that narrative. It soon became clear that victims were being manipulated all over again.

Even after the collapse, Mashinsky and his associates continued to exploit us. He didn't just deceive us once—he kept misleading and harming those already suffering. His actions were not those of a man with remorse, but of someone determined to maintain control and avoid accountability.

Mashinsky lied when he said Celsius was "safer than a bank." He let us suffer in silence while our life savings disappeared. He stood behind a campaign of false hope, lending credibility to those spreading misinformation.

This was not a single mistake. It was a pattern—a calculated betrayal of trust.

I am not the same person I was before June 12, 2022. My life is permanently changed. I've lost money, yes. But more than that, I lost time. I lost my health. I lost relationships. I lost a part of myself I may never get back. This experience rewired how I think, how I feel, and how I move through the world.

I ask this Court to deliver justice—not only for me, but for the thousands of others who have lost what I have and more. Mashinsky has stolen years from people's lives. I want to see the maximum sentence possible to reflect the scale of that damage.

Thank you for hearing my statement and for pursuing accountability on behalf of the victims.

**Sincerely,**
**Aryeh Newman**

**Date:**     Tue, 15 Apr 2025 12:32:42 AM (UTC)

**Sent:**     Tue, 15 Apr 2025 12:32:22 AM (UTC)

**Subject:**  [EXTERNAL] Re: Celsius fraud victim testimony

**From:**     Rien Vanmarcke

**To:**       Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov>;

Dear Ms. Olsen

I realized that my victim impact statement, was more a recounting of the fraud, instead of the impact it had on me and my family and friends that I dragged into this.

So here is a new victim impact statement from me, a proper one this time.


The Honorable John G. Koeltl

United States District Court

Southern District of New York


Dear Judge Koeltl,

I write to convey how Alex Mashinsky's fraud devastated my life and the lives of those who trusted me.

### Personal Harm

I lost 75% of my financial opportunities because I believed Mr. Mashinsky's lies. He presented himself as a selfless family man—a father of six "doing this to help others", to exploit hardworking people. Tragically, I convinced my mother, then-girlfriend, and two close friends to invest their savings based on his claims. When Celsius collapsed, I had to tell them we might lose everything. The guilt of failing people who relied on my judgment haunts me daily.

### Emotional Toll

I abandoned plans to launch an Ethereum staking node (32 ETH lost) and paused my tech education. The bankruptcy process worsened the harm: creditors' claims were valued at 2022's crypto lows, but those same claims were paid out at the 2024 February and December 2024 highs. How can this be just, fair or even legal is beyond me. Essentially defrauding us from 75% of our value, while the new company kept 75% of the market rebound. We now hold untradable shares in a mining venture run by lawyers and insiders enriching themselves, by paying themselves something like 5x of what other board members and CEOs at legitimate companies make. A cruel echo of the original fraud.

Mr. Mashinsky's cruelty compounded the pain. His wife mocked victims with "unbankrupt yourself" shirts funded by stolen savings, while his family flaunted, and still flaunts, luxury lifestyles on social media.

how I could have been so naive and stupid. My relationships crumbled under the weight of shame and distrust.

### A Plea for Justice

Mr. Mashinsky targeted retirees, families, and trusting individuals. Unlike Sam Bankman-Fried, he weaponized his persona as a "family man" to prey on vulnerable people. His sentence should reflect the unique viciousness of this betrayal.

I urge you to ensure he never controls others' finances again.

Thank you for considering my story.

Respectfully submitted,

Rien Vanmarcke

On Thu, May 30, 2024 at 10:30 AM Rien Vanmarcke ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Hi Ms. Olsen

Alex Mashinsky, isn't the only one that should be tried for financial crimes.

Nuke Goldstein, & Daniel S. Leon, and many co-conspirators like Zach Wildes, Kristine Meehan, Alex's wife, played a part in their, now infamous, 'Celsius Network' fraud.

They filed for bankruptcy and left many victims in their wake, and it turned out they let 3 billion dollars disappear. Never have they expressed any remorse for 'making mistakes'. On the contrary, they mocked their victims after it all collapsed. They did this mainly on Twitter and their e-commerce store. Especially Kristine Meehan, Alex's wife, had no mercy and was laughing all the way to the bank and actively provoking people on her Twitter account, without any remorse. Her 'USAStrong' e-commerce store was selling and promoting a shirt that was literally mocking victims of their scam. They found it a great idea to create a shirt with the wording "unbankrupt yourself".
https://usastrong.io/products/unbankrupt-yourself-t-shirt-heather-black , which has since been taken down, as they know they are in trouble. There are articles online about this fact, (
https://www.entrepreneur.com/business-news/celsius-ceos-wife-selling-unbankrupt-yourself-t-shirts/435508 ).

Some kind of sick joke on their previous slogan to "Unbank yourself", which they also printed on all sorts of merch. This merch business was funded by our stolen deposits, which they embezzled by funding his wife's business, to promote their crypto scam. Alex Mashinsky is a partner in that business, which Kristine Meehan is still running, unscrupulously. You can read the many testimonials from victims, like me, on trustpilot:

https://www.trustpilot.com/review/usastrong.io

Through the offering of illegal securities, they pumped and dumped their own CEL token and unjustly enriched themselves. Unfortunately, I believed Alex, and I thought it was legit interest in the token by the community that made the price surge. I could simply not believe someone, who appeared intelligent and business savvy, would go to such great lengths and take such big risks with his own freedom and reputation, I was obviously wrong, very wrong.

At www.cases.stretto.com/public/x191/11749/PLEADINGS/1174901312380000000039.pdf , you can find the examiner's report in their bankruptcy case. It talks about how Celsius engaged in pumping their own token, and in the meantime Alex sold all his own tokens and unjustly enriched himself and his wife.

He gifted his wife 15 million tokens:
https://cointelegraph.com/news/celsius-network-founder-gifts-wife-15-million-cel-tokens , which she dumped on the victims, even during the bankruptcy they were still dumping tokens on us.

This happened during the time when their CEL token was gaining way more in percentage value than established

cryptocurrencies like Bitcoin or Ethereum. It should have been obvious that they were manipulating the price, but because of Mashinsky's weekly lies on his AMA's, it seemed like they were doing great as a company.

The proceeds of those sales were used to start their USAStrong company with. They started this business with innocent customer funds that they embezzled through their Celsius network scheme. On top of that, Celsius Network used our deposits to buy over a hundred thousand dollars worth of USA Strong merch crap to give away at conferences. Their motto is USA made and supporting US businesses, but Celsius victims received shirts that say "assembled in Honduras" and another one says "assembled in Nicaragua". See:
https://twitter.com/nhirsch/status/1583829121528123400
So even this was a fraud.

The lies and scamming never stops with these criminals.
Many unsecured creditors are fighting for justice, and we hope the US DOJ can make a stand and justice will be served to these fraudsters.
They don't deserve to run any business anymore.


-- Met vriendelijke groetKind regardsRien Vanmarcke

**Date:**   Wed, 16 Apr 2025 3:10:44 PM (UTC)

**Sent:**   Wed, 16 Apr 2025 3:10:34 PM (UTC)

**Subject:**   [EXTERNAL] Alex Mashinsky - Victim Impact Statement

**From:**   Sev

**To:**   Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >;

Victim Impact Statement re:  Alex Mashinsky/Celsius Network
To:  The Honorable John G. Koeltl
Re:  Sentencing of Alex Mashinsky & Restitution to be Paid

Your Honor,

My name is Paul Sevanich, and I am a victim of the financial fraud committed by Alex Mashinsky in his former capacity as the CEO of Celsius Network. I am submitting this statement to help the Court understand the profound and lasting impact that his actions have had on my life.

I entrusted a large portion of my life savings to Celsius because I believed in the promises made by Mr. Mashinsky—that my assets would be safe, that the platform was transparent, and most importantly that my assets would remain my assets.  And I believed the government was regulating and safeguarding this industry so that regular Joes would not be exploited.

I took Mr. Mashinsky at his word, as did so many others. In the end, those repeated assurances were not only false—they were part of a calculated and deeply deceptive scheme to steal from innocent, hard-working citizens and enrich himself and his coterie.

As a result of Mr. Mashinsky's crimes, I lost assets worth approximately $500,000.

That money isn't just numbers in an account—it represented years of hard work and many sacrifices.

The emotional toll has been equally severe.
I have experienced ongoing stress and anxiety.
I had to stop working some years ago due to health and am now on a fixed income.
After what Mr. Mashinsky stole from me, I no longer have the funds to obtain necessary medical treatments.

This wasn't a mistake.
It was deliberate.
It was sophisticated.
And it was driven by greed at the expense of thousands of everyday people like me.

I respectfully urge the Court to impose a sentence that reflects the seriousness of these crimes --
potentially the maximum term.
A significant prison sentence is warranted not only to hold Mr. Mashinsky accountable but also to send a clear message that this type of crime will not be tolerated.

I also ask that full restitution be ordered to all victims, including myself, so that we can begin to rebuild what was lost.
Not just the restitution that Mr. Mashinsky has offered, but also clawing back any assets he has "hidden" away.

I was able to get a portion of my assets off the Celsius platform prior to the freeze, but that means that I am now subject to a clawback lawsuit filed against me by one of the largest law firms in the world, White & Case.  That is an additional stress as these high-powered New York City lawyers are threatening to take away my house.  Their Complaint asserts a grossly inflated WPE and while the Court may rule that they need to lower their demand, as it is currently, I stand to lose everything.

Additionally, as long as that clawback Complaint is lodged against me distributions have been halted. They only amount to about approximately 26 cents on the dollar of what we have lost, but they would be something.

The past approximately three (3) years has been an absolute nightmare.
And that nightmare currently has no end in sight.

No sentence to Mr. Mashinsky can fully undo the harm caused.
Justice, in this case, means:

      1) a very harsh prison term, potentially the MAXIMUM possible under applicable law, and
      2) the maximum amount of restitution possible.

Thank you sincerely for taking the time to read and consider my statement.

Sincerely,

*Paul Sevanich*

Sent from my iPhone

| Date: | Wed, 16 Apr 2025 2:05:04 PM (UTC) |
|---|---|
| Sent: | Wed, 16 Apr 2025 2:04:41 PM (UTC) |
| Subject: | [EXTERNAL] Victim Impact Statement – Re: Alex Mashinsky / Celsius |
| From: | Stephen Birdsong |
| To: | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov>; |

Re: Victim Impact Statement – United States v. Alexander Mashinsky

Dear Judge Koeltl,

By the end of 2025, I'll be 43 years old, with two young children. Today, I live paycheck to paycheck and am no longer able to build meaningful retirement savings. But that wasn't always the case. When my cost of living was lower, I saved money and bought Bitcoin and Ethereum at relatively low prices. By the time my wife and I conceived our first child, I was on track to retire early.

When I entrusted my life savings to Celsius, I wasn't chasing quick returns. I planned to hold my Bitcoin and Ether until retirement. Earning interest through Celsius appeared to be a stable way to optimize what had already been successful investments.

Alex Mashinsky marketed Celsius as exactly that—a safe lending platform where my assets would earn yield through secured loans. He explicitly claimed Celsius was better than a bank: safer, fairer, and more transparent. I believed him.

But it was all a lie.

Under Mashinsky's leadership, Celsius did not responsibly manage risk. Instead, the company engaged in reckless trading, unsecured lending, and used new customer deposits to pay existing obligations—behavior that was reprehensible, deceptive, and entirely reckless. Celsius had no meaningful financial guardrails, consistently misrepresented its finances, and worst of all, Alex lied repeatedly and confidently until the entire enterprise collapsed.

Had I known even a fraction of the truth, I would never have deposited my assets with Celsius. I would still have my savings, my retirement plan, and the security I worked so hard to create. Instead, I lost everything because of Alex Mashinsky's deliberate deception.

I carefully waited to have children until I was sure I could provide them with financial stability and the quality time they deserve. I believed I had achieved that. My wife was pregnant with our first child when Celsius went bankrupt. Because of Alex Mashinsky's actions, I lost the financial stability I had painstakingly created. Now, at my current rate, I won't have enough to retire. I constantly worry about my future: Will I have to work until I'm physically unable—perhaps into my 80s? What happens to an 80-year-old with no income and no savings? Will I be forced onto the streets, begging for money?

These disturbing questions have haunted me since 2022. In short, I no

longer see a light at the end of the tunnel.

Every time I think about my future, I experience profound feelings of hopelessness, regret, and shame. And sadly, I am not alone. This sociopath preyed on thousands of hardworking people. Alex Mashinsky is not merely a liar—he is a predator who weaponized trust and exploited thousands of victims.

I once believed our laws protected us from people like him, believing severe punishment would deter such fraud. But in this case, I was tragically mistaken. It didn't deter him.

Please, hold him fully accountable. He should not have access to our society—he maliciously exploited and abused it in this case. It wasn't a mistake; that's who he is. He should never be allowed to participate in our society again. I, along with countless others, will suffer the devastating consequences of his crimes for the rest of our lives. Please give him the maximum sentence.


Stephen Birdsong

| Date: | Thu, 17 Apr 2025 12:40:40 AM (UTC) |
|---|---|
| Sent: | Thu, 17 Apr 2025 12:39:58 AM (UTC) |
| Subject: | [EXTERNAL] My Victim Impact Statement re: Alex Mashinsky |
| From: | Arthur Lee |
| To: | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; |

Honorable John G. Koeltl

  I was walking down the street, minding my own business, when this homeless woman points a knife at me and demands twenty bucks. I give her a twenty and she takes off with her toddler. I am a victim, not her first or her last, but I can say to myself, "well she has a kid to feed, she needs it more than me"

  Likewise I lost a lot of money because of Mashinsky's fraud, but he didn't make me homeless or destitute. But he had no need for my money, He was already a multi-millionaire many times over, his family was well fed, he lived in a luxurious house. He chose to continue to defraud THOUSANDS of others like me with malice.

I hope I can speak for the thousands who did not know a victim impact statement was possible, or for whatever reason they could not speak. Mashinsky harmed many many people, some ruinously, He chose to ruin lives to add meaningless pennies to his already considerable wealth. Thank you,

A.L.

( I am registered under this email, as a creditor of the Celsius bankruptcy)



Virus-free.www.avast.com

| **Date:** | Sat, 19 Apr 2025 8:24:38 PM (UTC) |
| --- | --- |
| **Sent:** | Sat, 19 Apr 2025 8:23:02 PM (UTC) |
| **Subject:** | [EXTERNAL] Victim Impact Statement -United States v. Alex Mashinsky / Celsius Network Fraud |
| **From:** | Corey |
| **To:** | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; |
| **Attachments:** | Victim Impact Statement.docx |

Victim Impact Statement

Re: United States v. Alex Mashinsky / Celsius Network Fraud

Hon. John G. Koeltl, United States District Judge

Your Honor,

My name is Corey Woodruff, and I am writing as a direct victim of the fraud perpetrated by Alex Mashinsky, his executive board, and—as investigations have shown—even members of his own family, including his wife.

What Celsius took from my family wasn't just money—it was years of hard-earned wealth, our financial security, and our trust. I deposited my Bitcoin, Ethereum, and Cardano into Celsius under the belief that it was a legitimate, transparent, and innovative platform. I believed the public promises Alex Mashinsky repeatedly made—that he was building something for the people, not for personal gain. That trust was shattered.

Through deception and manipulation, Mr. Mashinsky and his inner circle funneled our assets into their own hands while knowingly misleading customers about the platform's health and operations. They claimed they were protecting our money while secretly gambling with it—using it to enrich themselves and, ultimately, to steal the future we were working so hard to build for our family.

My family lost a devastating amount of money. But the emotional cost has been just as severe—months of anxiety, sleepless nights, and feelings of powerlessness continue to this day. I carry the shame of watching my family go deeper into debt just to cover the losses. It is not just a financial wound—it is a deep mental and emotional cut that has caused my family great harm.

Mr. Mashinsky did not act alone. His executives—and shockingly, his wife—benefited directly from this fraud. Krissy Mashinsky received millions in CEL tokens, and through her company, USAstrong.IO, mocked victims like myself by selling shirts that said "Un-bankrupt yourself." Meanwhile, they flaunted their wealth with season tickets to the New York Knicks and lavish NYC condos—all paid for with funds stolen from trusting customers.

Your Honor, I respectfully ask that the court impose the maximum sentence permitted under the law—not only for Alex Mashinsky, but as a reflection of the seriousness of what was done to thousands of families like mine. As the digital asset sector continues to grow, the message must be clear: those who abuse trust, lie to the public, and steal through sophisticated fraud schemes must face the full consequences of their actions.

Thank you for the opportunity to be heard.


Respectfully,

Corey Woodruff, Celsius Victim.


--

Corey Woodruff

| **Date:** | Sat, 19 Apr 2025 4:45:26 PM (UTC) |
| **Sent:** | Sat, 19 Apr 2025 4:45:04 PM (UTC) |
| **Subject:** | [EXTERNAL] Victim Impact Statement |
| **From:** | Jeff Duprex |
| **To:** | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; |

Dear Honorable Judge Koeltl,

I am a victim of the Celsius Network bankruptcy, caused by Alex Mashinsky's deliberate deception as CEO, which led to the company's collapse in 2022. I submit this victim impact statement to convey the profound financial, emotional, and physical toll his actions have inflicted on my life, and to urge the Court to consider the severity of his conduct during his sentencing.

Before the collapse, I was a very happy person, having invested my 194 Bitcoin and 1,054 Ethereum with Celsius—assets I worked tirelessly to accumulate over many years beginning in 2014, taking great pride in reaching over 1,000 Ethereum. Doing things like working nightclub security for a extra $80 a night in 2014. Taking my $80 to Brooklyn's Coin Cafe and buying $80 worth of Bitcoin the next morning. In 2021, I was planning my retirement, touring $5,000,000 homes in Miami, Florida. Today, I am barely surviving. The bankruptcy decimated my savings, leaving me with only 0.8 Bitcoin and 700 Ethereum returned in 2024, most of which I've had to sell. Today my holdings would be worth nearly $20,000,000, but instead now I am forced to consider selling my Celsius stub claim for a mere 6-8% of its value, approximately $220,000 just to finally escape this 1,000-day nightmare.

Mashinsky's betrayal was deeply personal. In 2021, I attended a Celsius meetup in New York City, traveling from New Jersey after regulators issued a cease-and-desist order to Celsius. Expecting answers, I found a party atmosphere. I shook Mashinsky's hand, identified myself as a top 20 customer with "all my crypto" on the platform, and asked him about the order. He dismissed my concerns, confirming I was an accredited investor and saying, "Don't worry about it, keep collecting that weekly yield," urging me to "grab some swag on the way out." I left with two Celsius tote bags, reassured, unaware of the devastation to come.          That face-to-face lie haunts me daily.

His deception persisted through weekly "Ask Mashinsky Anything" videos, where he falsely claiming Celsius had liquidity to pay everyone back. Days after a Celsius VIP sent a "Damn the torpedoes" bulletin—lies to deter withdrawals—withdrawals were paused, trapping my assets on the platform, the beginning of the end of my once happy life. Mashinsky's refusal to apologize, his divisive Twitter Spaces brief appearances, and his wife's cruel sale of "UNBANKRUPT YOURSELF" T-shirts—mocking Celsius's "unbank yourself" slogan—added unbearable mental torture. Watching his partner, Nuke Goldstein, move his Ethereum freely on the blockchain while proclaiming his innocence. Meanwhile my 1,054 Ethereum remained locked deepened my despair.

The bankruptcy process itself was another betrayal. Lawyers and advisers, descending like vultures, charged over $144 million in fees, with firms like Kirkland & Ellis billing up to $5.6 million monthly, all drawn from victims' crypto assets. These exorbitant fees, legally siphoning what little remained, felt like being robbed again, compounding the injustice of Mashinsky's fraud.

With no bankruptcy experience, I was unprepared for the chaos—creditors fighting, endless uncertainty—that broke me down mentally. This anguish

I've gone from laughing daily to living in darkness and being bitter. Without my two senior dogs, Bessie & Prince, who saw me through this 1000+ days of hell. Whom I adore and take great care of, I might not even be here still, I may not have even made it this far.

Holding 23,000 illiquid Ionic shares, tied to the bankruptcy, and enduring relentless creditor fighting on X—often over losses far smaller than mine, has pushed me to consider selling my shares for just $5 each to escape the added mental burden already.

Mashinsky's actions were a calculated betrayal, destroying so many lives. At 55, in now poor health mentally and physically, I am forced to try and rebuild from nothing, my health and retirement dreams shattered. I respectfully ask the Court to hold Alex Mashinsky accountable for the immense harm he caused. A strong sentence would affirm that such deceit and indifference are unacceptable and offer justice to victims still suffering.

Thank you for considering my statement and for giving voice to those devastated by Alex Mashinsky's actions.

Sincerely,

Jeffrey Paul Duprex

| Date: | Sat, 19 Apr 2025 10:26:44 PM (UTC) |
|---|---|
| Sent: | Sat, 19 Apr 2025 10:26:26 PM (UTC) |
| Subject: | [EXTERNAL] Re: Mashinsky Victim Impact Statement |
| From: | Lawrence Chip Porter II |
| To: | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >; |

Honorable John G. Koeltl

Mr. Mashinsky very convincing in all of his public speeches, videos, etc. always implied he was working with all government agencies (FDIC) in America. I invested my families entire savings based on his representations. As a result of the fraud my family was financially wiped out ruined. Alex lied every step of the way about his exchange, his cell token, and the safety of the assets on it, regardless of market conditions, all the way to the protection allowed in bankruptcy. He, his assets, and his families assets have been saved by the American bankruptcy laws. Alex's wife, partners, and some employees have benefited from this criminal behavior all with the knowledge of this fraud.

1. Yield (total Fraud) I never bought cryptocurrency for yield Mashinskys AMA sucked us in good!
2. "Safer than the banks" (Fraud) I put everything onto this exchange
3. Loans low interest rate (Fraud) I couldn't reverse my or my families loans and reclaim our cryptocurrency
4. You can retrieve your cryptocurrency 24/7 Retail clawbacks I lost again!
Since I'm in my mid sixties I cannot replace those savings my future is severely impacted by this fraud. In conclusion your honor you should have an upward departure in his sentence and give him substantially more jail time. As you can see we lost all of our assets in every way possible.
Thanking you in advance
Lawrence C Porter II

| Date: | Sat, 19 Apr 2025 4:41:25 PM (UTC) |
|---|---|
| Sent: | Sat, 19 Apr 2025 4:41:03 PM (UTC) |
| Subject: | [EXTERNAL] Celsius Victim Impact Letter |
| From: | SOLDADO |
| To: | Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov>; |

Dear Honorable John G. Koeltl,

I am writing to briefly explain why Alex Mashinsky deserves a lengthy sentence.

I am 65 years old and had a major portion of my retirement savings on his platform, Celsius.
He always assured that my assets were safe and loans were over collateralized, which was a lie, FRAUD.
His actions have drastically changed the dynamics of my retirement.

In addition, and sadly, I advised more than several friends to put their assets on his platform.
A few of them have lost their entire life savings.
I feel terrible about that and would like to see Alex pay the price for deceiving so many people.

In summary, Alex has shown absolutely NO remorse for how many lives he has destroyed all while living in a Manhattan Penthouse.
It is outrageous.
Alex Mashinsky deserves the MAXIMUM sentence allowable.

Thank you for your time and consideration.

Best regards,
Roger Alan

Honorable John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse, Courtroom 14A
500 Pearl St.
New York, NY 10007-1312

**Dear Judge G. Koeltl,**

      I am writing as a victim, investor, and user of Celsius Network to provide my perspective on Alex Mashinsky and the company's collapse. For the past five years, I have supported creditors by analyzing bankruptcy filings and engaging with former employees to understand the events that transpired.

I respectfully request leniency for Mr. Mashinsky for several reasons. First, as part of his plea deal, he has committed to returning all earnings, resulting in personal financial losses greater than those of creditors. Second, while he has pleaded guilty and bears responsibility as CEO, the extraordinary macroeconomic environment, his clean criminal record, his proven entrepreneurial track record, and the challenges of operating a startup in an unregulated industry that attracted both innovation and rampant speculation should be considered. Additionally, Mr. Mashinsky has faced significant public shaming, social stigma, and threats of violence against his children and his wife's business, compounding the consequences of his actions.

## Macroeconomic Context

The collapse of Celsius Network must be viewed in the context of the economic turmoil of 2022. The war in Ukraine disrupted global trade, rampant inflation gripped markets, and the Federal Reserve raised interest rates to levels not seen since the 1990s. These conditions severely impacted the speculative and often manipulated cryptocurrency industry, contributing to the downfall of multiple banks and crypto firms.

## My Experience as a Celsius User

As an informed user of Celsius Network, I closely monitored the company's practices, read the Terms of Service, and actively managed my investments. This diligence allowed me to withdraw most of my funds during the Luna collapse. However, even I could not anticipate the extent of Mr. Mashinsky's overly optimistic statements and borderline misrepresentations, which contributed to his current legal situation and guilty plea.

## Causes of the Collapse

Contrary to some claims, Mr. Mashinsky did not steal assets. The collapse stemmed primarily from two counterparties: Equities First Holdings (EFH) and Tether. Celsius took a loan from EFH secured by Bitcoin, but when the loan was repaid, EFH failed to return the collateral, resulting in a loss of $361 million and 3,765 BTC (valued at approximately $331 million at $88,000 per BTC). Separately, Tether issued margin calls on an $841 million loan during the Luna collapse. After Celsius exhausted its liquidity, Tether liquidated the collateral, destroying 57,400 BTC (worth $5.05 billion today). These events, combined with inadequate risk management and due diligence, led to the company insolvency.

## Could Bankruptcy Have Been Avoided?

In hindsight, Celsius financial mismatch at the time of filing, coupled with violations of state laws, made bankruptcy unavoidable. Had tougher decisions been made in late 2021 or had shareholders aligned to support the company, Celsius might have survived and returned assets in full. I believe Mr. Mashinsky, with his experience today, would make those difficult decisions.

## A Case for Leniency

While Celsius collapse caused significant losses, particularly for Bitcoin holders, shareholders, and borrowers, despite his mistakes, Mr. Mashinsky was, at times, the more conservative voice in an industry overflowing with unchecked greed.

His contributions as an entrepreneur and his potential to create value in the U.S. tech sector remain significant. Incarceration would not serve as well as enabling him to rebuild and repay that debt through productive work and restitution.

I believe Mr. Mashinsky's remorse, his willingness to give all he earned for his years of work in Celsius Network, and his capacity to drive innovation warrant leniency.

**Sincerely,**

*Artur Abreu*

Artur Abreu

**Date:**      Sun, 20 Apr 2025 9:58:16 PM (UTC)

**Sent:**      Sun, 20 Apr 2025 9:57:48 PM (UTC)

**Subject:**   [EXTERNAL] Alex Mashinsky Case 1:23-cr-00347-JGK Victim Impact Letters

**From:**      Janell Eckhardt

**To:**        Olsen, Wendy (USANYS) <Wendy.Olsen@usdoj.gov >;

Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007
Dear Judge Koeltl,

I am one of the many victims who was defrauded by Alex Mashinsky. His defense team included letters of support for him and the Celsius Network platform in his 4/17 "Sentencing Memorandum of Alex Mashinsky" (Doc 136). Although you may not know this, a large majority of the excerpts in that document were written by former employees and ambassadors, both of whom received rewards benefiting from his deception and crimes.

In the almost 3 years since Celsius Network collapsed in mid-2022, Mashinsky's former customers have endured a great deal of suffering awaiting discovery of the events which led to its demise, over the uncertainty of the fate of their recoveries, the potential threat of individual preference exposure litigation, and awaiting justice. This was only made worse witnessing Sam Bankman Fried receive swift punishment for committing similar crimes, then having endure Alex Mashinsky and his lawyers manage to delay his case more than a year past this.

The lengthy bankruptcy process exhausted many Celsius victims, who had initially hoped for a fair recovery of their remaining assets. Celsius creditors flooded the court docket with their individual pleas, desperate about the prospect of losing a large portion of their life savings, angry at themselves for being deceived/defrauded by Mashinsky, and ashamed for involving close family and friends in the company. Although numerous customers had alleged wrongdoing by Mashinsky in the early days of the bankruptcy, little evidence of his crimes surfaced until the Examiner's Report of Ms. Shoba Pillay offered a small insight into the scale of his fraud in detail on 1/31/23.

It's unlikely that many of those who took the time to write letters to Bankruptcy Court Judge Glenn pleading their case will take the time to rehash such a painful experience and submit a Victim Impact Statement for Mashinsky's criminal proceedings. However, I am concerned that if you do not consider the letters they filed on the bankruptcy court docket, you will be unable to completely comprehend the scope of Mashinsky's fraud and the devastation it caused to hundreds of thousands of people worldwide. These customers took the time to share the impact it had on their lives, albeit in a civil court proceeding. I believe this information is highly relevant to your sentencing decision. **Therefore, I have provided relevant hyperlinks to the 400+ Pro-Se letters filed on the Celsius civil bankruptcy docket detailing personal situations, each of which you can click on below.** I submit these documents as Victim Impact Statements on their behalf, should they choose to not file their own in this criminal proceeding.

Please don't let their personal stories be lost and denied justice. Mashinsky's defense team minimized his fraud to simple "misdeeds", which I assume is because he only plead to two of the lesser of the seven indictment charges attempting to portray him as anything other than as someone who willfully defrauded over 600,000 of his own customers.

Sincerely,
Janell Eckhardt
**Letters #1-25 (Pre-Examiner's Report 7/13/22 - 1/31/23)**
Doc 41: Kim Sung Ik
Doc 49: David Little

Doc 50: Duk J Chang
Doc 51: Kyle Drey
Doc 52: Travis Keeney
Doc 64: Daniel Frishberg
Doc 65: Samuel Degregori
Doc 66: Dennis Gendreau
Doc 67: James DeWalt
Doc 68: Ashar Qureshi
Doc 69: H. Mitton
Doc 71: Michael Conlon
Doc 72: Erik Mendelson
Doc 74: Brian Gershater
Doc 75: Immanuel Herrmann
Doc 78: Tyler Fitzpatrick
Doc 79: Al Walt
Doc 82: Caleb Culver
Doc 83: Lior Sela
Doc 84: Nghiem B. Nguyen
Doc 85: Romuald Tendille
Doc 86: Mario Foti
Doc 87: Benno Meier
Doc 89: Joseph Giarrusso
Doc 90: Jason Pukalo
**Letters #26-50**
Doc 91: Daniel Wiener
Doc 92: Om Shrestha
Doc 94: Ram Sar
Doc 95: Jens Deweirt
Doc 99: Moustafa Mohamed
Doc 100: Danielle Raabe
Doc 101: Petri Tuomela
Doc 102: Sean Russell
Doc 103: Mark Hide
Doc 104: Thi Khoi Anh Phan
Doc 107: Adam Elias
Doc 108: Stanley Nasraway
Doc 109: Andrew M. Jarrett
Doc 110: Joel Kaiser
Doc 111: Robert Cincotta
Doc 112: Pavitra Malhotra
Doc 113: Adrian Roman
Doc 114: Elizabeth Weiss
Doc 115: Tom Behrens
Doc 116: Mike Davis Hale
Doc 117: John F. Huber
Doc 118: Sainath Koppula
Doc 119: Mark Finelli
Doc 120: Brandon Lipin
Doc 121: William Ennis
**Letters #51-75**
Doc 123: Kevin Vong
Doc 124: Stephen Richardson
Doc 125: Sean Moran

Doc 126: Robert J. Cominos
Doc 127: Harold Kevin Montford
Doc 128: Nicolaas Koedijk
Doc 129: Felipe Lordelo
Doc 130: Dr. Emil Kohan
Doc 131: Robert Palmiter
Doc 132: Families of Jacobus, Ellen, Mien, & Romain Delano Uljee
Doc 133: Jeffrey Stangeland
Doc 134: Gilbert Castillo
Doc 135: Rabeca Madsen
Doc 136: Rebecca Gallagher
Doc 137: Yongsoon Kim
Doc 138: Brandon Lentz
Doc 139: Daniel Karna
Doc 140: Robert Shaw
Doc 141: Vito Bruno
Doc 142: Stephen Bralver
Doc 143: Ravi Abuvala
Doc 144: Darren Gough
Doc 145: Andrew Dochterman
Doc 146: Robert Steele
Doc 147: Ramon van Vught
**Letters #76-100**
Doc 148: Coltyn Seifert
Doc 149: Nolan Hemmings
Doc 150: Chris De Young
Doc 151: David Heron
Doc 152: Xavier Rubio
Doc 153: Pablo Sturm Hernandez
Doc 154: Jonathan Rabroker
Doc 155: Liam Waddell
Doc 156: Paul R. West
Doc 158: Bruno Fernandes
Doc 159: Daniel Johnson
Doc 160: Brian Kasper
Doc 161: Brad Ungar
Doc 162: Larry F.
Doc 163: Chapman Shallcross
Doc 165: James Mattingly
Doc 166: Abel P. Garza
Doc 167: Russell Ferrier
Doc 168: Celeste Stephens
Doc 169: Katherine B. Eykamp
Doc 170: Roger Perez
Doc 171: Todd J. Hills
Doc 172: Dr. Con Tsonis
Doc 173: Amanda Gan
Doc 175: Ben Hughes
**Letters #101-125**
Doc 176: David Ollerhead
Doc 177: Christian Bleech
Doc 178: Alan Comerford
Doc 179: Merilou Athens-Barnekow

Doc 180: Nate C.
Doc 181: V. Elizabeth Ryan
Doc 182: Alexander Peter Simmons
Doc 183: Timothy Traywick
Doc 184: Christopher Winter
Doc 193: Christopher Szuba
Doc 194: Jon Dimetros
Doc 195: Thomas Bull
Doc 196: Atanas Petrov
Doc 197: Chuang Chin Tuan
Doc 198: Katie & Christopher Davis
Doc 199: Erin Marie
Doc 200: Leroy Hardman
Doc 201: Martin Hannah
Doc 202: Immanuel Herrmann
Doc 203: Quintin McClellan
Doc 204: John Doe
Doc 205: Kon Sevastopoulos
Doc 206: Charles M. Atanasio
Doc 207: Fred Phillips
Doc 208: Alexander Kitayev
**Letters #126-150**
Doc 209: Richard Oswald
Doc 210: Thomas Guzman
Doc 211: Derrick Schommer
Doc 212: Mark Escondido
Doc 213: Vatsal Sinha
Doc 214: Dierk Eckart
Doc 215: Matthew W. Marcus
Doc 216: Wouter J. Lipsius
Doc 217: Paul Chiapuris
Doc 218: Donald Angle
Doc 219: Frank Overbeek
Doc 220: Dennis Gendreau
Doc 221: Kimberly Bovee
Doc 222: Richard Greenleaf
Doc 223: Chase Marsh
Doc 224: James C. Irwin
Doc 225: Paolo Valdez
Doc 226: Tibor Dencs
Doc 227: J. Freires Abuin
Doc 228: Ruben Husu
Doc 229: Mata Kaminskas
Doc 230: Austin J. Thesing
Doc 231: Julian
Doc 232: Jeffrey Zats
Doc 233: Rob Blaze
**Letters #151-175**
Doc 235: Israel Ochoa
Doc 236: Gabriela Gonzalez
Doc 237: Arthur Palmer
Doc 238: Michael Cortes
Doc 239: Ariel Hensel

Doc 240: Donovan Gregoire
Doc 242: Courtney Schoenfeld
Doc 243: Uday Patel
Doc 244: J. E. M.
Doc 245: James Murrow
Doc 247: Salvador Montoro Goethe
Doc 248: Junho Jang
Doc 249: Hui (Peng) Murrow
Doc 250: Luke Orr
Doc 251: Edmundo Lopez
Doc 252: Jonathan Dennison
Doc 253: Ohmny Romero
Doc 255: Avi
Doc 257: John D. Dalisay
Doc 259: Dalena
Doc 260: Edouard C.
Doc 261: Christopher La Marca
Doc 262: Matthew Allen Heffington
Doc 263: Ahmad Jamali
Doc 264: Harry Lehman

**Letters #176-200**

Doc 266: Iulian Cojocaru
Doc 267: Joseph Lundquist
Doc 269: Zack Kaplan
Doc 270: James Clifford
Doc 271: Josef David & Family
Doc 272: George Fite
Doc 273: Brandon Liljenquist
Doc 274: Humberto Fuenmayor
Doc 275: Alexandre Morzy
Doc 276: Benjamin Ireland
Doc 278: Terence Delaney
Doc 279: Paul Niehe
Doc 282: Lucas Holcomb
Doc 283: Sandro Gatillo
Doc 284: Terry Delaney
Doc 285: Emmanuel Gael Grand
Doc 287: Jeffrey Zats
Doc 288: Mark Riegen
Doc 290: Paresh Puhan
Doc 291: Scott Bonora
Doc 292: Edwin Rainbow
Doc 293: Kyle Stone
Doc 306: Maria Dan
Doc 307: Karen Mclain
Doc 308: Chris Hinrichs

**Letters #201-225**

Doc 309: Chris Simpson
Doc 310: Yoonjung Oh
Doc 311: Hayden Smith
Doc 312: Dr. JD Beal
Doc 313: James Greenleaf
Doc 314: Karina Sudyatmiko
Doc 315: Maximilian Frederick
Doc 316: Richard Thomas
Doc 317: Gregory

Doc 318: Jin Y. Kim
Doc 319: Travis Rodgers
Doc 320: Ellen A. Smith
Doc 321: Jeanne Y. Savelle
Doc 322: Ralphael DiCicco
Doc 323: Christian Ostheimer
Doc 324: Kevin Nguyen
Doc 325: Amelia Wijaya
Doc 326: Edward Dupay
Doc 327: Jeffrey Cancilla
Doc 328: Jose Beltran
Doc 329: Herbert G. Holroyd
Doc 333: Lindsey Derence
Doc 339: Kiyomi Kaneda
Doc 340: Chris Greenleaf
Doc 341: Kirk Embrey

**Letters #226-250**

Doc 345: Yago Sousa
Doc 346: Joe Rubin
Doc 347: Chris Romska
Doc 348: Christopher Brown
Doc 353: Aldana Porco
Doc 354: Chris Stillwell
Doc 355: Johan Bronge
Doc 356: Andrew Evelyn
Doc 366: Harold M. Lott
Doc 369: Unknown German Creditors
Doc 370: Craig McGarrah III
Doc 383: James Liepa
Doc 386: Thomas A. Hall
Doc 387: Liew Eng Chuan
Doc 388: Khaled Abolnaga
Doc 395: Nai San
Doc 396: Lisa Jenkins
Doc 397: Bonnie Petrenko
Doc 398: Christine Marcy
Doc 403: Guy & Melissa Guglielmi
Doc 405: Brandon Lawrence
Doc 406: Miguel Alvarado
Doc 407: Marco Romano
Doc 408: Jefferson Nunn
Doc 419: Dr. John Romano

**Letters #251-275**

Doc 420: Dale Butterworth
Doc 421: Brian Manson
Doc 422: Luc Berard
Doc 424: Aaron Smith
Doc 434: Bradley Mackler
Doc 435: Joseph Hendrickson
Doc 439: Thomas Joseph Pick
Doc 449: Sung Ik Kim
Doc 450: Paul Goodman
Doc 451: Wilson Galucho
Doc 452: Konstantinos Katraouras
Doc 456: Robert Beall
Doc 458: Faisal Sheikh

Doc 460: Faisal Sheikh (2nd letter)
Doc 461: Manuel Basile
Doc 475: L. Anne Yeilding
Doc 476: Alexander Barak
Doc 477: Sebastian Aroca
Doc 478: Nolan Hemmings
Doc 480: Rocco Maltese
Doc 481: Shikher Bisaria
Doc 482: Sam Stuart
Doc 484: Ricardo Hiraldo
Doc 485: Larry Berkowitz
Doc 486: Tarek  Ben Moussa
**Letters #276-300**
Doc 487: Matthew Praizner
Doc 488: Angela Wagner
Doc 489: Martin Niemi
Doc 490: Majid Ghanadi
Doc 491: Patrick Bryant
Doc 493: Abraham Bruck
Doc 494: Qingsong Yang
Doc 495: Chase Marsh (2nd letter)
Doc 496: George Rucker
Doc 497: Claudia Carstensen
Doc 498: Dan Waltz
Doc 501: Brad Gamble
Doc 502: Ilanit Megidesh
Doc 503: Rene Vargas
Doc 504: Vincent Walters
Doc 507: David Mautz
Doc 508: Roshandip Singh
Doc 509: Roshandip Singh (2nd letter)
Doc 510: Roshandip Singh (3rd letter)
Doc 511: Sebastian Aroca (2nd letter)
Doc 512: Carol Becht
Doc 515: Benjamin Murken
Doc 516: Jack Gibbs
Doc 529: Terrance  Lade
Doc 530: Michael Ovadia
**Letters #301-325**
Doc 531: Nikhil Suri
Doc 533: Joyce Elaine Dibble
Doc 534: Tom Anusic
Doc 535: Brian Manson
Doc 536: Ian A. Watkins
Doc 541: Jack Monteleone
Doc 543: David Pieronowski
Doc 548: Ardianty Nababan Sheeler
Doc 552: Muhammad Shiraz Shafqat
Doc 554: Jessica Woo
Doc 555: Gary Neville
Doc 556: Shawn Campbell
Doc 557: Adam Gabriel
Doc 558: Victor B. Brankovich
Doc 559: Matthew Whitington
Doc 560: Mark Finelli
Doc 561: Chase Marsh (3rd letter)

Doc 562: Jesse Grunther
Doc 563: Samuel Martin
Doc 564: Mohamed Lokman Bin Mohd Yusof
Doc 565: Robert Riskin
Doc 566: Rishi Arya
Doc 567: Coreen Doucett
Doc 568: Richard Randall
Doc 569: Liew Eng Chuan
**Letters #326-350**
Doc 571: Curt Dell
Doc 572: Kas Jaz
Doc 573: Wesley Chang
Doc 575: Mike Keijer
Doc 582: Michael Conlon (2nd letter)
Doc 583: Jose Beltran (2nd letter)
Doc 584: Larry Fulton
Doc 586: Georges Georgiou
Doc 589: Dennis Capps
Doc 598: Juan Guerrero
Doc 611: Dr. Nicholas Weaver (amicus letter)
Doc 623: Michael Fertik
Doc 644: Heidi E. Newell
Doc 646: Carlo Garofalo
Doc 648: D. Tedesco
Doc 650: Jason Mayhew
Doc 652: Franco Serratore
Doc 653: Diana Houston
Doc 654: Leiah Fernandez
Doc 658: Fantesini Barbara
Doc 659: Alfred C. Alspach, III
Doc 660: Thierry Henry
Doc 661: Robert Sieg
Doc 675: Audun
Doc 680: Raymond Kessler
**Letters #351-375**
Doc 681: Joseph Mascia
Doc 689: Brian Green
Doc 690: Jeffrey W. Danese
Doc 691: Jovita K. Alphonse
Doc 969: Marc P. Schweizer
Doc 698: Dave Morton
Doc 701: Wesley Chang
Doc 703: Dustin Hatzenbeller
Doc 704: Robert Kaufmann
Doc 705: Christopher Rocke
Doc 706: Bruce DeCosta
Doc 707: Unknown Creditor
Doc 708: Michael Tarsi
Doc 721: Martin Williams
Doc 722: Jonathan Boldt
Doc 723: L. Anne Yeilding (2nd letter)
Doc 726: David Fahey
Doc 728: Mykola Meshkalov
Doc 731: L. Anne Yeilding (3rd letter)
Doc 738: Andreas Kumar
Doc 739: Corey D. Dahlquist

Doc 740: Dean & Cheryl Pick
Doc 741: Virginia Harry
Doc 744: Rahul Wadhwa
Doc 770: L. Anne Yeilding (4th letter)
**Letters #376-400**
Doc 796: Kevin E. Daugherty
Doc 797: Rasika Harshey
Doc 835: Marc Herouard
Doc 902: Johan Bronge (2nd letter)
Doc 905: James W. Snider
Doc 913: Travis Rodgers
Doc 1062: James Steven Liepa
Doc 1069: Natasha Ramsoomair
Doc 1076: Susan Kendall
Doc 1162: Damien Raymond
Doc 1249: Thomas A. Hall
Doc 1264: Akass Ijaz
Doc 1374: Jarno Oberg
Doc 1554: Tendille Romuald
Doc 1618: Thomas A. Hall (2nd letter)
Doc 1657: Tendille Romuald (2nd letter)
Doc 1659: Tendille Romuald (3rd letter)
Doc 1697: David Dalhart
Doc 1768: Brock Johnson
Doc 1769: Suzanne Kleiman
Doc 1781: Thomas Kanschat
Doc 1839: Godfrey Thomson
Doc 1854: Long Ngo
Doc 1885: Ryan Chilia
Doc 1891: Travis Cleary
**Letters #401-413 (Post-Examiner's Report 1/31/23 - Emergence 1/31/24)**
Doc 1980: Jon Dimetros (2nd letter)
Doc 2029: Jon Kokanovich
Doc 2144: George Romanacce
Doc 2206: John Root
Doc 2217: Greg Torrance
Doc 2221: Edward Morgan
Doc 2286: Emmanuel Gael Grand (2nd letter)
Doc 3533: Michael D. Windom
Doc 3538: James Johantgen
Doc 4190: Georgios Krasadakis
Doc 4209: Tom Mercuri
Doc 4221: Pawel Bednarek
Doc 4225: Thomas Pelletier