White & Case LLP
555 South Flower Street
Suite 2700
Los Angeles, California 90071-2433
T +1 213 620 7700

whitecase.com

April 22, 2025

The Honorable Judge John G. Koeltl
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**USA v. Mashinksy et al. (Case No. 23-00347) – Statement of the Litigation Administrator for Celsius Network LLC**

Dear Judge Koeltl,

My firm represents Moshin Meghji, in his capacity as the Litigation Administrator for the bankruptcy estates of Celsius Network LLC and its affiliated debtors (the "**Debtors**" or "**Celsius**").[1] The Litigation Administrator is a fiduciary for the Debtors' creditors, who are almost exclusively Celsius account holders who were the victims of Mr. Mashinsky's fraud.

Mr. Meghji has filed a number of lawsuits in his capacity as Litigation Administrator seeking to recover and distribute amounts for the benefit of Celsius' creditors.  One such lawsuit is a civil suit against Mr. Mashinsky and several other former directors and officers of Celsius asserting claims for, among other things, breach of fiduciary duty, avoidance of actual and constructive fraudulent transfers, avoidance of preferential transfers, fraudulent misrepresentation, violation of various state consumer protection statutes, and equitable subordination of the defendants' claims against the Debtors.  That lawsuit is styled *Meghji v. Mashinsky, et al.* (Adv. Pro. No. 24-03667) (MG) and is currently proceeding before the Honorable Chief Judge Martin Glenn in the United States Bankruptcy Court for the Southern District of New York.[2]

The purpose of this letter is to provide the Court with an accurate picture of the financial damage caused by Mr. Mashinsky's wrongful and illegal conduct.

As the Court is aware, Celsius was a cryptocurrency company that, among other things, allowed its customers to (1) earn return on the cryptocurrency assets deposited with Celsius in the form of weekly rewards, (2) take loans secured by their cryptocurrency assets deposited with Celsius, and (3) custody their cryptocurrency assets with Celsius.  Mr. Mashinsky advertised that Celsius was "safer than a bank" and responsibly invested its customers assets in low risk, market neutral investment strategies and fully collateralized loans.  He advertised that, unlike banks, Celsius

---

[1] Docket numbers referenced in this statement refer to the main docket in the jointly administered chapter 11 cases of Celsius Network LLC and its affiliated debtors (the "**Debtors**" or "**Celsius**") which are styled *In re Celsius Network LLC, et al.* (Case No. 22-10964 (MG)).

[2] Certain defendants in that proceeding have moved to withdraw the reference of the adversary proceeding to the United States District Court for the Southern District of New York.  That Motion is currently pending before the Honorable Dale E. Ho under Case No. 25-cv-1414-DEH.

passed 80% of its net revenue to its customers through weekly rewards. These promises were repeated by Mr. Mashinsky *ad nauseum* to convince retail customers to transfer their assets to Celsius. Each such promise is demonstrably false.

Mr. Mashinsky also orchestrated a yearslong scheme to mislead the public, specifically retail investors, about the market value of Celsius' cryptocurrency token, the CEL token. He did so by causing Celsius to spend hundreds of millions of dollars of customer assets to purchase CEL token in the market to inflate the price of the token. At the same time, Mr. Mashinsky sold tens of millions of dollars of his personal CEL Tokens at manipulated prices to the unsuspecting public and granted himself and his fellow officers and employees lavish bonuses on account of the rising, manipulated price of CEL Token. Together, the manipulation of the CEL token, reckless investment decisions, and other staggering losses that occurred under Mr. Mashinsky's direction and control caused Celsius to have billions less in assets than it owed its retail customers.

Celsius financial weakness was uncovered in the spring of 2022, when turmoil in the cryptocurrency market caused a "run on the bank." Celsius paused all withdrawals on June 12, 2022 and filed for chapter 11 bankruptcy on July 13, 2022 (the "**Petition Date**").

On the Petition Date, over 600,000 individuals and entities held claims against Celsius on account of cryptocurrency they had entrusted to Mr. Mashinsky and Celsius. Approximately 290,000 of those individuals and entities had accounts with more than $100 of cryptocurrency. Mr. Mashinsky previously estimated Celsius had $5.3 billion in liabilities when Celsius filed for bankruptcy.[3] *See Declaration of Alex Mashinsky, Chief Executive Officer of Celsius Network LLC, in Support of Chapter 11 Petitions and First Day Motions* [Bankr. Dkt. No. 23] ("**Mashinsky Declaration**").

In his Sentencing Memorandum, Mr. Mashinsky cites his own declaration filed in the chapter 11 cases as evidence that "[a]t the time of the bankruptcy filing in July 2022, Celsius had approximately $4.13 [sic] billion in available assets that could have satisfied the vast majority of the company's approximately $4.72 billion in customer liabilities on that day." *Sentencing Memorandum of Alexander Mashinsky* [Dkt. No. 136] at 36 (citing Mashinsky Decl. at 7). That statement false for several reasons. First, Mr. Mashinsky ignores the $600 million in other customer and counterparty liabilities to which he previously testified, including $210 million of retail customer liabilities related to CEL Token balances[4] and $390 million of other unsecured debts of Celsius. Mashinsky Decl. ¶ 16. As stated above, per Mr. Mashinsky's previous testimony the approximate dollar amount of claims against Celsius on the Petition Date, not counting custody obligations, was $5.3 billion.

Second, Mr. Mashinsky significantly overstates the value of Celsius' assets on the Petition Date. For instance, he ascribes $600 million to Celsius' CEL Token holdings. The Bankruptcy Court,

---

[3] Not including the $180 million of cryptocurrency assets Celsius held in custody for certain of its customers.

[4] Mr. Mashinsky appears to use the Petition Date market price of CEL Token to calculate the dollar value of CEL token claims against Celsius. The Bankruptcy Court found "that the $0.81 Petition Date price was not indicative of CEL's value." CEL Token Opinion at 14. It approved a settlement that valued each CEL Token claim at $0.25 per CEL Token. *Id.* The total CEL Token obligations based on the settlement price is approximately $65 million.

The Honorable Judge John G. Koeltl
April 22, 2025

WHITE & CASE

however, held that the CEL Token only had speculative value on the Petition Date and found that because of the "extensive evidence of fraud allegedly perpetrated by Alex Mashinsky and others . . . attempting to place any speculative value on CEL on the Petition Date is completely unwarranted." *Corrected Memorandum Opinion Approving the CEL Token Settlement and Resolving Issue of Collateral Ownership in the Modified Joint Chapter 11 Plan of Celsius Network and Its Debtor Affiliates* [Bankr. Dkt. No. 4089] (the "**CEL Token Opinion**"). Similarly, Mr. Mashinsky testified that Celsius' Bitcoin mining assets were worth $720 million on the Petition Date. Mashinsky Decl. ¶ 16. But at the outset of the chapter 11 cases, the Debtors conducted a thorough marketing process for their mining assets, which resulted in three bids, (1) a cash bid of approximately $10 million and (2) two unactionable bids based on total enterprise values of approximately $175 million and $300 million. *See Notice of Filing Confirmation Hearing Transcripts* [Bankr. Dkt. No. 3881] at 369-370 (testimony of Ryan Kielty, Centerview Partners). Assuming the $175 million bid for the mining company was actionable (it was not) and the CEL Token was worthless (it was), **on the Petition Date, Celsius had $1.3 billion less assets than it owed its customers and creditors**. The reality is much worse, as that assumed amount does not account for the overstated value Mr. Mashinsky attributed to Celsius' outstanding loans ($620 million), which were nearly all non-performing and in default and $270 million in assumed value from other opaque venture investments, which have largely turned out to be worthless.

Third, contrary to Mr. Mashinsky's statement in his sentencing brief, very few of Celsius' assets were "available" on the Petition Date. Rather, those assets consisted of illiquid loans to uncreditworthy counterparties, risky investments in other crypto ventures, and unfinished, capital intensive Bitcoin mining operations. A large part of Celsius' purportedly distributable cryptocurrency was also held in staked Ethereum, which was illiquid on the Petition Date and only became liquid nearly a year later due to an upgrade to the Ethereum blockchain that was outside of Celsius' control.

Celsius' bankruptcy cases lasted over a year and a half, during which time the retail account holders that were defrauded by Mr. Mashinsky did not have access to their cryptocurrency assets. Undoubtedly, the numerous victim statements submitted to this Court describe the hardship Mr. Mashinsky's fraud caused to Celsius' customers.

Ultimately, the Debtors confirmed a plan of reorganization that provided for the court-approved scheme to equitably distribute the Debtors' assets to creditors and the creation of a new Bitcoin mining company. *See Modified Joint Chapter 11 Plan of Reorganization of Celsius Network LLC and Its Debtor Affiliates (Conformed for MiningCo Transaction)* [Dkt. No. 4289] (the "**Plan**"). Creditors received four things under the Plan: (1) Bitcoin, Ethereum or US dollars, (2) stock in the Bitcoin mining company, (3) rights to the proceeds generated from the liquidation of Celsius' remaining illiquid assets, and (4) rights to receive future proceeds from litigation brought on their behalf, including the civil claims brought against Mr. Mashinsky. To be clear, Mr. Mashinsky had no role developing the Plan.

The Debtors estimated that the value available to creditors that participated in Celsius' Earn program (the vast majority of all creditors), prior to accounting for litigation proceeds and costs of monetizing illiquid assets, would result in those creditors receiving an approximately 79.2%

recovery on account of their dollarized claim amount (57.9% in cryptocurrency and 21.3% in illiquid stock and recovery rights). *See Notice of Effective Date* [Bankr. Dkt. No. 4298] at 12. The shortfall from the total claims held by retail holders and their estimated recovery under the Plan was more than $1 billion dollars on the effective date of the Plan.

The Bankruptcy Code requires claims against a debtor to be valued in U.S. dollars on the Petition Date. 11 U.S.C. § 502(b). But Celsius had an obligation to return the deposited cryptocurrency assets (plus promised rewards) to its customers. If Celsius' obligations to account holders on the Petition Date were valued using cryptocurrency prices as of April 1, 2025, such obligations, excluding promised rewards, would total approximately $12 billion and the deficiency against what was distributed would be approximately *$7 billion.*

In conclusion, the financial toll of Mr. Mashinsky's illegal conduct is immense. It has caused hundreds of thousands of victims immeasurable emotional and financial hardship. Far from "indicat[ing] Alex's . . . commitment to [Celsius'] customers. . . ," Celsius' chapter 11 cases and Mr. Mashinsky's sentencing memorandum demonstrate his wanton and continued disregard for (1) the truth, (2) his responsibility to safeguard the hard-earned money entrusted to him, and (3) unwillingness to accept responsibility for his actions.

We will be present at the sentencing hearing and available to answer any of the Court's questions about the foregoing or the chapter 11 proceedings.

Sincerely,

**Aaron Colodny**

E aaron.colodny@whitecase.com