

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 29, 2023

Asheesh Goel, Esq.
Mark Filip, Esq.
Zachary Brez, Esq.
Robert Allen, Esq.
Allison Lullo, Esq.
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

    Re:    **Celsius Network LLC**

Dear Counsel:

    On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will not criminally prosecute Celsius Network LLC, Celsius Network Limited, and their affiliated entities listed as debtors in the Chapter 11 bankruptcy Case No. 22-10964 (MG) (together, "Celsius") for any crimes (except for criminal tax violations, as to which this Office cannot and does not make any agreement) related to a scheme to defraud investors in Celsius by (1) making false and misleading statements about the degree of risk to which those investors' funds were exposed through Celsius's yield-generating activities, and (2) manipulating the market price and volume of CEL to give investors the impression that CEL was more valuable and liquid than it actually was, during the period from approximately 2018 to June 2022. This conduct is described more fully in the Statement of Facts attached hereto as Exhibit A and incorporated herein by reference.

    Moreover, if Celsius fully complies with the understandings specified in this agreement, no information provided by or on behalf of Celsius or any testimony given by any then-current employees at the request of this Office (or any other information directly or indirectly derived therefrom) will be used against Celsius in any criminal tax prosecution. This Agreement does not provide any protection against prosecution for any crimes except as set forth above, and applies only to Celsius and not to any other identities or individuals except as set forth herein. Celsius expressly understands that the protections provided to Celsius by this agreement shall not apply to any successor entities, whether the successor's interest arises through a merger or plan of reorganization, unless and until such successor formally adopts and executes this Agreement. The protections arising from this Agreement will not apply to any purchasers of all or substantially all of the assets of Celsius, unless such purchaser enters into a written agreement, on terms acceptable to this Office, agreeing in substance to undertake all obligations set forth in the Continuing Obligation to Cooperate paragraphs.

### Continuing Obligation to Cooperate

Celsius acknowledges and understands that the cooperation it has provided to date in connection with a criminal investigation by this Office, and its pledge of continuing cooperation, are important and material factors underlying this Office's decision to enter this Agreement. Specifically, Celsius acknowledges and understands that for a period of many months at the beginning of this Office's investigation, Celsius's cooperation was insufficient to earn credit based on the factors set forth in the Principles of Federal Prosecution of Business Organizations (Justice Manual § 9-28.000 *et seq.*). After this Office brought, among other things, Celsius's failure to make timely disclosure of relevant facts, including its slow pace of document production and non-production of relevant documents, to the attention of the Special Committee in or about February 2023, the Special Committee effected a change of counsel, and Celsius's cooperation dramatically improved.

It is understood that Celsius shall cooperate fully with this Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts until the date upon which all investigations and prosecutions arising out of such conduct are concluded. At the request of this Office, Celsius shall also cooperate fully with other United States law enforcement and regulatory authorities and agencies in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and any other conduct under investigation by this Office. Celsius's cooperation pursuant to this Paragraph is subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine. It is further understood that Celsius shall commit no crimes whatsoever. Moreover, any assistance Celsius may provide to federal criminal investigators shall be pursuant to the specific instructions and control of this Office and designated investigators.

### Acceptance of Responsibility

It is understood that Celsius accepts and acknowledges as true the facts set forth in the Statement of Facts attached as Exhibit A.

### Restitution and Remedial Obligations

Celsius acknowledges and understands that this Office will not impose a fine, nor seek forfeiture of Celsius's assets to provide for restitution of the victims of the fraud described in Exhibit A, in light of Celsius's remedial efforts to maximize recovery for victims in connection with the bankruptcy proceedings.

### Additional Obligations

It is understood that, should Celsius commit any crimes subsequent to the date of signing of this Agreement, or should it be determined that Celsius has given false, incomplete, or misleading testimony or information, or should Celsius otherwise violate any provision of this Agreement, Celsius shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including perjury and obstruction of justice. The running of the

2023.02.10

statute of limitations with respect to any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement shall be tolled from the date hereof until the aforementioned period of cooperation has expired. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any such prosecution that is not time-barred on the date that this Agreement is signed, to the extent set forth above.

It is understood that if it is determined that Celsius has committed any crime after signing this Agreement or has given false, incomplete, or misleading testimony or information, or has otherwise violated any provision of this Agreement; (a) all statements made by Celsius to this Office, the SEC, the CFTC, or other designated law enforcement agents, and any testimony given by any then current officer, agent or employee of Celsius before a grand jury or other tribunal; whether prior to or subsequent to the signing of this agreement, and any leads from such statements or testimony shall be admissible in evidence. in any criminal proceeding brought against Celsius; and (b) Celsius shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting or regulatory authority other than this Office. This Office will, however, bring the cooperation and remedial actions of Celsius to the attention of other prosecuting offices or regulatory authorities, if requested by Celsius.

This Agreement supersedes any prior understandings, promises, or conditions between this Office and Celsius. No additional understandings, promises, or conditions have been entered into

other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: _____
Adam Hobson
Allison Nichols
Noah Solowiejczyk
Assistant United States Attorney
(212) 637-2366

APPROVED:

_____
Daniel Gitner
Chief, Criminal Division

AGREED AND CONSENTED TO:

_____        _____
Christopher Ferraro                                      DATE
Interim Chief Executive Officer,
Chief Restructuring Officer, Chief
Financial Officer,
Celsius Network LLC

APPROVED:

_____        7-11-23
Asheesh Goel, Esq.                                       DATE
Mark Filip, Esq.
Zachary Brez, Esq.
Robert Allen, Esq.
Allison Lullo, Esq.
Kirkland & Ellis LLP
Attorneys for Celsius Network LLC

2023.02.10

other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

By: _____
Adam Hobson
Allison Nichols
Noah Solowiejczyk
Assistant United States Attorney
(212) 637-2366

APPROVED:

_____
Daniel Gitner
Chief, Criminal Division

AGREED AND CONSENTED TO:

*[signature]*
_____
Christopher Ferraro
Interim Chief Executive Officer,
Chief Restructuring Officer, Chief
Financial Officer,
Celsius Network LLC

7-10-23
_____
DATE

APPROVED:

_____
Asheesh Goel, Esq.
Mark Filip, Esq.
Zachary Brez, Esq.
Robert Allen, Esq.
Allison Lullo, Esq.
Kirkland & Ellis LLP
Attorneys for Celsius Network LLC

_____
DATE

2023.02.10

## STATEMENT OF FACTS

### CELSIUS

1. Celsius Network LLC is a Delaware limited liability corporation headquartered in Hoboken, New Jersey. Celsius Network Limited is a United Kingdom corporation headquartered in London. Celsius Network LLC and Celsius Network Limited, together with their related entities, including Celsius Network Inc., are collectively referred to as "Celsius."

2. Celsius offered a service by which holders of crypto assets could deposit those assets into a Celsius wallet and earn a percentage yield that was purportedly generated through pooling customer assets and deploying them through retail lending, institutional lending, investments, exchange trading, and other profit-seeking strategies. Celsius investors could elect to receive the fruits of their investment in their native crypto token or, in exchange for a higher yield, in Celsius's own crypto token CEL.

3. As set forth in more detail below, from in or about 2018 up to and including in or about May 2022, Celsius participated in a scheme to defraud investors in Celsius by (1) making false and misleading statements about the degree of risk to which those investors' funds were exposed through Celsius's yield-generating activities, and (2) manipulating the market price and volume of CEL to give investors the impression that CEL was more valuable and liquid than it actually was.

4. The scheme was carried out under the supervision and at the direction of Celsius's founder and Chief Executive Officer, Alex Mashinsky.

\* \* \*

5. Celsius was founded in approximately 2018 as a crypto asset platform that allowed its customers to earn yield on their crypto assets, take loans secured by their crypto assets, and custody their crypto assets, among other services. Celsius billed itself as the "safest place for your crypto" and urged potential customers to "unbank" themselves by depositing their crypto assets with Celsius. At its peak in the fall of 2021, Celsius purported to hold approximately $25 billion in assets. Many of these assets were crypto assets deposited by ordinary retail investors located in the United States and abroad, and not large institutions.

6. From its inception in 2018, Mashinsky marketed Celsius by making false and misleading statements about core aspects of Celsius's business. Mashinsky made repeated false and misleading statements as to the safety of Celsius's yield-generating activities, the long-term sustainability of the high reward rates that Celsius paid to its customers, and the risks associated with depositing crypto assets with Celsius. Mashinsky made these statements to convince potential customers to place their money with Celsius and to discourage existing customers from withdrawing their money from the platform and investing elsewhere.

7. Mashinsky and other Celsius executives promoted Celsius through media interviews, Twitter, Celsius's website, and weekly "Ask Mashinsky Anything" sessions, or "AMAs." In these weekly AMAs, Mashinsky, sometimes joined by other Celsius executives, would speak in a live online broadcast directly to Celsius customers, to whom Mashinsky referred colloquially

as the Celsius "community." Celsius then posted recordings of these AMAs to Celsius's website and YouTube channel, where they continued to be available for viewing by the public.

8. Beginning no later than 2020, Celsius employees repeatedly raised concerns about the accuracy of Mashinsky's various misrepresentations on these AMAs. These concerns became so widespread that by 2021 employees from multiple departments began to review the AMAs after they had aired, identify Mashinsky's false statements, and, at times, edit Mashinsky's misrepresentations out of the recorded versions of the AMAs posted to the internet. But neither Mashinsky nor Celsius ever issued corrections to notify the public and those Celsius customers who had watched the live versions of the AMAs that certain of Mashinsky's statements were false or misleading. And even the posted versions continued to contain misrepresentations regarding Celsius. Likewise, video and print media interviews of Mashinsky contained misrepresentations that Celsius did not correct.

9. Mashinsky's misrepresentations about Celsius's business created a false image of Celsius as a safe and secure place for investors to earn yield on crypto assets. In particular, and among other things, Mashinsky represented that Celsius was profitable, when in fact it was not. Mashinsky also claimed that Celsius's investing activities generated sufficient profits to sustain the high reward rates the company had promised customers. In fact, as Mashinsky knew, the company's investing activities did not generate sufficient income to sustain the yields that Celsius was paying to investors, requiring the firm to raid customer deposits to deliver the earnings it promised investors. Mashinsky also lied to Celsius's existing and prospective customers about the riskiness of Celsius's deployment strategies. Mashinsky regularly downplayed the risks to which Celsius's customers were in fact exposing themselves, including significant losses of assets.

10. Celsius and Mashinsky also made misrepresentations about "CEL," Celsius's own native crypto token, which Celsius launched through an initial coin offering in or about 2018. Mashinsky falsely and publicly stated on numerous occasions that the ICO had raised $50 million. Celsius employees knew that the true number raised was approximately $32 million and reported the correct figure to potential institutional investors and Celsius's auditors but neither Celsius nor Mashinsky ever corrected Mashinsky's false statement that the ICO had raised $50 million.

11. Mashinsky touted the CEL token and the rise in CEL token's price as an indicator of Celsius's own financial health, and encouraged the public to purchase and hold CEL token. These claims were false and misleading. The rise in value of the CEL token was not the product of market forces but was instead attributable to the fact that Celsius executives, including Mashinsky, had orchestrated a scheme to manipulate the CEL token by taking steps to artificially support the price of CEL. For example, although Mashinsky publicly disclosed that Celsius was purchasing CEL as part of a weekly "buyback" program to pay customer rewards, Celsius did not disclose that, in many weeks, Celsius was secretly purchasing far more CEL token than was necessary to pay those rewards. Those excess CEL purchases were not made for the purpose of paying customer rewards or for carrying out any legitimate business activity. Rather, their acknowledged purpose was to artificially support the price of CEL token. At times, Celsius used its own customer deposits to fund those excess market

purchases of CEL token in order to prop up CEL's price, without disclosing this fact to Celsius's customers and contrary to the express representations that Mashinsky and the firm made publicly that CEL buybacks were funded by the profits of Celsius's lending.

12. Despite the false and misleading positive public statements by Mashinsky, Celsius had few months in which it even earned a profit, and had sustained a number of large losses from various failed deployment strategies, which were likewise not disclosed or fully disclosed to customers.

13. By 2022, Celsius was in a dire financial situation. When the market for crypto token prices dropped in the summer of 2022 following the collapse of the Terra ecosystem, Celsius was in such a weakened financial position that it could not meet the resulting surge in investor withdrawals. On June 12, 2022, Celsius announced that it was halting all withdrawals from the Celsius platform, leaving thousands of Celsius customers without access to more than $4 billion in investments.