N9DUCOHP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                          1:23-cr-000347-JGK-2

5   RONI COHEN-PAVON,

6                    Defendant.              Plea
    ------------------------------x
7
                                             New York, N.Y.
8                                            September 13, 2023
                                             11:00 a.m.
9

10
    Before:
11
                        HON. JOHN G. KOELTL,
12
                                             District Judge
13

14                        APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  ADAM S. HOBSON, ESQ.
17       ALLISON C. NICHOLS, ESQ.
         Assistant United States Attorney
18
    DECHERT, LLP
19       Attorneys for Defendant
    BY:  JEFFREY BROWN, ESQ.
20       NICHOLAS GERSH, ESQ.

21

22  ALSO PRESENT:  BRANDON RACZ, Special Agent, FBI

23  SIMPSON THACHER & BARTLETT LLP
         *Curcio* Counsel
24  BY:  MARK J. STEIN, ESQ.

25

N9DUCOHP

1          (Case called)

2          THE DEPUTY CLERK:  Will all parties please state who

3     they are for the record.

4          MR. HOBSON:  Good morning, your Honor.

5          Adam Hobson and Allison Nichols for the government.

6          We're joined by Special Agent Brandon Racz from the

7     Federal Bureau of Investigation.

8          MS. NICHOLS:  Good morning, your Honor.

9     BY MR. BROWN:  Good morning, your Honor.

10          Jeffrey Brown from the law firm of Dechert joined by

11     Nicholas Gersh, for Mr. Cohen-Pavon, who is seated to my left.

12          THE COURT:  Good morning.

13          Some introductory issues:  First, the defendant is

14     represented by Mr. Gersh and Mr. Brown from Dechert.  My

15     nephew-in-law is a partner at Dechert but doesn't share in any

16     of the income from any cases where I'm the judge.  So I don't

17     disqualify myself in cases where Dechert appears.  Nothing

18     about that affects anything that I do in the case, but I bring

19     it to your attention at the outset.

20          Second, I received a letter from the government dated

21     September 12 advising of a potential conflict that Mr. Gersh

22     has because he's applied to the U.S. Attorney's Office for a

23     position with the office.  And so I'll conduct a *Curcio* inquiry

24     at the outset.

25          How does the defendant wish to be addressed?

N9DUCOHP

1    Mr. Pavon?  Or Mr. Cohen-Pavon?

2              THE DEFENDANT:  Mr. Cohen-Pavon, your Honor.

3              THE COURT:  Mr. Cohen-Pavon.  Okay.

4              So, Mr. Cohen-Pavon, as I'm sure you've been advised,

5    one of the attorneys from Dechert who is representing you,

6    Mr. Gersh, has applied for a position in the United States

7    Attorney's Office.  So there is a procedure called a *Curcio*

8    procedure after the name of a Court of Appeals case called

9    *Curcio* in which there's inquiry to assure that you're aware of

10   the potential conflict, you're aware of its ramifications, and

11   you make a decision as to whether you wish to proceed with

12   Mr. Gersh and Dechert or not, because a defendant has a right

13   to be represented by lawyers who have absolutely no conflicts

14   of interest, either actual or potential.  And if the defendant

15   cannot afford counsel without any conflicts, the Court will

16   appoint counsel for the defendant.  So when there is notice of

17   a potential conflict, the Court has an obligation to inquire of

18   the defendant to make sure that the defendant is aware of his

19   right to be represented by lawyers who have absolutely no

20   conflicts and determine whether the defendant wishes to proceed

21   with his lawyers who have a potential conflict or wishes simply

22   to have another lawyer.  And if the defendant can't pay for

23   another lawyer, the Court will appoint another lawyer.

24             The first part of the inquiry is to assure that the

25   defendant is competent to make the decision as to whether to

N9DUCOHP

1    waive any potential conflicts or not.  So I'll make an inquiry

2    with respect to your competence, and then proceed to advise you

3    of your rights and of the potential conflict and to determine

4    whether you wish to proceed with Mr. Gersh or not and whether

5    you wish to waive any potential conflict.

6              Do you understand all of that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  So let me start.  Tell me your full name,

9    please.

10             THE DEFENDANT:  Roni Mr. Cohen-Pavon, your Honor.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  Thirty-six years old.

13             THE COURT:  Mr. Cohen-Pavon, Mr. Fletcher will

14   administer the oath to you.

15                       (Defendant affirmed)

16             THE DEPUTY CLERK:  Please state your name for the

17   record.

18             THE DEFENDANT:  Roni Cohen-Pavon.

19             THE DEPUTY CLERK:  Thank you.

20             THE COURT:  Mr. Cohen-Pavon, do you understand that

21   you're now under oath and that if you answer any of my

22   questions falsely, your false or untrue answers may later be

23   used against you in another prosecution for perjury or making a

24   false statement?

25             THE DEFENDANT:  I do, your Honor.

N9DUCOHP

1              THE COURT:  You've told me that you're thirty-six

2     years old, right?

3              THE DEFENDANT:  Yes.

4              THE COURT:  How far did you go in school?

5              THE DEFENDANT:  First degree.

6              THE COURT:  Are you able to speak and understand

7     English?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Are you now or have you recently been

10    under the care of a doctor or a psychiatrist?

11             THE DEFENDANT:  No, your Honor.

12             THE COURT:  Have you ever been treated or hospitalized

13    for any mental illness or any type of addiction including drug

14    or alcohol addiction?

15             THE DEFENDANT:  No, your Honor.

16             THE COURT:  In the past 24 hours, have you taken any

17    drugs, medicine, or pills, or have you drunk any alcohol?

18             THE DEFENDANT:  No, your Honor.

19             THE COURT:  Is your mind clear today?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Are you feeling all right today?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Do either counsel have any doubt as to the

24    defendant's competence at this time?

25             MR. HOBSON:  No, your Honor.

N9DUCOHP

1          MR. BROWN:  No, your Honor.

2          THE COURT:  Mr. Cohen-Pavon, you can actually have a

3     seat.

4          I've explained to you at the outset, Mr. Cohen-Pavon,

5     the reason for this proceeding, namely, to determine whether

6     you're fully aware of the potential conflict that Mr. Gersh has

7     and to determine whether you wish to continue with his

8     representation and to waive any potential conflicts.  So am I

9     right that you're currently represented by Jeffrey Brown and

10    Nicholas Gersh of the law firm of Dechert, LLP?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Are you satisfied with their

13    representation of you?

14         THE DEFENDANT:  I am.

15         THE COURT:  Do you know that Mr. Gersh has applied for

16    a position as an assistant united states attorney in the

17    Southern District of New York, that is a member of the

18    prosecutor's office that is currently prosecuting you in this

19    case?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  Because of Mr. Gersh's application to be

22    employed by the U.S. Attorney's Office, there are potential

23    conflicts that arise.  As I've told you, you're entitled to be

24    represented by lawyers who have absolutely no conflicts of

25    interest, whose loyalty is to you alone and who have nothing

N9DUCOHP

1  that might interfere with your representation.

2          Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And it's important to the representation

5  of counsel that counsel have no conflicts of interest and no

6  loyalties to anyone or anything other than you.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  So Mr. Gersh's potential employment and

10 his application for employment with the U.S. Attorney's Office

11 presents a potential conflict because he may have some

12 allegiance to the U.S. Attorney's Office for the Southern

13 District of New York; he may want to shade his representation

14 of you in a way that benefits his application to the U.S.

15 Attorney's Office; he may wish to curry favor with the U.S.

16 Attorney's Office by the way in which he represents you.

17         Do you understand that?

18         THE DEFENDANT:  I do.

19         THE COURT:  It's a possibility.  I'm not saying it

20 would happen, but it's a possibility.

21         So being aware of that, you have the opportunity to

22 say that you don't wish to be represented by Mr. Gersh.  Or you

23 can say that you wish to continue to be represented by

24 Mr. Gersh and you wish to waive any potential conflict that he

25 may have in representing you.

N9DUCOHP

1          Do you understand that?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Have you discussed this potential conflict

4    with Mr. Gersh?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And have you discussed it with Mr. Brown?

7          THE DEFENDANT:  Yes.

8          THE COURT:  It's important that I understand that

9    you're aware of the conflict and the potential conflict.  So

10   could you tell me in your own words what the potential conflict

11   is?

12         THE DEFENDANT:  The potential conflict is that

13   Mr. Gersh will use the fact he's advising me on this case for

14   his own personal benefit as part of the application.

15         THE COURT:  I'm prepared, and I will actually appoint

16   another lawyer to represent you so that you can consult with

17   that other lawyer to make sure that you've fully considered the

18   potential conflict, that you're fully aware of the conflict,

19   and to make a determination, help you make a determination of

20   whether you wish to waive the conflict and continue with

21   Mr. Gersh or not.

22         So at this point what I'm going to do is appoint Mark

23   Stein, who is a distinguished lawyer and a member of the

24   Criminal Justice Act Panel for this district to consult with

25   you before you make a decision whether you wish to waive the

N9DUCOHP

1    conflict.

2           So we'll take a brief adjournment so you can consult

3    with Mr. Stein.

4           Mr. Stein, do you have any conflicts in this case at

5    all?

6           MR. STEIN:  I do not, your Honor.

7           THE COURT:  Mr. Stein is being appointed solely to

8    represent you, to discuss with you the potential conflict, and

9    to determine whether you wish to waive that conflict and

10   continue with Mr. Gersh or not.  Anything that you say to

11   Mr. Stein is completely confidential between you and Mr. Stein.

12   The purpose of appointing Mr. Stein is solely to consult with

13   you.  He has no interest in the case.  His interest is solely

14   to represent you and to determine whether you wish to waive any

15   conflicts that Mr. Gersh has and whether you wish to continue

16   be with Mr. Gersh.

17          So we'll take a brief recess to let you consult with

18   Mr. Stein.

19                        (Recess)

20          THE COURT:  Mr. Cohen-Pavon, have you had an

21   opportunity to consult with Mr. Stein?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you want any more time to consult with

24   Mr. Stein or think about your decision?

25          THE DEFENDANT:  No, I don't.

N9DUCOHP

1          THE COURT:  Having consulted with Mr. Stein, do you

2     wish to give up or waive any potential conflict that Mr. Gersh

3     has?  And do you wish to continue with Mr. Gersh as one of your

4     lawyers?

5          THE DEFENDANT:  Yes, I do.  I have full trust in

6     Mr. Gersh, and I waive any conflict in this respect.

7          THE COURT:  Have you received any inducements,

8     promises, or threats to you to get you to agree to continue

9     with Mr. Gersh and to waive any potential conflicts?

10          THE DEFENDANT:  No, I didn't.

11          THE COURT:  Do you understand that by waiving any

12     potential conflicts that Mr. Gersh may have, you're waiving

13     them for today and throughout this proceeding and any appeal or

14     any other ancillary proceedings?  It's a waiver for today and

15     forever.

16          Do you understand that?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  So, Mr. Stein, having consulted with

19     Mr. Cohen-Pavon, do you know of any reason that he should not

20     waive or be able to waive the potential conflict?

21          MR. STEIN:  I do not, your Honor.

22          THE COURT:  Thank you, Mr. Stein.

23          So, Mr. Gersh, do you believe that you're able to

24     represent Mr. Cohen-Pavon and that any potential conflict that

25     you have will not interfere at all with your representation of

N9DUCOHP

1    Mr. Cohen-Pavon?

2            MR. GERSH:  I do, your Honor.

3            THE COURT:  Mr. Brown, do you also agree with that?

4            MR. BROWN:  I do, your Honor.

5            THE COURT:  Having considered all of the facts and

6    issues, I find that while there is a potential conflict that

7    Mr. Gersh has, the conflict is only a potential conflict and is

8    certainly waivable.  I also find that Mr. Cohen-Pavon has

9    knowingly and voluntarily waived any potential conflict.

10           So, Mr. Stein, thank you for your representation, and

11   you're excused.

12           MR. STEIN:  Thank you, your Honor.

13           THE COURT:  You're certainly welcome to stay if you

14   wish.

15                           (Pause)

16           THE COURT:  So that brings us then to the next part,

17   which is the plea.  I understand from the correspondence that

18   the defendant wishes to enter a plea of guilty to Counts Four,

19   Five, and Six of the indictment pursuant to a plea agreement

20   dated September 11, 2023.

21           I have the unsigned copy that was provided to me.  Is

22   there an executed copy?

23           MR. HOBSON:  There is, your Honor.  And, your Honor

24   I'll just note, it's Counts Four, Five, Six, and Seven.  Count

25   Seven is on the second page of the agreement.

N9DUCOHP

1          THE COURT:  Right.  Thank you.

2          There was also a reference in the correspondence to a

3    letter from the government dated September 5, 2023, a request

4    to be filed under seal.  I have the letter now.  I've checked

5    the docket sheet.  There are no docket entries after

6    August 30th.  Was the September 5th letter signed?

7          MR. HOBSON:  The September 5th letter was submitted

8    to chambers by email as per an instruction from magistrate

9    court.

10          THE COURT:  It's fine.  I'll so-order the

11    September 5th letter.  Nothing has been filed.  And I assume

12    that after today, you'll be seeking to unseal.

13          MR. HOBSON:  That's correct, your Honor.  We had

14    requested delayed docketing of the arraignment last week and of

15    today's plea proceedings.  After the end of today's

16    proceedings, we no longer see a need for delayed docketing.

17          THE COURT:  It may be academic, but I've signed the

18    September 5th letter.

19          And I take it from the correspondence that the

20    defendant was presented before the magistrate judge and was

21    arraigned on the indictment at that time?

22          MR. HOBSON:  That's correct, your Honor.

23          THE COURT:  I've marked the September 11, 2023 plea

24    agreement as Court Exhibit 1.  It indicates that the defendant

25    wishes to plead guilty to Counts Four, Five, Six, and Seven of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N9DUCOHP

1    the indictment.

2              And I take it that's what the defendant wishes to do.

3    Right, Mr. Brown?

4              MR. BROWN:  Yes, your Honor.

5              THE COURT:  Mr. Fletcher, please administer the oath

6    to the defendant.

7              THE DEPUTY CLERK:  You may be seated.

8                        (Defendant affirmed)

9              THE DEPUTY CLERK:  You may put your hand down.

10              Please state your name for the record.

11              THE DEFENDANT:  Roni Cohen-Pavon.

12              THE DEPUTY CLERK:  Thank you.

13              THE COURT:  Mr. Cohen-Pavon, do you understand that

14    you're now under oath and that if you answer any of my

15    questions falsely, your false or untrue answers may later be

16    used against you in another prosecution for perjury or making a

17    false statement?

18              THE DEFENDANT:  Yes, I do.

19              THE COURT:  Tell me your full name, please.

20              THE DEFENDANT:  Roni Cohen-Pavon.

21              THE COURT:  How old are you?

22              THE DEFENDANT:  Thirty-six years old.

23              THE COURT:  How far did you go in school?

24              THE DEFENDANT:  First degree.

25              THE COURT:  What does that mean?  First degree?  Is

N9DUCOHP

1    that a college degree or university degree?

2              THE DEFENDANT:  University degree.

3              THE COURT:  Okay.

4              THE DEFENDANT:  In law.

5              THE COURT:  Are you a citizen of the United States?

6              THE DEFENDANT:  No, I'm not.

7              THE COURT:  Are you able to speak and understand

8    English.

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  Are you now or have you recently been

11   under the care of a doctor or a psychiatrist?

12             THE DEFENDANT:  No.

13             THE COURT:  Have you ever been treated or hospitalized

14   for any mental illness or any type of addiction including drug

15   or alcohol addiction?

16             THE DEFENDANT:  No.

17             THE COURT:  In the past 24 hours, have you taken any

18   drugs, medicine, or pills, or have you drunk any alcohol?

19             THE DEFENDANT:  No.

20             THE COURT:  Is your mind clear today?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you feeling all right today?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do either counsel have any doubt as to the

25   defendant's competence to plead at this time?

N9DUCOHP

1            MR. HOBSON:  No, your Honor.

2            MR. BROWN:  No, your Honor.

3            THE COURT:  Mr. Cohen-Pavon, Mr. Brown, your lawyer,

4    has informed me that you wish to enter a plea of guilty to

5    Counts Four, Five, Six, and Seven of the indictment.  Is that

6    what you wish to do?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  Have you had a full opportunity to discuss

9    your case with your lawyers?

10           THE DEFENDANT:  Yes.  Yes.  I have.

11           THE COURT:  Have you had a full opportunity to discuss

12   the consequences of entering a plea of guilty?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  Are you satisfied with your lawyers and

15   their representation of you?

16           THE DEFENDANT:  Yes, I am.

17           THE COURT:  On the basis of Mr. Cohen-Pavon's

18   responses to my questions and my observations of his demeanor,

19   I find that he is fully competent to enter an informed plea at

20   this time.

21           Mr. Cohen-Pavon, before I accept any plea from you,

22   I'm going to be asking you certain questions.  My questions are

23   intended to satisfy me that you wish to plead guilty because

24   you are, in fact, guilty and that you fully understand the

25   consequence of your plea, and, furthermore, that you are

N9DUCOHP

1   pleading guilty knowingly, and voluntarily, and that there is

2   an independent basis in fact for your plea.

3          Do you understand that?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  I'm now going to describe to you certain

6   rights that you have under the Constitution and laws of the

7   United States, which rights you will be giving up if you enter

8   a plea of guilty.  Please listen to me very carefully.  If

9   there's anything that I say that you don't understand, please

10  ask me to stop.  Either I or Mr. Brown will explain it to you

11  more fully.

12         All right?

13         THE DEFENDANT:  Yes.  Thank you.

14         THE COURT:  Mr. Cohen-Pavon, under the Constitution

15  and laws of the United States, you have a right to a speedy and

16  public trial by a jury on the charges against you which are

17  contained in the indictment.

18         Do you understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  If there were a trial, you would be

21  presumed to be innocent and the government would be required to

22  prove you're guilty by competent evidence and beyond a

23  reasonable doubt.  You would not have to prove that you were

24  innocent at trial.

25         Do you understand that?

N9DUCOHP

1             THE DEFENDANT:  Yes, I do.

2             THE COURT:  If there were a trial, a jury composed of

3      twelve people selected from this district would have to agree

4      unanimously that you were guilty.

5             Do you understand that?

6             THE DEFENDANT:  Yes.

7             THE COURT:  If there were a trial, you would have the

8      right to be represented by a lawyer, and if you could not

9      afford a lawyer, a lawyer would be provided to you free of

10     cost.

11            Do you understand that?

12            THE DEFENDANT:  Yes.

13            THE COURT:  In fact, Mr. Cohen-Pavon, you have a right

14     to be represented by a lawyer at the trial and at every other

15     stage of the proceedings against you, and if you cannot afford

16     a lawyer, a lawyer would be provided to you free of cost.

17            Do you understand that?

18            THE DEFENDANT:  Yes, I do.

19            THE COURT:  If there were a trial, you would have the

20     right to see and hear all of the witnesses against you and your

21     attorney could cross-examine them.  You would have a right to

22     have your attorney object to the government's evidence and

23     offer evidence on your behalf if you so desired.  And you would

24     have the right to have subpoenas issued or other compulsory

25     process used to compel witnesses to testify in your defense.

N9DUCOHP

1       And you would not be required to testify.

2                   Do you understand all of that?

3                   THE DEFENDANT:  Yes, I do, your Honor.

4                   THE COURT:  If there were a trial, you would have the

5       right to testify, if you wanted to, but no one could force you

6       to testify, if you didn't want to.  And furthermore, no

7       inference or suggestion of guilt could be drawn if you chose

8       not to testify at trial.

9                   Do you understand that?

10                  THE DEFENDANT:  Yes.

11                  THE COURT:  Mr. Cohen-Pavon, do you understand that

12      each and every one of the rights that I've described to you?

13                  THE DEFENDANT:  Yes, I do.

14                  THE COURT:  Do you have any questions about any of

15      those rights?

16                  THE DEFENDANT:  No, I don't.

17                  THE COURT:  Do you understand that by entering a plea

18      of guilty today you're giving up each and every one of those

19      rights, that you are waiving those rights, and that you will

20      have no trial?

21                  THE DEFENDANT:  Yes, I do.

22                  THE COURT:  Do you understand that you can change your

23      mind right now and refuse to enter a plea of guilty, you don't

24      have to enter this plea if you don't want to for any reason at

25      all?

N9DUCOHP

1              Do you understand that completely?

2              THE DEFENDANT:  I understand.

3              THE COURT:  Mr. Cohen-Pavon, you've received a copy of

4    indictment against you; is that correct?

5              THE DEFENDANT:  Yes.

6              THE COURT:  And have you read it?

7              THE DEFENDANT:  Yes, I have.

8              THE COURT:  Do you understand what you are charged

9    with in the indictment?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Do you understand that if you did not

12   plead guilty, the government would be required to prove each

13   and every part or element of the charges against you which are

14   contained in the indictment beyond a reasonable doubt at trial?

15             THE DEFENDANT:  Yes, I understand.

16             THE COURT:  I'm going to go over with you now

17   Counts Four, Five, Six, and Seven to assure myself that you

18   understand what you are charged with, what the government would

19   be required to prove beyond a reasonable doubt at trial, and

20   what the maximum penalty is for each of those counts.

21             Count Four of the indictment charges a conspiracy to

22   manipulate the price of CEL.  It charges in substance that the

23   allegations contained in paragraphs 1 through 71 of this

24   Indictment are hereby repeated, re-alleged, and incorporated by

25   reference as if fully set forth herein.

N9DUCOHP

1          From at least in or about 2019 through at least in or
2     about June 2022, in the Southern District of New York and
3     elsewhere, Alexander Mashinsky and Roni Cohen-Pavon, the
4     defendants, and others known and unknown, willfully and
5     knowingly, did combine, conspire, confederate, and agree
6     together and with each other to commit offenses against the
7     United States, to wit, securities fraud, in violation of
8     Title 15, United States Code, Sections 78j(b) and 78ff, and
9     Title 17, Code of Federal Regulations, Section 240.10b-5;
10    market manipulation, in violation of Title 15, United States
11    Code, Sections 78i(a)(2), and 78ff; and wire fraud, in
12    violation of Title 18, United States Code, Section 1343.
13          It was a part and an object of the conspiracy that
14    Alexander Mashinsky and Roni Cohen-Pavon, the defendants, and
15    others known and unknown, willfully and knowingly, directly and
16    indirectly, by use of a means and instrumentality of interstate
17    commerce and of the mails, and a facility of a national
18    securities exchange would and did use and employ, in connection
19    with the purchase and sale of a security, a manipulative and
20    deceptive device and contrivance in violation of Title 17, Code
21    of Federal Regulations, Section 240.10b-5 by: (a) employing a
22    device, scheme, and artifice to defraud; (b) making an untrue
23    statement of a material fact and omitting to state a material
24    fact necessary in order to make the statements made, in light
25    of the circumstances under which they were made, not

N9DUCOHP

misleading; and (c) engaging in an act, practice, and course of

business which operated and would operate as a fraud and deceit

upon a person in violation of Title 15, United States Code,

Section 78j(b) and 78ff, to wit, Mashinsky and Cohen-Pavon

agreed to and did exchange in a scheme to defraud investors in

CEL token by artificially manipulating the market for CEL token

and through making false and misleading statements about

Celsius' purchases of CEL token and making false and misleading

statements about Mashinsky's own sales of CEL token.

It was further apart and an object of the conspiracy

that Alexander Mashinsky and Roni Cohen-Pavon, the defendants,

and others known and unknown, willfully and knowingly would and

did, directly and indirectly, by the use of the mails and a

means and instrumentality of interstate commerce, and of a

facility of a national securities exchange, and for a member of

a national securities exchange, effected, alone and with one or

more other persons, a series of transactions in a security

registered on a national securities exchange, a security not so

registered, and in connection with a security-based swap or

security-based swap agreement with respect to such security

creating actual or apparent active trading in such security,

and raising and depressing the price of such security, for the

purpose of inducing the purchase or sale of such security by

others, in violation of Title 15, United States Code,

Sections 78i(a)(2) and 78ff, to wit, Mashinsky and Cohen-Pavon

N9DUCOHP

1    agreed and did engage in a series of transactions in CEL in

2    order to artificially raise the price of CEL and induce others

3    to purchase CEL.

4              It was further apart and an object of the conspiracy

5    that Alexander Mashinsky and Roni Cohen-Pavon, the defendants,

6    and others known and unknown, knowingly having devised and

7    intending to devise a scheme and artifice to defraud, and for

8    obtaining money and property by means of false and fraudulent

9    pretenses, representations, and promises, transmitted and

10   caused to be transmitted by means of wire, radio, and

11   television communication in interstate and foreign commerce,

12   writings, signs, signals, pictures, and sounds for the purpose

13   of executing such scheme and artifice, in violation of

14   Title 18, United States Code, Section 1343, to wit, Mashinsky

15   and Cohen-Pavon agreed to and did engage in a scheme to defraud

16   investors in CEL token by manipulating the market for CEL

17   token, making false and misleading statements about Celsius'

18   market activity in CEL, and making false and misleading

19   statements about Mashinsky's own sales of CEL token.

20             Overt acts:  In furtherance of the conspiracy and to

21   effect the illegal objects thereof, the following overt acts,

22   among others, were committed in the Southern District of New

23   York and elsewhere:

24             A.  On or about July 14, 2020, Alexander Mashinsky,

25   the defendant, instructed another co-conspirator not named

N9DUCOHP

herein by electronic message to cause Celsius to purchase CEL

token in the market in order to artificially manipulate the

price the CEL.

        B.  On or about October 21, 2020, Mashinsky personally

purchased CEL in the market in order to artificially support

the price of CEL.

        C.  On or about October 30, 2021, Mashinsky and Roni

Cohen-Pavon, the defendant, discussed by electronic message a

plan to artificially manipulate the price of CEL.

        D.  On or about January 7, 2022, Mashinsky made false

and misleading public statements regarding Celsius' market

purchase of CEL.

        E.  On or about November 5, 2021, Mashinsky made false

and misleading public statements regarding his own sales of

CEL.

        All of this in violation of Title 18, United States

Code, Section 371.

        Mr. Cohen-Pavon, do you understand that's what you're

charged with in Count Four of the indictment?

        THE DEFENDANT:  Yes, I do.

        THE COURT:  Do you understand that if you did not

plead guilty, the government would be required to prove beyond

a reasonable doubt at trial:

        First, that two or more persons entered into the

unlawful agreement charged in Count Four beginning in or about

N9DUCOHP

2019; second, that you, the defendant, knowingly and willfully
became a member of the conspiracy; third, that one of the
members of the conspiracy knowingly committed at least one of
the overt acts charged in the indictment; and finally, the
overt act or acts which the jury found to have been committed
was or were committed to further some objective of the
conspiracy?

            Do you understand that the government would be
required to prove all of that beyond a reasonable doubt at
trial?

            THE DEFENDANT:  Yes, I do.

            THE COURT:  Do you understand that the maximum penalty
for the crime charged in Count Four is a maximum sentence of
five years' imprisonment, a maximum term of three years'
supervised release, a maximum fine of the greatest of $250,000
or twice the gross pecuniary gain derived from the offense or
twice the gross pecuniary loss to a person or persons other
than yourself as a result of the offense and a mandatory $100
special assessment?

            Do you understand that's the maximum penalty for the
crime charged in Count Four?

            THE DEFENDANT:  Yes, I do.

            THE COURT:  Count Five of the indictment charges a
fraudulent scheme to manipulate the price of CEL.  The
indictment charges that the allegations contained in paragraphs

1 through 71 and 83 of the indictment are repeated, re-alleged,

and incorporated by reference as if fully set forth herein.

          Then it goes on to charge that from at least in or

about 2019 through at least in or about June 2022, in the

Southern District of New York and elsewhere, Alexander

Mashinsky and Roni Cohen-Pavon, the defendants, willfully and

knowingly, directly and indirectly, by use of a means and

instrumentality of interstate commerce and of the mails, and a

facility of a national securities exchange, used and employed,

in connection with the purchase and sale of a security, a

manipulative and deceptive device and contrivance, in violation

of Title 17, Code of Federal Regulations Section 240.10b-5 by:

(a) employing a device, scheme, and artifice to defraud; (b)

making an untrue statement of a material fact and omitting to

state a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made,

not misleading and; (c) engaging in an act, practice, and

course of business which operated and would operate as a fraud

and deceit upon a person to wit, Mashinsky and Cohen-Pavon

engaged in a scheme to defraud investors in CEL token by

artificially manipulating the market for CEL token and through

making false and misleading statements about Celsius' purchases

of CEL token and making false and misleading statements about

Mashinsky's own sales of CEL token in violation of Title 15,

United States Code, Sections 78j(b) and 78ff; Title 17, Code of

N9DUCOHP

1   Federal Regulations, Section 240.10b-5; and Title 18, United

2   States Code, Section 2.

3          Do you understand that's what you're charged with in

4   Count Five of the indictment?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Do you understand if you did not plead

7   guilty, the government would be required to prove beyond a

8   reasonable doubt at trial that you, the defendant, did any of

9   the following:  1, employed a device, scheme, or artifice to

10  defraud; or 2, made an untrue statement of a material fact or

11  omitted to state a material fact that made what was said under

12  the circumstances misleading; or, 3, engaged in an act,

13  practice, or course of business that operated or would operate

14  as a fraud or deceit upon a purchaser or seller.

15         Second, that you, the defendant, acted willfully,

16  knowingly, and with the intent to defraud.

17         And, third, that the defendant knowingly used or

18  caused to be used any means or instruments of transportation or

19  communication in interstate commerce or the use of the mails in

20  furtherance of the fraudulent conduct.

21         Do you understand the government would be required to

22  prove all of that beyond a reasonable doubt at trial?

23         THE DEFENDANT:  Yes, I do, your Honor.

24         THE COURT:  Do you understand that the maximum penalty

25  for the crime charged in Count Five is a maximum sentence of 20

N9DUCOHP

years' imprisonment, a maximum term of three years' supervised

release, a maximum fine of the greatest of $5 million or twice

the gross pecuniary gain derived from the offense or twice the

gross pecuniary loss to a person or persons other than yourself

as a result of the offense, and a mandatory $100 special

assessment?

Do you understand that's the maximum penalty for the

crime charged in Count Five the indictment?

THE DEFENDANT:  Yes, I do.

THE COURT:  Count Six of the indictment charges market

manipulation of CEL token.

It repeats the allegations contained in paragraphs 1

through 71 and 83 of the indictment as re-alleged and

incorporated by reference as if fully set forth in Count Six.

And then goes on to charge that from at least in or

about 2019 through at least in or about June 2022, in the

Southern District of New York and elsewhere, Alexander

Mashinsky and Roni Cohen-Pavon, the defendants, willfully and

knowingly, would and did, directly and indirectly, by the use

of the mail and a means or instrumentality of interstate

commerce, and of a facility of a national securities exchange,

and for a member of a national securities exchange, effected,

alone and with one and more other persons, a series of

transactions in a security registered on a national securities

exchange, a security not so registered, and in connection with

N9DUCOHP

```
 1    the security-based swap or security-based swap agreement with
 2    respect to such security creating actual or apparent active
 3    trading in such security, and raising and depressing of price
 4    of such security, for the purpose of inducing the purchase or
 5    sale of such security by others, to wit, Mashinsky and
 6    Cohen-Pavon engaged in a series of transactions in CEL in order
 7    to artificially raise the price of CEL and induce others to
 8    purchase CEL in violation of Title 15, United States Code,
 9    Sections 78i(a)2 and 78ff, and Title 18, United States Code,
10    Section 2.
11            Do you understand that's what you are charged with in
12    Count Six --
13            THE DEFENDANT:  Yes.
14            THE COURT:  -- of the indictment?
15            THE DEFENDANT:  Yes, I do, your Honor.
16            THE COURT:  I don't have in front of me the elements
17    for a violation of 78i(a)2 in terms of market manipulation.
18            MR. HOBSON:  I can provide those to the Court if you
19    would like.
20            THE COURT:  Sure.
21            MR. HOBSON:  We understand that it has three elements:
22    First, that the defendant, through a series of transactions
23    either created actual or apparent trading in the security or
24    raised or depressed the price of the security or aided and
25    abetted the same; second, that the defendant acted for the
```

N9DUCOHP

purpose of inducing the purchase or the sale of the security by
others; and, third, that the defendant acted willfully and with
a manipulative purpose.

        THE COURT:  Thank you.

        Mr. Cohen-Pavon, do you understand that the government
would be required to prove all of those elements beyond a
reasonable doubt at trial?

        THE DEFENDANT:  Yes, I do.

        THE COURT:  Do you understand that the maximum penalty
for the crime charged in Count Six is 20 years' imprisonment, a
maximum term of three years' supervised release, a maximum fine
of the greatest of $5 million or twice the gross pecuniary gain
derived from the offense or twice the gross pecuniary loss to a
person or persons other than yourself as a result of the
offense, and a mandatory $100 assessment?

        Do you understand that's the maximum penalty for the
crime charged in Count Six?

        THE DEFENDANT:  Yes.

        THE COURT:  Count Seven charges wire fraud in
connection with CEL token manipulation.

        It repeats and re-alleges the allegations contained in
paragraphs 1 through 71 and 83, and incorporates them by
reference and goes on to charge that:  From at least in or
about 2018 through at least in or about June 2022, in the
Southern District of New York and elsewhere, Alexander

N9DUCOHP

1  Mashinsky and Roni Cohen-Pavon, the defendants, knowingly

2  having devised and intending to devise a scheme and artifice to

3  defraud, and for obtaining money and property by means of false

4  and fraudulent pretenses, representations, and promises,

5  transmitted and caused to be transmitted by means of wire,

6  radio, and television communication in interstate and foreign

7  commerce, writings, signs, signals, pictures, and sounds for

8  the purpose of executing such scheme and artifice, to wit,

9  Mashinsky and Cohen-Pavon engaged in a scheme to defraud

10 investors in CEL token by artificially manipulating the market

11 for CEL token and through making false and misleading

12 statements about Celsius' purchase of CEL token and making

13 false and misleading statements about Mashinsky's own sales of

14 CEL token, including using interstate wires, some of which

15 transited through the Southern District of New York in

16 violation of Title 18, United States Code, Sections 1343 and 2.

17         Do you understand that's what you were charged with in

18 Count Seven of the indictment?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  And do you understand that if you did not

21 plead guilty, the government would be required to prove beyond

22 a reasonable doubt at trial:

23         First, that there was a scheme or artifice to defraud

24 or to obtain money or property by materially false and

25 fraudulent pretenses, representations, or promises as alleged

N9DUCOHP

1    in the indictment.

2              Second, that you, the defendant, knowingly and

3    willfully participated in the scheme or artifice to defraud

4    with knowledge of its fraudulent nature and with specific

5    intent to defraud.

6              And third, that in execution of that scheme, you, the

7    defendant, used or caused the use of the interstate wires as

8    specified in the indictment.

9              Do you understand that the government would be

10   required to prove all of that beyond a reasonable doubt at

11   trial?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Do you understand that the maximum penalty

14   for the crime charged in Count Seven is a maximum sentence of

15   20 years' imprisonment, a maximum term of three years'

16   supervised release, a maximum fine of the greatest of $250,000

17   or twice the gross pecuniary gain derived from the offense or

18   twice the gross pecuniary loss to a person or persons other

19   than yourself as a result of the offense, and a mandatory $100

20   special assessment?

21             Do you understand that's the maximum sentence for the

22   crime charged in Count Seven of the indictment?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Do you understand that when I talk about

25   supervised release, supervised release means that you will be

N9DUCOHP

1    subject to monitoring when you are released from prison and the

2    monitoring is to be on under terms and conditions which could

3    lead to re-imprisonment without a jury trial if you violate

4    them?

5               THE DEFENDANT:  Yes, I understand.

6               THE COURT:  And do you understand that if you violated

7    the terms of supervised release and were sentenced to prison,

8    you could be sentenced to prison for the entire term of

9    supervised release without any credit for any time you have

10   already spent on supervised release?

11              THE DEFENDANT:  Yes, I do.

12              THE COURT:  Do you also understand that as part of

13   your sentence, I must also order restitution to any person

14   injured as a result of your criminal conduct?

15              THE DEFENDANT:  Yes, I do.

16              THE COURT:  The indictment also includes a forfeiture

17   allegation in which the government seeks to have you forfeit

18   any and all property, real and personal, that constitutes or is

19   derived from proceeds traceable to the commission of the

20   offenses including but not limited to a sum of money in United

21   States currency representing the amount of proceeds traceable

22   to the commission of the offenses?

23              Do you understand that?

24              THE DEFENDANT:  Yes, I do.

25              THE COURT:  So do you understand that as part of your

N9DUCOHP

1  sentence, I can also order forfeiture?

2          THE DEFENDANT:  Yes, I do.

3          THE COURT:  Now, Mr. Cohen-Pavon, you're pleading

4  guilty to different counts in the indictment.  Do you

5  understand that you will be separately sentenced on each of

6  those counts and that I can order that the sentences on those

7  counts be served concurrently, that is at the same time, or

8  consecutively, which means one right after the other?

9          Do you understand that?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  So you're actually facing a potential

12  sentence of 65 years on the four counts to which you're

13  entering a plea of guilty?

14          Do you understand that?

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  And I can also order that the fines be

17  added together and that the special assessments be added

18  together, so you're facing a special assessment of $400.

19          Do you understand that all of that?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Do you also understand that if I accept

22  your guilty plea and adjudge you guilty that adjudication may

23  deprive you of valuable civil rights or the right to obtain

24  valuable civil rights, such as the right to vote, the right to

25  hold public office, the right to serve on a jury, and the right

N9DUCOHP

1  to possess any kind of firearm?

2          THE DEFENDANT:  Yes, I understand.

3          THE COURT:  You've also told me that you're not a

4  citizen of the United States.  Do you understand that your

5  conviction can be used to remove you from the United States, to

6  deny you citizenship, and to deny you admission to the United

7  States in the future?

8          Do you understand that?

9          THE DEFENDANT:  Yes, I do.

10         THE COURT:  You've spoken to your lawyers about the

11 immigration consequences of your plea; is that right?

12         THE DEFENDANT:  Yes, I have.

13         THE COURT:  Mr. Cohen-Pavon, under current law, there

14 are sentencing guidelines that judges must consult in

15 determining your sentence.  You've spoken to your lawyers about

16 the sentencing guidelines, haven't you?

17         THE DEFENDANT:  Yes, I have.

18         THE COURT:  Do you understand that I, as the

19 sentencing Court, will not be able to determine your guidelines

20 sentence until after the probation department has completed the

21 presentence report, and after you and your lawyers and the

22 government have had an opportunity to review the presentence

23 report, to challenge anything contained in the report, and to

24 bring those challenges to my attention?

25         Do you understand that?

N9DUCOHP

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  And even after it's determined what the

3    basic guidelines sentencing range is in your case, I have the

4    authority in some circumstances to depart upward or downward

5    from the sentencing guideline range otherwise provided for in

6    your case.

7          Do you understand that?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  And even after I've made that

10    determination of the appropriate guidelines sentencing range in

11    your case, taking into account any upward or downward

12    departures, I must then consult other statutory factors in

13    order to arrive at a final conclusion as to what the

14    appropriate and reasonable sentence is in your case.

15          Do you understand that?

16          THE DEFENDANT:  Yes, I do.

17          THE COURT:  Do you also understand that if you are

18    sentenced to prison, parole has been abolished and you will not

19    be released any earlier on parole?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Do you have any questions about that?

22          THE DEFENDANT:  No.

23          THE COURT:  Do you understand that if your lawyer or

24    anyone else has attempted to estimate or predict what your

25    sentence will be, that their estimate or prediction could be

N9DUCOHP

1    wrong?

2              THE DEFENDANT:  I understand.

3              THE COURT:  No one, Mr. Cohen-Pavon, not your lawyers,

4    not the government, no one can or should give you any assurance

5    of what your sentence will be since that sentence can only be

6    determined after the probation department has completed the

7    presentence report, after I have ruled on any challenges to the

8    report, and you after I've determined what the appropriate and

9    reasonable sentence is in your case.

10             Do you understand that?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  Do you also understand that even if your

13   sentence is different from what your lawyers or anyone else

14   told you that it might be or if it's different from what you

15   expect it to be, you will still be bound by your guilty plea

16   and you will not be allowed to withdraw your plea of guilty?

17             Do you understand that?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  Mr. Cohen-Pavon, I've been given the plea

20   agreement, which you heard me talk about at the outset, the

21   September 11, 2023 letter to your lawyer from the government.

22   It appears to be signed by you and Mr. Brown today,

23   September 13, 2023.

24             Have you signed this plea agreement?

25             THE DEFENDANT:  Yes.

N9DUCOHP

1          THE COURT:  Did you read the agreement before you

2     signed it?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Did you discuss the agreement with your

5     lawyers before you signed it?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Did you fully understand the agreement

8     before you signed it?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Does this letter agreement constitute your

11     complete and total understanding of the entire agreement

12     between the government, your lawyers, and you?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Is everything that you understand about

15     your plea and your sentence contained in this plea agreement?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Has anything been left out?

18          THE DEFENDANT:  No.

19          THE COURT:  Has anyone offered you any inducements or

20     threatened you or forced you to plead guilty or to enter into

21     this plea agreement?

22          THE DEFENDANT:  No.

23          THE COURT:  Mr. Cohen-Pavon, the Court is not bound by

24     the plea agreement or by any of the provisions in the plea

25     agreement.  The Court must make an independent determination of

N9DUCOHP

1    the appropriate sentence in your case.  And even if that

2    sentence differs from anything that's contained in the plea

3    agreement, you will still be bound by your guilty plea and you

4    will not be allowed to withdraw your plea of guilty.

5              Do you understand that?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Mr. Brown, do you know of any valid

8    defense that would prevail at the trial of Mr. Cohen-Pavon?

9              MR. BROWN:  No, your Honor.

10             THE COURT:  Do you know of any reason why

11   Mr. Cohen-Pavon should not be permitted to plead guilty?

12             MR. BROWN:  No, your Honor.

13             THE COURT:  Mr. Cohen-Pavon, please tell me what you

14   did in connection with each of the crimes to which you are

15   entering a plea of guilty?

16             THE DEFENDANT:  Yes, your Honor.

17             In October of 2021, I became responsible for

18   overseeing and approving Celsius' market purchases of the CEL

19   token.  Beginning in 2019, Celsius publicly told CEL market

20   participants that the company was purchasing a certain amount

21   of CEL in the market to fund the interest payment that it owed

22   to Celsius' clients.  From October 2021 through December 31,

23   2021, I oversaw and at times directly ordered a pattern of CEL

24   token purchases in excess of what the company needed to buy to

25   meet its interest obligation.  I knew and understood that the

N9DUCOHP

1  purpose of these excess purchases was at least in part to

2  increase the price of the CEL token, prevent the price of CEL

3  token from dropping, and all to create the appearance of a more

4  liquid market in CEL token trading, all of which were intended

5  to, at least in part, to induce additional CEL purchases by the

6  public at prices that likely did not reflect the true market

7  price.

8         I communicated with other Celsius employees by either

9  email and telephone about these excess purchases including the

10  purpose behind the purchases, at the time agreed to order

11  excess purchases based on the -- based on agreement with or

12  orders from these other individuals.

13         Throughout this time --

14         THE COURT:  I'm sorry.  Hold on one sec.  Could you

15  just go back a couple of sentences with respect to the

16  agreement?

17         THE DEFENDANT:  I communicated -- this one, your

18  Honor?

19         THE COURT:  Yes.  Go ahead.

20         THE DEFENDANT:  I communicated with other Celsius

21  employees by either email and telephone about these excess

22  purchases including the purpose behind the purchases and at

23  times agreed to order excess purchases based on agreement with

24  or orders from these other individuals.

25         Throughout this time period, I believe that the CEL

N9DUCOHP

token qualified as a security under the relevant laws and

regulation.

THE COURT:  In Count Four of the indictment, one of

the overt acts alleged is that on or about October 30, 2021,

you and Mr. Mashinsky discussed by electronic message a plan to

artificially manipulate the price of CEL.  Did you do that?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And was that in furtherance of the

conspiracy that you've described to me?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Were any of the electronic communications

that you've mentioned, did they go through Manhattan or the

Bronx?  Do you know?  I can ask the question of the government

also, but do you know?

THE DEFENDANT:  No, I don't, your Honor.

THE COURT:  What's the government's proffer with

respect to venue on each of the counts?

MR. HOBSON:  Your Honor, I can proffer that Celsius

has an office based in New York City, in Manhattan, that

Defendant Alex Mashinsky was based in Manhattan, and that

several of the relevant emails and communications discussed

here were sent when Mashinsky was in Manhattan.  In addition,

Celsius' trading was often directed out of Manhattan.

THE COURT:  The reason that I ask these questions,

Mr. Cohen-Pavon, is that the government would be required to

N9DUCOHP

```
 1   prove that there was venue for each of the counts in the
 2   Southern District of New York.  The Southern District of New
 3   York includes Manhattan, the Bronx, Westchester, and some other
 4   northern counties.  The government says that it can do that.  A
 5   defendant has the right to be prosecuted in a district where
 6   there is venue.  The government says it could prove venue here
 7   in the Southern District of New York.
 8              For purposes of your plea, are you prepared to accept
 9   that?
10             THE DEFENDANT:  Yes, your Honor.
11             THE COURT:  When you did the acts that you've
12   described to me, did you know that what you were doing was
13   wrong and illegal?
14             THE DEFENDANT:  Yes, your Honor.
15             THE COURT:  Does the government want me to ask any
16   other questions of the defendant?
17             MR. HOBSON:  No, your Honor.
18             THE COURT:  Tell me what the government's evidence
19   would be at trial against the defendant.
20             MR. HOBSON:  Your Honor, our evidence would include,
21   among other things, documents and communications involving the
22   defendant and other members of the conspiracy discussing the
23   plan to manipulate the price of CEL token; trading records
24   showing actual purchases made in furtherance of this plan,
25   purchases which were in excess of Celsius' public disclosures
```

N9DUCOHP

1    about the amount it was purchasing.  It would also include

2    testimony from other members of the conspiracy and other

3    individuals at Celsius who would testify about the excess

4    purchases.

5            THE COURT:  And would the government's evidence

6    establish the defendant's guilt beyond a reasonable doubt of

7    each of the counts to which he's pleading?

8            MR. HOBSON:  Yes, your Honor.

9            THE COURT:  Mr. Cohen-Pavon, how do you plead to the

10   charge against you in Count Four of the indictment, guilty or

11   not guilty?

12           THE DEFENDANT:  Guilty, your Honor.

13           THE COURT:  Mr. Cohen-Pavon, how do you plead to the

14   charge against you in Count Five of the indictment, guilty or

15   not guilty?

16           THE DEFENDANT:  Guilty, your Honor.

17           THE COURT:  Mr. Cohen-Pavon, how do you plead to the

18   charge against you in Count Six of the indictment, guilty or

19   not guilty?

20           THE DEFENDANT:  Guilty, your Honor.

21           THE COURT:  Mr. Cohen-Pavon, how do you plead to the

22   charge against you in Count Seven the indictment, guilty or not

23   guilty?

24           THE DEFENDANT:  Guilty, your Honor.

25           THE COURT:  Are you pleading guilty because you are,

N9DUCOHP

1    in fact, guilty?

2             THE DEFENDANT:  Yes, I am.

3             THE COURT:  Are you pleading guilty voluntarily and of

4    your own free will?

5             THE DEFENDANT:  Yes, your Honor.

6             THE COURT:  Before I finally accept the defendant's

7    plea, Mr. Brown, do you want me to ask any other questions of

8    the defendant?

9             MR. BROWN:  No, your Honor.  Thank you.

10            THE COURT:  Do you know of any reason that I should

11   not accept his plea?

12            MR. BROWN:  I do not.

13            THE COURT:  Before I finally accept the defendant's

14   plea, does the government want me to ask any other questions of

15   the defendant?

16            MR. HOBSON:  No, your Honor.

17            THE COURT:  Does the government know of any reason

18   that I should not accept his plea?

19            MR. HOBSON:  No, your Honor.

20            THE COURT:  Mr. Cohen-Pavon, because you acknowledge

21   that you are guilty as charged in Counts Four, Five, Six, and

22   Seven of the indictment, because I find that you know your

23   rights and are waiving them knowingly and voluntarily, because

24   I find that your plea is entered knowingly and voluntarily and

25   is supported by an independent basis in fact containing each of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N9DUCOHP

 1   the essential elements of the offenses, I accept your guilty

 2   plea and I adjudge you guilty of the offenses to which you have

 3   pleaded.

 4          Mr. Cohen-Pavon, the probation department will now

 5   prepare a presentence report to assist me in sentencing you.

 6   You will be interviewed by the probation department.  It's very

 7   important that the information you provide to the probation

 8   department be truthful and accurate.  The presentence report is

 9   very important to me in my decision as to what your sentence

10   will be.

11          You and your lawyers will have the opportunity to

12   review the presentence report to challenge anything contained

13   in the report and then to speak on your behalf at sentencing.

14          I don't like control dates, so if the government can

15   give me some reasonable estimate as to what a reasonable

16   sentencing date is, we'll set that as the sentencing date.

17          MR. HOBSON:  Your Honor, it would be after the trial

18   in this matter, which I think, based on prior discussions with

19   the Court, we anticipate happening within the next year.  Would

20   the Court be okay with a date that's a year out?

21          THE COURT:  Yes.

22          MR. HOBSON:  Why don't we do actually -- why don't we

23   do a year and three months out?

24          THE COURT:  Okay.

25          MR. HOBSON:  Which would be three months after a

N9DUCOHP

```
 1    potential trial date.  And we can, of course, come back to the
 2    Court if that changes.
 3                THE COURT:  Absolutely.
 4                MR. HOBSON:  We would also request that the
 5    presentence report not be ordered until we're approaching that
 6    date.
 7                THE COURT:  Sure.  Of course.
 8                Tell the probation department to hold off any
 9    presentence report until a time at least two months before the
10    proposed sentencing date.
11                THE DEPUTY CLERK:  Normally, since he's on bail, they
12    want three months.
13                THE COURT:  Three months.
14                THE DEPUTY CLERK:  Or further order of the Court?
15                THE COURT:  Yes.  Fine.
16                THE DEPUTY CLERK:  The Court is giving notice to the
17    probation department that there be no PSI, which means a
18    presentence investigation, or PSR, presentence report, until
19    further order of the Court.
20                THE COURT:  Sentencing date?
21                THE DEPUTY CLERK:  December 11th at 11 a.m.
22                THE COURT:  December 11th.
23                THE DEPUTY CLERK:  2024.
24                THE COURT:  2024, at 11 a.m.
25                The defense submission should be given at least 14
```

N9DUCOHP

 1   days before sentence, the government's submission at least

 2   eight days before sentence.

 3              No changes in the defendant's release?  Is that right?

 4              MR. HOBSON:  That's correct, your Honor.

 5              THE COURT:  Mr. Cohen-Pavon, I fixed the date for

 6   sentence.  Do you understand that if you fail to return to my

 7   courtroom on the date fixed for sentence or any adjourn date,

 8   you will be guilty of a criminal offense for which you could be

 9   sentenced to prison wholly separate and apart from and in

10   addition to any sentence that you may receive for the crimes to

11   which you just entered a plea of guilty.

12              Do you understand that?

13              THE DEFENDANT:  Yes, I do.

14              THE COURT:  Do you also understand I'm continuing all

15   of the conditions of your release and the violation of any of

16   those conditions can have serious consequences for you.

17              Do you understand that?

18              THE DEFENDANT:  Yes, I do.

19              THE COURT:  Anything else?

20              MR. HOBSON:  No, your Honor.

21              MR. BROWN:  No, your Honor.

22              For the avoidance of doubt, my client's excused from

23   any further appearances, at status conferences until the

24   sentencing?  Is that fair?

25              THE COURT:  Yes.

N9DUCOHP

1          MR. BROWN:  Thank you.

2          THE COURT:  The government had raised the issue about

3     the prior proceedings were not docketed or sealed.  There's no

4     reason for any further sealing or any delay in docketing,

5     right?

6          MR. HOBSON:  Not from the government's perspective.

7          THE DEPUTY CLERK:  So the clerk can file the minute

8     entry into the court docket?

9          MR. HOBSON:  Yes, your Honor.

10          THE COURT:  Yes.

11          And I'm returning Court Exhibit 1 to the government.

12          I assume the September 5 letter can also be docketed.

13          MR. HOBSON:  No objection to that, your Honor.

14          THE COURT:  But the Court Exhibit 1 is never docketed

15     and I'm returning Court Exhibit 1 to the government.

16          Good afternoon, all.

17

18

19

20

21

22

23

24

25